KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest - # 84065
rvannest@keker.com
Asim M. Bhansali - # 194925
abhansali@keker.com
Eugene M. Paige - # 202849
epaige@keker.com
Justina Sessions - # 270914
jsessions@keker.com
David W. Rizk - # 284376
drizk@keker.com
Alexander Dryer - # 291625
adryer@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth A venue
New York, New York 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
1111 Pennsylvania A venue NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
Facsimile:  (202) 739-3001

MORGAN, LEWIS & BOCKIUS LLP
Donn P. Pickett (SBN 72257)
donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

Attorneys for Defendant
QUALCOMM INCORPORATED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: QUALCOMM ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 5:17-md-02773-LHK<br><br>**DEFENDANT QUALCOMM INCORPORATED'S MOTION TO DISMISS AND/OR STRIKE**<br><br>Date:        November 9, 2017<br>Time:        2:00 p.m.<br>Dept.:       Courtroom 8, 4th Floor<br>Judge:       Hon. Lucy H. Koh |

1182244

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................................1

II.  ISSUES TO BE DECIDED ......................................................................................3

III. FACTUAL BACKGROUND ....................................................................................4

 A.   Plaintiffs' Complaint alleges anticompetitive conduct in the baseband processor markets.......................................................................................4

 B.   Plaintiffs are consumer cellular device purchasers, who do not participate in the baseband processor markets...........................................................5

IV.  ARGUMENT ...........................................................................................................6

 A.   Plaintiffs have not adequately pled antitrust injury, because they allege injuries that are too remote from the misconduct they allege.................7

  1.   Plaintiffs cannot meet the Clayton and Cartwright Acts' market participation requirement for antitrust injury.................................7

  2.   Plaintiffs do not plead an injury "inextricably intertwined" with the conduct they allege. .................................................................11

 B.   *Illinois Brick* bars Plaintiffs, as indirect purchasers, from seeking damages for their federal claims.....................................................................11

 C.   Plaintiffs have not alleged any injury-in-fact flowing from Qualcomm's rebates or discounts to Apple...............................................................13

 D.   The Cartwright Act claim fails because Plaintiffs attack only non-actionable single-firm conduct with their remaining allegations.........14

 E.   The Cartwright Act does not apply to putative class members in states that have not enacted a so-called *Illinois Brick*-repealer statute.................17

  1.   The Court should address the irreconcilable conflict between California's Cartwright Act and non-repealer states' antitrust laws at the pleadings stage. .................................................................17

  2.   Under *Mazza*, Plaintiffs cannot assert a class that includes indirect purchasers from non-repealer states...........................................18

 F.   As in *Lorenzo*, Plaintiffs lack standing under the UCL for the same reasons they lack standing under the Clayton and Cartwright Acts. ...............21

 G.   Plaintiffs' UCL claim must be stricken to the extent their Cartwright Act claim is stricken. ................................................................................21

V.   CONCLUSION......................................................................................................22

1182244

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*
    190 F.3d 1051 (9th Cir. 1999) ........................................................................ 7, 10

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................................ 6

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................ 6

*Bhan v. NME Hospitals, Inc.*
    772 F.2d 1467 (9th Cir. 1985) ............................................................................ 8

*Blue Shield of Va. v. McCready*
    457 U.S. 465 (1982) .......................................................................................... 11

*California v. Infineon Techs. AG*
    531 F. Supp. 2d 1124 (N.D. Cal. 2007) ............................................................ 19

*Cargill v. Monfort*
    479 U.S. 104 (1986) ............................................................................................ 7

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*
    523 F.3d 1116 (9th Cir. 2008) .......................................................................... 12

*Dimidowich v. Bell & Howell*
    803 F.2d 1473 (9th Cir. 1986) ......................................................... 3, 15, 16, 17

*Exhibitors' Serv., Inc. v. Am. Multi-Cinema, Inc.*
    788 F.2d 574 (9th Cir. 1986) .............................................................................. 8

*Feitelson v. Google Inc.*
    80 F. Supp. 3d 1019 (N.D. Cal. 2015) .............................................. 1, 2, 7, 10, 11

*Free v. Abbott Labs., Inc.*
    176 F.3d 298 (5th Cir. 1999) ............................................................................ 19

*Illinois Brick Co. v. Illinois*
    431 U.S. 720 (1977) .................................................................................... *passim*

*In re ATM Fee Antitrust Litig.*
    686 F.3d 741 (9th Cir. 2012) ...................................................................... 12, 13

*In re Dynamic Random Access Memory Antitrust Litig.*
    536 F. Supp. 2d 1129 (N.D. Cal. 2008) ............................................................ 10

*In re Google Inc.*
    No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .................. 18

*In re Graphics Processing Units Antitrust Litig.*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...................................................... *passim*

1182244

*In re Korean Ramen Antitrust Litig.*
  No. 13-CV-04115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017)............................................ 21

*In re Lithium Ion Batteries Antitrust Litig.*
  No. 13-MD-2420, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)............................................ 11

*In re Lithium Ion Batteries Antitrust Litig.*
  No. 13-MD-2420, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) .............................. 18, 20, 21

*In re Online DVD-Rental Antitrust Litig.*
  779 F.3d 914 (9th Cir. 2015) ...................................................................................... 3, 14

*In re Optical Disk Drive Antitrust Litig.*
  No. 10-MD-2143, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ............................................ 20

*In re Packaged Seafood Prod. Antitrust Litig.*
  No. 15-MD-2670, 2017 WL 1010329 (S.D. Cal. Mar. 14, 2017) .............................. 18, 20, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
  No. 07-MD-1827, 2013 WL 4175253 (N.D. Cal. July 11, 2013)........................................ 3, 20

*In re Wiring Device Antitrust Litig.*
  498 F. Supp. 79 (E.D. N.Y. 1980) ...................................................................................... 19

*Johnson v. Hewlett-Packard Co.*
  No. 09-3596, 2010 WL 2680772 (N.D. Cal. July 6, 2010) ...................................................... 6

*Lorenzo v. Qualcomm Inc.*
  603 F. Supp. 2d 1291 (S.D. Cal. 2009)........................................................................ *passim*

*Mazza v. Am. Honda Motor Co.*
  666 F.3d 581 (9th Cir. 2012) ...................................................................................... *passim*

*Midwestern Waffles, Inc. v. Waffle House, Inc.*
  734 F.2d 705 (11th Cir. 1984) .......................................................................................... 19

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985)............................................................................................................ 18

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*
  786 F. Supp. 2d 1190 (S.D. Tex. 2009) ............................................................................ 16

*Toscano v. PGA Tour, Inc.*
  70 F. Supp. 2d 1109 (E.D. Cal. 1999)................................................................................ 16

*Zapata Fonseca v. Goya Foods Inc.*
  No. 16-CV-02559, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .................................... 17, 18

**State Cases**

*Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*
  907 S.W.2d 503 (Tex. 1995)........................................................................................ 19, 22

*Arnold v. Microsoft Corp.*
  No. 2000-CA-002144, 2001 WL 1835377 (Ky. Ct. App. 2001) ........................................ 19

1182244

*Berghausen v. Microsoft Corp.*
  765 N.E.2d 592 (Ind. Ct. App. 2002)........................................................................ 19

*Blewett v. Abbott Labs.*
  938 P.2d 842 (Wash. App. 1997)............................................................................... 19

*Bondi v. Jewels by Edwar, Ltd.*
  267 Cal. App. 2d 672 (1968) ..................................................................................... 15

*Chavez v. Whirlpool Corp.*
  93 Cal. App. 4th 363 (2001) ...................................................................................... 16

*Freeman v. San Diego Ass'n of Realtors*
  77 Cal. App. 4th 171 (1999) ...................................................................................... 15

*Hernandez v. Burger*
  102 Cal. App. 3d 795 (1980) ..................................................................................... 20

*Johnson v. Microsoft Corp.*
  834 N.E.2d 791 (Ohio 2005) ..................................................................................... 19

*Kwikset Corp. v. Super. Ct.*
  51 Cal. 4th 310 (2011) ............................................................................................... 21

*Maddock v. Greenville Retirement Cmty., L.P.*
  No. 12564, 1997 WL 89094 (Del. Ch. 1997) ........................................................... 19

*Major v. Microsoft Corp.*
  60 P.3d 511 (Okla. Ct. Civ. App. 2002) ................................................................... 19

*Sickles v. Cabot Corp.*
  877 A.2d 267 (N.J. Super. App. Div. 2005) .............................................................. 19

*Siena v. Microsoft Corp.*
  796 A.2d 461 (R.I. 2002) ........................................................................................... 19

*Stifflear v. Bristol-Myers Squibb Co.*
  931 P.2d 471 (Colo. App. 1996) ................................................................................ 19

*Vacco v. Microsoft Corp.*
  793 A.2d 1048 (Conn. 2002) ..................................................................................... 19

*Vinci v. Waste Mgmt., Inc.*
  36 Cal. App. 4th 1811 (1995) ...................................................................................... 7

**Federal Statutes**

15 U.S.C. § 1 ..................................................................................... 11, 12, 13, 14, 16

15 U.S.C. § 2 ............................................................................................... 12, 14, 16

15 U.S.C. § 15 ................................................................................................... 12, 13

**State Statutes**

Alaska Stat. § 45.50.577 ............................................................................................ 19

iv

1182244

Cal. Bus. & Prof. Code § 16720 .................................................................................... 15

Cal. Bus. & Prof. Code § 16750 .................................................................................... 19

Cal. Bus. & Prof. Code § 17204 .................................................................................... 21

Colo. Rev. Stat. § 6-4-111 ............................................................................................. 19

R.I. Gen. Laws § 6-36-12 .............................................................................................. 19

Wash. Rev. Code Ann. § 19.86.080 ............................................................................... 19

Wash. Rev. Code Ann. § 19.86.090 ............................................................................... 19

**<u>Federal Rules</u>**

Fed. R. Civ. P. 12 ............................................................................................................ 6

Fed. R. Civ. P. 23 ............................................................................................................ 6

1182244

1

## NOTICE OF MOTION AND MOTION

2

PLEASE TAKE NOTICE that on November 9, 2017, at 2:00 p.m., or as soon thereafter as

3

the matter may be heard, in Courtroom 8, United States Courthouse, 280 South 1st Street, San

4

Jose, California 95113, Defendant Qualcomm Incorporated ("Qualcomm") will and hereby does

5

move to dismiss, or in the alternative, move to strike Plaintiffs' Consolidated Class Action

6

Complaint ("CC," or the "Complaint," ECF No. 94).  This motion is made pursuant to Federal

7

Rules of Civil Procedure 12(b)(6) and 12(f) and is based on this Notice of Motion and the

8

accompanying memorandum, declaration, exhibits, pleadings, and documents on file in this case,

9

and such other  argument as may be presented by counsel at the hearing.

10

As set forth below, Qualcomm respectfully seeks entry of the attached Proposed Order

11

dismissing, or in the alternative striking, Plaintiffs' Complaint.

12

## I.    INTRODUCTION

13

Plaintiffs' Complaint challenges Qualcomm's licensing policies and sales practices in

14

certain alleged markets for baseband processor chips, alleging violations of federal and state

15

antitrust and state unfair competition laws.  Qualcomm vigorously denies such claims, but here

16

moves to dismiss the Complaint for a more fundamental reason: Plaintiffs lack standing to assert

17

their antitrust claims because they do not participate in the alleged chip markets where Plaintiffs

18

assert Qualcomm's conduct occurred.  Rather, they purchased finished cellular devices such as

19

smartphones and tablets as end-consumers, many steps removed from the alleged, relevant

20

markets.  Consequently, their alleged injuries are too remote from the alleged violations to assert

21

claims under federal or state antitrust law.  This is not a novel issue in antitrust law: Applying

22

binding Supreme Court, Ninth Circuit, and California Court of Appeal precedents, Judge Hayes

23

in the Southern District of California dismissed legally indistinguishable claims regarding

24

Qualcomm's business practices as lacking the essential element of antitrust standing because

25

plaintiffs did not participate in the relevant, alleged markets.  *Lorenzo v. Qualcomm Inc.*, 603 F.

26

Supp. 2d 1291, 1299–1303 (S.D. Cal. 2009).  Judge Freeman later applied *Lorenzo*, with

27

approval, to dismiss another putative consumer class action that challenged Google's practices

28

and agreements with Android handset manufacturers as anticompetitive.  *Feitelson v. Google*

1182244

*Inc.*, 80 F. Supp. 3d 1019, 1026–27 (N.D. Cal. 2015).

This case presents the same considerable distance between the Plaintiffs and the allegedly anticompetitive conduct that existed in *Lorenzo* and *Feitelson*.  The Plaintiffs do not have any relationship with Qualcomm: they do not buy baseband processors from Qualcomm or perhaps even from the manufacturers who buy baseband processors from Qualcomm.  Indeed, the link between the Plaintiffs' purchases and the allegedly anticompetitive conduct is too remote.  Even the entity that purportedly sold them cellular devices *itself* may have been one or more levels removed from the original equipment manufacturer that purchased baseband processors and licensed technology from Qualcomm.  Plaintiffs' Complaint omits these important facts and provides scant information about the when, where, and how of Plaintiffs' purported cellular device purchases.  Yet the simple fact that Plaintiffs are consumer purchasers leaves no doubt, based on the pleadings, that they are too many levels removed from the allegedly anticompetitive conduct to seek relief.

To allow Plaintiffs' case to go forward as pled would violate the "market participant" rule that the Supreme Court applies to determine whether an antitrust plaintiff's injury is too remote from the claimed wrongdoing.  The market participant rule requires a plaintiff to allege either participation in the market where the alleged violation occurred or an injury "inextricably intertwined" with that conduct.  Plaintiffs have pled neither.  Rather, just as in *Lorenzo* and *Feitelson*, Plaintiffs here did not participate in the baseband processor market where the wrongdoing allegedly occurred, and the conduct they allege is far too removed to be inextricably intertwined with their alleged injury.  Plaintiffs' allegations conflict with controlling Ninth Circuit and California Court of Appeal precedents regarding application of the market participant rule, which *Lorenzo* recognized as dispositive of legally indistinguishable claims.

In addition to this overarching flaw that cuts across all claims, each cause of action includes additional specific flaws that separately require dismissing all or part of Plaintiffs' claims:

- In conflict with long-established precedent, Plaintiffs improperly seek damages under *federal law* even though they pled only indirect purchases from Qualcomm.  *Illinois Brick*

*Co. v. Illinois*, 431 U.S. 720, 730 (1977).

- In both their state and federal antitrust claims, Plaintiffs parrot the FTC's allegation that Qualcomm's incentive payments to Apple are anticompetitive. But Plaintiffs fail to allege a fundamental element of a private antitrust claim: that the incentive payments injured them in their business or property. Because the incentive payments would, if anything, *lower* prices to a party in the chain of distribution at the end of which Plaintiffs sit, Plaintiffs do not and cannot allege how that price *reduction* could have injured them. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015) (Thomas, C.J.).

- Although California's Cartwright Act does not cover single-firm conduct, Plaintiffs assert a cause of action for what is, other than the Apple agreement that could not plausibly injure them, a single-firm monopolization claim. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1476-77 (9th Cir. 1986).

- Finally, Plaintiffs pled a nationwide class under the Cartwright Act that sweeps into the class citizens from states that have opted not to create a state-law remedy for indirect purchasers who have no remedy under federal law. Plaintiffs' attempt to include cellular device purchasers from those "non-repealer" states runs afoul of well-established law in indirect purchaser cases, and should be addressed at the pleading stage. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, 2013 WL 4175253, at *2 (N.D. Cal. July 11, 2013); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007) ("*GPU*").

## II.    ISSUES TO BE DECIDED

This Motion raises the following issues:

1.    Whether, for Claims 1, 2 and 3, under the Sherman, Clayton and Cartwright Acts, Plaintiffs, who do not participate in the markets in which the challenged conduct occurred, have pled antitrust injury.

2.    Whether, for Claims 2 and 3, Plaintiffs have standing as indirect purchasers to seek money damages under the Sherman and Clayton Acts.

1182244

3.      Whether, for Claims 1 and 2, Plaintiffs fail to allege an injury-in-fact flowing from Qualcomm's incentive agreements with Apple.

4.      Whether, for Claim 1, Plaintiffs allege single-firm conduct under the Cartwright Act.

5.      Whether, for Claim 1, Plaintiffs may seek money damages for indirect purchasers who reside in states that deny standing to such purchasers.

6.      Whether, for Claim 4, Plaintiffs may seek recovery under the Unfair Competition Law ("UCL") to the extent the Court dismisses or strikes Plaintiffs' underlying claims.

## III.    FACTUAL BACKGROUND[1]

Qualcomm's patented technologies and innovative components have enabled the smartphone revolution, which in just a decade has made handheld devices that rival desktop computers commonplace across the globe.  CC ¶¶ 7, 29, 35–37.  Qualcomm invented foundational aspects of the standards that define high-speed cellular networks and designs components that allow devices to communicate with such networks.  *Id.* ¶¶ 7, 33, 35–37. Qualcomm licenses its patents through an entity known as Qualcomm Technology Licensing and sells its components through an entity known as Qualcomm CDMA Technologies.  *Id.* ¶ 24.

### A.    Plaintiffs' Complaint alleges anticompetitive conduct in the baseband processor markets.

Global standard-setting organizations ("SSOs"), which include representatives from many different companies, have standardized cellular technologies since the late 1980s.  CC ¶¶ 33–37. The adoption of standards involves competition and choice, both among different contributors' technologies during the standardization process itself and also among different standards.  *Id.* ¶¶ 37, 58-59.  Over the past 30 years, SSOs frequently have favored adopting Qualcomm's superior inventions over competing technologies.  Thus, Qualcomm holds standards-essential patents ("SEPs") for at least three generations of cellular standards.  *Id.* ¶¶ 33–37.  Plaintiffs allege misconduct related to intellectual property, including the charging of allegedly supra-

---

[1] For purposes of this motion, Qualcomm takes all of the factual allegations set forth in the complaint as true, as it is must at the pleading stage.  Qualcomm will contest those allegations vigorously should this case proceed.

competitive royalties for licenses, but they do not allege that they have or are required to purchase a license to these technologies in order to use their cellular devices.  Plaintiffs also do not allege that they purchased chips directly from Qualcomm, or even that they purchased their cellular devices directly from a Qualcomm customer.  Indeed, Plaintiffs do not allege how many steps removed they are as consumers from Qualcomm, its licensees, or its customers, in the unidentified distribution channels from which they purportedly purchased their devices.

In addition to inventing new technologies, Qualcomm also sells its baseband processors or "modem chips."  To communicate with a cellular network, a cellular device such as a smartphone, cellular-enabled tablet, or mobile "hot spot," requires a baseband processor. CC ¶ 32.  Although Qualcomm faces vigorous competition in its baseband-processor business from the world's largest semiconductor companies, such as Intel and Samsung, the Complaint does not allege that Plaintiffs participate either as competitors or consumers in the alleged markets for baseband processors.  However, their Complaint's allegations confirm what is indisputable: Qualcomm's baseband processor sales are always at least one level—and, more often, several levels—removed from the end consumer of a mobile device, as described below.

**B.     Plaintiffs are consumer cellular device purchasers, who do not participate in the baseband processor markets.**

Plaintiffs seek to assert antitrust claims under California and federal law, and derivative consumer-protection claims under California law, on behalf of a nationwide class of cellular-device purchasers.  CC ¶¶ 170–216, 159.  Plaintiffs assert that the relevant geographic market is worldwide, *id.* ¶ 118, and the relevant product markets are: "(1) modem chips that comply with CDMA standards ('CDMA modem chips') and (2) modem chips that comply with advanced LTE standards ('premium LTE modem chips.'),"  *id.* ¶ 119.  Plaintiffs further assert that the "cellular device product market is 'inextricably intertwined' with the CDMA and 'premium' LTE chip markets."  *Id.* ¶ 129.

Plaintiffs allege unlawful conduct in these markets, rather than in the retail device market in which they participate—or even in the wholesale market for the devices they buy at retail. Plaintiffs' core allegations are that Qualcomm does not license its SEPs to competing modem-chip manufacturers and refused to sell its modem chips to unlicensed device manufacturers.  *Id.*

5

¶ 8.  Plaintiffs further allege that Qualcomm coerced device manufacturers into exclusive deals that foreclosed competition.  *Id.*  Plaintiffs allege that these practices led to overcharges of Qualcomm's patent royalties, which are charged on the wholesale price of devices, and that the overcharge is passed through some undefined number of intermediaries to consumers.  *Id.* ¶¶ 146–147.  According to Plaintiffs, the number of intermediaries is either one (Qualcomm to manufacturer to consumer), two (Qualcomm to manufacturer to retailer to consumer), or three (Qualcomm to manufacturer to wholesaler to retailer to consumer).  *Id.* ¶ 146.  Notably, Plaintiffs never allege that they have any direct relationship with Qualcomm in the alleged markets.

The named plaintiffs, Sarah Key, Andrew Westley, Terese Russell, and Carra Abernathy, all allege that they are California residents.  *Id.* ¶¶ 20–23.  They allege that they purchased various devices, including iOS and Android smartphones and tablets and a Kindle e-reader, at some time in the last four years, but fail to plead any other facts regarding their purchases.  *Id.* ¶¶ 20–23.

## IV.   ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must plead facts showing that their "right to relief [rises] above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs must show "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept material *factual* allegations as true, pleadings that are "no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.

To survive a motion to strike under Rule 12(f), Plaintiffs must demonstrate that their claims plausibly could proceed as a class action.  While the text of Rule 12(f) is, "[s]trictly speaking," silent on this point, "[c]ourts in this circuit have permitted [a] broad use of Rule 12(f)" to seek "a preemptive determination of whether [an] action qualifies as a class action under Rule 23," even before a motion for class certification.  *Johnson v. Hewlett-Packard Co.*, No. 09-3596, 2010 WL 2680772, at *4 (N.D. Cal. July 6, 2010) (citing *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988–89 (N.D. Cal. 2009)).

DEFENDANT QUALCOMM INCORPORATED'S MOTION TO DISMISS AND/OR STRIKE
Case No. 5:17-md-02773-LHK

1182244

A.      **Plaintiffs have not adequately pled antitrust injury, because they allege injuries that are too remote from the misconduct they allege.**

Plaintiffs, who purchased finished devices at retail, are multiple levels removed from the alleged conduct they attack in the markets for chips and technology; thus, they cannot satisfy the "market participant" rule, which requires that Plaintiffs' injuries occur "in the market where competition is being restrained." *Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999). This market participation is a critical element of antitrust injury (sometimes also called "antitrust standing"). *Id.* at 1054. As stated, the present case is indistinguishable from *Lorenzo*, where another district court applied Ninth Circuit law to a consumer's challenge to allegedly anticompetitive practices by Qualcomm in chip and licensing markets and dismissed the plaintiff's Clayton Act and Cartwright Act claims for lack of antitrust standing. 603 F. Supp. 2d at 1299–1303; *see also Feitelson*, 80 F. Supp. 3d at 1026–27. *Lorenzo* and *Feitelson*, respectively, dismissed virtually identical and very similar class actions because the plaintiffs in those cases failed to plead that they were market participants.

1.      **Plaintiffs cannot meet the Clayton and Cartwright Acts' market participation requirement for antitrust injury.**

The antitrust injury or standing doctrine requires private plaintiffs to plead and prove "loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Cargill v. Monfort*, 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *Lorenzo*, 603 F. Supp. 2d at 1302 (citing *Cellular Plus, Inc. v. Super. Ct. of San Diego Cnty.*, 14 Cal. App. 4th 1224, 1232 (1993)) (Cartwright Act requires antitrust injury). A key to establishing antitrust injury is satisfying the market participant rule, which mandates that a plaintiff must participate in the same market in which the alleged misconduct occurred. As the Ninth Circuit explains: "Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained. Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Am. Ad Mgmt.*, 190 F.3d at 1057 (Clayton Act); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1816 (1995) (no antitrust standing under Cartwright Act because plaintiff "was neither a consumer

1182244

[n]or competitor in the market in which trade was restrained").  In *Exhibitors' Serv., Inc. v. Am. Multi-Cinema, Inc.*, for example, the Ninth Circuit reviewed a judgment concerning an illegal market allocation agreement between competing film exhibitors.  The Court held that a film distributor that licensed copyrighted films to the exhibitors had standing to challenge the illegal agreement, but dismissed the claims of an agent that represented the distributor in licensing negotiations with the exhibitors, reasoning that although the agent was unquestionably harmed by the illegal agreement, it lacked antitrust standing as it was "quite clearly *neither a competitor* of these exhibitors *nor a consumer of goods in this market*."  *See* 788 F.2d 574, 579 (9th Cir. 1986) (emphases added); s*ee also Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470–71 (9th Cir. 1985) (citing *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983)) ("The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors.").

In *Lorenzo*, the district court applied the market participant rule to dismiss claims by phone purchasers brought against Qualcomm based on alleged anticompetitive conduct in chip and technology markets.  There, the plaintiff brought claims on behalf of a putative class comprising "[a]ll consumers who purchased cellular service from any carrier in the United States which bundles its cellular service with subsidized CDMA-capable cellular devices …."  Rizk Decl., Ex. A ¶ 55 (*Lorenzo* Compl.,).  The plaintiff asserted Clayton and Cartwright Act claims that in the alleged CDMA chip and licensing markets, Qualcomm had: (1) violated its FRAND obligations by leveraging its licensing of CDMA-related SEPs to protect monopoly power in the market for CDMA chipsets; (2) succeeded in charging supra-competitive royalties by licensing both OEMs and chipset manufacturers such that devices containing Qualcomm chips were subject to "double royalties"; and, (3) provided financial discounts to OEMs that purchased chipsets exclusively from Qualcomm.  *See* 603 F. Supp. 2d at 1295–96.  Those allegations closely parallel the Plaintiffs' complaint here.  *See, e.g.*, CC ¶ 64 ("Qualcomm acquired and maintained its monopoly over CDMA and premium LTE modem chips by refusing to offer its SEPs on FRAND terms to competing modem chip suppliers."); *id.* ¶ 84 ("By insisting on both a license fee and the

sale price of the chips, Qualcomm is violating the exhaustion doctrine."); *id.* ¶ 80 (Qualcomm "offer[s] OEMs incentive payments to discount Qualcomm's above-FRAND royalties if an OEM uses Qualcomm's chips as opposed to those of a competitor.").

Notably, the plaintiff in *Lorenzo* also alleged injury based on a "pass-through" theory—namely, that "CDMA chipset manufacturers pass CDMA licensing costs down to CDMA device manufacturers, CDMA device manufacturers pass those costs down to their vendors, and the vendors ultimately pass those costs on to end consumers, such as Plaintiff." *Lorenzo*, 603 F. Supp. 2d at 1296. Again, that alleged injury is almost identical to what plaintiffs allege here. *See, e.g.,* CC ¶ 144 ("Plaintiffs and Class members were injured in the form of paying artificially-high, supra-competitive prices for cellular devices incorporating modem chips."); *id.* ¶ 146 ("The supra-competitive all-in modem chip prices, including the surcharge, were passed down the distribution chain from the modem chip purchasers to Plaintiffs and the Class members who use the cellular devices containing such chips.").

The court dismissed *Lorenzo* at the pleadings stage (ultimately, with prejudice) because the plaintiff could not establish that he was a participant in the alleged market or that the alleged anticompetitive conduct injured him. Specifically, the court determined that Qualcomm's alleged conduct "occurred in the CDMA-related patents and technology patent technology market," while the plaintiff alleged injury "in the market for cell phones and cellular service," and thus "the Complaint fail[ed] to allege sufficient facts to support a finding that Plaintiff is a participant in the market where Qualcomm's unlawful conduct allegedly occurred." *Lorenzo*, 603 F. Supp. 2d at 1301 (citing *Am. Ad Mgmt.,* 190 F.3d at 1057). The court then went on to hold that the plaintiff's allegations could not "support a finding that Plaintiff and Qualcomm had a direct relationship, that Qualcomm's anticompetitive conduct proximately caused Plaintiff's injury, that Plaintiff is a direct victim of Qualcomm's anticompetitive conduct." *Id.* at 1295.

Given the indistinguishable injuries alleged by the *Lorenzo* plaintiff and Plaintiffs here—higher prices for consumer devices arising from conduct that allegedly occurred in upstream chip market—the reasoning of the court in *Lorenzo* should apply here, finding that Plaintiffs have failed to allege they have suffered antitrust injury. Plaintiffs do not and cannot assert that they

ever purchased anything from Qualcomm, or that Qualcomm's alleged misconduct took place in any market in which Plaintiffs participate.  Further, and just as in *Lorenzo*, here Plaintiffs' claimed injuries are attenuated from the challenged conduct because they have no direct relationship with Qualcomm and purchased finished devices that merely incorporate chips from the upstream market.  Plaintiffs' allegations therefore conclusively establish that they, as consumers, have not "suffered [an] injury in the market where competition is being restrained." *Am. Ad Mgmt.,* 190 F.3d at 1057.

Judge Freeman's *Feitelson* opinion confirms *Lorenzo*'s rationale for dismissal.  In *Feitelson*, plaintiffs alleged that restrictive terms in Google's agreements with OEMs that license the Android operating system limited the default mobile search engine options on Android to Google's own product, cutting off available subsidies from search engine competitors, and thereby resulting in "supra-competitive" pricing of Android devices for consumers.  *Feitelson*, 80 F. Supp. 3d at 1023-25.  Invoking *Lorenzo*, the Court held: "Similarly here, Plaintiffs allege that they suffered antitrust injury in the form of supracompetitive pricing in Android phones, which is not the market in which the alleged anticompetitive conduct occurred." *Id.* at 1027-28.  The Court noted disapprovingly that, just as in the present case, "Plaintiffs elide allegations concerning the number of supply chain levels between OEMs who sign the allegedly anticompetitive [agreements] and end consumers like Plaintiffs." *Id.*  Absent such allegations, Judge Freeman concluded, Plaintiffs could not affirmatively establish antitrust injury "in the same market as and sufficiently close to the alleged anticompetitive conduct to allow them to pursue private antitrust remedies against Defendant." *Id.* (citing *Lorenzo*, 603 F. Supp. 2d at 1301).  Accordingly, the *Feitelson* plaintiffs' Clayton and Cartwright Act claims were dismissed with prejudice. *Id.* at 1034.  When deciding *In re Dynamic Random Access Memory Antitrust Litig.* ("*DRAM*"), Chief Judge Hamilton invoked a very similar line of reasoning, holding that consumers who purchased computer equipment that included DRAM lacked standing to challenge under the Cartwright Act a price-fixing scheme in the upstream market for DRAM modules.  536 F. Supp. 2d 1129, 1141 (N.D. Cal. 2008).  *Lorenzo*, *Feitelson*, and *DRAM* all compel dismissal here.

DEFENDANT QUALCOMM INCORPORATED'S MOTION TO DISMISS AND/OR STRIKE

2.     **Plaintiffs do not plead an injury "inextricably intertwined" with the conduct they allege.**

The Complaint also fails to establish antitrust injury by invoking the "inextricably intertwined" doctrine.  This doctrine is a narrow exception to the market-participant rule for litigants who "suffered [an injury that] was inextricably intertwined with the injury the conspirators sought to inflict."  *Blue Shield of Va. v. McCready*, 457 U.S. 465, 484 (1982).

While Plaintiffs state in conclusory fashion that "the market for modem chips and the market for the cellular devices incorporating those chips are inextricably intertwined," CC ¶ 2, inextricably intertwined *markets* do not confer standing under *McCready.  McCready* concerned an alleged injury that "was a *necessary step* in effecting the ends of the alleged illegal conspiracy."  457 U.S. at 479 (emphasis added).  Thus "the exceedingly narrow *McCready* exception requires that the plaintiff's *injury* be inextricably intertwined with the injury of the intended victim such that injuring the plaintiff is a necessary part of the anticompetitive scheme." *Feitelson*, 80 F. Supp. 3d at 1028.  Here, Plaintiffs' purported injury was at most a *possible consequence* of the conduct they allege rather than a *necessary step*, and any such injury would have been incidental to the conduct.  This conclusion is underscored by Plaintiffs' failure to describe their alleged injury in any detail or connect that alleged injury to the alleged injury of the device manufacturers.  *Id.*[2]

B.     ***Illinois Brick* bars Plaintiffs, as indirect purchasers, from seeking damages for their federal claims.**

Plaintiffs also cannot state a claim for damages on their Second and Third Claims for Relief for alleged violations of the Sherman Act.  Plaintiffs' Second Claim for Relief seeks "damages and injunctive relief" for alleged violations of Section 1 of the Sherman Act. CC ¶ 198.  Although Plaintiffs do not explicitly allege in their Third Claim for Relief that they

---

[2] Unlike other plaintiffs who have successfully invoked the exception to the market-participant rule in this district, Plaintiffs have not advanced "allegations which, if true, plausibly suggest cross-elasticity of demand between the component and finished-product markets, such that the two are economic complements."  *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 WL 4955377, at *12 (N.D. Cal. Oct. 2, 2014).  Plaintiffs' conclusory allegations here do not demonstrate that baseband processors and cellular devices are complements.  Without such detail, they have no basis for claiming inextricably linked markets—let alone inextricably intertwined injuries.  *See Feitelson*, 80 F. Supp. 3d at 1028.

seek damages, they do allege therein that they seek "the relief set forth below," CC ¶ 208; and, in their Prayer for Relief, they seek "damages, as provided by United States . . . law," Prayer for Relief ¶ (b).  Federal law prohibits Plaintiffs from advancing these damages claims.

Section 4 of the Clayton Act provides a private right of action to certain persons injured by violations of the Sherman Act.[3]  15 U.S.C. § 15(a).  But as the Supreme Court made clear in its seminal ruling in *Illinois Brick Co. v. Illinois*, indirect purchasers cannot sue for monetary damages for alleged violations of federal antitrust laws.  431 U.S. at 730.  As the Ninth Circuit has explained, "[t]he Supreme Court has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits."  *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir. 2008).

Plaintiffs, by their own allegations, are indirect purchasers of the baseband processors that enable the cellular functionality in their cellular devices.  They do not claim anywhere in the Complaint that any of them, or any of the members of the class they purport to represent, ever purchased baseband processors directly from Qualcomm—nor could they.  The Plaintiffs are consumers, and as the Complaint implicitly concedes, Qualcomm does not sell baseband processors to consumers.  Accordingly, Plaintiffs allege only that they purchased cellular devices that were made and sold by other companies downstream from Qualcomm—*i.e.*, an Apple iPhone 6, a Samsung Galaxy Tab-E Tablet, an Apple iPad Mini, an Amazon Kindle Paperwhite, an Apple iPhone 6 Plus, a Samsung smartphone, and an Apple iPhone 7 Plus.  CC ¶¶ 20–23.  In other words, Plaintiffs' allegations establish that they are, at most, indirect purchasers of Qualcomm's products.  *Illinois Brick* thus bars Plaintiffs' damages claims under the federal antitrust laws.  431 U.S. at 730.

Moreover, Plaintiffs cannot avoid *Illinois Brick* by invoking the narrow co-conspirator exception to the bar on indirect purchaser damages.  As the Ninth Circuit recently held in *In re ATM Fee Antitrust Litigation*, "for the indirect purchaser to merit standing under this exception, the conspiracy must fix the price paid by the plaintiffs."  686 F.3d 741, 749 (9th Cir. 2012).  The

---

[3] Plaintiffs allude to the Clayton Act only in connection with their Section 1 claim, CC ¶ 194, and must amend to correct this deficiency as to their Section 2 claim, if it were otherwise to survive.

price-fixing exception does not apply here because "the price paid by plaintiffs must be the price set (not merely 'fixed' in some broad sense) for plaintiffs to be a direct purchaser under the narrowly defined injury requirement of § 4 of the Clayton Act," and, "under the co-conspirator exception recognized in this circuit, the price paid by a plaintiff must be set by the conspiracy and not merely affected by the setting of another price." *Id.* at 754.  Although Plaintiffs do allege a Section 1 conspiracy with Apple, those conspiracy allegations do not concern any agreement on end-user device prices, and therefore cannot plausibly bring Plaintiffs within the price-fixing exception under the narrow test set forth in *In re ATM Fee Litigation.*  Accordingly, *Illinois Brick* bars Plaintiffs' federal damages claims.

### C.     Plaintiffs have not alleged any injury-in-fact flowing from Qualcomm's rebates or discounts to Apple.

Separate and apart from antitrust standing, Plaintiffs also fail to identify any injury-in-fact to themselves flowing from Qualcomm's agreements with Apple.  Plaintiffs allege violations of Section 1 and the Cartwright Act based on Qualcomm's agreement "to make substantial incentive payments to Apple," CC ¶ 101, but if the pass-through occurs as alleged, Apple passed on to consumers the financial benefits it received under those agreements, and the effect would be to *lower* consumer prices, not raise them.  Accordingly, Plaintiffs' Section 1 and Cartwright Act claims, to the extent they rely on the Apple agreements, *id.* ¶¶ 182, 194, must also be dismissed for lack of Article III standing.

Plaintiffs specifically assert that "Qualcomm gave Apple rebates, discounts, and other incentives to ensure Apple would continue use Qualcomm's chips." *Id.* ¶ 97.  Although Plaintiffs further allege that Qualcomm's agreements with Apple "impacted consumers directly, as they purchased cellular devices from OEMs," *id.* ¶ 149, Plaintiffs fail to explain how these substantial discounts possibly could have "artificially inflated and/or maintained prices on CDMA and premium LTE chips and the cellular devices embodying them." *Id.* ¶¶ 185, 196.  To the contrary, if discounts were passed down to consumers according to the economic theories Plaintiffs invoke, they would *lower* prices for finished cellular devices and therefore *benefit*, not harm, Plaintiffs.  Whether Apple elected not to pass along such savings to consumers is for Apple to answer.

Some plausible allegation of injury-in-fact flowing from the challenged conduct is

1    required to satisfy Article III.  For example, in *In re Online DVD-Rental Antitrust Litigation*,

2    Chief Judge Hamilton rejected a claim that Walmart's transfer of its online DVD subscriber

3    business to Netflix had resulted in higher prices to the consumer plaintiffs.  The Ninth Circuit

4    affirmed, with Chief Judge Thomas explaining in the majority opinion that plaintiffs had been

5    unable to show a causal link between the challenged deal and their claim that, but-for the deal,

6    they as subscribers would have paid lower prices.  *See* 779 F.3d at 922.  Accordingly, plaintiffs

7    could not demonstrate any injury-in-fact.  Here, in contrast to *Online DVD-Rental*, where there

8    was at least a potentially viable theory of harm, Plaintiffs have not even alleged a plausible link

9    between the rebates Apple received from Qualcomm and any alleged *increase* in consumer

10   prices.  Plaintiffs' bare allegation that, "as a direct result," the putative class was "overcharged

11   when they purchased cellular devices incorporating modem chips," CC ¶ 187, is illogical and falls

12   far short of establishing that Plaintiffs in fact suffered any harm.  For this reason, Plaintiffs'

13   Section 1 and Cartwright Act claims, to the extent they are predicated on the theory that

14   Qualcomm's "*de facto* exclusive deals" with Apple injured consumers, must be dismissed.

15   **D.    The Cartwright Act claim fails because Plaintiffs attack only non-actionable single-firm conduct with their remaining allegations.**

16

17   As set forth above, Plaintiffs cannot proceed under the Cartwright Act because, as indirect

18   purchasers of cellular devices, they lack antitrust standing and have not alleged any injury-in-fact

19   that flows from Qualcomm's incentive agreements with Apple.  But regardless of Plaintiffs' lack

20   of standing, the remaining Cartwright Act allegations—*i.e.*, those concerning Qualcomm's

21   licensing policies and business practices—fail to state a claim because they relate to single-firm

22   conduct rather than any "combination."  Unlike the Sherman Act, the Cartwright Act does not

23   reach single-firm conduct.[4]  Given that Plaintiffs allege the Qualcomm's conduct constitutes

24   single-firm monopolization under Section 2 of the Sherman Act, they cannot state a claim under

25   the Cartwright Act for the very same conduct.  That is not alternative pleading; it is inconsistent

26   pleading.

27

28   _____

[4] Plaintiffs' Section 1 claim similarly mischaracterizes unilateral conduct as "conspiracy" or "combination," but given the other grounds for dismissal of the federal claim, and in the interest of efficiency, Qualcomm directs its arguments only at the Cartwright Act claim at this time.

14

The Cartwright Act proscribes a "combination of capital, skill or acts by *two or more persons*" for an unlawful purpose.  Cal. Bus. & Prof. Code § 16720 (emphasis added).  The Act "does not address *unilateral* conduct."  *Dimidowich*, 803 F.2d at 1478 (emphasis in original).  Indeed, it has been settled for at least half a century that the Act does not cover "wrongful conduct on the part of a single entity."  *Bondi v. Jewels by Edwar, Ltd.*, 267 Cal. App. 2d 672, 678 (1968).  Thus, "when independent entities combine through an agreement that controls or restrains trade in products or services … there is a 'joining of two independent sources of economic power previously pursuing separate interests' within the antitrust proscriptions against combinations."  *Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 191 (1999) (citations omitted).  Plaintiffs do not contend otherwise.

Aside from the Apple incentive payments discussed above, Plaintiffs' allegations address only unilateral conduct, and thus fail to state a claim under the Cartwright Act.[5]  Specifically, the remaining conduct identified in connection with Plaintiffs' Cartwright Act claim consists of: (1) Qualcomm's unilaterally determined licensing policies that allegedly include supra-competitive, non-FRAND royalty rates, and licensing terms that exceed the principles of patent exhaustion, and (2) Qualcomm's unilateral decisions regarding the parties to which it will sell chips or license.  All of this conduct, by Plaintiffs' own contention, is unilateral.  CC ¶¶ 177-179 (alleging that Qualcomm sets licensing rates and other terms and conditions that are unsatisfactory to OEMs).

The simple fact that Qualcomm extends licenses to OEMs cannot convert such activity into a "combination" within the meaning of the antitrust laws.  Virtually all activity in the marketplace, including the unilateral conduct of monopolists, necessarily has some impact on counterparties through contractual terms, such as purchasing or licensing arrangements.  But, the mere "existence of a contract between a party who announces his terms and a party who acquiesces in them does not, without more, give rise to an inference of concerted action."

---

[5] Although the courts require that "a 'high degree of particularity' in the pleading of Cartwright Act violations," Plaintiffs fail to identify by name *any* particular OEMs or agreements at issue here, other than Apple and its 2011 and 2013 agreements with Qualcomm.  *Freeman*, 77 Cal. at 196 & n.27 (citations omitted).  For this additional reason, Claim 1 must be dismissed.

*Toscano v. PGA Tour, Inc.*, 70 F. Supp. 2d 1109, 1115 (E.D. Cal. 1999); *cf. Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1190, 1199 (S.D. Tex. 2009) (citing *Am. Airlines v. Christensen*, 967 F.2d 410, 413 (10th Cir. 1992)) ("[T]he fact that a person accepts the terms of a contract does not, without more, generate the type of concerted action necessary to violate Section 1").  That is so because a "rule equating the mere existence of a contract with concerted action . . . would create a significant risk of deterring procompetitive behavior." *Toscano*, 70 F. Supp. 2d at 1114-15.  Moreover, the mere acceptance of licensing rates and terms by OEMs does not show that they "had a conscious commitment to a common scheme designed to achieve an unlawful objective," as is required to form a "combination" within the meaning of the Cartwright Act.  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 372 (2001) (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984)).  Plaintiffs do not allege that a single specific OEM had any such intention or purpose in following Qualcomm's licensing terms; instead, they accuse only Qualcomm of possessing the requisite intent.  CC ¶ 183 ("Qualcomm intended to form and formed one or more trusts through a combination or conspiracy to accomplish purposes prohibited by and contrary to the public policy of the State of California").  That is not a combination.

Finally, Plaintiffs' Cartwright Act allegations are no different from their Sherman Act Section 2 monopolization claim.  *Compare* CC ¶ 173 (Cartwright Act claim: "[Qualcomm] executed a scheme to pressure OEMs to adhere to unreasonable and supra-competitive licensing terms by threatening to withhold chip supply"), *with id.* ¶ 205 (Section 2 allegation: "Qualcomm has abused its monopoly power in the relevant chips markets to force OEMs into licenses with unfair and unreasonable terms, including … excessively high royalty rates").  Merely affixing the label "combination" does not convert what Plaintiffs have pled as single-firm monopolization into a bilateral restraint of trade that is covered by the Cartwright Act.  To hold otherwise would run contrary to the express language of the Act and allow the narrow "single trader" exception—to the extent it even still exists[6]—to swallow the general rule.  *See Dimidowich*, 803 F.2d at 1478

---

[6] The Ninth Circuit has previously raised questions as to whether the rule, and the "'coercive' refusal to deal claim" advanced by Plaintiffs survive under federal and state law.  *See Dimidowich*, 803 F.2d at 1478 (citing *Monsanto*, 465 U.S. at 761).

(plaintiff's "monopoly arguments challenge only unilateral conduct" and hence plaintiff's "claim is not cognizable under the Cartwright Act, for it fails to allege any combination").

### E.   The Cartwright Act does not apply to putative class members in states that have not enacted a so-called *Illinois Brick*-repealer statute.

Separate from the flaws described above, Plaintiffs' Cartwright Act claim also fails to the extent it purports to cover class members who purchased devices in states that, after *Illinois Brick* was decided, did not authorize indirect purchasers to seek damages under state law.  That is, the Complaint attempts to assert a claim on behalf of every putative class member under California law, even though many purchased devices in states that have chosen not to enact a so-called *Illinois Brick*-repealer statute.  California choice-of-law rules do not extend the Cartwright Act's indirect-purchaser remedy to plaintiffs in such non-repealer states, because those states' policies conflict with California law.  *See, e.g.*, *GPU*, 527 F. Supp. 2d at 1027.  As Judge Alsup decided after reviewing the applicable conflicts of law principles in *GPU*, class claims covering non-repealer states cannot survive a motion to dismiss.  *Id.*  The Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012), reinforces *GPU* and underscores the limitations on applying California law to states with conflicting policies.

### 1.   The Court should address the irreconcilable conflict between California's Cartwright Act and non-repealer states' antitrust laws at the pleadings stage.

Qualcomm recognizes that "[t]his Court has consistently declined to apply *Mazza* at the motion to dismiss stage to strike nationwide class allegations."  *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016).  But unlike prior cases, applying *Mazza* now is appropriate here, given that the conflict between the Cartwright Act and non-repealer states' laws arises directly from different statutory policies rather than any application of those laws to facts.  There is "merit in disposing of this issue at an early stage of the litigation, particularly where the issue of whether the different state's laws conflict will not change significantly as this action progresses."  *GPU*, 527 F. Supp. 2d at 1028.  Indeed, given the extensive discovery, expert analysis, and briefing that will be required to resolve class-certification issues regarding pass-through, resolving legal issues now to limit the scope of discovery and expert analysis will streamline an already complex certification proceeding.

Qualcomm is limiting this motion and the choice-of-law analysis below to the single, straightforward issue of California law's conflict with non-repealer states, reserving other potentially more complex conflict of laws questions for later proceedings.[7]

Thus, unlike the Court's prior cases, the conflict of laws issue Qualcomm seeks to resolve here will not require "complicated, fact-intensive questions better answered at later stages of the litigation." *In re Google Inc.*, No. 13-MD-02430, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013). Also unlike the prior cases, the briefing here "include[s] a choice of law analysis," set out below. *Zapata Fonseca*, 2016 WL 4698942, at *4. That analysis shows "that the conflict between California's law and foreign law is so severe as to preclude applying California law." *Id.* (citation and internal quotation marks omitted). Furthermore, "discovery will likely not affect the legal analysis implicated by the circumstances of this particular case." *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670, 2017 WL 1010329, at *11 (S.D. Cal. Mar. 14, 2017).

### 2.   Under *Mazza*, Plaintiffs cannot assert a class that includes indirect purchasers from non-repealer states.

"Even where its own law may be constitutionally applied" to absent class members outside the state, "California follows a three-step 'governmental interest analysis' to determine whether conflicts of law exist, and to ascertain the most appropriate law applicable to the issues." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2017 WL 1391491, at *12 (N.D. Cal. Apr. 12, 2017).[8] That analysis requires a court to determine: (1) whether the relevant law of the jurisdictions at issue differs; (2) if the law differs, what each jurisdiction's interest is in applying its own law under the circumstances, to determine whether a true conflict exists; and (3) if a true conflict does exist, which state's interest would be more impaired if its own law were not applied. *Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler LLC,* 48 Cal. 4th 68,

---

[7] For example, at this stage Qualcomm does not challenge Plaintiffs' nationwide class based on differences in the standing analyses undertaken by those states that have *Illinois Brick* repealer statutes but apply them in a manner that is different from the Cartwright Act. *See, e.g.*, *GPU*, 527 F. Supp. 2d at 1025.

[8] Beyond the choice-of-law analysis, the Due Process Clause and the Full Faith and Credit Clause require a separate inquiry as to whether a "significant contact or significant aggregation of contacts" exist between the asserted claims and the chosen state, thereby ensuring that the choice of law "is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985). Because the question of contacts *may* depend on factual issues, Qualcomm does not address these constitutional tests for nationwide class allegations at this stage.

81–82 (2010)).  Even at this early stage, Plaintiffs' nationwide class cannot survive under *Mazza*.

*The law as to antitrust standing differs between California and non-repealer states*:  After *Illinois Brick* was decided, California and certain other states passed so-called "repealer statutes" to authorize indirect-purchaser suits by private plaintiffs seeking damages under state law.  *See* Cal. Bus. & Prof. Code § 16750(a) (authorizing suit by a person alleging antitrust injury "regardless of whether such injured person dealt directly or indirectly with the defendant").  Many other states, however, decided to follow *Illinois Brick*.  Texas, like at least ten other states, has a "long-standing bar to indirect purchaser recovery in antitrust suits."  *Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503, 503 (Tex. 1995).[9]  At least four additional states authorize only *parens patriae* suits on behalf of indirect purchasers.  For example, under Alaska law, which applies to certain members of Plaintiffs' purported nationwide class, "[o]nly the attorney general . . . may seek monetary relief for injury indirectly sustained for a violation of" the state's antitrust statutes.  Alaska Stat. § 45.50.577(i).[10]  Put simply, the law in "non-repealer states" differs from the law in California.  In certain circumstances, California grants a remedy in indirect-purchaser suits; the non-repealer states do not.

*Other states have an interest in applying their own antitrust standing rules:*  Although Plaintiffs argue at length that *California* has an interest in their claims, CC ¶¶ 167–169, their

---

[9] Seven other state courts have held that their states follow *Illinois Brick*'s prohibition on indirect-purchaser suits or simply do not authorize private antitrust actions for damages at all: **Connecticut**, *Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1058 (Conn. 2002); **Delaware**, *Maddock v. Greenville Retirement Cmty., L.P.*, No. 12564, 1997 WL 89094, *6 (Del. Ch. 1997) (no private right to bring antitrust action by direct or indirect purchasers); **Indiana**, *Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 599 (Ind. Ct. App. 2002); **Kentucky**, *Arnold v. Microsoft Corp.*, No. 2000-CA-002144, 2001 WL 1835377, *6-8 (Ky. Ct. App. 2001); **New Jersey**, *Sickles v. Cabot Corp.*, 877 A.2d 267, 275 (N.J. Super. App. Div. 2005); **Ohio**, *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 798 (Ohio 2005); and **Oklahoma**, *Major v. Microsoft Corp.*, 60 P.3d 511, 513 (Okla. Ct. Civ. App. 2002).  Federal courts have held that three other states follow *Illinois Brick* (or otherwise do not authorize damages) as well: **Georgia**, *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 715 (11th Cir. 1984) (undisputed that there is no private right of action); **Louisiana**, *Free v. Abbott Labs., Inc.*, 176 F.3d 298, 301 (5th Cir. 1999); and **South Carolina**, *In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 86–88 (E.D. N.Y. 1980).  *See generally California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1140–55 (N.D. Cal. 2007).

[10] Three other states that authorize only *parens patriae* suits are: **Colorado**, Colo. Rev. Stat. § 6-4-111 (2), *see also Stifflear v. Bristol-Myers Squibb Co.*, 931 P.2d 471, 476 (Colo. App. 1996); **Rhode Island**, R.I. Gen. Laws § 6-36-12, *see also Siena v. Microsoft Corp.*, 796 A.2d 461, 465 (R.I. 2002); and **Washington**, Wash. Rev. Code Ann. §§ 19.86.080, 19.86.090; *Blewett v. Abbott Labs.*, 938 P.2d 842, 844 (Wash. App. 1997).  *See generally Infineon Techs.*, 531 F. Supp. 2d at 1140–55.

1182244

complaint is silent as to the interests *other* states have.  Examining other states' decisions, however, shows "that foreign jurisdictions have strong interests in seeing their particular legislative decisions regarding *Illinois Brick* honored."  *In re Packaged Seafood*, 2017 WL 1010329, at *12.  As plaintiffs attempting to apply the Cartwright Act to non-repealer states in other cases have conceded, a "true conflict" exists under *Mazza*.  *In re Lithium Ion Batteries*, 2017 WL 1391491, at *14; *In re Optical Disk Drive Antitrust Litig.*, No. 10-MD-2143, 2016 WL 467444, at *12 (N.D. Cal. Feb. 8, 2016).

*Other states' interests would be impaired more than California's interests:*  According to Plaintiffs, "California has a strong interest in insuring the continued development of its economy by protecting against anticompetitive conduct" and "in protecting consumers from unfair and unlawful business emanating from California and conducted by companies with their principal place of business in California."  CC ¶ 167.  Yet non-repealer states such as Texas "made an explicit decision to follow the reasoning of the federal courts in precluding indirect purchasers from bringing suit based on the concerns outlined in *Illinois Brick*."  *In re TFT-LCD*, 2013 WL 4175253, at *2.  In weighing these interests, "both California courts and the Ninth Circuit have held that 'the place of the wrong' has the predominant interest in regulating the conduct at issue." *In re Packaged Seafood*, 2017 WL 1010329, at *13; *see also Hernandez v. Burger*, 102 Cal. App. 3d 795, 801-03 (1980).  "California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred."  *Mazza*, 666 F.3d at 593.  And here, as in *In re Packaged Seafood*, the "purported nationwide class will necessarily encompass individuals who were only harmed by purchasing the allegedly cost-inflated products somewhere other than California."  2017 WL 1010329, at *13.  "Thus, for those class members the last event necessary to make the actor liable will have occurred in states other than California."  *Id.*  Accordingly, "[i]t is hard to see why the laws of other states should be tossed overboard and their residents remitted to California law for transactions that, for individual consumers, are local in nature."  *GPU*, 527 F. Supp. 2d at 1028.

Thus, "[g]iven that the action simply could not go forward in non-repealer states . . . , it is too much of a stretch to employ California law as an end run around the limitations those states

have elected to impose on standing." *Id.*  Other recent decisions in this district and circuit are in

accord.  *See, e.g.*, *In re Lithium Ion Batteries*, 2017 WL 1391491, at *14; *In re Korean Ramen

Antitrust Litig.*, No. 13-CV-04115, 2017 WL 235052, at *22 (N.D. Cal. Jan. 19, 2017); *In re

Packaged Seafood Prod. Antitrust Litig.*, 2017 WL 1010329, at *13 & n.11.  Plaintiffs'

Cartwright Act claims for damages cannot survive the *Mazza* test as to purported class members

in the non-repealer states.

### F. As in *Lorenzo*, Plaintiffs lack standing under the UCL for the same reasons they lack standing under the Clayton and Cartwright Acts.

To have standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of

money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that

that economic injury was the result of, i.e., *caused by,* the unfair business practice or false

advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322

(2011); *see also* Cal. Bus. & Prof. Code § 17204.  Here, Plaintiffs cannot show economic injury

caused by Qualcomm.

As explained in section IV.A, above, the court in *Lorenzo* dismissed antitrust allegations

remarkably similar to those Plaintiffs have asserted here based on lack of standing.  603 F. Supp.

2d at 1301–03.  The court also dismissed the UCL claim that, as with the UCL claim here,

depended on the underlying allegations of anticompetitive conduct.  For "the same reasons that

[the] [p]laintiff's purported injury [was] too remote to support antitrust standing, he also lacks

standing to prosecute a claim under California's UCL."  *Id.* at 1303.  This Court should do the

same—if Plaintiffs cannot show injury sufficient to confer standing for antitrust purposes, they

also cannot show injury sufficient to confer standing for the purposes of the UCL.

### G. Plaintiffs' UCL claim must be stricken to the extent their Cartwright Act claim is stricken.

Although Plaintiffs' UCL claim should be dismissed as set forth above, it also must be

stricken to the extent Plaintiffs seek to assert UCL claims for restitution on behalf of putative out-

of-state class members who could not assert Cartwright Act claims for damages in light of *Mazza*.

*See* section IV.E, above.

If plaintiffs could evade California's conflict-of-laws analysis simply by recasting as UCL

claims those causes of action that the analysis otherwise would prohibit, *Mazza* would lose all meaning.  The policy judgment made by states that have declined to authorize private suits for damages by indirect purchasers should be respected, regardless of how a given plaintiff styles his or her causes of action.  As the Texas Supreme Court explained in holding that the state's indirect-purchaser bar applied to Texas's consumer-protection law as well as its antitrust law, "[w]e will not interpret the [law] in a manner that rewards creative pleading at the expense of consistent application of legal principles."  *Abbott Labs.*, 907 S.W.2d at 507.

## V.   CONCLUSION

For the reasons set forth, Qualcomm respectfully requests that the Court dismiss and/or strike the Complaint.

///

1182244

1  Dated:  August 10, 2017                    KEKER, VAN NEST & PETERS LLP

2

3                                      By:    */s/ Robert A. Van Nest*
                                             ROBERT A. VAN NEST
4                                            ASIM M. BHANSALI
                                             EUGENE M. PAIGE
5                                            JUSTINA SESSIONS
                                             DAVID W. RIZK
6                                            ALEXANDER DRYER

7                                            Gary A. Bornstein *(pro hac vice)*
                                             Yonatan Even *(pro hac vice)*
8                                            CRAVATH, SWAINE & MOORE LLP
                                             Worldwide Plaza
9                                            825 Eighth A venue
                                             New York, NY 10019-7475
10                                           Tel.: (212) 474-1000
                                             Fax: (212) 474-3700
11                                           gbornstein@cravath.com
                                             yeven@cravath.com
12
                                             Richard S. Taffet *(pro hac vice)*
13                                           MORGAN, LEWIS & BOCKIUS LLP
                                             101 Park Avenue
14                                           New York, NY 10178-0060
                                             Tel.: (212) 309-6000
15                                           Fax: (212) 309-6001
                                             richard.taffet@morganlewis.com
16
                                             Willard K. Tom *(pro hac vice)*
17                                           MORGAN, LEWIS & BOCKIUS LLP
                                             1111 Pennsylvania Avenue NW
18                                           Washington, DC 20004-2541
                                             Tel.: (202) 739-3000
19                                           Fax: (202) 739 3001
                                             willard.tom@morganlewis.com
20
                                             Donn P. Pickett (SBN 72257)
21                                           Geoffrey T. Holtz (SBN 191370)
                                             MORGAN, LEWIS & BOCKIUS LLP
22                                           One Market, Spear Street Tower
                                             San Francisco, CA 94105-1596
23                                           Tel.: (415) 442-1000
                                             Fax: (415) 442-1001
24                                           donn.pickett@morganlewis.com
                                             geoffrey.holtz@morganlewis.com
25
                                             Attorneys for Defendant
26                                           QUALCOMM INCORPORATED

27

28

DEFENDANT QUALCOMM INCORPORATED'S MOTION TO DISMISS AND/OR STRIKE
Case No. 5:17-md-02773-LHK

1182244