UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> QUALCOMM INCORPORATED, et al., <br><br> Defendants. | Case No. 17-cv-00220 LHK (NC) <br><br> **ORDER REGARDING THE COURT'S IN CAMERA REVIEW OF QUALCOMM'S PRIVILEGE LOG** <br><br> Re: Dkt. No. 591 |
| IN RE: QUALCOMM ANTITRUST LITIGATION. | Case No. 17-md-02773 LHK (NC) |

This order follows the Court's in camera audit of portions of Qualcomm's privilege logs and the corresponding documents that Qualcomm has withheld as privileged. The Court typically does not have the time, resources, or rationale to review thousands of privileged documents. The justification for this unusual project was that the Federal Trade Commission and plaintiffs' class counsel complained, with factual support, that Qualcomm had initially over-withheld broad categories of documents as privileged. When pushed, Qualcomm reversed many of its initial privilege calls and produced the documents. But

Case Nos. 17-cv-00220 LHK (NC),
17-md-02773 LHK (NC)

the practical effect was that the productions came very shortly before witness depositions.

The FTC first alerted the Court to concerns about Qualcomm's privilege logs on October 30, 2017. Dkt. No. 248. At that time, the Court reviewed 100 pages of Qualcomm's log and ordered Qualcomm to file a declaration supporting and explaining the "primary purpose" standard it applied in asserting the attorney-client privilege. Dkt. No. 316. Qualcomm filed the declaration of attorney Gerald A. Ford on November 13, 2017. Dkt. No. 299. Later, the Court ordered Qualcomm's counsel to re-review 1,000 privilege log assertions identified by class counsel. Dkt. No. 576.

The FTC and class counsel then moved for the appointment of a special master to review Qualcomm's privilege assertions. The Court denied that motion, dkt. no. 591, but "concerned by the privilege log error rate asserted against Qualcomm," ordered Qualcomm to re-review all 4,250 log entries that are "regarding QC business plans." The Court also permitted the FTC and class counsel to each identify 500 log entries connected to witnesses Hartogs and Gonell for re-review. Then the Court ordered Qualcomm to submit for in camera review the responsive portions of its updated privilege log and any corresponding documents.

The "log" provided is not one log, but four logs.[1] Before the Court ordered Qualcomm to re-review its privilege log, the log, which was not limited to entries "regarding QC business plans," contained 5,054 entries. *See* Dkt. No. 368 in 17-md-02773; *see also* Dkt. No. 591 in 17-cv-00220. After re-review, Qualcomm reversed more than half of its previous privilege assertions, producing 25,000 documents to plaintiffs. *Id.* The percentage of reversals is notable because it reveals that Qualcomm improperly withheld a large number of non-privileged documents until about a month before the close of fact discovery. But the number of reversals is also notable because it demonstrates that Qualcomm responded properly to the threat of in camera review, and more closely

---

[1] For ease of reference, the Court will refer to the four logs as one log, unless the Court refers to a particular log submitted to it for in camera review.

scrutinized the documents previously marked as privileged. The Court reviewed the 2,447 entries and selected documents that remain after the re-review process. To be clear, the Court's review was not of every document withheld by Qualcomm in these cases, and it was not a random sampling. Rather, the Court was focused on portions of Qualcomm's productions that had been identified by the requesting parties as important.

Plaintiffs in both cases still challenge the legitimacy of Qualcomm's privilege assertions throughout their privilege log. Based on the Court's review, the Court provides Qualcomm with guidance. The Court ORDERS that Qualcomm cure the deficiencies identified below by March 26, 2018.

## I.   LEGAL STANDARDS

### A.   Privilege Logs

Federal Rule of Civil Procedure 26 governs discovery and provides, in part, that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Under Rule 26, when "a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

Yet Rule 26 does not define what information the disclosing party must provide to the receiving party to properly assert the attorney-client privilege or work-product doctrine. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1147-48 (9th Cir. 2005). Indeed, the Advisory Committee's notes regarding Rule 26 provide that "while details may be appropriate under some circumstances, there are circumstances in which they would be unduly burdensome." *Id.* at 1148 (citing Rule 26(b)(5) Advisory Committee's Note (1993 Amendments)). Even so, "the 'party must . . .

1  provide sufficient information to enable other parties to evaluate the applicability of the
2  claimed privilege or protection.'" *Id.* at 1148 (quoting Rule 26(b)(5) Advisory
3  Committee's Note). The Ninth Circuit has not provided lower courts with a standard of
4  what type of description of a document is required in a privilege log. *Id.*

### B.   Attorney-Client Privilege

Though other bases for privilege are asserted by Qualcomm, the overwhelming majority of the entries assert the attorney-client privilege. As a result, the Court separately discusses this privilege in this order.

Here, Qualcomm was sued under federal law for injunctive relief under 15 U.S.C. § 45(a). No state law violations are alleged. Thus, "[i]ssues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989) and *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977)).

The attorney-client privilege under federal common law has eight essential elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). Despite the normal requirement that the communication be made by the client, "the privilege normally extends both to the substance of the client's communication as well as the attorney's advice in response thereto." *Id.*

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The burden is on the party claiming the privilege to establish that the withheld documents are protected by the attorney-client privilege. *See United States v.*

*Martin*, 278 F.3d 988, 999 (9th Cir. 2002). But "[c]ommunications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002). This same presumption does not apply to in-house counsel "[b]ecause in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors[.]" *Id.* at 1076. Thus, "[w]ith respect to internal communications involving in-house counsel, Chevron must make a 'clear showing' that the 'speaker' made the communications for the purpose of obtaining or providing legal advice." *Id.*; *see also Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1205 (N.D. Cal. 2015) (applying "clear showing" test) *and Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561 WHA, 2011 WL 5024457, at *7 (N.D. Cal. Oct. 20, 2011) (affirming Magistrate Judge Donna Ryu's order using this standard).

## II. DISCUSSION

Qualcomm submitted its privilege log for the Court's in camera review. The Court ordered the log be produced because it was concerned about the rate at which Qualcomm was reversing its privilege assertions when prodded by plaintiffs in both cases. The first issue the Court considers is whether Qualcomm committed a fraud on the Court by systemically withholding non-privileged documents from plaintiffs. The answer to this question is no.

But Qualcomm's privilege log is flawed. These flaws are particularly stark when comparing Qualcomm's privilege log to the attorney-client privilege analysis standards set forth in Gerald Ford's declaration. Dkt. No. 299. This declaration was submitted by Qualcomm, and was to govern its privilege analysis in withholding or redacting documents. Creating a privilege log where Qualcomm had a number of employees who wore both legal and business hats is complicated, especially where patent licensing and negotiations are involved. As a matter of common sense, the use of both legal and commercial acumen is required by attorneys who work in patent licensing. The Court is

also mindful of the fact that fact discovery closes in two weeks, and Qualcomm's privilege log, including the entries the Court has not seen, is enormous. Even so, there are notable shortcomings in Qualcomm's privilege log that Qualcomm must address.

### A.   Severance of Business Advice From Legal Advice

First, the Court is concerned that Qualcomm did not properly sever business advice from legal advice contained in its privilege log with respect to in-house counsel. In the Ford Declaration, Ford declared: "If a document contains both business and legal advice, we redact only those portions of the document where the primary purpose is to seek confidential legal advice from an attorney or for an attorney to provide such legal advice, or where the content of such legal advice is disclosed by a communication." Dkt. No. 299 at 3. Yet as far as the Court can tell from the documents provided to it, not a single document in the privilege log was redacted. The Court is not persuaded that Qualcomm has abided by its own standards.

The Court located documents that appear to have only been withheld as privileged because an attorney's name appears on the email header and on an attachment. *See e.g.*, doc. nos. 34324.0, 34324.1 (April 2, 2008, Systems Leads Meeting slides and transmitting email); doc. nos. 9125.0, 9125.1 (powerpoint presentation and transmitting email), doc. no. 57356.0 (email chain between Qualcomm executives requesting business advice, where in-house counsel provides business advice). Similarly, where on the privilege log it is unclear based on the non-attorney author and addressee of an email that an attorney was involved in the creation of the communication, Qualcomm must explain how the document is privileged. *See e.g.*, doc. nos. 2403.0 (where neither the author nor recipients of an email are attorneys, but the description states the name of an attorney), 50602.0 (same). Otherwise, the opposing party has no basis for concluding that the document is privileged, and does not have notice of how to challenge a privilege designation. *See* Fed. R. Civ. P. 26(b)(5)(A).

### B. Inadequate Description of the Withheld Documents

Second, throughout the privilege logs, the Court found that most of the entries are described as follows: "email chain reflecting a request for legal advice" regarding some topic, "email chain reflecting legal advice" regarding some topic, or "email chain disclosing a request for legal advice regarding QC business plans." Another court in his district found similarly vague and generic descriptions inadequate in an in camera review. *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 239-40 (N.D. Cal. 2015) ("Samsung's privilege log provides only generic statements such as 'email reflecting legal advice regarding licensing, prepared at the direction of counsel in anticipation of litigation.' 'A vague declaration that states only that the document reflects an attorney's advice is insufficient to demonstrate that the document should be found privileged.'" (quoting *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 00-cv-20905 RMW, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008))).

In *Apple v. Samsung*, however, Magistrate Judge Paul Grewal had less than 300 documents to review in camera. As a result of that fact, in that case Samsung submitted declarations and briefs proving those documents were privileged. *Id.* at 241. Here, the Court has 2,500 documents to review, and cannot practically have declarations and briefs filed on each of those documents. Therefore, Qualcomm must provide more information in an amended privilege log. The Court provides further guidance below.

The underlying documents on Qualcomm's privilege logs span a huge range of topics under the heading of "QC business plans." The Court finds this broad-brushstrokes approach to asserting privilege particularly problematic where many of the allegedly privileged documents are to and from both in-house attorneys and non-attorney Qualcomm personnel, and the email strings contain many emails that are not itemized. It is possible that some of these emails could have been sent to third parties, thus waiving the privilege. The Court *could* require Qualcomm to itemize each email in each email string. *Helm v. Alderwoods Grp., Inc.*, No. 08-cv-01184 SI, 2010 WL 2951871, at *2 (N.D. Cal. July 27,

Case Nos. 17-cv-00220 LHK (NC),
17-md-02773 LHK (NC)                    7

1  2010). But the Court does not consider that to be a good use of the parties' resources at
2  this juncture.
3        While the Court disapproves of the vagueness of the Qualcomm's entries, the Court
4  is less concerned with the documents that are to and from outside counsel. Throughout its
5  review of the privilege logs and a selection of documents, the Court found that the
6  documents where outside counsel was the author or a recipient of a document *were*
7  properly categorized as attorney-client privileged. Furthermore, there is a presumption
8  that outside counsel communications were made for the purpose of obtaining or providing
9  legal advice. *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1073.
10       But as noted above, this same presumption does not apply to the communications of
11 in-house counsel. Instead, a "clear showing" standard applies to show that the
12 communication was made for the purpose of obtaining or providing legal advice. *Id.* at
13 1076. Based on the vagueness of Qualcomm's descriptions of documents, the Court does
14 not find this standard has been met. Qualcomm must further explain why those documents
15 are privileged in its log. Requiring Qualcomm to re-do its privilege log as to
16 communications including in-house counsel, but not outside counsel is a compromise
17 position that takes into consideration the FTC and class plaintiffs' interests and the timing
18 of fact discovery.
19       Qualcomm is therefore required to amend its privilege log as follows: As to
20 communications including in-house counsel, but not outside counsel, Qualcomm must
21 revise its descriptions of the documents to elaborate on: (1) the subject matter of each
22 individual communication, and (2) the attorneys involved in the communication, and how
23 their involvement renders the communication privileged. Simply stating that a
24 communication "discloses legal advice" regarding "QC business plans" is insufficient.
25 The description should say who requested or provided the legal advice, and for what
26 purpose. The Court is confident that Qualcomm can describe these documents without
27 waiving privilege. The Court realizes that requiring Qualcomm to revise the majority of
28

Case Nos. 17-cv-00220 LHK (NC),
17-md-02773 LHK (NC)      8

United States District Court
Northern District of California

the entries left on its privilege log creates much work for it, but this is a problem of Qualcomm's own creation.

### C. Inadequately Described Attachments to Emails

Lastly, the Court is concerned that the attachments to emails are not sufficiently described and some may not be privileged. The Court found that with respect to some of the entries that contain attachments to emails, the request for legal advice is in the email text. *See e.g.*, doc. nos. 89718.0, 89718.1. While that email text may be privileged, no reason was provided for believing the underlying excel sheet here was privileged. *In re Chase Bank USA, N.A. Check Loan Contract Litig.*, No. 09-md-02032 MMC (JSC), 2011 WL 3268091, at *3 (N.D. Cal. July 28, 2011) ("Merely forwarding a communication to a lawyer with the subject line 'legal review needed' is not sufficient to confer the privilege to the initial communication if it does not on its own qualify as a privileged communication."). The Court is not explicitly finding that the attachment is not privileged, only that Qualcomm's privilege log does not carry the burden in proving that it is privileged. Another example of this are documents 3205.0 and 3205.1, which were sent to and from non-attorney Qualcomm executives with attorney executives as copied parties to the email and attachment. On its log, Qualcomm describes these documents as "email providing information for the purpose of legal advice regarding chipset sales and supply." First, the privilege log does not disclose the existence of the attachment, which is problematic in and of itself. Second, it is not clear from the face of the email who requested the information for the purpose of legal advice. Thus, the Court cannot evaluate what, if any of the information, ought to be privileged.

On the other hand, some of the attachments themselves are clearly the requested legal advice, with the transmitting email merely being a vehicle for the privileged material to be sent. *See e.g.*, doc. nos. 92227.0, 92227.1, 9227.2 (board of directors materials including slides specifically tagged as being protected under the attorney-client privilege). But none of the descriptions given in the privilege log specify which of the documents—

Case Nos. 17-cv-00220 LHK (NC),
17-md-02773 LHK (NC)               9

email or attachment, or both—are purportedly privileged. The Court likewise does not know if some of the documents that are not by themselves privileged have been separately produced.

## III. CONCLUSION

The examples stated above are illustrative, not exhaustive, and are meant to provide guidance for Qualcomm in its revision of its privilege log.

The Court ORDERS that by March 26, 2018, Qualcomm revise the 2,447 privilege log entries it submitted for in camera review as follows:

1. Qualcomm must re-review the privilege log entries it provided to the Court that assert the attorney-client privilege to ensure Qualcomm properly severed business advice from legal advice, as it represented it would. Dkt. No. 299. A document is not privileged simply because an attorney was copied on an email, or because in-house counsel created the document.

2. As to allegedly attorney-client privileged communications including in-house counsel, but not outside counsel, Qualcomm must revise its descriptions of the documents to elaborate on: (1) the subject matter of the communication, and (2) the attorney's involvement in the communication, if it is not clear from the listed author and recipient of the communication how an attorney is involved. Simply stating that a communication regards "QC business plans" is insufficient. The Court is certain Qualcomm can reveal something about the withheld document, for example the heading of an email, without waiving privilege.

3. Qualcomm must revise *all* privilege log entries including an attachment to separately itemize the attachment in its log. Qualcomm should consider whether any part of an attachment or transmitting email is not privileged.

4. By March 23, 2018, Qualcomm, the FTC, class plaintiffs, and Apple must meet and confer to assess whether the FTC, class plaintiffs, or Apple must revise *their* privilege logs consistent with the Court's guidance in this order. Moreover, because the

Case Nos. 17-cv-00220 LHK (NC),
17-md-02773 LHK (NC)          10

Court knows that the privilege log it reviewed in camera does not constitute all of Qualcomm's privilege log, Qualcomm, the FTC, class plaintiffs, and Apple must confer regarding whether Qualcomm must amend the rest of its privilege logs. By March 26, these parties must file a joint report on their recommendations.

**IT IS SO ORDERED.**

Dated: March 16, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case Nos. 17-cv-00220 LHK (NC),
17-md-02773 LHK (NC)                      11