```
 1                    UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4

 5

       IN RE: QUALCOMM ANTITRUST        )   17-MD-02773 LHK
 6     LITIGATION,                      )
                                        )   SAN JOSE, CALIFORNIA
 7     _____  )
                                        )   FEBRUARY 22, 2018
 8     THIS DOCUMENT RELATES TO:        )
       ALL ACTIONS.                     )   PAGES 1-51
 9                                      )
                                        )
10     _____  )

11

12                    TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE LUCY H. KOH
13                   UNITED STATES DISTRICT JUDGE

14

15     A P P E A R A N C E S:

16     FOR THE PLAINTIFFS:   SUSMAN GODFREY
                             BY:  AMANDA K. BONN
17                           1900 AVENUE OF THE STARS, SUITE 1400
                             LOS ANGELES, CALIFORNIA  90067
18
                             COTCHETT, PITRE & MCCARTHY
19                           BY:  JOSEPH W. COTCHETT
                                  MICHAEL A. MONTANO
20                           840 MALCOLM ROAD, SUITE 200
                             BURLINGAME, CALIFORNIA  94010
21

22              APPEARANCES CONTINUED ON NEXT PAGE

23     OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                   CERTIFICATE NUMBER 9595
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE PLAINTIFFS:      HAGENS, BERMAN, SOBOL & SHAPIRO
                                BY:  JEFF D. FRIEDMAN
5                               715 HEARST AVENUE, SUITE 202
                                BERKELEY, CALIFORNIA  94710
6

7

8      FOR THE DEFENDANT:       KEKER, VAN NEST & PETERS
                                BY:  ASIM M. BHANSALI
9                               633 BATTERY STREET
                                SAN FRANCISCO, CALIFORNIA  94111
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                    FEBRUARY 22, 2018

 2                    P R O C E E D I N G S

 3        (COURT CONVENED AT 1:34 P.M.)

 4            THE COURT:  GOOD AFTERNOON, WELCOME.

 5            THE CLERK:  PLEASE BE SEATED.

 6        YOUR HONOR, WE ARE CALLING 17-MD-2773, IN RE: QUALCOMM

 7    ANTITRUST LITIGATION.

 8            COUNSEL, PLEASE STATE YOUR APPEARANCES.

 9            MS. BONN:  GOOD MORNING, YOUR HONOR.

10        AMANDA BONN WITH SUSMAN, GODFREY ON BEHALF OF CLASS

11    PLAINTIFFS.

12        MS. SRINIVASAN APOLOGIZES FOR NOT BEING HERE IN PERSON.

13    SHE'S IN TRIAL IN ANOTHER MATTER.

14            THE COURT:  OKAY.  AND YOU HAVE FILED A NOTICE OF

15    APPEARANCE IN THE CASE AND YOU'RE REGISTERED AS COUNSEL OF

16    RECORD?

17            MS. BONN:  CORRECT, YOUR HONOR.

18            THE COURT:  OKAY.  THANK YOU.

19            MR. FRIEDMAN:  GOOD AFTERNOON, YOUR HONOR.

20        JEFF FRIEDMAN FROM HAGENS BERMAN ON BEHALF OF CLASS

21    PLAINTIFFS.

22            THE COURT:  OKAY, GOOD AFTERNOON.

23            MR. COTCHETT:  JOSEPH COTCHETT ON BEHALF OF CPM FOR

24    CLASS PLAINTIFFS.

25            MR. MONTANO:  MICHAEL MONTANO OF COTCHETT, PITRE &
```

1        MCCARTHY ON BEHALF OF CLASS PLAINTIFFS.

2                THE COURT:  OKAY.  GOOD AFTERNOON.

3                MR. BHANSALI:  GOOD AFTERNOON, YOUR HONOR.

4            ASIM BHANSALI OF KEKER, VAN NEST & PETERS FOR QUALCOMM.

5            MR. VAN NEST ACTUALLY IS IN A DEPOSITION IN THIS CASE

6        TODAY AND CAN'T BE HERE.

7                THE COURT:  ALL RIGHT.  GOOD AFTERNOON AND WELCOME TO

8        EVERYBODY.

9            WE ONLY HAVE A FEW ISSUES.  LET ME ASK, WHAT IS THE ITC

10       INVESTIGATION?

11               MR. BHANSALI:  YOUR HONOR, IF I MAY?

12               THE COURT:  GO AHEAD, PLEASE.

13               MR. BHANSALI:  YEAH.  THE ITC INVESTIGATION IS AN ITC

14       INVESTIGATION THAT'S BEEN FILED BY QUALCOMM AGAINST APPLE

15       INVOLVING VARIOUS, VARIOUS PATENTS.  AND THERE'S A -- THERE'S A

16       COMPONENT OF IT THAT APPLE HAS RAISED INVOLVING THE PUBLIC

17       INTEREST AND IT HAS SOME -- THAT HAS SOME ISSUES AROUND CHIPS

18       AND THE CHIP MARKET AND THINGS LIKE THAT.

19               THE COURT:  AND YOU'RE SEEKING AN EXCLUSION ORDER FOR

20       IPHONES; IS THAT RIGHT?

21               MR. BHANSALI:  FOR CERTAIN IPHONE MODELS, YOUR HONOR,

22       YES.

23               THE COURT:  I SEE.  AND WHEN WAS THAT, I GUESS,

24       INSTITUTED?  BECAUSE THEY HAVE, WHAT, A YEAR FROM INSTITUTION?

25               MR. BHANSALI:  I THINK IT'S ABOUT A YEAR TO 18

1     MONTHS.

2          MY FIRM ACTUALLY ISN'T DIRECTLY INVOLVED IN THE CASE, SO I

3     DON'T KNOW THE EXACT DATE, YOUR HONOR.  IT WAS IN 2017, THOUGH.

4          THE COURT:  OKAY.

5     DO THE PLAINTIFFS KNOW WHAT SCHEDULE THAT'S ON?

6          MS. BONN:  YOUR HONOR, I'M NOT SURE WHAT DATE IT WAS

7     INSTITUTED.  I AGREE IT WAS RECENTLY IN 2017.

8          AND TYPICALLY ITC MATTERS ARE AN EXTREMELY FAST TRACK WITH

9     HEARINGS SCHEDULED WITHIN A YEAR OF INSTITUTION.

10         MR. BHANSALI:  YOUR HONOR, I DO KNOW THE DISCOVERY

11    CLOSES IN THE NEXT MONTH OR TWO.  IT'S COMING UP VERY SOON.

12         AND THEN I ASSUME THE, THE ADMINISTRATIVE LAW JUDGE

13    HEARING WILL BE SOME PERIOD OF TIME AFTER THAT SOMETIME IN -- I

14    ASSUME SOMETIME AROUND THE SUMMER OR EARLY FALL.

15         THE COURT:  OKAY.  WELL, IF IT WAS JUST INSTITUTED AT

16    THE END OF 2017, I DOUBT THE ALJ HEARING IS LESS THAN 12

17    MONTHS.

18         MR. BHANSALI:  YOUR HONOR, I THINK IT'S EARLIER IN

19    2017, I THINK THE INSTITUTION IS.  SO IT PROBABLY WASN'T JUST

20    AT THE END OF LAST YEAR.  I THINK IT WAS EARLIER IN THE YEAR.

21         THE COURT:  OH, OKAY.

22         MR. BHANSALI:  BECAUSE I DO KNOW, JUST BECAUSE I WAS

23    PRESENT WHEN THE LAWYERS WERE MEETING AND CONFERRING AFTER THE

24    HEARING WITH JUDGE COUSINS LAST WEEK, THAT THE CLOSE OF

25    DISCOVERY IN THAT, IN THAT INVESTIGATION IS COMING UP VERY

1    SHORTLY.

2              THE COURT:  I SEE.

3              MR. BHANSALI:  YEAH.

4              THE COURT:  OKAY.  WELL, DID YOU ALL REACH A

5    RESOLUTION OF THIS ISSUE?

6              MR. BHANSALI:  SO I CHECKED -- I CHECKED IN WITH THE

7    LAWYERS WHO HAVE BEEN ON THE MEET AND CONFER RIGHT BEFORE,

8    RIGHT BEFORE TODAY, AND I THINK IT'S -- WE'RE VERY CLOSE.  AND

9    I THINK AS BETWEEN THE PLAINTIFFS AND QUALCOMM, WE'VE

10   ESSENTIALLY WORKED IT OUT.

11        SO MY UNDERSTANDING IS THAT WHATEVER ADDITIONAL QUESTIONS

12   THE ITC HAS ARE GOING TO BE INCREMENTAL TIME SO THAT THE TIME

13   OF THE PLAINTIFFS IN THE FTC UNDER THE COORDINATION ORDER WOULD

14   NOT BE REDUCED FOR DEPOSING THESE APPLE AND QUALCOMM WITNESSES.

15        IT'S A NUMBER OF APPLE AND QUALCOMM WITNESSES, PRIMARILY,

16   THAT IT RELATES TO.

17        AND THE ONLY -- AS I UNDERSTAND IT, THE ONLY OPEN ITEM IS

18   AN ISSUE BETWEEN APPLE AND QUALCOMM AS TO WHETHER --

19              THE COURT:  BUT I THOUGHT IT CAME UP DURING AN INTEL

20   DEPOSITION, DIDN'T IT?

21              MR. BHANSALI:  IT DID, YOUR HONOR, ORIGINALLY.

22              THE COURT:  UH-HUH.

23              MR. BHANSALI:  I THINK THERE MAY BE ONE OR TWO INTEL

24   WITNESSES TO WHOM IT RELATES.

25        BUT IT'S PRIMARILY RELATED TO APPLE AND QUALCOMM WITNESSES

1    THAT WOULD OVERLAP ON CERTAIN ISSUES BETWEEN THE ITC

2    INVESTIGATION AND THIS LITIGATION AND THE COORDINATED

3    LITIGATIONS, THIS LITIGATION, THE FTC CASE, AND THE SOUTHERN

4    DISTRICT OF CALIFORNIA CASE.

5              THE COURT:  HOW WOULD COORDINATION AFFECT THE FTC

6    CASE?

7              MR. BHANSALI:  IT WOULD -- SO IT REALLY -- AS I

8    UNDERSTAND IT, THE FTC IS OKAY IN PRINCIPLE WITH THE

9    AGREEMENT -- WITH THE PORTION OF THE AGREEMENT WHICH WOULD

10   AFFECT THE FTC, WHICH IS THE ITC LAWYERS CAN SIT IN THE

11   DEPOSITION WHILE IT'S -- WHILE THE FTC AND CLASS AND SOUTHERN

12   DISTRICT OF CALIFORNIA PORTION IS OCCURRING.  THEY JUST CAN'T

13   ASK ANY QUESTIONS DURING THAT PORTION OF THE DEPOSITION.

14       THE ITC LAWYERS CAN ONLY ASK QUESTIONS DURING THE ITC SORT

15   OF ADDITIONAL TIME FOR THE ITC CASE.  SO IT DOESN'T -- IT WON'T

16   DIRECTLY AFFECT THE FTC CASE.

17             THE COURT:  AND WHAT'S THE PLAINTIFFS' POSITION?

18             MS. BONN:  WE AGREE THAT WE'RE CLOSE TO REACHING AN

19   AGREEMENT.  FROM PLAINTIFFS' PERSPECTIVE, WE DON'T HAVE ANY

20   OBJECTION IN PRINCIPLE TO COORDINATING WITH THE ITC, SO LONG AS

21   IT DOES NOT AFFECT OUR ALLOTMENT OF TIME.

22             THE COURT:  I SEE.

23             MS. BONN:  AND OBVIOUSLY WHEN THE COORDINATION ORDER

24   IN THIS CASE WAS ORDERED AND WE WERE FIGURING OUT WHAT AN

25   APPROPRIATE TIME PERIOD FOR THE DEPOSITIONS WOULD BE, HOW THAT

```
 1        TIME WOULD BE DIVIDED BETWEEN THE CLASS PLAINTIFFS AND THE FTC

 2        AND APPLE, WE DID NOT ENVISION NOR EXPECT THAT THAT TIME WOULD

 3        HAVE TO BE SHARED WITH YET A FOURTH SET OF COUNSEL AND PARTIES.

 4             SO AS LONG AS WE'RE ABLE TO KIND OF FINALIZE AN AGREEMENT

 5        WITH THE PARTIES IN OUR CASE THAT THAT TIME WILL COME OUT, FOR

 6        EXAMPLE, OF APPLE'S TIME RATHER THAN OF OUR TIME, I DON'T THINK

 7        CLASS PLAINTIFFS HAVE A PROBLEM.  SO WE AGREE THAT WE'RE CLOSE

 8        TO REACHING AN AGREEMENT THAT WILL RESOLVE THE DISPUTE.

 9             THE COURT:  OKAY.  WHEN DO YOU THINK YOU'LL REACH AN

10        AGREEMENT?

11             MR. BHANSALI:  I THINK IT'S -- I THINK IT'LL HAPPEN

12        PRETTY SOON, YOUR HONOR.  I CHECKED WITH THE LAWYER -- LIKE I

13        SAID, I SPOKE WITH THE LAWYER, ONE OF THE LAWYERS INVOLVED IN

14        THE MEET AND CONFER YESTERDAY.  I THINK THERE'S JUST THIS ONE

15        ISSUE THAT'S REALLY AN APPLE/QUALCOMM ISSUE THAT I THINK IS --

16        YOU KNOW, PEOPLE ARE SORT OF FLYING AROUND THE COUNTRY ON

17        DEPOSITIONS AND THINGS LIKE THAT, SO I THINK THAT'S BEEN THE

18        MAIN HOLDUP TO GETTING THAT LAST PIECE FINALIZED.

19             THE COURT:  AND DO THE OTHER PARTIES HAVE A POSITION,

20        INTEL, THE CONTRACT MANUFACTURERS, ALL THE OTHER THIRD PARTIES?

21        DO THEY HAVE A POSITION IN THIS?

22             MR. BHANSALI:  SO THE ONLY THIRD PARTY, YOUR HONOR,

23        THAT'S AFFECTED IS INTEL, AND I THINK IT'S ONLY MAYBE ONE OR

24        TWO INTEL DEPOSITIONS BECAUSE THIS DOESN'T -- THE ITC WOULD NOT

25        BE INVOLVED IN ANY OTHER THIRD PARTY DEPOSITIONS.  IT'S REALLY
```

1      JUST APPLE AND QUALCOMM DEPOSITIONS.

2          IT'S ACTUALLY ONLY AN OVERLAP -- IT'S ONLY A LIMITED SET

3      OF THOSE WITNESSES THAT KIND OF HAVE SOME OVERLAPPING QUESTIONS

4      BETWEEN THESE CASES, YOU KNOW, THAT WOULD TESTIFY.  SO, FOR

5      EXAMPLE, IF THERE ARE PATENT WITNESSES IN THE ITC, THOSE AREN'T

6      GOING TO BE COORDINATED HERE AT ALL.

7          SO THERE AREN'T REALLY OTHER PARTIES OTHER THAN INTEL THAT

8      ARE AFFECTED, AND I THINK AGREEMENT HAS ALREADY BEEN REACHED

9      WITH INTEL ON THOSE ISSUES.

10          THE COURT:  OKAY.  THIS IS WHAT I WOULD LIKE:  WE'RE

11     APPROACHING A MARCH 30TH FACT DISCOVERY CUTOFF, SO I JUST WANT

12     TO AVOID ANY HICCUPS.

13          I WOULD LIKE A JOINT STATUS REPORT BY -- WHEN DO YOU WANT

14     TO DO IT?  NEXT WEDNESDAY?  NEXT THURSDAY?  NEXT FRIDAY? --

15     JUST LETTING ME KNOW THAT YOU DID REACH A RESOLUTION; OR IF YOU

16     DIDN'T REACH A RESOLUTION, THEN I WILL GET INVOLVED MYSELF

17     BECAUSE I DON'T WANT THIS TO HOLD UP THE CASE.

18          MR. BHANSALI:  I THINK THAT WOULD BE FINE, YOUR

19     HONOR.  LET'S SAY NEXT THURSDAY, A WEEK FROM TODAY.

20          MS. BONN:  THAT'S FINE, YOUR HONOR.

21          THE COURT:  OKAY.  ALL RIGHT.  SO IF YOU WOULD PLEASE

22     FILE A JOINT STATUS REPORT ON THIS -- THAT WOULD BE MARCH 1 --

23     JUST LETTING ME KNOW HOW THIS ISSUE WAS RESOLVED.  HOPEFULLY

24     IT'LL BE RESOLVED BY THEN.

25          MR. BHANSALI:  THANK YOU, YOUR HONOR.

```
 1            THE COURT:  AND I ASSUME QUALCOMM IS PROVIDING

 2   COORDINATION JUST BECAUSE IT SOUNDS LIKE ALL THE CASES ARE SORT

 3   OF RUNNING OUT OF TIME AND JUST FOR EFFICIENCY.

 4            MR. BHANSALI:  I THINK IT'S EFFICIENCY.  I MEAN, THIS

 5   IS -- BY THE WAY, THIS IS A QUALCOMM AND APPLE ISSUE BECAUSE

 6   BOTH PARTIES HAVE WITNESSES, WE AND APPLE HAVE WITNESSES THAT

 7   WOULD OVERLAP, AND GIVEN TIME, IT JUST MADE SENSE TO KIND OF --

 8   YOU KNOW, TO TRY AND FIND TIME TO SCHEDULE THESE PEOPLE, MOST

 9   OF WHOM ARE FAIRLY SENIOR, YOU KNOW, THREE TIMES IN THE NEXT

10   TWO MONTHS, I THINK FOR EVERYBODY, SEEMS UNREALISTIC.  SO

11   THAT'S WHY IT JUST MADE SENSE TO DO IT.

12            THE COURT:  OKAY.  AND SO THE ONLY OBJECTION WAS A

13   CONCERN THAT IT MIGHT REDUCE THE TIME OF THE MDL PLAINTIFFS TO

14   TAKE DEPOSITIONS?  WAS THAT THE CONCERN?

15            MS. BONN:  FROM CLASS PLAINTIFFS, YES.  THE FTC WE

16   UNDERSTAND MAY HAVE HAD OTHER ISSUES AS WELL.  BUT FROM THE

17   CLASS PLAINTIFFS' PERSPECTIVE, OUR ONLY ISSUE WAS PRESERVING

18   OUR TIME ALLOTMENT.

19            THE COURT:  I SEE.  OKAY.

20        AND I DON'T THINK THE FTC HAS RAISED THIS, HAVE THEY?

21            MR. BHANSALI:  YES.  SO THE TIME ISSUE WAS THE

22   PRIMARY.

23        THERE WAS ANOTHER ISSUE FOR THE FTC INVOLVING JUST A

24   PERSONNEL ISSUE, BUT I THINK THAT'S BEEN -- KIND OF A PERSONNEL

25   CONFLICT QUESTION, BUT THAT'S BEEN RESOLVED AS FAR AS I KNOW.
```

```
1              THE COURT:  YOU MEAN SOMEONE HAVING ACCESS TO
2      CONFIDENTIAL INFORMATION THAT SHOULDN'T, OR --
3              MR. BHANSALI:  NO.  THERE WAS CONCERN ABOUT -- THERE
4      WAS JUST AN ISSUE ABOUT WHETHER -- WHETHER, BECAUSE OF SOME
5      RELATIONSHIPS INVOLVING LAWYERS, WHETHER THAT WOULD AFFECT
6      THEIR ABILITY TO PARTICIPATE.  BUT IT ALL -- I THINK THAT'S ALL
7      BEEN RESOLVED.
8              THE COURT:  OKAY.  ALL RIGHT.
9          WELL, IF YOU COULD JUST FILE A STATUS REPORT IN A WEEK
10     JUST LETTING ME KNOW THAT, YOU KNOW, BASICALLY ALL THE
11     DIFFERENT ASPECTS OF THIS DISPUTE HAVE BEEN RESOLVED, PLEASE.
12             MR. BHANSALI:  WE WILL, YOUR HONOR.
13             MS. BONN:  YES, YOUR HONOR.
14             THE COURT:  ALL RIGHT.  THANK YOU.
15         LET'S GO TO -- PARDON ME -- THE SECOND ISSUE, WHICH IS THE
16     EUROPEAN COMMISSION'S ORDER.  HOW LONG IS THE ORDER, OR THE
17     DECISION?
18             MR. BHANSALI:  IT'S -- I THINK IT'S FAIRLY LONG.  WE
19     PRODUCED A REDACTED VERSION YESTERDAY.  I HAVE TO SAY, I DON'T
20     KNOW EXACTLY HOW LONG IT IS, BUT I THINK IT'S -- WE'VE GONE
21     THROUGH AND DONE THE REDACTIONS OF THE THIRD PARTY --
22     NON-QUALCOMM THIRD PARTY INFORMATION AND WE PRODUCED THAT
23     YESTERDAY.
24             THE COURT:  ALL RIGHT.  HAVE THE PLAINTIFFS REVIEWED
25     IT?
```

1          MS. BONN:  WE HAVE NOT, YOUR HONOR.  WE HAVE TO GET

2     OUR VENDOR TO LOAD THE DOCUMENT, ET CETERA.  BUT OUR

3     UNDERSTANDING FROM QUALCOMM IS THAT THEY HAVE REDACTED

4     ESSENTIALLY THIRD PARTY RELATED INFORMATION FROM THAT DOCUMENT.

5          WE ALSO RECEIVED A LETTER FROM QUALCOMM'S COUNSEL, SINCE

6     WE SUBMITTED OUR LAST REPORT, PURPORTING TO LAY OUT THEIR BASIS

7     FOR WHY THEY BELIEVE THOSE REDACTIONS ARE APPROPRIATE.

8          THE ARGUMENTS WITHIN THEIR LETTER APPEAR TO BE THE

9     FOLLOWING:  NUMBER ONE, THAT THERE ARE CERTAIN EUROPEAN

10    REGULATIONS THAT LIMIT THE EXTENT TO WHICH THE EUROPEAN

11    COMMISSION, OR AGENTS ACTING ON BEHALF OF THAT COMMISSION, CAN

12    DISTRIBUTE SUCH MATERIALS.

13          IT DOES NOT APPEAR ON ITS FACE TO APPLY TO PRIVATE

14    LITIGANTS LIKE QUALCOMM.  THEY HAVEN'T CITED ANY AUTHORITY FOR

15    THE PROPOSITION THAT QUALCOMM ITSELF CAN ESCAPE ITS OBLIGATION

16    TO PRODUCE THAT MATERIAL SUBJECT TO A PROTECTIVE ORDER, NOR ANY

17    AUTHORITY FOR THE NOTION THAT QUALCOMM EVEN HAS STANDING TO

18    RAISE HYPOTHETICAL CONFIDENTIALITY CONCERNS OF THIRD PARTIES.

19          AND SO I THINK THAT THAT ISSUE IS ONE THAT PLAINTIFFS

20    BELIEVE PROBABLY NEEDS TO BE TEED UP ON A MOTION TO COMPEL SO

21    THAT WE CAN GET THIS UNREDACTED DOCUMENT AND BE ABLE TO HAVE IT

22    IN TIME TO USE IN THE DEPOSITIONS THAT ARE HAPPENING EVERY DAY,

23    OFTEN MULTIPLE DEPOSITIONS A DAY.

24          THE COURT:  WHY DID IT TAKE A MONTH TO DO THE

25    REDACTIONS?  THIS OPINION WAS JANUARY 25TH.

1          MR. BHANSALI:  WELL, YOUR HONOR, ONCE WE --

2          THE COURT:  YOU DIDN'T PRODUCE IT UNTIL

3     FEBRUARY 20TH.

4          MR. BHANSALI:  WE RECEIVED THE REQUEST, AND WE

5     ACTUALLY HAVE TO WORK WITH EUROPEAN COUNSEL TO PREPARE THE

6     REDACTIONS BECAUSE THEY'RE THE ONES WHO HAVE TO PREPARE THE

7     REDACTIONS UNDER EUROPEAN -- UNDER THE EUROPEAN REGULATIONS.

8     AND WE, WE SORT OF UNDERTOOK THAT AND DID IT.

9          THE COURT:  I'M SURE IF IT WAS SOMETHING THAT WAS

10    BENEFICIAL TO QUALCOMM, YOU'D HAVE A LITTLE BIT MORE MOTIVATION

11    AND SPEED TO GET IT DONE.  I DO THINK FOUR WEEKS IS TOO LONG.

12         MR. BHANSALI:  YOUR HONOR, I APOLOGIZE.  YOU KNOW,

13    WE -- AS I SAID, WE WERE COORDINATING WITH COUNSEL IN EUROPE

14    AND JUST -- THE PROCESS TOOK A LITTLE BIT OF TIME.

15         THE COURT:  SO WHAT'S YOUR -- WHAT'S YOUR REQUEST?

16         MS. BONN:  PLAINTIFFS' REQUEST IS WE HOPE THAT THERE

17    WILL BE AN ORDER REQUIRING THEM TO PRODUCE THE COMPLETE

18    UNREDACTED VERSION OF THE DOCUMENT POST-HASTE; AND TO THE

19    EXTENT THE COURT BELIEVES THAT ANY FURTHER BRIEFING ON THAT

20    ISSUE IS REQUIRED, THAT AN EXPEDITED SCHEDULE FOR THAT BRIEFING

21    BE SET BECAUSE WE MADE SEVERAL REQUESTS OVER THE LAST MONTH TO

22    TRY TO MEET AND CONFER, TEE UP A JOINT STATEMENT, AND WE FEEL

23    THAT WE'VE ESSENTIALLY BEEN PUT OFF UNTIL WE HAVE MORE LEGAL

24    AUTHORITY TO GET YOU IN OUR POSITION.  THEY DIDN'T EVEN PROVIDE

25    THAT LEGAL AUTHORITY UNTIL THE LAST COUPLE OF DAYS.

1          SO WE JUST WANT AN EXPEDITED RESOLUTION.

2               THE COURT:  YOU KNOW WHAT I'M WILLING TO DO, BECAUSE

3      I FIND THIS HELPS, I'M WILLING TO HAVE A CMC EVERY WEEK UNTIL

4      MARCH 30TH.  I THINK THAT -- I THINK THE FACT THAT THEY WERE

5      NOT GOING TO PRODUCE IT UNTIL THE DAY AFTER THIS CMC WAS

6      MOTIVATED BY THE DATE OF THE CMC.  I THINK THE FACT THAT THEY

7      JUST PRODUCED IT YESTERDAY WAS MOTIVATED BY THE CMC.

8           IF WE NEED TO GET TOGETHER EVERY WEEK THROUGH MARCH 30TH,

9      I'M MORE THAN HAPPY TO SET ASIDE THE TIME.

10               MS. BONN:  PLAINTIFFS AGREE WITH THAT, YOUR HONOR.

11               THE COURT:  BECAUSE I THINK A MONTH TO REDACT THE

12     DOCUMENT IS TOO LONG.

13               MR. BHANSALI:  YOUR HONOR, I --

14               THE COURT:  IT'S JUST TOO LONG.

15          WE CAN HAVE A STANDING CMC EVERY THURSDAY AT 1:30.  THAT'S

16     FINE WITH ME.  WE ONLY HAVE A MONTH LEFT AT THIS POINT.  IT'S

17     ALREADY, WHAT, THE 22ND OF FEBRUARY.  SO WE'D HAVE THE 1ST, THE

18     8TH, THE 15TH, THE 22ND, THE 29TH.

19          NOW, OBVIOUSLY I DON'T WANT TO TAKE UP TOO MUCH OF YOUR

20     TIME.  THIS IS VERY PRECIOUS DEPOSITION TIME.  SO IF WE END UP

21     NOT NEEDING IT, THAT'S FINE.  YOU CAN LET ME KNOW THAT, THAT

22     THERE ARE NO DISPUTES.

23          BUT ON THE OTHER HAND, I DON'T WANT TO CREATE A SITUATION

24     WHERE YOU'RE NOT ACTUALLY MEETING AND CONFERRING AND TRYING TO

25     RESOLVE THINGS AND JUST COMING TO ME WITH THINGS THAT ARE NOT

1      FULLY DEALT WITH WITH EACH OTHER AND HOPING THAT YOU'LL GET A

2      RESOLUTION.

3           SO I GUESS THE QUESTION IS, WHAT IS THE RESPONSE OF

4      QUALCOMM TO PRODUCE ANY UNREDACTED VERSION?

5               MR. BHANSALI:  YOUR HONOR, WE REALLY DO FEEL THAT WE

6      ARE NOT ALLOWED BY EUROPEAN LAW TO PRODUCE THE UNREDACTED

7      VERSION BECAUSE QUALCOMM IS, PURSUANT TO EUROPEAN PROCEDURE, IN

8      POSSESSION OF THIRD PARTY INFORMATION.

9           THE REDACTED VERSION THAT WE PROVIDED DOES NOT REDACT, OF

10      COURSE, ANY QUALCOMM INFORMATION.  AND, IN FACT, YOU KNOW, THE

11      PUBLIC VERSION THAT WILL COME OUT EVENTUALLY -- IT'S NOT OUT

12      YET -- WE'LL REDACT THE QUALCOMM INFORMATION.  BUT PLAINTIFFS

13      HAVE ALL OF THE QUALCOMM INFORMATION.

14           BECAUSE OF THE PROCEDURES INVOLVED IN EUROPE, WE DON'T

15      FEEL THAT WE HAVE THE ABILITY TO TURN OVER THE THIRD PARTY

16      INFORMATION.  WE'RE HAPPY TO BRIEF THAT ON AN EXPEDITED

17      SCHEDULE, YOUR HONOR, EITHER UNDER WHATEVER PROCEDURE YOUR

18      HONOR RECOMMENDS, OR WE CAN DO IT UNDER THE JOINT DISCOVERY

19      STATEMENT PROCEDURE THAT'S IN PLACE AND THE COURT CAN MAKE A

20      DECISION.  YOU KNOW, THAT'S --

21               THE COURT:  ARE THESE THE SAME -- WHAT'S THE

22      DIFFERENCE OR SIMILARITY IN THE ALLEGATIONS IN THE EUROPEAN

23      COMMISSION CASE AND WHAT'S HERE?

24               MS. BONN:  YOUR HONOR, FROM PLAINTIFFS' PERSPECTIVE,

25      THERE'S SIGNIFICANT OVERLAP.  AND AS WE'VE SEEN WITH THE

1    RELATED INVESTIGATIONS IN KOREA AND CHINA, THIS IS PART OF A

2    BROAD PATTERN AND PRACTICE OF ENGAGING IN ANTICOMPETITIVE

3    LICENSING BEHAVIOR BY QUALCOMM.

4          AND SO WE THINK THAT ALTHOUGH IT'S A DIFFERENT MARKET

5    GEOGRAPHICALLY, AND THERE ARE OBVIOUSLY CERTAIN DIFFERENT

6    FACTS, THAT IT'S CLOSELY RELATED TO THE ISSUES IN OUR CASE AS

7    WE'VE SEEN WITH THE CHINESE AND THE KOREAN INVESTIGATIONS SO

8    FAR.

9              THE COURT:  AND IS IT THE SAME THIRD PARTY?

10             MS. BONN:  YOUR HONOR, WE AREN'T ENTIRELY SURE.

11   QUALCOMM HASN'T EVEN TOLD US WHICH THIRD PARTIES MAY HAVE AN

12   ISSUE.

13         OBVIOUSLY IN THE U.S. CASE, THERE ARE ANY NUMBER OF THIRD

14   PARTIES THROUGHOUT THE U.S., AND EVEN IN ASIA, SOME IN EUROPE,

15   WHO ARE SUBJECT TO PROTECTIVE ORDERS IN THIS CASE THAT FULLY

16   PROTECT THIRD PARTY CONFIDENTIALITY CONCERNS.

17             THE COURT:  UM-HUM.  I'M DISAPPOINTED THAT YOU DIDN'T

18   TAKE A LOOK BEFORE COMING TO COURT TODAY ABOUT THE REDACTIONS

19   THEY PRODUCED YESTERDAY.  SAYING, "OH, I NEED SOME VENDOR TO

20   LOAD IT" SOUNDS REALLY --

21             MS. BONN:  AND, YOUR HONOR, I APOLOGIZE --

22             THE COURT:  -- UNDERWHELMING AT BEST.

23             MS. BONN:  I'VE BEEN TOLD --

24             THE COURT:  YOU SHOULD BE PREPARED.  IF YOU WANT ME

25   TO TAKE ACTION, YOU NEED TO BE PREPARED EVERY TIME YOU COME IN

1    HERE SAYING, "THIS IS WHAT I NEED.  I'VE DONE EVERYTHING I

2    CAN."

3          YOU COME IN, "OH, I HAVEN'T REALLY LOOKED AT IT, WE'RE

4    WAITING FOR A VENDOR TO LOAD IT" --

5              MS. BONN:  YOUR HONOR --

6              THE COURT:  -- WOW, THAT JUST SOUNDS UNDERWHELMING.

7              MS. BONN:  I APOLOGIZE, BECAUSE OUR CO-COUNSEL TOLD

8    ME THAT, IN FACT -- AND PART WHY I WAS SURPRISED TO HEAR THAT

9    IT MAY HAVE BEEN PRODUCED YESTERDAY IS THAT QUALCOMM HAD SAID

10   THAT THEY WERE GOING TO PRODUCE THE DOCUMENT TOMORROW.

11         OUR CO-COUNSEL TOLD ME THAT THEY DON'T BELIEVE IT WAS

12   PRODUCED YESTERDAY.  I WAS UNAWARE THAT IT HAD BEEN PRODUCED.

13   I'M NOT EVEN SURE THAT IT HAS BEEN PRODUCED.

14         WE HAVE BEEN TOLD CONSISTENTLY BY QUALCOMM TO EXPECT A

15   PRODUCTION OF THAT DOCUMENT TOMORROW.

16         SO HEARING A REPRESENTATION BY QUALCOMM TODAY THAT IT HAD

17   BEEN PRODUCED YESTERDAY, I HAVE NOT TAKEN A LOOK AT IT, BUT I'M

18   NOT EVEN CERTAIN THAT IT HAS BEEN.  OUR CO-COUNSEL BELIEVE THAT

19   IT HAS NOT BEEN PRODUCED YET.

20             MR. BHANSALI:  YOUR HONOR, I APOLOGIZE --

21             THE COURT:  YOU DID REPRESENT IN YOUR STATEMENT THAT

22   YOU WOULD BE PRODUCING IT TOMORROW.

23             MR. BHANSALI:  ACTUALLY, I THINK WHAT WE MEANT TO SAY

24   IS WE WOULD PRODUCE IT, WE WERE GOING TO TRY AND -- AND WE HAD

25   TOLD THE PLAINTIFFS THAT WE WOULD TRY AND DO IT AS QUICKLY AS

1    WE CAN, AND WE WERE -- BUT WE DIDN'T WANT TO PROMISE A DAY

2    BEFORE THE 23RD, YOUR HONOR.

3          THE COURT:  NOW, SHOULD THIS GO BEFORE JUDGE COUSINS

4    OR BEFORE ME?  I HAVE A FULLY, FULLY HEAVILY LOADED LAW AND

5    MOTION CALENDAR.

6      ON THE OTHER HAND, I'VE BEEN READING THE TRANSCRIPTS OF

7    HIS HEARINGS AND I FEEL LIKE THERE ARE EIGHTH AMENDMENT

8    VIOLATIONS GOING ON WITH WHAT HE'S BEING REQUIRED TO DO.

9          MR. BHANSALI:  WELL, YOUR HONOR, I WOULD LEAVE THAT

10    TO YOU AND JUDGE COUSINS.  I DO THINK THAT THE PROCEDURE THAT

11    HE HAS IN PLACE, THE JDS PROCEDURE, THE TWO AND A HALF PAGE

12    PROCEDURE SEEMS TO BE WORKING FOR THE PARTIES PRETTY WELL.

13          THE COURT:  UM-HUM.

14          MR. BHANSALI:  I WILL LEAVE IT TO YOUR HONOR TO JUDGE

15    HOW THAT, HOW THAT -- HOW THAT APPLIES TO JUDGE COUSINS.  I DO

16    THINK THAT PROCEDURE HAS BEEN WORKING PRETTY WELL.

17      BUT, YOU KNOW, IN TERMS OF WHO IT GOES IN FRONT OF, THAT'S

18    OBVIOUSLY FOR YOU AND JUDGE COUSINS TO DECIDE.

19          THE COURT:  WELL, FOR SELFISH REASONS, I WOULD PREFER

20    THAT IT GO BEFORE JUDGE COUSINS.

21      BUT I AM HAPPY TO KEEP A REQUIREMENT THAT I GET JOINT

22    DISCOVERY STATUS REPORTS WEEKLY BETWEEN NOW AND THE END OF THE

23    FACT DISCOVERY CUTOFF, WHICH I BELIEVE IS MARCH 30TH, AND

24    SET -- WHY DON'T WE DO THIS:  YOU ALL NEED TO BE FOCUSSED ON

25    DEPOSITIONS AND ALL THE DISCOVERY YOU'RE GETTING.  I DON'T WANT

1    TO WASTE TOO MUCH OF YOUR TIME.  YOU COULD -- YOU'RE ALSO

2    WELCOME TO APPEAR BY PHONE IF THAT ALSO HELPS, ALTHOUGH I THINK

3    EVERYONE IS LOCAL THAT'S HERE.

4         ARE YOU LOCAL?

5             MS. BONN:  I'M NOT.  I'M FROM LOS ANGELES.  I THINK

6    THAT TELEPHONIC APPEARANCES MIGHT HELP BECAUSE ATTORNEYS ARE

7    LITERALLY TRAVELLING ALL OVER THE COUNTRY AND INTERNATIONALLY

8    ON BOTH SIDES.

9             THE COURT:  OH, I'VE NEVER SAID PEOPLE HAVE TO APPEAR

10   IN PERSON.  IT'S JUST -- I DO A LOT OF CMC'S BY PHONE, SO IT'S

11   JUST UP TO YOU ALL TO FILE A REQUEST TO APPEAR TELEPHONICALLY,

12   AND MS. MASON IS THE ONE WHO APPROVES THOSE, AND THEN YOU JUST

13   HAVE TO SIGN UP FOR COURT CALL TO ARRANGE THAT.

14        WHY DON'T WE DO THIS:  I WOULD LIKE THIS ISSUE TO GO

15   BEFORE JUDGE COUSINS.  I WILL ASK HIM TO TRY TO EXPEDITE IT,

16   ALTHOUGH I KNOW HE'S GOT A FULL PLATE AS WELL.

17        AND I WOULD LIKE WEEKLY STATUS REPORTS ON DISCOVERY AND

18   ANY OTHER DISPUTES BETWEEN NOW AND MARCH 29TH.  YOU CAN FILE

19   THEM EVERY THURSDAY.  OKAY?

20             MS. BONN:  YES, YOUR HONOR.

21             THE COURT:  AND WHY DON'T WE SET SOME CMC'S, TOO.  I

22   JUST THINK IT'S HELPFUL, MAYBE, TO HAVE THESE DATES.

23             MS. BONN:  YES, YOUR HONOR.

24             THE COURT:  IF WE DON'T NEED TO HAVE THEM, OBVIOUSLY

25   I'LL JUST CONTINUE IT.  I DON'T WANT TO WASTE ANYONE'S TIME

```
1        HERE, BUT I THINK IT WOULD BE HELPFUL JUST TO HAVE THAT AS

2        WELL.

3             SO EVERY THURSDAY, SO THAT WOULD BE MARCH 1, 8, 15, 22,

4        AND 29, I WOULD LIKE WEEKLY JOINT -- I GUESS YOU COULD JUST

5        CALL THEM CASE MANAGEMENT STATEMENTS BECAUSE IT DOESN'T HAVE TO

6        BE LIMITED TO DISCOVERY IF ANYTHING ELSE COMES UP.

7             NOW, LET ME CHECK WITH -- LET ME ASK, MR. RIVERA, CAN YOU

8        CHECK, WHAT DO WE HAVE ON THE 8TH?  I THINK WE MAY HAVE SET A

9        CRIMINAL CASE IN THE MORNING.

10            (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

11       CLERK.)

12                THE COURT:  AND UNFORTUNATELY, I'M STARTING A TRIAL

13       THAT WEEK, SO I CAN'T SPECIALLY SET YOU ON A MONDAY, TUESDAY,

14       OR FRIDAY, ALTHOUGH I COULD SPECIALLY SET YOU THAT WEEK ON THE

15       5TH IF THAT WOULD BE HELPFUL.  OTHERWISE I COULD JUST SAY

16       MARCH 8TH AT 1:30.

17            I WOULD ALSO ASK MR. RIVERA TO CHECK MARCH 22ND, PLEASE.

18                MR. BHANSALI:  YOUR HONOR, WE'RE SET IN THE FTC FOR

19       MARCH 22ND, SO THAT WOULD MAKE SENSE.

20                THE COURT:  OH, SO THAT MIGHT MAKE SENSE.

21                MR. BHANSALI:  YES.

22                THE COURT:  WHAT ABOUT THE 8TH?  DOES THAT WORK FOR

23       YOU?

24                MS. BONN:  YES, YOUR HONOR.

25                THE COURT:  OKAY.  SO WHY DON'T WE SET MARCH 8TH AND
```

1  22ND.  THAT WILL BE AT 1:30, PLEASE.  AND IF WE DON'T NEED IT,

2  I'LL JUST, YOU KNOW, CONTINUE THE DATE OUT.  BUT IT MIGHT JUST

3  BE HELPFUL TO CHECK IN TO MAKE SURE THAT THINGS ARE RUNNING

4  SMOOTHLY.

5      I GREATLY APPRECIATE ALL THE AGREEMENTS AND EFFORTS THE

6  PARTIES HAVE MADE TO TRY TO NARROW DISPUTES AND REACH

7  RESOLUTION ON YOUR OWN.  THAT'S MUCH APPRECIATED.

8      BUT I'D LIKE YOU TO TAKE THIS ISSUE -- SO I'D LIKE TO

9  HEAR, SOONER THAN THURSDAY, THAT YOU GOT THIS REDACTED VERSION.

10          MS. BONN:  YES, YOUR HONOR.

11          THE COURT:  AND -- OR DO YOU NEED TIME TO ANALYZE --

12  I GUESS THE LAW -- I MEAN, THERE WAS NO LAW PROVIDED IN THE

13  JOINT CASE MANAGEMENT STATEMENT THAT WAS FILED, WHAT, A WEEK

14  AGO.  THIS WAS FILED ON FEBRUARY 15TH, SO LAST THURSDAY.  IT

15  JUST SAYS THERE'S FOREIGN LAW INVOLVED.

16      YOU'VE GOT SOMETHING MORE SPECIFIC, OR --

17          MS. BONN:  YOUR HONOR, I THINK PLAINTIFFS WOULD BE

18  PREPARED TO FILE SOMETHING WITH YOUR HONOR BY MONDAY.  WE NEED

19  TO OBVIOUSLY CHECK TO SEE WHETHER OR NOT THE DOCUMENT WAS

20  PRODUCED YESTERDAY OR WHETHER, IN FACT, IT'S COMING TOMORROW.

21      WE HAVE SINCE RECEIVED QUALCOMM'S LETTER SETTING FORTH

22  THEIR VIEW OF THE LAW.  I THINK THAT WILL ENABLE PLAINTIFFS TO

23  FILE A RESPONSE AND TEE UP THE ISSUE FOR YOUR HONOR IF YOU'D

24  LIKE TO HAVE A STATUS UPDATE ON MONDAY.

25          THE COURT:  SO HOW ARE THE PRODUCTIONS MADE?  ARE

1    THEY MADE BY CD OR --

2          MR. BHANSALI:  I THINK THEY'RE ACTUALLY FILES THAT

3    CAN BE DOWNLOADED.  IT'S LIKE AN E-MAIL WITH A DOWNLOADABLE

4    FILE.

5          THE COURT:  OKAY.  SO I GUESS I STILL DON'T

6    UNDERSTAND WHY PLAINTIFFS' COUNSEL -- DO YOU GET SOME KIND OF

7    ALERT THAT THERE'S A NEW FILE THAT'S IN THE SYSTEM THAT YOU

8    SHOULD DOWNLOAD?

9          MS. BONN:  NO.  WHAT'S BEEN HAPPENING, ESPECIALLY IN

10   LIGHT OF THE DEPOSITIONS AND THE PRIVILEGE RE-REVIEW, IS NEARLY

11   EVERY NIGHT, CLOSE TO MIDNIGHT, SOMEONE NAMED JORDAN PETERSON,

12   WHO WORKS FOR ONE OF THE FIRMS REPRESENTING QUALCOMM, SENDS AN

13   E-MAIL THAT HAS AN FTP LINK AND A PASSWORD.

14       AND THE PRODUCTIONS ARE NOT A SIMPLE PDF THAT I CAN JUST

15   DOWNLOAD.  FOR THE MOST PART IT'S IN A TIF PRODUCTION.  THERE

16   ARE SEPARATE IMAGE FILES, AND SO WE NEED A VENDOR TO LOAD IT.

17       SO OFTENTIMES IT DOES TAKE A DAY AFTER WE RECEIVE THAT

18   KIND OF AN E-MAIL, OFTEN CLOSE TO MIDNIGHT, FOR OUR VENDOR TO

19   GET THE DOCUMENT IN A FORMAT THAT THE LAWYERS CAN ACTUALLY VIEW

20   IT IN.

21         THE COURT:  OKAY.

22         MS. BONN:  SO THAT'S PART OF THE ISSUE.

23         THE COURT:  OKAY.  SO IT'S LIKE A LOT OF FILES IN A

24   ZIP FILE OR SOMETHING THAT THEN GETS DOWNLOADED?

25         MS. BONN:  CORRECT, YOUR HONOR.

1          THE COURT:  OKAY.  ALL RIGHT.

2          WHY DON'T YOU DO THAT?  FILE SOMETHING THAT JUST GIVES ME

3      SOME SENSE ON -- WHAT DATE IS THAT?  THAT WOULD BE FEBRUARY 26.

4          AND THEN WHAT I'D LIKE AFTER THAT IS YOU'RE GOING TO DO

5      YOUR JOINT STATEMENT ON MARCH 1, AND I'M HOPING, BETWEEN WHAT

6      YOU FILE ON MONDAY AND WHAT I SEE ON THURSDAY, YOU MIGHT BE

7      ABLE TO AT LEAST NARROW SOME OF THE ISSUES.  OKAY?

8          MS. BONN:  YES, YOUR HONOR.

9          THE COURT:  SO YOU'RE GOING TO FILE THAT ON

10     FEBRUARY 26.  I'D LIKE YOU TO MEET AND CONFER -- I MEAN, YOU'LL

11     HAVE TO MEET AND CONFER FOR THE JOINT CASE MANAGEMENT STATEMENT

12     ANYWAY.

13         MS. BONN:  ABSOLUTELY.

14         THE COURT:  FILE THAT JOINT CASE MANAGEMENT

15     STATEMENT, PLEASE, BY MARCH 1, AND HOPEFULLY YOU'LL HAVE SOME

16     GOOD NEWS TO REPORT.

17         OKAY.  WHAT OTHER ISSUES ARE THERE?  I'D LIKE TO KEEP THE

18     CASE SCHEDULE AS IS.

19         NOW, I DO WANT TO BROACH THIS ISSUE.  I DON'T -- I

20     DON'T -- SINCE YOU'RE SO BUSY WITH DEPOSITIONS NOW, I DON'T

21     WANT IT TO BE NOW, BUT I JUST WANT TO RAISE THE ISSUE AND

22     PERHAPS AT A LATER TIME WE CAN FIGURE OUT, I WOULD LIKE TO AT

23     LEAST GET A LIST OF WHO IS WORKING ON THIS CASE FOR THE

24     PLAINTIFFS.

25         MS. BONN:  YES, YOUR HONOR.

1    THE COURT:  I WANT TO KNOW WHICH FIRMS THEY'RE

2 ASSOCIATED WITH.  AT SOME POINT I'D LIKE AN INTERIM LODESTAR

3 CALCULATION.

4   PERHAPS YOU CAN TELL ME AT WHAT POINT WOULD MAKE SENSE TO

5 DO THAT.  I DON'T WANT TO ADD TO WHAT YOU HAVE GOING ON NOW

6 BECAUSE I KNOW THERE'S JUST A LOT OF LITIGATION BEFORE

7 JUDGE COUSINS AND ALL THE DISCOVERY AND DEPOSITIONS RIGHT NOW.

8 BUT WHEN WOULD IT MAKE SENSE TO DO THAT?

9    MS. BONN:  I'M THINKING, YOUR HONOR, PERHAPS

10 MID-APRIL BECAUSE WE WILL HAVE BEEN PAST THE FACT DISCOVERY

11 CUTOFF, AND IN THE CLASS CASE, WE HAVE A DEADLINE IN EARLY MAY

12 FOR OUR CLASS CERT MOTION.

13   SO I THINK MID-APRIL, THERE SHOULD BE ENOUGH OF A BREATHER

14 FROM THE DAILY DEPOSITIONS TO BE ABLE TO DO THAT.

15    THE COURT:  OKAY.  ALL RIGHT.  SO SHALL WE SAY, LIKE,

16 APRIL 16TH?

17    MS. BONN:  YES, YOUR HONOR.

18    THE COURT:  OKAY.  SO BY APRIL 16TH, I'D LIKE TO

19 KNOW -- AND WE CAN TALK ABOUT, SINCE, YOU KNOW, I MAY BE SEEING

20 YOU MULTIPLE TIMES BEFORE THEN, WHAT SHOULD BE INCLUDED IN

21 HERE.

22   AT A MINIMUM, I WANT TO KNOW WHO'S WORKING ON THIS CASE

23 FOR THE PLAINTIFFS, WHAT FIRMS THEY'RE AFFILIATED WITH -- WOULD

24 IT BE COMPLICATED -- AND I ALSO DON'T WANT TO CREATE ANY ISSUE,

25 YOU KNOW, WHERE PUBLIC DISCLOSURE OF THIS INFORMATION GIVES ANY

```
1          ADVANTAGEOUS INFORMATION TO THE OTHER SIDE.  I DON'T KNOW IF --
2               MS. BONN:  I WOULD THINK THAT WE COULD WORK OUT A
3     PROCEDURE FOR AN IN CAMERA UNDER SEAL SUBMISSION, AND THEN YOUR
4     HONOR COULD DECIDE WHAT INFORMATION, IF ANY, IS APPROPRIATE FOR
5     THE OTHER SIDE TO SEE.
6               THE COURT:  OKAY.  WELL, I MEAN, AT THIS POINT IT'S
7     NOT EVEN A CLASS, SO I -- IT'S A PUTATIVE CLASS, BUT IT'S NOT
8     EVEN A CLASS.  SO I -- I DON'T KNOW IF THERE'S A LEGAL
9     REQUIREMENT THAT ANY OF THIS HAS TO BE PUBLIC.
10         BUT I JUST WANT TO AVOID ANY SITUATION WHERE WE COME TO
11    THE END OF A CASE AND THEN I GET SURPRISED.
12              MS. BONN:  YES, YOUR HONOR.
13              THE COURT:  SO I WANT TO KNOW WHO'S WORKING ON THIS
14    CASE, I WANT TO KNOW -- SO LET'S JUST MAKE A LIST OF THE
15    INFORMATION I'D LIKE.
16         OKAY.  SO I'D LIKE TO KNOW WHO ALL THE BILLERS ARE.  I
17    DON'T WANT THIS TO BE ONEROUS, THOUGH, AND GENERATE MORE
18    ATTORNEYS' FEES.  BUT TO THE EXTENT YOU HAVE IT READILY
19    AVAILABLE, I'D LIKE TO KNOW WHO THE BILLERS ARE; JUST GENERALLY
20    WHAT THEIR ROLE HAS BEEN IN THE CASE.
21         DO YOU HAVE THIS INFORMATION READILY AVAILABLE?
22              MS. BONN:  I BELIEVE SO, YOUR HONOR.
23              THE COURT:  YOU DO?
24              MS. BONN:  I BELIEVE SO.
25              THE COURT:  OKAY.  SO I'D LIKE THE IDENTITIES OF ALL
```

1    THE BILLERS; I'D LIKE TO KNOW THEIR ROLES; I'D LIKE TO KNOW

2    WHAT THEIR RATES ARE, THEIR HOURLY RATES; AND I'D LIKE TO KNOW

3    WHAT YOUR INTERIM LODESTAR IS.  AND I'D LIKE THAT FILED BY

4    APRIL 16, 2018.

5         AND AT THIS POINT -- YOU KNOW WHAT?  MAYBE WE SHOULDN'T DO

6    THIS.  I ALSO DON'T WANT A SITUATION WHERE I'VE THEN CREATED

7    THE IMPRESSION THAT I'VE ALREADY APPROVED IT JUST BY THE FACT

8    THAT YOU'VE DISCLOSED IT.

9         MS. BONN:  AT THE VERY LEAST, YOUR HONOR, I THINK WE

10   UNDERSTAND THE QUESTIONS THAT YOUR HONOR IS INTERESTED IN.  WE

11   CAN WORK ON HAVING THAT INFORMATION READY SO THAT AT ANY POINT

12   AFTER THE CLASS CERT PAPERS ARE FILED THAT YOUR HONOR THINKS

13   WOULD BE APPROPRIATE TO HAVE THAT INFORMATION, WE'LL HAVE IT

14   READY TO GO.

15        THE COURT:  UM-HUM.  ALL RIGHT.  WELL, LET'S THINK

16   ROUGHLY, LIKE, APRIL 16TH IS WHEN I WOULD LIKE IT, AND AT A

17   MINIMUM, I'D LIKE TO KNOW WHO THE BILLERS ARE ON THE CASE AND

18   WHAT THEIR ROLE IS AND, YOU KNOW, ARE THEY ASSOCIATES, ARE THEY

19   PARTNERS, ARE THEY CONTRACT ATTORNEYS, EXACTLY WHO THEY ARE.

20   JUST SORT OF TELL ME WHAT THEIR, I GUESS, TITLE OR POSITION IS.

21   OKAY?  SO I WANT TO KNOW WHO THE BILLERS ARE, THEIR TITLE AND

22   POSITION, AND THEIR ROLE.

23        AND THEN LET ME THINK MORE ABOUT HOURLY RATES AND INTERIM

24   LODESTAR.  I DEFINITELY DON'T WANT TO CREATE THE IMPRESSION

25   THAT I'VE APPROVED THIS --

```
1              MS. BONN:  YES, YOUR HONOR.

2              THE COURT:  -- IF I DON'T REQUEST THAT YOU MAKE A

3     CHANGE.  BUT I ALSO JUST -- I WANT TO AVOID HAVING A SURPRISE

4     AT THE END OF SOMETHING THAT I WOULD BE DISAPPOINTED TO FIND

5     OUT ABOUT.

6          WHAT WAS THAT?

7              MR. FRIEDMAN:  YOUR HONOR, JEFF FRIEDMAN.

8              THE COURT:  YES.

9              MR. FRIEDMAN:  CAN I MAKE A SUGGESTION, WHICH

10    OBVIOUSLY THE COURT CAN SHOOT DOWN IMMEDIATELY?

11             THE COURT:  YEAH, WHAT'S THAT?

12             MR. FRIEDMAN:  IF DEFENDANTS -- BECAUSE I THINK I

13    UNDERSTAND WHAT THE COURT WANTS TO INFORM ITSELF ABOUT.

14             THE COURT:  YEAH.

15             MR. FRIEDMAN:  IT MAY BE HELPFUL, OR NOT, TO GET

16    SIMILAR TYPE INFORMATION -- I'M NOT TALKING ABOUT LODESTAR --

17    FROM THE DEFENDANTS, FROM THE DEFENDANT AND ITS LAWYERS --

18             THE COURT:  UM-HUM.

19             MR. FRIEDMAN:  -- IN TERMS FOR THE COURT TO MAKE AN

20    ASSESSMENT REALLY OF WHETHER THINGS ARE OUT OF WHACK.

21          AND I THINK TO BE ABLE TO ASSESS WHAT'S GOING ON, IF YOU

22    SEE THAT THERE'S TEN LAWYERS HERE AND THERE'S 30 LAWYERS THERE,

23    THAT MAY BENEFIT THE COURT.  IT MAY NOT, BUT --

24             THE COURT:  WELL, I DO SEE FOUR LAWYERS HERE AND I

25    SEE ONE LAWYER FOR THE DEFENDANTS.
```

1          MR. FRIEDMAN:  I UNDERSTAND, AND THAT'S MY --

2          THE COURT:  IT DOES RAISE MY EYEBROW.

3          MR. FRIEDMAN:  AND THAT'S MY EXACT SUGGESTION.

4          THE COURT:  WHY IS THAT NECESSARY, TO HAVE FOUR FOR

5    THE PLAINTIFF AND ONE FOR THE DEFENDANT?

6          MR. FRIEDMAN:  I'M NOT SAYING THAT IT IS, YOUR HONOR.

7          MS. BONN:  AND, YOUR HONOR, CERTAINLY IN THE

8    FUTURE -- WE WANTED TO MAKE SURE THERE WAS SOMEONE FROM THE

9    CO-LEAD FIRMS AND THE STEERING COMMITTEE.  BUT IF YOUR HONOR

10   THINKS IT'S FINE TO HAVE ONE ATTORNEY, WE'RE HAPPY TO DO THAT

11   IN THE FUTURE.

12         MR. FRIEDMAN:  ABSOLUTELY.

13         THE COURT:  I DON'T THINK -- YOU KNOW, FOR EXAMPLE,

14   ON THE DEFENDANT'S SIDE, I MEAN, THEY HAVE ONLY ONE PERSON FROM

15   KEKER & VAN NEST.  THEY DON'T HAVE ANYONE FROM CRAVATH HERE,

16   THEY DON'T HAVE ANYONE HERE FROM MORGAN LEWIS.

17         I DON'T KNOW, IS QUINN, EMANUEL INVOLVED IN THIS CASE?  I

18   KNOW THEY'RE INVOLVED IN THE SAN DIEGO CASE.

19         MR. BHANSALI:  THEY'VE APPEARED, BUT THEY'RE NOT TOO

20   HEAVILY INVOLVED.  BECAUSE OF THE DEPOSITION COORDINATION IN

21   SOUTHERN CALIFORNIA, FOR PROTECTIVE ORDER ISSUES, FIRMS HAVE TO

22   APPEAR ON THE DIFFERENT CASES.

23         THE COURT:  GOT IT.

24         MR. BHANSALI:  BUT NOT DIRECTLY.

25         THE COURT:  I BY NO MEANS HAVE ANY REQUIREMENT THAT

```
 1        ALL COUNSEL FROM THE DIFFERENT FIRMS NEED TO BE REPRESENTED.

 2              MR. FRIEDMAN:  GREAT.

 3              THE COURT:  OR THAT ALL THE FIRMS NEED TO BE

 4        REPRESENTED.  I ACTUALLY DON'T THINK IT'S EFFICIENT.

 5              NOW, IF IT TURNS OUT THAT DIFFERENT PEOPLE KNOW DIFFERENT

 6        ASPECTS OF THE CASE SUCH THAT YOU NEED TO HAVE FOLKS HERE, I

 7        GUESS THAT'S ALL RIGHT.

 8              BUT NOT -- I DEFINITELY -- PLEASE DON'T THINK THERE'S ANY

 9        FACE TIME REQUIREMENT.

10              MR. COTCHETT:  LET ME RESPOND TO THAT IF I CAN, YOUR

11        HONOR.

12              WHAT HAPPENED THIS MORNING WAS WE WERE MEETING TO GO OVER

13        DISCOVERY.  WE WERE MEETING TO TALK ABOUT THE SPECIAL MASTER.

14        WE WERE MEETING ON ALL -- ON EVERYTHING THAT'S GOING ON.  WE

15        HAPPENED TO BE MEETING RIGHT HERE IN SAN JOSE.

16              I'M HERE NOT TO SPEAK.  AMANDA IS DOING A FABULOUS JOB IN

17        HANDLING THIS.

18              I'M HERE SIMPLY, AS LEAD COUNSEL WITH MY FIRM, TO FIND OUT

19        WHY I'VE GOT FIVE, AS JEFF JUST POINTED OUT, FIVE LAWYERS

20        TRAVELLING AROUND EVERYWHERE TAKING DEPOSITIONS, AND 30 LAWYERS

21        MAKING OBJECTIONS THAT I DON'T WANT TO GET INTO NOW.

22              THE COURT:  UM-HUM.

23              MR. COTCHETT:  THE REASON I'M HERE IS BECAUSE I WANT

24        TO SEE IF WE CAN'T STREAMLINE THIS.  I MET THIS MORNING WITH

25        COUNSEL, WE HAD A WONDERFUL MEETING TO GET GOING.
```

1        THE FACT THAT I'M HERE IN THE COURT DOESN'T MEAN THAT I'M

2   HERE BURDENING THE PROCESS.

3        THE COURT:  UNDERSTOOD.  UNDERSTOOD.  YEAH, IF YOU --

4   IF YOU FIND EFFICIENCIES, ABSOLUTELY.

5        I THINK IT WOULD BE HELPFUL, WHEN WE DO FILE THIS -- OR

6   WHEN YOU FILE THIS DOCUMENT, WHEN I GET THE FILING, WHETHER

7   IT'S APRIL 16TH OR IF WE DECIDE AT A LATER DATE -- TO LET ME

8   KNOW, LIKE, X AMOUNT OF DEPOSITIONS HAVE TAKEN PLACE.

9        MS. BONN:  ABSOLUTELY.

10        THE COURT:  HOW MANY THIRD PARTIES HAVE YOU PREPARED

11   WRITTEN DISCOVERY REQUESTS.

12        MS. BONN:  ABSOLUTELY.

13        THE COURT:  HOW MANY HAVE YOU HAD TO MEET AND CONFER

14   WITH OVER OBJECTIONS?  YOU KNOW, IT'S JUST TO GET SOME -- I

15   DON'T WANT TO CREATE -- I DON'T WANT TO CREATE UNNECESSARY

16   WORK.

17        ON THE OTHER HAND, I THINK IT WOULD BE HELPFUL TO

18   UNDERSTAND THE SCOPE OF WHAT'S BEEN GOING ON.  I THINK THAT'S

19   YOUR POINT.

20        MR. FRIEDMAN:  IT IS MY POINT, YOUR HONOR.

21        THE COURT:  I DON'T THINK I HAVE A RIGHT TO ASK THEM

22   FOR THEIR BILLS, ALTHOUGH I AGREE WITH YOU, I THINK IT WOULD BE

23   HIGHLY INTERESTING TO SEE IF IT'S ROUGHLY COMPARABLE.

24        MR. FRIEDMAN:  AND I WASN'T SUGGESTING YOU GET THEIR

25   BILLS NECESSARILY.

```
 1              BUT WHAT WE OFTEN FACE IS A --

 2                  THE COURT:  YEAH.

 3                  MR. FRIEDMAN:  -- MULTIPLIER NUMBER OF DEFENSE

 4      COUNSEL VERSUS US.  NOT HERE, YOU'RE RIGHT.  IT'S A POINT MADE

 5      AND TAKEN, TOTALLY.  THAT'S DONE, FROM MY PERSPECTIVE, IN THE

 6      FUTURE.

 7              BUT I THINK FOR THE COURT TO ASSESS REALLY WHAT'S GOING ON

 8      BEHIND THE SCENES, INSTEAD OF WHAT IS SHOWN HERE OR IN ADDITION

 9      TO --

10                  THE COURT:  UM-HUM.

11                  MR. FRIEDMAN:  -- THEM SAYING, HERE ARE THE NUMBER OF

12      ASSOCIATES THAT ARE WORKING ON THE CASE, HERE IS THE SENIORITY,

13      HERE ARE THE BILLING RATES, THOSE THINGS.

14              NOT LODESTAR.  I'M NOT SUGGESTING THEY SHOW YOU LODESTAR.

15      I THINK IT'S INFORMATIVE, BUT I'M NOT SUGGESTING YOU NEED TO GO

16      THAT FAR.

17              BUT I DO THINK FOR YOU TO SEE SCOPE AND WHAT WE FACE AND

18      WHAT RESOURCES WE DEVOTE VERSUS THE OTHER SIDE, FOR YOU LOOKING

19      AT HOW THINGS ARE WORKING, I WOULD THINK IT WOULD BE SOMETHING

20      THAT WOULD AT LEAST BE INFORMATIVE TO THE COURT.

21                  THE COURT:  I THINK IT WOULD BE INFORMATIVE.  I'M

22      CERTAINLY INTERESTED.

23              BUT WHAT GIVES ME THE AUTHORITY TO ASK THEM FOR -- I

24      MEAN -- OKAY.  WHAT GIVES ME THE AUTHORITY TO ASK THEM FOR

25      THEIR HOURLY RATES?
```

1      I CERTAINLY CAN SAY, SINCE I DO HAVE THE DISCRETION TO

2   KNOW WHO'S WORKING ON THIS CASE, TO JUST SAY, "PLEASE LET ME

3   KNOW WHO IS WORKING ON THIS CASE AT EACH RESPECTIVE FIRM, WHO'S

4   A PARTNER, WHO'S A COUNSEL, WHO'S AN ASSOCIATE?"

5      YOU WOULD HAVE NO OBJECTION TO PROVIDING THAT INFORMATION;

6   CORRECT?

7          MR. BHANSALI:  YOUR HONOR, IN PRINCIPLE, NO.

8      I MEAN, I THINK YOUR HONOR HAS A LOT OF EXPERIENCE WITH

9   CLASS ACTIONS AND I THINK YOU ARE ABLE TO ASSESS THE

10   PLAINTIFFS', YOU KNOW, THE PLAINTIFFS' STAFFING OF THE CASE

11   WITHOUT OURS, PARTICULARLY BECAUSE, YOU KNOW, THE PLAINTIFFS

12   HAVE JUST THIS PIECE OF IT.

13      WE ALSO HAVE THE FTC CASE, AND WE HAVE -- THERE'S SOUTHERN

14   CALIFORNIA.  THERE'S A LOT OF OVERLAP ON THE DEFENSE SIDE, YOU

15   KNOW, PEOPLE DOING MORE THAN JUST THIS CASE.

16      AND SO IT'S A LITTLE -- IT ISN'T AN APPLES-TO-APPLES

17   COMPARISON BETWEEN WHAT'S HAPPENING ON THE QUALCOMM SIDE

18   BECAUSE THERE ARE FIRMS WORKING ON MULTIPLE CASES AS OPPOSED TO

19   THE CLASS PLAINTIFFS HERE.

20          MR. FRIEDMAN:  YOUR HONOR, THE FTC CASE AND OUR CASE,

21   THERE'S OBVIOUSLY A LARGE OVERLAP ON THE MERITS OF WHAT'S GOING

22   ON HERE, SO THE IDEA THAT IT'S SOMEHOW INCREDIBLY DISPARATE AND

23   NOT RELATABLE OR INFORMATIVE I FIND QUESTIONABLE.

24          THE COURT:  WELL, I CAN GET THE INFORMATION FROM THE

25   FTC.

```
1            MR. FRIEDMAN:  EXACTLY.

2            THE COURT:  AND I'M SURE JUDGE GONZALO CURIEL CAN GET

3      THAT INFORMATION IN HIS CASE.  I MEAN, THAT'S NOT -- IT'S

4      NOT --

5            MR. FRIEDMAN:  I JUST DON'T THINK THEIR HOURLY RATE

6      IS A STATE SECRET.

7            THE COURT:  WELL, THEY HAVE DIFFERENT RATES FOR

8      DIFFERENT CLIENTS, I'M SURE.

9            MR. BHANSALI:  I DON'T EVEN KNOW WHAT MY CO-COUNSEL

10     CHARGES THEIR HOURLY RATE IN THIS CASE.

11           MR. COTCHETT:  WELL, REGARDLESS OF HOURLY RATES, I

12     THINK IT IS APPROPRIATE, VERY APPROPRIATE FOR YOU TO ASK, WHO'S

13     WORKING ON THE CASE?  WHAT'S BEING DONE?  WHAT'S THE ROLE THAT

14     EACH IS PLAYING ON THE PLAINTIFFS' SIDE?

15         THAT'S ALMOST AN ISSUE OF DUTY TO DO THAT.

16         I DON'T THINK YOU CAN ASK THEM FOR THE NUMBER OF LAWYERS.

17         I WILL TELL YOU THIS.

18           THE COURT:  YOU THINK I CANNOT?

19           MR. COTCHETT:  CANNOT.

20           THE COURT:  WHY?

21           MR. COTCHETT:  I'VE BEEN THROUGH THIS BEFORE WITH

22     JUDGES.  I DON'T THINK -- ONE COULD SAY IT'S AN ATTORNEY-CLIENT

23     PRIVILEGE AS TO WHAT THEY'RE TALKING ABOUT, FEES AND TIME WITH

24     THEIR CLIENTS.  THAT'S NOT THE ISSUE.

25         THE ISSUE HERE IS, AS JEFF JUST POINTED OUT, THE OVERLAP
```

 1      BETWEEN OUR CASE AND THE FEDERAL TRADE COMMISSION CASE AND THE

 2      OTHER CASE.  I MEAN, IT'S AMAZING, WHEN YOU SIT AND YOU LOOK AT

 3      THESE DEPOSITIONS, THE QUESTIONS THAT ARE BEING ASKED, THE WORK

 4      THAT'S BEING DONE.

 5           YOU ARE ABSOLUTELY RIGHT TO ASK WHO'S DOING WHAT ON THE

 6      CASE, BECAUSE WE CAN'T LET CLASS ACTIONS GET OUT OF HAND, CAN

 7      WE, WITH OVERBILLING OR OVERSTOCKING OR OVEREMPLOYING OR

 8      WHATEVER YOU WANT TO CALL IT.  I THINK THAT'S APPROPRIATE.

 9           I'M NOT INTERESTED IN WHAT THEY'RE CHARGING.  I'M

10      INTERESTED IN WHAT WORK WE'RE DOING AND WHAT RESULT WE GET.

11           I KNOW THIS COURT IS VERY ASTUTE IN ANALYZING, AT THE END

12      OF THE DAY, WHAT AN APPROPRIATE, IF ANYTHING, SHOULD BE DONE.

13              MR. BHANSALI:  MR. COTCHETT AND I, I THINK, AGREE ON

14      THAT.

15              THE COURT:  WELL, I WOULD THINK THAT EVERYONE KNOWS

16      WHO'S WORKING ON THE CASE, BECAUSE DOESN'T EVERYONE HAVE TO

17      SIGN AN UNDERTAKING OF THE PROTECTIVE ORDER?

18              MR. COTCHETT:  ABSOLUTELY.

19              THE COURT:  I MEAN, YOU ALL MUST KNOW HOW MANY

20      PEOPLE -- I MEAN, ONLY ATTORNEYS ARE SIGNING THIS, OR ARE

21      PARALEGALS SIGNING THE UNDERTAKING AS WELL?

22              MR. BHANSALI:  SO FOR THE LAW FIRMS --

23              MR. FRIEDMAN:  I DON'T THINK IT'S ATTORNEY-CLIENT

24      PRIVILEGE THE NUMBER OF ATTORNEYS THAT ARE WORKING ON THE CASE.

25              MR. BHANSALI:  SO FOR THE LAW FIRMS --

1          MR. FRIEDMAN:  THAT'S NOT A COMMUNICATION, YOUR

2    HONOR, NUMBER ONE.  THAT'S NOT A COMMUNICATION, SO I DON'T

3    THINK IT IS.

4          THE COURT:  UM-HUM.

5          MR. FRIEDMAN:  AND MR. COTCHETT AND I AGREE ON A LOT

6    OF THINGS.  THIS ONE IS ONE WE DISAGREE ON, AND THAT IS SIMPLY

7    THE COURT -- WE TOTALLY AGREE THE COURT HAS A DUTY AND

8    OBLIGATION TO MAKE SURE --

9          THE COURT:  YES.

10          MR. FRIEDMAN:  WE ALL AGREE.

11       ALL I'M SAYING TO THE COURT IS THAT IT IS HELPFUL TO

12    UNDERSTAND THE MARKET WHEN ASSESSING WHETHER OR NOT WE ARE

13    EQUIVALENT TO OR SOMEHOW OFF OF WHAT THE MARKET IS.

14       AND SO WHEN YOU LOOK AT AND SAY DEFENSE COUNSEL HAVE

15    BILLING RATES THAT ARE AT OR ABOVE OUR RATES, I THINK THAT

16    WOULD BE INFORMATIVE BECAUSE WE'RE FIGHTING AGAINST THESE VERY

17    COUNSEL.  THIS IS THE MARKET.

18          THE COURT:  WELL, I UNDERSTAND.  BUT LET'S TAKE A

19    LOOK AT YOUR PLAINTIFFS.  YOUR PLAINTIFFS ARE NOT GOING TO HAVE

20    DOCUMENTS; RIGHT?  YOUR PLAINTIFFS, I WOULD ASSUME THEIR

21    DISCOVERY RESPONSES ARE GOING TO BE VERY DIFFERENT THAN --

22    QUALCOMM HAS THE DOCUMENTS.

23          MR. FRIEDMAN:  YES.

24          THE COURT:  SO THEY NEED A TEAM OF LAWYERS THAT ARE

25    DOING THE COLLECTION, THAT ARE DOING THE REVIEW, THAT ARE DOING

1     THE PRODUCTION.

2         NOW, OBVIOUSLY YOU NEED TO DO THE REVIEW AND WHATNOT.

3         BUT THEY'RE NOT -- IT'S NOT EXACTLY APPLES-TO-APPLES.  I

4    MEAN, I WOULD SUSPECT THAT YOUR CLIENTS HAVE, WHAT, MAYBE LESS

5    THAN 100 PAGES OF DOCUMENTS.

6         MR. COTCHETT:  YOU MAY BE HIGH.

7         THE COURT:  OKAY, 20 PAGES OF -- I MEAN, IT'S JUST

8    NOT -- I CAN'T -- I HEAR YOUR POINT.  I DO THINK IT IS HELPFUL.

9         BUT I THINK TO SAY THERE SHOULD HAVE COMPLETE PARITY IS

10   NOT THE SAME.

11        MR. FRIEDMAN:  AND I'M NOT SUGGESTING THAT.

12        THE COURT:  THERE ARE A TREMENDOUS NUMBER OF

13   WITNESSES.  YOU'RE TAKING THE DEPOSITIONS AND OBVIOUSLY YOU

14   NEED TO PREPARE.

15        BUT THEY OBVIOUSLY NEED TO PREPARE THE DEPONENTS.

16        MR. FRIEDMAN:  CORRECT.

17        THE COURT:  IT'S NOT EXACTLY --

18        MR. FRIEDMAN:  I TOTALLY AGREE.

19        THE COURT:  I'M SURE PREPARING YOUR WITNESSES FOR

20   DEPOSITION IS NOT QUITE THE SAME AS PREPARING QUALCOMM

21   WITNESSES FOR DEPOSITIONS.

22        MR. FRIEDMAN:  MY POINT WAS NOT THAT THERE WAS EXACT

23   PARITY, YOUR HONOR.

24        THE COURT:  YEAH.

25        MR. FRIEDMAN:  I'M JUST TRYING TO -- I BELIEVE MORE

1       INFORMATION FOR THE COURT, BECAUSE THE COURT OBVIOUSLY IS VERY

2       SMART AND KNOWS DISTINCTIONS WITHOUT ME HAVING TO MAKE THE

3       DISTINCTIONS, BUT SEEING SIZE, RELATIVE SIZE, I THOUGHT IS

4       POTENTIALLY IMPORTANT.  IF IT HELPS INFORM THE COURT, GREAT.

5       IF IT DOESN'T HELP INFORM THE COURT, THEN THE SUGGESTION CAN BE

6       SHOT DOWN.

7               THE COURT:  WELL, I'M SURE AT A MINIMUM KNOWING HOW

8       MANY PEOPLE HAVE SIGNED THE PROTECTIVE ORDER, AND QUALCOMM CAN

9       SAY, "UNDERSTAND WE ALSO HAVE THE SAN DIEGO LITIGATION THAT

10      NEITHER FTC NOR THE PLAINTIFFS IN THIS MDL HAVE."

11          I MEAN, YOU CAN CERTAINLY GIVE ME THE EXPLANATIONS THAT

12      PUT IN CONTEXT --

13              MR. FRIEDMAN:  UNDERSTOOD.

14              THE COURT:  -- WHAT THESE NUMBERS MAY REPRESENT.

15          BUT I -- I JUST DON'T WANT TO BE SURPRISED AT THE END.

16              MR. FRIEDMAN:  UNDERSTOOD.

17              THE COURT:  I NEED TO AVOID THAT HAPPENING.  SO JUST

18      AN INTERIM CHECK-IN JUST MAKING SURE THINGS ARE PROGRESSING AS

19      THEY SHOULD I THINK WOULD JUST BE GOOD CASE MANAGEMENT.

20              MR. FRIEDMAN:  WE'RE TOTALLY FINE WITH THAT, YOUR

21      HONOR.

22              THE COURT:  YEAH, OKAY.

23          NOW, WOULD THERE BE -- I MEAN, PRESUMABLY -- WELL, LET'S

24      GO ON TO THE PROTECTIVE ORDER.  WHO'S SIGNING THAT?  ARE

25      PARALEGALS SIGNING THAT, OR IS IT JUST LAWYERS?

```
 1            MR. BHANSALI:  FOR US OR -- I GUESS --
 2            THE COURT:  WELL, FOR EVERYBODY.
 3            MR. BHANSALI:  SO FOR THE LAW FIRMS INVOLVED, AS I
 4   UNDERSTAND THE PROCEDURE, AS LONG AS YOU'RE A -- ALL THE
 5   LAWYERS, ALL THE ADMITTED LAWYERS ON THE CASE THAT ARE, YOU
 6   KNOW, EITHER PRO HAC OR -- I THINK IF IT'S AN MDL, FOR MDL
 7   MAYBE YOU DON'T HAVE TO PRO HAC ANYMORE -- HAVE TO ACTUALLY
 8   MAKE AN APPEARANCE IN THE CASE TO BE ON THE PROTECTIVE ORDER.
 9            THE COURT:  OKAY.
10            MR. BHANSALI:  BUT LAW FIRM STAFF -- AND THIS IS, I
11   THINK, FAIRLY CUSTOMARY, I THINK THIS IS THE NORTHERN DISTRICT
12   STANDARD ORDER -- LAW FIRM STAFF DON'T SIGN ON TO THE
13   PROTECTIVE ORDER.
14            THE COURT:  OKAY.  IS THAT THE SAME UNDERSTANDING AS
15   THE PLAINTIFFS, THAT STAFF DON'T HAVE TO?
16            MS. BONN:  THAT'S MY UNDERSTANDING, YOUR HONOR.
17   OBVIOUSLY ALL FIRMS AGREE THAT THEIR STAFF ARE BOUND BY THE
18   PROTECTIVE ORDER.
19            MR. BHANSALI:  OF COURSE.
20            MS. BONN:  AND WE EDUCATE OUR STAFF ABOUT THE
21   PROTECTIVE ORDER AND WHAT IT REQUIRES.
22        BUT I DON'T THINK THAT THE LAW FIRMS ARE NECESSARILY
23   HAVING THEIR STAFF SIGN THEM, NOR ARE THE PARTIES, I DON'T
24   THINK, EXCHANGING KIND OF SIGNED VERSIONS OF THE PROTECTIVE
25   ORDER, OTHER THAN FROM EXPERTS.
```

```
 1              MR. BHANSALI:  EXACTLY, UNLESS AN EXPERT IS

 2    DISCLOSED.

 3              MS. BONN:  THIRD PARTY EXPERTS.

 4              MR. BHANSALI:  EVEN THEN, I THINK WE'RE JUST

 5    DISCLOSING THE EXPERT.  I DON'T THINK WE'RE ACTUALLY PROVIDING

 6    THE SIGNED UNDERTAKING TO EACH OTHER.

 7              THE COURT:  SO YOU DON'T HAVE EACH OTHER'S

 8    UNDERTAKINGS?

 9              MS. BONN:  CORRECT.

10              THE COURT:  I SEE.

11              MR. BHANSALI:  NO.  BECAUSE THE LAWYERS ACTUALLY --

12    SO AS COUNSEL OF RECORD, WE DON'T HAVE TO SIGN THE UNDERTAKING

13    BECAUSE WE'RE BOUND BY THE -- WE AND OUR FIRM ARE BOUND BY THE

14    COURT'S ORDERS, REGARDLESS OF WHETHER WE SIGN AN UNDERTAKING.

15    SO --

16              THE COURT:  BUT CAN I ASK YOU JUST A DISTINCTION?

17    WHEN YOU SAY THE ADMITTED ATTORNEYS OR THE COUNSEL OF RECORD,

18    THOSE ARE ONLY THE PEOPLE WHO HAVE WHAT, FILED A NOTICE OF

19    APPEARANCE AND REGISTERED ON ECF?

20              MR. BHANSALI:  THEY FILED AN APPEARANCE, AND THEN NOW

21    IN THE NORTHERN DISTRICT RULES, YOU HAVE TO REGISTER ON ECF.

22         BUT IN ORDER TO SEE -- IN ORDER FOR A LAWYER, FOR EXAMPLE,

23    AT OUR FIRM TO PARTICIPATE IN THE CASE, THEY HAVE TO BE -- YOU

24    KNOW, THEY HAVE TO -- IF THEY'RE GOING TO TAKE DEPOSITIONS, IF

25    THEY'RE GOING TO SEE NON-QUALCOMM INFORMATION, THEY HAVE TO
```

```
1    MAKE THAT APPEARANCE.

2          THE COURT:  OKAY.  BECAUSE USUALLY THERE ARE A LOT OF

3    LAWYERS, MAYBE THERE ARE CONTRACT ATTORNEYS WHO REVIEW

4    DOCUMENTS, WHO DON'T FILE NOTICES OF APPEARANCE.

5          MR. BHANSALI:  THAT'S RIGHT, CONTRACT ATTORNEYS.

6          THE COURT:  THEY DON'T DO ECF REGISTRATION.

7      AND I DON'T KNOW IF THERE ARE OTHER CATEGORIES OF

8    ATTORNEYS WHO WOULD DO THAT.

9          MR. BHANSALI:  NO.  JUST CONTRACT -- STAFF LAWYERS

10   WOULD -- YOU'RE RIGHT, YOUR HONOR, THEY WOULDN'T BE FILING

11   NOTICES OF APPEARANCE.

12         MS. BONN:  CORRECT, YOUR HONOR.

13         THE COURT:  OKAY.  WHAT ARE STAFF --

14         MS. BONN:  FOR EXAMPLE, AT SUSMAN GODFREY, WE ARE NOT

15   HIRING ANY CONTRACT LAWYERS FOR DOCUMENT REVIEW.

16     WE HAVE STAFF ATTORNEYS WHO ARE FULLY EMPLOYED AT OUR FIRM

17   AND ARE ON A PARTNERSHIP TRACK, AND FOR THE MOST PART, THEY ARE

18   REVIEWING DOCUMENTS, ALTHOUGH NOW I UNDERSTAND THAT SOME OF OUR

19   STAFF ATTORNEYS ARE TAKING SOME DEPOSITIONS AND SO THEY MAY

20   HAVE FILED APPEARANCES.

21         MR. BHANSALI:  I WAS USING THE WORD "CONTRACT" AND

22   "STAFF" INTERCHANGEABLY, YOUR HONOR.

23         THE COURT:  OKAY.  ALL RIGHT.  SO THEN THE CONTRACT

24   ATTORNEYS THEN, THEY HAVEN'T FILED NOTICES OF APPEARANCES AND

25   THEY HAVEN'T REGISTERED ON ECF?
```

1        MR. BHANSALI:  THAT IS CORRECT.

2        THE COURT:  OKAY.  BUT AT THE END OF THE DAY, I'M

3    ASSUMING AT LEAST THAT BOTH SIDES ARE GOING TO ASK THEIR

4    CLIENTS TO REIMBURSE THEM FOR THE WORK OF THOSE PEOPLE BECAUSE

5    YOU'VE PAID THEM, THEY'RE DOING WORK ON THE CASE.

6        THIS IS WHAT I THINK I WOULD LIKE:  I DO THINK -- I MEAN,

7    THE PRACTICES VARY.  I THINK IN SOME INSTANCES THE PARTIES DO

8    EXCHANGE THE UNDERTAKINGS BEYOND EXPERTS.

9        MS. BONN:  SOMETIMES, YOUR HONOR.

10        MR. BHANSALI:  RIGHT.  BUT WE WOULDN'T -- BUT LAW

11    FIRM -- UNDER OUR PROTECTIVE ORDER, LAW FIRM STAFF DON'T HAVE

12    TO SIGN A PROTECTIVE ORDER.  THEY DON'T HAVE TO ENTER INTO AN

13    UNDERTAKING BECAUSE THE WHOLE FIRM IS BOUND AND WE HAVE TO

14    ENSURE THAT OUR EMPLOYEES AND ANYBODY WORKING UNDER OUR

15    DIRECTION, YOU KNOW, ARE BOUND.

16        THE COURT:  I UNDERSTAND.  I'M JUST SAYING THAT THAT

17    IS NOT SOMETHING THAT IS NECESSARILY PRIVILEGED IN THAT IN SOME

18    CASES THEY'RE ACTUALLY EXCHANGED.

19        MS. BONN:  WE WOULD AGREE WITH THAT, YOUR HONOR.

20        AND, FOR EXAMPLE, YOU KNOW, WE'RE -- QUALCOMM COULD SEND

21    US A REQUEST, "WE'D LIKE TO SEE YOUR UNDERTAKINGS, OR AT LEAST

22    PROVIDE US A LIST OF EVERYONE WHO'S SIGNED THE UNDERTAKING,"

23    AND VICE-VERSA.  I WOULD THINK THAT THE PARTIES WOULD NOT HAVE

24    AN OBJECTION TO EXCHANGING THAT INFORMATION.

25        IT'S SIMPLY NOT NECESSARILY REQUIRED UNDER THIS PROTECTIVE

1    ORDER AND IT HAS NOT BEEN OUR PRACTICE OTHER THAN FOR THIRD

2    PARTY EXPERTS.

3         THE COURT:  UM-HUM.  BECAUSE I'M SURE THIS COURT

4    COULD ASK WHO'S BOUND BY THE PROTECTIVE ORDER.

5         MS. BONN:  ABSOLUTELY.

6         THE COURT:  THAT SEEMS LIKE THAT'S A FAIR QUESTION --

7         MS. BONN:  ABSOLUTELY, YOUR HONOR.

8         THE COURT:  -- ON EITHER SIDE.

9         MS. BONN:  ABSOLUTELY.

10        MR. BHANSALI:  YOUR HONOR, SURE.  IF THERE WERE AN

11   ISSUE ABOUT A VIOLATION, YOUR HONOR CAN ASK THAT, OF COURSE.

12        AND, I MEAN, YOU KNOW, WHEN THIS PROTECTIVE ORDER WAS

13   NEGOTIATED, I ACTUALLY DO THINK THERE WAS SOME DEGREE OF, YOU

14   KNOW, THERE -- I THINK THERE WAS A QUESTION AS TO WHETHER --

15   BECAUSE YOU CAN ALWAYS AGREE, IF YOU WANT, TO HAVE THESE

16   UNDERTAKINGS DISCLOSED.

17        IT WAS SORT OF NEGOTIATED THAT IT WOULD NOT BE DISCLOSED.

18        THE COURT:  UH-HUH.

19        MR. BHANSALI:  AND, YOU KNOW, THE FTC IS ALSO PART OF

20   THIS DISCUSSION -- I GUESS PART OF MY CONCERN IS THIS

21   PROTECTIVE ORDER EFFECTIVELY, BECAUSE OF THE COORDINATION, ALSO

22   COVERS THE FTC.

23        AND IT TO SOME EXTENT COVERS APPLE AS WELL.  EVEN THOUGH

24   THEY'RE IN SOUTHERN CALIFORNIA, WE NOW HAVE A MULTI-PARTY

25   COORDINATION.

```
1              THE COURT:  YEAH.

2              MR. BHANSALI:  SO I JUST HESITATE A LITTLE BIT THAT

3    WE'RE MAYBE GOING -- I MEAN, WE DON'T EVEN HAVE A CLASS YET.  I

4    MEAN, YOUR HONOR CAN ADDRESS THESE ISSUES WHEN, YOU KNOW, IF

5    THERE IS SOME CONCERN THAT THE PLAINTIFFS HAVE SUBMITTED

6    SOMETHING THAT'S DISPARATE RELATIVE TO THE AMOUNT -- IF THERE'S

7    A QUESTION AS TO WHETHER THE WORK THAT PLAINTIFFS HAVE DONE IS

8    PROPORTIONAL TO THE WORK ON THE APPLE/QUALCOMM SIDE, THAT'S A

9    QUESTION YOUR HONOR WOULD DEAL WITH DOWN THE LINE.

10             IT'S SORT OF NOT -- IT DOESN'T DIRECTLY RELATE TO WHAT I

11   UNDERSTAND YOUR ISSUE TO BE, YOUR QUESTION TO BE, WHICH IS JUST

12   KIND OF AN INTERIM CHECK-IN.

13             SO MAYBE WE -- MAYBE WE KIND OF ADDRESS THIS MAYBE WHEN WE

14   HAVE EVERYBODY BEFORE YOUR HONOR.

15             MS. BONN:  I WOULD ALSO --

16             THE COURT:  WELL, I HEAR YOU, AND I THINK THAT IS THE

17   TRADITION, OR THE PRACTICE, TO DO IT AT THE END, BUT IN SOME

18   WAYS THAT'S KIND OF TOO LATE.

19             MS. BONN:  I WOULD ALSO SUGGEST, YOUR HONOR, THAT IF

20   THE CONCERN IS THAT THERE MAY BE SOME SORT OF CONFIDENTIALITY

21   ISSUE WITH KNOWING WHO OR HOW MANY TIMEKEEPERS QUALCOMM HAS

22   THAT MAYBE HAVEN'T FILED AN APPEARANCE, THAT'S CERTAINLY

23   INFORMATION THAT THEY CAN SUBMIT IN CAMERA TO YOUR HONOR.

24             OUR POINT IS NOT TO TRY TO GAIN SOME UNFAIR ACCESS TO

25   THEIR INFORMATION.  IT'S SIMPLY TO TRY TO HELP THE COURT GET
```

1    INFORMATION THAT IT'S ENTITLED TO IN TERMS OF KNOWING WHO'S

2    SIGNED ON TO THE PROTECTIVE ORDER, AND THAT MIGHT HELP THE

3    COURT EVALUATE THE RELATIVE WORK THAT'S BEING PERFORMED.

4         THE COURT:  WELL, EVERYTHING WOULD BE IN CAMERA.  I

5    WOULD NOT HAVE ONE SIDE DISCLOSE TO THE NEXT.

6         MS. BONN:  ABSOLUTELY.

7         THE COURT:  BECAUSE I -- YOU KNOW, IF YOU ALL MADE AN

8    AGREEMENT THAT YOU DIDN'T HAVE TO DISCLOSE UNDERTAKING

9    SIGNATURES TO EACH OTHER, THEN I DON'T THINK YOU'RE REALLY

10   REQUIRED TO DISCLOSE THAT TO EACH OTHER.

11        I THINK IT WOULD BE HELPFUL -- I JUST THINK IT WOULD BE

12   HELPFUL, JUST AS A CASE MANAGEMENT TOOL, JUST TO HAVE AN

13   INTERIM CHECK-IN AND MAKE SURE THAT THINGS ARE ON TRACK.  IF

14   THERE'S ANY MISUNDERSTANDING, THEN I CAN CLEAR THAT UP.  IT'S

15   JUST TO KNOW WHO'S WORKING ON THE CASE.

16        THERE'S NO CLASS HERE, BUT I AM SUPPOSED TO WATCH OUT FOR

17   THE INTERESTS OF ANY POTENTIAL PUTATIVE CLASS, AND CERTAINLY

18   ANY CLIENT WOULD GET THIS INFORMATION.  THEY WOULD KNOW WHO'S

19   WORKING ON THEIR CASE.  I JUST DON'T THINK THAT'S AN UNUSUAL

20   REQUEST.

21        MR. BHANSALI:  I MEAN, OBVIOUSLY, YOUR HONOR, THE

22   CLASS PLAINTIFFS ARE SITUATED A LITTLE DIFFERENTLY, BECAUSE AS

23   YOUR HONOR KNOWS, PART OF YOUR HONOR'S RESPONSIBILITY IS TO

24   LOOK OUT FOR A PUTATIVE CLASS.

25        THE COURT:  RIGHT.

```
 1            MR. BHANSALI:  EVEN THOUGH I UNDERSTAND YOUR HONOR

 2    HAS NOT CERTIFIED THE CLASS AND WE WILL VIGOROUSLY OPPOSE YOUR

 3    HONOR DOING THAT.

 4            THE COURT:  BY ASKING THIS, I'M IN NO WAY IMPLYING

 5    THAT I'M GOING TO CERTIFY A CLASS.

 6        I JUST DON'T WANT TO CREATE A SITUATION WHERE WE'RE AT THE

 7    END OF THE ROAD AND I JUST GET SURPRISED.  I'M JUST TRYING TO

 8    THINK OF A WAY -- I'M FEELING MY WAY THROUGH THIS, SO IT COULD

 9    BE THAT THIS IS PROBLEMATIC.

10        I WOULD LOVE FOR YOU ALL TO THINK ABOUT IT.  PERHAPS WE

11    CAN DISCUSS IT AT A LATER TIME, OR PERHAPS YOU CAN PUT A

12    PROPOSAL IN YOUR JOINT CASE MANAGEMENT STATEMENT.

13        BUT I THINK YOU GET WHAT I'M TRYING TO CONVEY IS I WOULD

14    JUST LIKE SOME INTERIM CHECK-IN TO KNOW WHO'S WORKING ON THE

15    CASE AND JUST SORT OF ROUGHLY WHAT THEIR JOB IS.  YOU KNOW, ARE

16    THEY A DOCUMENT REVIEWER?  ARE THEY A DOCUMENT COLLECTOR?  ARE

17    THEY SOMEONE WHO PREPARES AND DEFENDS DEPOSITIONS?  JUST SORT

18    OF SOME SENSE OF PEOPLE'S ROLE AT A HIGH LEVEL.

19        I DON'T NEED TO KNOW WHAT THEY'RE -- WHAT THEY'RE ACTUALLY

20    BILLING AND WHAT INDIVIDUAL TASKS THEY'RE DOING, BUT JUST SORT

21    OF GENERALLY WHAT THEIR ROLE IS, A DESCRIPTION OF WHAT THEIR

22    ROLE IS.

23        I THINK IT WOULD BE HELPFUL.  AND I THINK IT WOULD BE GOOD

24    CASE MANAGEMENT, FRANKLY.

25            SO WHY DON'T YOU THINK ABOUT THAT?  I'D LOVE FOR YOU TO
```

1    INCLUDE THAT IN YOUR JOINT CASE MANAGEMENT STATEMENTS.  THINK

2    ABOUT IT FURTHER.  LET ME KNOW.

3         I WOULD DO THIS IN CAMERA.

4         AND PERHAPS IT IS BETTER TO FOCUS ON WHO'S BOUND BY THE

5    PROTECTIVE ORDER, BECAUSE I DO THINK THAT IS SOMETHING THAT THE

6    COURT WOULD BE ABLE TO REQUEST AND OBTAIN INFORMATION ABOUT.

7         OKAY?

8              MR. BHANSALI:  MAY I, YOUR HONOR, SUGGEST --

9              THE COURT:  YES.

10             MR. BHANSALI:  AS YOUR HONOR HAS POINTED OUT, WE HAVE

11   A LOT HAPPENING RIGHT NOW.  IT LOOKS LIKE WE'RE TALKING ABOUT

12   DOING THIS FOR APRIL 16TH, SO MAYBE WE PROPOSE TO PUT THIS IN

13   THE STATEMENT THAT WOULD GO IN BEFORE THE CMC ON THE 22ND JUST

14   SO THAT THE -- JUST TO KIND OF ALLOW PEOPLE TO FOCUS ON OTHER

15   ISSUES.

16             THE COURT:  SURE, YEAH.  I DON'T WANT TO DISRUPT YOU

17   TOO MUCH FROM WHATEVER ELSE YOU HAVE GOING.  THAT'S FINE.

18        IF YOU WOULD JUST PLEASE INCLUDE SOME PROPOSAL OR THOUGHTS

19   ON THIS QUESTION IN YOUR MARCH 22ND JOINT CASE MANAGEMENT

20   STATEMENT.

21        OKAY.  WHAT ELSE?  I DID HAVE -- IN ONE OF MY OTHER CASES

22   WHERE I CUT THE FEES, ONE OF THE LAWYERS WAS PUBLICLY STATING,

23   "WELL, NEXT TIME WE'RE JUST GOING TO GET THE LODESTAR TO MATCH

24   THE NUMBER WE WANT."

25        ACTUALLY, IT WAS SOMEONE FROM YOUR FIRM.

```
 1              MR. FRIEDMAN:  NO.  REALLY?

 2              THE COURT:  IT WAS STEVE BERMAN.

 3              MR. FRIEDMAN:  HE SAID THAT?

 4              THE COURT:  HE TOLD THAT TO THE RECORDER OR THE DAILY

 5     JOURNAL.

 6          AND I JUST -- YOU KNOW, HOPEFULLY HE WAS TALKING IN JEST.

 7     I DON'T KNOW.

 8          BUT I JUST WOULD HOPE THAT THERE WOULD BE GOOD FAITH

 9     BILLING.  THIS IS LITIGATION DONE ON BEHALF OF A PUTATIVE

10     CLASS.  THESE PEOPLE ARE ABSENT.  THEY'RE NOT ABLE TO PLAY THE

11     ROLE THAT A BILLING CLIENT WOULD PLAY, AND SO I WOULD JUST ASK

12     THAT EVERYONE, AS OFFICERS OF THE COURT, WOULD HAVE GOOD FAITH

13     BILLING AND STAFFING IS MY ONLY REQUEST.

14              MS. BONN:  ABSOLUTELY, YOUR HONOR.

15              MR. BHANSALI:  YES.

16              THE COURT:  ALL RIGHT.  WHAT ELSE DO WE HAVE TO

17     DISCUSS TODAY?  ANYTHING ELSE?  I THINK THAT WAS MY LIST FOR

18     TODAY.  ANYTHING ELSE?

19              MS. BONN:  I DON'T THINK SO, YOUR HONOR.

20          JUST AS A STATUS UPDATE --

21              THE COURT:  YES.

22              MS. BONN:  -- THERE'S ONE MAJOR ISSUE THAT'S BEING

23     TEED UP IN FRONT OF JUDGE COUSINS ABOUT WHETHER IT WOULD BE

24     APPROPRIATE TO APPOINT A SPECIAL MASTER TO RESOLVE CERTAIN

25     CHALLENGES TO QUALCOMM'S 100,000-PLUS ENTRY --
```

1          THE COURT:  UH-HUH.

2          MS. BONN:  -- PRIVILEGE LOG.

3      THE PARTIES HAVE, AT JUDGE COUSINS' REQUEST AT HIS LAST

4  HEARING, SUBMITTED STATEMENTS TO HIM LAST EVENING.

5      SO I JUST WANTED TO MENTION, BASED ON THE SCHEDULE --

6  OBVIOUSLY THE FACT THAT WE'RE SEEING QUALCOMM, BASED ON ITS

7  LIMITED RE-REVIEW SO FAR, REVERSE ITS PRIVILEGE DECISIONS ON

8  SOMETHING LIKE 50 PERCENT OF THE DOCUMENTS WE ASKED THEM TO

9  LOOK AT, IT'S RAISING A MAJOR CONCERN ABOUT WHETHER WE'RE, YOU

10  KNOW, ESSENTIALLY BEING PUT IN A POSITION WHERE QUALCOMM WILL

11  BE ABLE TO HOLD BACK DOCUMENTS UNDER PRIVILEGE BY DEFAULT.

12      AND SO THAT'S A MAJOR ISSUE THAT'S BEING TEED UP IN FRONT

13  OF JUDGE COUSINS THAT, YOU KNOW, COULD AFFECT --

14          THE COURT:  I THOUGHT THAT ONLY FTC IS ASKING FOR

15  THAT.  I DIDN'T THINK THE MDL PLAINTIFFS WERE ASKING FOR THAT.

16          MS. BONN:  WE FILED A JOINT STATEMENT.  PLAINTIFFS

17  FOR THE MDL ARE ASKING AS WELL, YOUR HONOR.

18          THE COURT:  OH, I SEE.  ALL RIGHT.  WELL, THAT'S TEED

19  UP BEFORE HIM.

20          MS. BONN:  CORRECT.

21          THE COURT:  SO HE'LL HAVE TO DECIDE THAT.

22          MS. BONN:  ABSOLUTELY.  I JUST WANTED TO MENTION IT

23  AS KIND OF A MAJOR ISSUE THAT, YOU KNOW, I THINK RELATES TO

24  MOVING THE CASE ALONG UNDER THE DEADLINES THAT ARE SET.  SO I

25  JUST WANTED TO MENTION IT.

```
 1                THE COURT:  OKAY.  ALL RIGHT.

 2           YOU KNOW, THAT MAY HAVE BEEN LAW 360.  I CAN'T REMEMBER.

 3      IT WAS AFTER THE ANIMATION ATTORNEYS' FEES ORDER.  YOU CAN FIND

 4      IT.  IT'S A PUBLICLY AVAILABLE QUOTATION.

 5                MR. FRIEDMAN:  YOUR HONOR, I'M GOING TO LOOK FOR IT,

 6      BECAUSE THAT SURPRISES ME.

 7                MR. BHANSALI:  YOUR HONOR, IF IT WAS IN LAW 360 --

 8                THE COURT:  IT WAS DISAPPOINTING TO READ.  I HOPE IT

 9      WAS JUST IN JEST, BUT IT WAS DISAPPOINTING TO READ.

10           AND I WOULD JUST HOPE THAT PEOPLE WOULD ACT IN GOOD FAITH

11      HERE AND NOT BE CYNICAL AND SAY, "WELL, OKAY.  IF SHE'S GOING

12      TO CUT IT TO LODESTAR, THEN LET'S JUST JACK UP LODESTAR TO GET

13      WHAT WE WANT."

14           I'M NOT SAYING THAT THAT'S BEING DONE HERE.

15           BUT, YOU KNOW, WHEN THOSE KIND OF PUBLIC STATEMENTS ARE

16      MADE, I JUST FEEL LIKE I NEED TO FULFILL MY ROLE AS TRYING TO

17      WATCH OUT FOR THE INTERESTS OF THE CLASS.

18                MR. FRIEDMAN:  ABSOLUTELY, YOUR HONOR, AND IT

19      SURPRISES ME THAT THAT STATEMENT WOULD BE MADE, SO I'M GOING TO

20      GO LOOK AT IT AND I'M GOING TO TALK TO MR. BERMAN.

21                THE COURT:  IT WAS AFTER THE ANIMATION ATTORNEYS'

22      FEES ORDER, SO YOU'LL LOOK AT THAT TIMEFRAME, WHENEVER THAT

23      WAS.

24                MR. FRIEDMAN:  UNDERSTOOD, YOUR HONOR.

25                THE COURT:  2016, WAS THAT?
```

1          MR. FRIEDMAN:  IT WAS 2017.  IT WAS LAST YEAR.

2          THE COURT:  OH, WAS IT 2017?

3          MR. FRIEDMAN:  YES, YOUR HONOR.

4          THE COURT:  OKAY.  WELL, IT WOULD HAVE BEEN ONE OR

5    TWO DAYS AFTER THE ATTORNEYS' FEES ORDER.  I'M SURE YOU'LL BE

6    ABLE TO FIND IT.

7          IF YOU HAVE TROUBLE, I'M SURE I CAN FIND IT FOR YOU IF YOU

8    NEED ME TO FIND IT.

9          MR. FRIEDMAN:  I DON'T THINK I WILL.

10         THE COURT:  OKAY.  DID YOU HAVE ANOTHER ISSUE?

11         MR. BHANSALI:  NO, YOUR HONOR, NO.

12         THE COURT:  OKAY.  ALL RIGHT.

13         SO JUST TO RECAP HERE, THE PLAINTIFFS ARE GOING TO FILE A

14    STATEMENT ON THIS REDACTED VERSION OF THE EUROPEAN COMMISSION'S

15    JANUARY 25TH ORDER ON MONDAY, FEBRUARY 26TH; YOU WILL FILE A

16    JOINT CASE MANAGEMENT STATEMENT ON THURSDAY, MARCH 1; THURSDAY,

17    MARCH 8TH; THURSDAY, MARCH 15; THURSDAY, MARCH 22; AND

18    THURSDAY, MARCH 29; AND WE'LL HAVE CASE MANAGEMENT CONFERENCES

19    ON MARCH 8 AND MARCH 22 AT 1:30 P.M.

20         AND THE CASE SCHEDULE REMAINS AS SET.

21         YOUR MARCH 1 JOINT CASE MANAGEMENT STATEMENT WILL

22    HOPEFULLY INCLUDE A COMPLETE RESOLUTION OF THE ITC COORDINATION

23    ISSUE.  I THINK THAT WILL HOPEFULLY RESOLVE ITSELF.  THANK YOU

24    TO THE PARTIES FOR WORKING TO TRY TO REACH AGREEMENT ON THAT.

25         AND THEN YOUR MARCH 22ND JOINT CASE MANAGEMENT STATEMENT

1    WILL INCLUDE SOME TYPE OF PROPOSAL OR SOME -- YOU KNOW, THERE

2    COULD BE THINGS THAT I NEED TO THINK ABOUT THAT I'M NOT

3    THINKING ABOUT, YOU KNOW, THOUGHTS, LAW, WHATEVER, AS TO

4    WHETHER THERE COULD BE JUST SORT OF SOME IDENTIFICATION OF AT

5    LEAST WHO'S BOUND BY THE PROTECTIVE ORDER AND WHAT THEIR ROLES

6    ARE IN THE CASE.

7         OKAY.  ANYTHING ELSE?

8         MS. BONN:  NOT FROM CLASS PLAINTIFFS, YOUR HONOR.

9         MR. BHANSALI:  NOT FROM QUALCOMM, YOUR HONOR.

10        THE COURT:  OKAY.  ALL RIGHT.  WELL, THANK YOU ALL SO

11   MUCH.

12        MS. BONN:  THANK YOU, YOUR HONOR.

13        MR. FRIEDMAN:  THANK YOU, YOUR HONOR.

14        MR. BHANSALI:  THANK YOU, YOUR HONOR.

15        THE COURT:  THANK YOU.

16        THE CLERK:  COURT IS ADJOURNED.

17        (THE PROCEEDINGS WERE CONCLUDED AT 2:34 P.M.)

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16  _____
    LEE-ANNE SHORTRIDGE, CSR, CRR
17  CERTIFICATE NUMBER 9595

18         DATED:  MARCH 2, 2018

19

20

21

22

23

24

25