Kalpana Srinivasan (237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: ksrinivasan@susmangodfrey.com

Joseph W. Cotchett (36324)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email: jcotchett@cpmlegal.com

[Additional Counsel for Plaintiffs on Signature Page]

*Plaintiffs' Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: QUALCOMM ANTITRUST LITIGATION | Case No. 5:17-md-02773-LHK |
| | The Honorable Lucy H. Koh |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| | Date: |
| | Time: |
| | Place:   Courtroom 8 |
| | First Amended Consolidated Class Action Complaint filed June 13, 2018 |

TO ALL PARTIES HEREIN AND TO THEIR RESPECTIVE ATTORNEYS FO RECORDS:

PLEASE TAKE NOTICE that at a date and time to be determined at the United States Courthouse, 280 South First Street, San Jose, California, 95113, before the Hon. Lucy H. Koh, United States District Judge, Plaintiffs Sarah Key, Terese Russell, Carra Abernathy, Leonidas Miras, and James Clark ("Class Plaintiffs"), will and hereby do move the Court for a preliminary injunction restraining defendant Qualcomm Incorporated ("Qualcomm") from pursuing, or seeking to enforce, an exclusion order, cease and desist order, or any other injunction issued by the International Trade Commission ("ITC") as to "Apple's imported mobile electronic devices that do not incorporate a Qualcomm brand baseband processor modem" pending the resolution of this action.

The motion is made pursuant to 28 U.S.C. § 1651 ("All Writs Act") and the Court's authority to render all writs necessary in aid of its jurisdiction.  In particular, enforcement of the exclusion order Qualcomm seeks in its ITC complaint—which would exclude from the U.S. market Apple products that use premium LTE modem chips supplied by Qualcomm's only premium LTE chipset competitor (Intel)—will undermine this Court's ability to enjoin Qualcomm's illegal monopolization and open the premium LTE modem chip market.

This motion is based on this Notice of Motion and the Memorandum of Points and Authorities in Support, filed concurrently herewith, the pleadings and documents on file in this case, and other such argument and evidence as may be presented by counsel at the hearing on this motion.

Dated: June 28, 2018

By: /s/  *Kalpana Srinivasan*
Kalpana Srinivasan
Marc M. Seltzer
Steven G. Sklaver
Amanda K. Bonn
Oleg Elkhunovich
Krysta Kauble Pachman
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: ksrinivasan@susmangodfrey.com
Email: mseltzer@susmangodfrey.com
Email: ssklaver@susmangodfrey.com

Email: abonn@susmangodfrey.com
Email: oelkhunovich@susmangodfrey.com
Email: kpachman@susmangodfrey.com

Joseph Grinstein
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: jgrinstein@susmangodfrey.com

Joseph W. Cotchett
Adam J. Zapala
Brian Danitz
Mark F. Ram
Michael A. Montaño
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email: jcotchett@cpmlegal.com
Email: azapala@cpmlegal.com
Email: bdanitz@cpmlegal.com
Email: mram@cpmlegal.com
Email: mmontano@cpmlegal.com

*Plaintiffs' Co-Lead Counsel*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

*Plaintiffs' Steering Committee*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM
PURSUING SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ..................................................................................................4

    A.     Procedural Stance And Related Matters ....................................................4

    B.     Class Plaintiffs are Asking this Court to Address Qualcomm's Anti-competitive Conduct..........................................................................5

          1.     Qualcomm's Monopoly Power In Modem Chip Markets. .........5

          2.     Qualcomm's "No License-No Chips" Policy. .............................7

          3.     Qualcomm Refuses to License Its Competitors to Its SEPs. ....................................................................................10

          4.     Qualcomm's Exclusive Relationship With Apple. ...................11

    C.     Qualcomm Seeks To Maintain Its Monopoly Through Its ITC Proceeding..........12

III.    ARGUMENT ....................................................................................................13

    A.     This Court Should Exercise Its Authority Under The All Writs Act (28 U.S.C. § 1651) To Protect Its Authority Over The Class Antitrust Claims. ....................13

IV.    CONCLUSION.................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. United States,*
    317 U.S. 269 (1942)..................................................................................................................13

*Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs,*
    398 U.S. 281 (1970)..................................................................................................................15

*In re Baldwin-United Corp.,*
    770 F.2d 328 (2d Cir. 1985)................................................................................................15, 16

*California v. M&P Investments,*
    46 F. App'x 876 (9th Cir. 2002) ..............................................................................................13

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ...................................................................................................14

*In re Diet Drugs,*
    282 F.3d 220 (3d Cir. 2002)......................................................................................................15

*Flanagan v. Arnaiz,*
    143 F.3d 540 (9th Cir. 1998) ...................................................................................................15

*Hamilton v. Nakai,*
    453 F.2d 152 (9th Cir. 1972) ...................................................................................................13

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .................................................................................................15

*In re Managed Care Litig.,*
    236 F. Supp. 2d 1336 (S.D. Fla. 2002) .................................................................................1, 14

*Realtek Semiconductor Corp. v. LSI Corp.,*
    946 F. Supp. 2d 998 (N.D. Cal. 2013) ....................................................................................16

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.,*
    428 F.3d 831 (9th Cir. 2005) ...................................................................................................15

*United States v. BNS Inc.,*
    858 F.2d 456 (9th Cir. 1988) ......................................................................................3, 13, 14, 16

*In re Uranium Antitrust Litig.,*
    617 F.2d 1248 (7th Cir. 1980) .................................................................................................13

i

*Winkler v. Eli Lilly & Co.*,
    101 F.3d 1196 (7th Cir. 1996) ..................................................................................16

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
    705 F.2d 1515 (9th Cir. 1983) ..............................................................................3, 14

**Statutes**

19 U.S.C. § 1337(j)(2) ........................................................................................................1

28 U.S.C. § 2283 ...............................................................................................................15

28 U.S.C. § 1651 ....................................................................................................1, 13, 15

Federal Trade Commission Act § 5, 15 U.S.C. § 45 ..........................................................4

**Rules**

Federal Rule of Civil Procedure Rule 65 ..........................................................................16

**Other Authorities**

Apple Inc.'s Amended Complaint, *Apple, Inc. v. Qualcomm, Inc.*, No. 3:17-cv-00108,
    ECF 83 (S.D. Cal. Jan. 20, 2017) ............................................................................5

Apple's Inc.'s Complaint, *Apple, Inc. v. Qualcomm, Inc.*, No. 3:17-cv-00108, ECF 1
    (S.D. Cal. Jan. 20, 2017) ..........................................................................................4

Brief of *Amicus Curiae* Intel Corporation In Support of Plaintiff's Opposition to
    Defendant's Motion to Dismiss, *FTC v. Qualcomm Inc.*, No. 5:17-cv-220-LHK ECF
    92-1 (N.D. Cal. May 12, 2017) ..................................................................................8

Brief of *Amici Curiae* Samsung Electronics Co. Ltd. and Samsung Semiconductor, Inc. in
    Opposition to Qualcomm Incorporated's Motion to Dismiss, *FTC v. Qualcomm Inc.*,
    No. 5:17-cv-00220-LHK, ECF No. 99 (N.D. Cal. May 15, 2017) ..........................11

Notice of Institutional Investigation, *In re Certain Mobile Electronic Devices and Radio
    Frequency and Processing Components Thereof*, Inv. No. 337-TA-1065, Aug. 8,
    2017, https://www.usitc.gov/secretary/fed_reg_notices/337/337_1065_notice
    _08082017sgl.pdf......................................................................................................12

FTC's Complaint, *FTC v. Qualcomm Inc.*, No. 5:17-cv-220-LHK, ECF 1 (N.D. Cal. Jan.
    17, 2017) Qualcomm Sends Letter to Stockholders and Files Investor..................4

Presentation, news release, Jan. 16, 2018,
    https://www.qualcomm.com/news/releases/2018/01/16/qualcomm-sends-letter-
    stockholders-and-files-investor-presentation ...........................................................6

Wharton School and ATREG Release Key Findings of Joint Global IDM Industry Study,
    https://news.wharton.upenn .edu/press-releases/2012/11/wharton-school-and-atreg-
    release-key-findings-of-joint-global-idm-industry-study .........................................3

TABLE OF AUTHORITIES

1

## I.    INTRODUCTION

Class Plaintiffs respectfully request an order to prevent Qualcomm from magnifying its anticompetitive conduct in the CDMA and LTE modem chip markets at issue in this action by its seeking an exclusion order of only competing products in the International Trade Commission ("ITC"). Class Plaintiffs and the Federal Trade Commission ("FTC") have asked this Court to remedy Qualcomm's anticompetitive behavior in the CDMA and premium LTE modem chip markets and to enable free and open competition in these markets, including by enjoining Qualcomm's exclusivity agreements with Apple as alleged in Class Plaintiffs' First Amended Consolidated Class Action Complaint ("FCAC").  Qualcomm seeks an order from the ITC to block importation into the United States of Apple devices – but *only* those that contain an alternative to Qualcomm's premium LTE modem chips.  A hearing before the ITC – in which Qualcomm has sought to pursue patent infringement claims against only Apple phones with Intel modem chips – concluded on June 26, 2018.  An initial determination will issue by a statutory deadline of September 14, 2018 with a final exclusion order, if Qualcomm prevails, in place by January 14, 2019 or before.[1]  As the ITC proceeding has made clear, the impact of the relief requested by Qualcomm would be to entrench further its own monopoly position in the modem chip market by physically keeping out devices employing modem chips manufactured by Qualcomm's competitors.  Class Plaintiffs make this request under the All Writs Act, 28 U.S.C. § 1651, which permits this Court to enjoin another proceeding to protect the Court's "flexibility and authority to decide" the case before it.   To preserve this flexibility, Class Plaintiffs ask this Court to restrain Qualcomm from pursuing, enforcing, or seeking to enforce, an exclusion order, cease and desist order, or other injunctive relief as to "Apple's imported mobile electronic devices that do not incorporate a Qualcomm brand baseband processor modem" pending the resolution of the antitrust action in this Court.  *See In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1341-43 (S.D. Fla. 2002) (enjoining defendants from proceeding with preliminarily approved settlement agreement in separate federal action).

---

[1] The final order is subject to a 60-day Presidential review period.  19 U.S.C. § 1337(j)(2).

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

A ruling by this Court to enjoin Qualcomm from pursuing its exclusion order pending the outcome of a ruling on Class Plaintiffs' antitrust claims will not harm Qualcomm: Qualcomm has a parallel district court action on the claims it is bringing in the ITC for infringement of its patents against Apple and can continue to accrue damages there, should its patent claims be sound. But that is different than the extreme remedy of keeping out of the U.S. market through an ITC exclusion order the only fledgling competitor to Qualcomm's modem chips while Qualcomm's anticompetitive behavior is under judicial review here.

Qualcomm obtained its monopoly by means of a combination of restraints, including refusing to license its declared cellular standard essential patents ("SEPs") to competing modem chip suppliers, conditioning access to its modem chips on purchasers' acceptance of a license that does not comply with Qualcomm's FRAND obligations (its "No License-No Chips Policy"), and insisting that device manufacturers enter into exclusive dealing contracts with Qualcomm that are designed to foreclose challenges to Qualcomm's monopoly, including its exclusive supply arrangement with Apple. FCAC ¶ 8.

Following the filing of cases brought by Class Plaintiffs and the FTC, Qualcomm filed a complaint in the ITC alleging Apple products infringe various Qualcomm non-standard essential patents ("NEPs"). However, Qualcomm seeks a very particular form of relief: Qualcomm has asked the ITC to exclude the importation of *only* those Apple iPhone 7s, 8s, and Xs (collectively "iPhones") that include modem chips from Intel, while permitting Apple to import iPhones that include chips from Qualcomm.

The selective exclusion order Qualcomm seeks in the ITC would freeze out Intel's nascent challenge to Qualcomm's illegal monopoly. Intel has only recently made inroads into the market by obtaining some of Apple's business. Apple is the only OEM that is purchasing premium LTE modem chips from a supplier other than Qualcomm. The impact of keeping Intel out of the market will be significant. At the recent ITC hearing, Intel's Assistant Director for Product Assurance and Security, Steven Bowers, described as "devastating" the impact of losing the foothold it is just starting to gain as a

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

modem chip supplier to Apple.  Ex. 1 (IPhone Chip Deal Loss Would Kill Intel 5G Plans, Atty Says, June 22, 2018, Law360).[2]

Qualcomm seeks to maintain, through the ITC action, the high barriers to entry that Qualcomm's own illegal conduct has exacerbated.[3]  In the ITC proceeding, Qualcomm asserts Apple "could replace any accused products subject to an exclusion order" by *using Qualcomm modem chips*.   Ex. 2 (Qualcomm ITC Publ. Int. St.) at 4.  This lack of competition is exactly the harm about which Class Plaintiffs complain and seek to remedy in this action.

In short, the exclusion order Qualcomm seeks would injure competition in a market already suffering from Qualcomm's anticompetitive behavior.

Class Plaintiffs ask the Court to exercise its authority under the All Writs Act to bar Qualcomm from pursuing enforcement of an ITC exclusion order, cease and desist order, or other injunctive relief as to "Apple's imported mobile electronic devices that do not incorporate a Qualcomm brand baseband processor modem" at least until this Court has a chance to address the antitrust claims on the merits. *See United States v. BNS Inc.*, 858 F.2d 456, 460-62 (9th Cir. 1988) (affirming, with modifications, district court's grant of injunction preventing merger that threatened irreparable harm to competition because injunction was appropriate to preserve court's jurisdiction under Antitrust Procedures and Penalties Act); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983) ("A United States District Court hearing a particular case possesses the power to enjoin the filing of related lawsuits in other federal courts.").

---

[2] Exhibits refer to those attached to the Declaration of Kalpana Srinivasan in Support of Plaintiffs' Motion for Preliminary Injunction Barring Qualcomm From Pursuing Selective Exclusion of Competing Chipsets in the International Trade Commission.

[3] In 2012, the average time-to-market of a modem chip was about 11 months for a revision of an existing product design, and about 17 months for a new product design.  *See* Wharton School and ATREG Release Key Findings of Joint Global IDM Industry Study,  https://news.wharton.upenn.edu/press-releases/2012/11/wharton-school-and-atreg-release-key-findings-of-joint-global-idm-industry-study/.

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

## II.   BACKGROUND

### A.   <u>Procedural Stance And Related Matters</u>

The Class Plaintiffs seek redress of Qualcomm's "anticompetitive practices, including its acquisition and maintenance of a monopoly in the market for baseband processors, refusal to license on non-discriminatory terms its standard essential patents, and coercive de facto exclusive dealing agreements" which "has enabled Qualcomm to maintain its dominant market position, inhibit competitors, and artificially inflate the all-in costs to original equipment manufacturers ('OEM'), which are passed on to consumers who buy cellular devices."  FCAC at ¶ 1.  The relevant antitrust authorities of China, South Korea, Taiwan, and the European Commission have penalized Qualcomm for its anticompetitive practices, which include, *inter alia*:

- Qualcomm's requirement that an implementer must license Qualcomm's SEPs in order to buy Qualcomm's modem chips;

- Qualcomm's prohibition of patent challenges or FRAND litigation against its SEPs, *see, e.g.,* Ex. 3 ███████████████████

- Qualcomm's coercive exclusivity agreements with Apple and other modem chip makers;

- Qualcomm's threats to cutoff chip supply, *see, e.g.,* Exs. 4-6 ███████████ ██████████████████████████

- Qualcomm's refusal to license to competitors, *see e.g.,* Exs. 7-9 ███████████████████████████████ ██████

In a related case, the FTC sued Qualcomm in this Court on January 17, 2017, alleging that Qualcomm's course of conduct violated § 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.  FTC's Complaint, *FTC v. Qualcomm Inc.*, No. 5:17-cv-220-LHK, ECF 1 (N.D. Cal. Jan. 17, 2017) ¶ 147.

Apple also filed suit against Qualcomm in the Southern District of California on January 20, 2017.  Apple's Inc.'s Complaint, *Apple, Inc. v. Qualcomm, Inc.*, No. 3:17-cv-00108, ECF 1 (S.D. Cal. Jan. 20, 2017).  Apple alleges, *inter alia*, that "Qualcomm's unlawful business acts and practices significantly threaten and harm competition in the market for mobile wireless handsets, tablets, and

other CDMA- and LTE-compliant products, in California and elsewhere, thereby causing injury to consumers.   These threatened injuries include the inevitable passing on to consumers of improper royalties demanded by Qualcomm."  Apple Inc.'s Amended Complaint, *Apple, Inc. v. Qualcomm, Inc.*, No. 3:17-cv-00108, ECF 83 (S.D. Cal. Jan. 20, 2017) ¶ 659.  Apple also seeks an end to Qualcomm's practices of excluding competitors, like Intel, from the market, including (1) discriminating between potential licenses, including its unwillingness to license competitors to its declared SEPs (*id.* ¶¶ 178-183); (2) the forced exclusivity or quasi-exclusivity, thereby preventing Apple from second sourcing (*id.* ¶¶ 96-98); and (3) its "no license-no chip" policy, each of which Qualcomm uses to drive up the costs of using its competitors' products and force them from the market (*id.* ¶ 84).

**B.**     **Class Plaintiffs are Asking this Court to Address Qualcomm's Anti-competitive Conduct.**

Class Plaintiffs ask this Court to remedy the anti-competitive conduct described below and as detailed in Class Plaintiffs' First Amended Consolidated Class Action Complaint.  FCAC ¶¶ 30–156.

1.     Qualcomm's Monopoly Power In Modem Chip Markets.

At issue are CDMA and premium-LTE modem chips, used in flagship cellular products like the Apple iPhone.   "LTE" functionality has continually advanced since the first LTE network was introduced in 2010.  These advances have allowed for progressively faster data speeds.  Accordingly, as LTE technology has progressed, modem chip manufacturers have had to add features to keep up.  For premium tier handsets, OEMs typically require modem chips with "advanced LTE functionality" that support advanced data download and upload speeds, in addition to other functions.  Significantly, for an OEM designing and manufacturing a premium tier handset, a modem chip that supports only earlier LTE technology is not a substitute for a modem chip that supports advanced LTE standards.  Accordingly, just as OEMs produce handsets in "tiers," competition among LTE modem chip suppliers also occurs in tiers.  FCAC ¶ 39.  Indeed, Qualcomm organizes modem chip product development plans along segments of smartphone platforms, separated by premium, high, mid, and low tiers.  Ex. 10

██████████████████████████████████████████████████ Ex. 11 ████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████ Qualcomm has consistently been the

dominant supplier of premium LTE broadband processors.  Qualcomm recently announced that it expects to maintain significant leadership in forthcoming 5G standards and that its advantaged position in 5G is due in part to the leadership and success it enjoyed with 4G and 4G LTE Advanced standards.[4]

Qualcomm holds a monopoly position in the CDMA and premium LTE modem chip market. FCAC ¶¶ 54-64.  Although suppliers other than Qualcomm and Intel offer modem chips that support LTE functionality, they do not offer premium LTE modem chips.  Intel has achieved some inroads in premium LTE modem chips only recently, when Intel began to supply a portion of Apple's modem chip requirements for the iPhone 7.  Ex. 12 ███████████████████████████████  And Qualcomm has virtually no competition for CDMA modem chips.  Ex. 11 ██████████████████ 0████████████████████████████████████████████████████████████████

██████████████████████████████████        ███████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████[5]   Moreover, Non-CDMA modem chips are not a substitute for CDMA modem chips.  *See* Ex. 14 ████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████  Ex. 15 ███████████████████

---

[4] *See* Qualcomm, Qualcomm Sends Letter to Stockholders and Files Investor Presentation, news release, Jan. 16, 2018, https://www.qualcomm.com/news/releases/2018/01/16/qualcomm-sends-letter-stockholders-and-files-investor-presentation.

[5] *See also* Ex. 13 ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

1   ██████████████████████ *see also* Ex. 16 ████████████████████

2   ██████████████████████████████████████ Ex. 17 (████████

3   ████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   █████████████████████████████████████████

6        Qualcomm's monopoly power also is evidenced by its ability to charge above market prices for

7   premium LTE modem chips prior to the recent and relative increase in competition.  ██████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████

10  ██████████████████████ Ex. 18 ███████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ██████████████

14       2.     Qualcomm's "No License-No Chips" Policy.

15       Qualcomm has imposed several interrelated anti-competitive restraints to maintain its CDMA

16  and premium LTE modem chip monopoly.  *See* FCAC ¶¶ 30–156 (describing these anticompetitive

17  practices in detail).  First, it instituted a "No License-No Chips" policy.  Qualcomm holds patents that it

18  claims are essential to practice certain industry cellular standards.  Unlike other firms that supply

19  components to cellular handset or tablet manufacturers (also known as "original equipment

20  manufacturers" or "OEMs"), Qualcomm refuses to sell its components (modem chips) to an OEM

21  unless the OEM agrees to a separate SEP license with Qualcomm – one that covers all devices the OEM

22  sells regardless of the chip supplier – on Qualcomm's preferred terms.  FCAC ¶ 8.  ██████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████ Ex. 11

26  ██████████████████████████████████████ *see also* Ex. 19 ██████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████

[6] As a condition for this modem chip sale, Qualcomm requires that an OEM pay Qualcomm exorbitant royalties for every cellular handset and tablet it sells, regardless of whether the product contains a Qualcomm modem chip.   Ex. 22

Qualcomm maintains this policy by leveraging its position as a modem chip monopolist. Ordinarily, a prospective patent licensee that disagrees with a licensor's demands could resort to the courts or another neutral arbiter on questions of infringement, validity, and technical merit justifying a royalty rate—or negotiate a reasonable royalty by credibly threatening such litigation.  But Qualcomm answers any opposition to its royalties with threats to disrupt the OEM's supply of Qualcomm modem chips.  *See* Brief of *Amicus Curiae* Intel Corporation In Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, *FTC v. Qualcomm Inc.*, No. 5:17-cv-220-LHK ECF 92-1 (N.D. Cal. May 12, 2017) ("Intel Br.") at 4-5; *see, e.g.*, Exs. 4-6 As an example,

Ex. 23

Qualcomm has actively enforced its No License-No Chips policy by repeatedly making clear to OEMs that failure to agree to licenses or license terms required by Qualcomm would result in the loss of

[6]

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

1  supply of Qualcomm modem chips, which the OEMs viewed as must-have.  For example, ██████

2  ███████████████████████████████████████████████████████

3  ████████████████████████████ Ex. 24 █████████████████

4  ███████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████

6  ██████████████████

7  As another example, ████████████████████████████████

8  ███████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████

10 ██████████████████████████████████████████████ Ex. 25 ██

11 ███████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████

13 ████████████████████ Ex. 26 ███████████████████████████

14 ███████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████

16 ███████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████

18 ██████ Ex. 27 ████████████████████████████████████████

19 ███████████████████████████████████████████████████████

20 ████████████████████████████████████████ Ex. 25 ████████

21 ███████████████████████████████████████████████████████

22 ███████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████

24 ████████████████████████████████████████████████ Ex. 28

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

█████████████████████████████

Because technical and supply constraints prevent OEMs from completely abandoning Qualcomm, they must acquiesce in Qualcomm's license terms.  Qualcomm exploits this leverage to impose elevated costs on OEMs that purchase modem chips from anyone other than Qualcomm, reinforcing Qualcomm's monopoly in premium LTE modem chips.

3.    Qualcomm Refuses to License Its Competitors to Its SEPs.

Qualcomm refuses to license its FRAND-encumbered declared SEPs to its competing modem chip manufacturers.  FCAC ¶ 8; *see also* Ex. 33 █████████████████████████████████████████████████████████████ This refusal runs afoul of its commitments to license on fair, reasonable and nondiscriminatory terms that Qualcomm made to standard-setting organizations Qualcomm's failure to honor its FRAND commitments to keep that promise, makes it impossible for its competitors (such as Intel) to offer OEMs fully licensed competing devices (such as the modem chips Intel sells).  FCAC ¶ 8; *see e.g.*, Exs. 7-9 ████████████████████████████████████████████This, in turn, leaves OEMs with no way to avoid the predations of Qualcomm's no license-no chips policy.

For example, █████████████████████████████████████
██████████████████

███████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████

──────────────

7 ███████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████



Ex. 34

Ex. 35

As another example, Samsung, a potential Qualcomm modem chip competitor, states that "as a direct consequence of Qualcomm's refusal to license" it does not "sell licensed CDMA or premium LTE chipsets in competition with Qualcomm . . . ."[8]  Samsung manufactures modem chips for use in some of its own cellular devices because it has a license for end cellular devices from Qualcomm.  But such self-supply does not constitute "meaningful competition" in the premium LTE modem chip market.

4.     Qualcomm's Exclusive Relationship With Apple.

Third, Qualcomm entered exclusive supply arrangements with Apple which condition relief from Qualcomm's exorbitant non-FRAND royalties on Apple's promises to buy Qualcomm modem chips exclusively or nearly exclusively.  FCAC ¶ 8; Ex. 36

Ex. 37

Even with the discounts, those royalties were in excess of what any other cellular SEP licensor has ever charged Apple on either a per-patent or an aggregate basis (without any justification based on the relative merits of any patent).[9]   From 2011 to 2016, these arrangements

---

[8] Brief of *Amici Curiae* Samsung Electronics Co. Ltd. and Samsung Semiconductor, Inc. in Opposition to Qualcomm Incorporated's Motion to Dismiss at 9, *FTC v. Qualcomm Inc.*, No. 5:17-cv-00220-LHK, ECF No. 99 (N.D. Cal. May 15, 2017).

[9]

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

foreclosed rivals from competing for Apple's business, which is crucial to success in the premium LTE modem chip market. FCAC ¶¶ 107-108; *see also* Intel Br. 6, 19–21 (because of Qualcomm's exclusive supply arrangements, Intel "(i) lost sales and margin, (ii) missed out on critical opportunities to collaborate with Apple and cellular providers and thus to obtain development feedback, and (iii) lacked the marketplace credibility that a supply contract with Apple would have bestowed.")

Indeed, "Intel only recently gained a foothold in the market, when Apple declined to agree to another exclusive supply arrangement with Qualcomm and instead signed a contract with Intel for supply of a portion of Apple's modem needs for the iPhone 7." Ex. 39 (Intel ITC Publ. Int. St.) at 2. "When Apple introduced a degree of competition by dual-sourcing from Intel starting in late 2016, Qualcomm responded by increasing significantly the royalties it demanded from Apple. Qualcomm responded by withholding rebates to Apple (worth almost $1 billion)." Ex. 40 (Apple ITC Publ. Int. St.) at 3.

### C.    Qualcomm Seeks To Maintain Its Monopoly Through Its ITC Proceeding.

On July 7, 2017, Qualcomm filed a complaint in the ITC alleging infringement of six NEPs[10] by "Apple's imported mobile electronic devices that do not incorporate a Qualcomm brand baseband processor modem." Ex. 41 (ITC Compl.) ¶ 2.[11] Qualcomm seeks "a permanent limited exclusion order directed to products manufactured by or on behalf of Apple . . . excluding entry into the United States of mobile electronic devices that *do not incorporate a Qualcomm brand baseband processor modem* and that infringe one or more claims of the Asserted Patents." *Id.* ¶ 107(c) (emphasis added).) The ITC investigation was instituted on August 8, 2017.[12] The request, if granted, would bar Intel premium LTE modem chips from entering the United States. Ex. 39 (Intel ITC Publ. Int. St.) at 3.

---

[10] Qualcomm has since dropped its infringement claims as to one of those patents.
[11] *In re Certain Mobile Electronic Devices and Radio Frequency and Processing Components Thereof*, Inv. No. 337-TA-1065.
[12] Notice of Institution of Investigation, *In re Certain Mobile Electronic Devices and Radio Frequency and Processing Components Thereof*, Inv. No. 337-TA-1065, Aug. 8, 2017, https://www.usitc.gov/secretary/fed_reg_notices/337/337_1065_notice_08082017sgl.pdf.

Qualcomm's obvious goal is to exclude *Intel premium LTE modem chips* from the United States, while permitting allegedly infringing Apple products so long as they incorporate a Qualcomm modem chip. Qualcomm has even stated to the ITC that its selective order would not be against the public interest because Qualcomm can "fill any void" by supplying the modem chips necessary for *all* iPhones. Ex. 2 (Qualcomm ITC Publ. Int. St.) at 2.

## III.   ARGUMENT

Class Plaintiffs have sought relief in this Court to remedy the impact of Qualcomm's anti-competitive conduct on consumers. The selective nature of the relief Qualcomm seeks from the ITC threatens to undermine the jurisdiction and authority of this Court before it can act. Class Plaintiffs thus ask the Court to intervene to prevent this result.

### A.   **This Court Should Exercise Its Authority Under The All Writs Act (28 U.S.C. § 1651) To Protect Its Authority Over The Class Antitrust Claims.**

The All Writs Act provides federal courts with the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. A federal court's authority under the All Writs Act "should be broadly construed." *California v. M&P Investments*, 46 F. App'x 876, 878 (9th Cir. 2002) (quoting *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1972)) (affirming federal district court's stay of municipal administrative abatement order where federal proceeding sought to adjudicate liability for the environmental contamination at issue). In the district court's sound discretion, its power under the All Writs Act may be applied to "achieve all rational ends of law." *Id.* (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)).

In the antitrust context, federal courts have used their authority under the All Writs Act to maintain the status quo to allow time to evaluate and, if necessary, remedy anti-competitive conduct. *See, e.g.*, *BNS Inc.*, 858 F.2d at 460-62 (affirming, with modifications, district court's grant of injunction preventing merger because injunction was appropriate to preserve court's jurisdiction under Antitrust Procedures and Penalties Act); *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1259-61 (7th Cir. 1980) (holding that district court did not abuse its discretion in enjoining certain defendants from transferring funds out of the United States). In *BNS Inc.*, the Ninth Circuit explained that the district court had

1   "merely issued an interim order to maintain the status quo pending completion of" its analysis of the

2   legal issues over which it had jurisdiction.  *BNS Inc.*, 858 F.2d at 461.  Specifically, the district court had

3   enjoined a proposed hostile takeover that threatened "irreparable harm to competition," though the Ninth

4   Circuit modified the injunction to allow the takeover to proceed so long as a particular subsidiary of the

5   target company was placed under the control of a trustee.  *Id.* at 463, 466.

6          The All Writs Act also confers upon a federal district court the authority to enjoin the

7   proceedings before another federal court.  *Wood*, 705 F.2d at 1523 (stating that "[a] United States

8   District Court hearing a particular case possesses the power to enjoin the filing of related lawsuits in

9   other federal courts" and affirming injunction, with modifications, that barred parallel federal suits); *In*

10  *re Managed Care Litig.*, 236 F. Supp. 2d at 1341-43 (enjoining defendant from proceeding in any

11  manner with a preliminarily approved class action settlement in a separate federal case where settlement

12  would have involved the same claims that were before the issuing court); c*f. Decker Coal Co. v.*

13  *Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986) (affirming grant of injunction and

14  explaining that sound judicial discretion allows a federal court to enjoin later filed actions in other

15  federal courts).  Multidistrict Litigation ("MDL") courts in particular have utilized this act to preserve

16  their mandate to resolve exceedingly complex cases.  *See In re Managed Care Litig.*, 236 F. Supp. 2d at

17  1341-43.

18         In *In re Managed Care*, a class of physicians sued managed care insurance companies, asserting

19  that the companies' policies unlawfully interfered with the physicians' delivery of care to their patients.

20  *Id.* at 1338.  Basing its analysis principally on the special role of MDL courts, *In re Managed Care*

21  reasoned that failing to enjoin the defendants from proceeding with a preliminarily approved settlement

22  in another federal action would have frustrated the Judicial Panel on Multidistrict Litigation ("JPML")'s

23  mandate and that an injunction against the defendants was therefore appropriate to protect the Court's

24  jurisdiction.  *Id.* at 1345 (stating that permitting the settlement "would effectively render the JPML's

25  decisions and existence moot").  Moreover, the court admonished the defendants for seeking to

26  circumvent the court's jurisdiction by maneuvering to resolve the claims in another jurisdiction and for

27  failing to notify the MDL court of the overlapping issues in play.  *Id.* at 1342.

28

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

To interpret the All Writs Act, courts frequently look "to cases interpreting similar language appearing in the Anti-Injunction Act." *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985) (affirming injunction of persons having actual knowledge of the court's order from commencing any action or proceeding against any defendants in the multidistrict litigation that may in any way affect the right of any plaintiff or purported class member); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (affirming federal court's stay of state class actions upon preliminary approval of federal class action settlement under both the All Writs Act and the Anti-Injunction Act). The Anti-Injunction Act prohibits federal courts from granting injunctions to stay proceedings in *state* courts, subject to specific exceptions. One of those exceptions permits a federal court to issue such an injunction where doing so is "necessary in aid of its jurisdiction." 28 U.S.C. § 2283.[13] This exception is similar to the language of the All Writs Act. *Id.* § 1651 (conferring on federal courts the authority to "issue all writs *necessary* or appropriate *in aid of their respective jurisdictions* and agreeable to the usages and principles of law" (emphasis added)). However, the court's authority under the All Writs Act to issue writs "appropriate in aid" of jurisdiction is, if anything, "broader than the exception contained in the Anti–Injunction Act." *In re Diet Drugs*, 282 F.3d 220, 239 (3d Cir. 2002) (holding state court action properly enjoined by federal MDL court); *cf. Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005) (explaining that the Anti-Injunction Act limits the court's power under the All Writs Act when enjoining state proceedings).

In sum, the Anti-Injunction Act permits "federal courts to enjoin state courts in cases where 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir. 1998) (quoting *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970)) (affirming injunction barring plaintiff from continuing state court litigation in contravention of settlement

---

[13] In full, Section 2283 reads: "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

agreement over which federal court had retained jurisdiction).  Courts have recognized the special power of MDL courts to issue injunctions under the Anti-Injunction Act as well.  *See, e.g.*, *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1205 (7th Cir. 1996) (concluding, in MDL proceeding against drug manufacturer, "that district courts in charge of complex multidistrict litigation have the authority to issue injunctions to protect the integrity of their pre-trial rulings," but holding that the particular injunction challenged lacked sufficient factual support).  Furthermore, it is not required for a district court to first issue a judgment for the "in aid of its jurisdiction" exception to apply.  *In re Baldwin-United Corp.*, 770 F.2d at 335 ("Even before a federal judgment is reached, however, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.") (internal quotations omitted)).

In another case involving a related ITC action, a court in this District enjoined enforcement of any exclusion order or injunctive relief from the ITC until the district court reached its decision on the substantive issues in play.  *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1008-10 (N.D. Cal. 2013) (granting request for "an order enjoining defendants' from enforcing any exclusion order or injunctive relief that they might receive until" after the District Court determined defendants' obligations to license certain patents on reasonable and non-discriminatory terms).  Plaintiff Realtek Semiconductor Corp. filed suit in federal district court asserting that Defendant LSI Corp. had breached its obligation to license its declared standard essential patents on reasonable and non-discriminatory terms by initiating an ITC action against Realtek before actually offering Realtek a license.  *Id.* at 1002-03.  The court agreed and granted Realtek's motion for summary judgment on the issue and, in addition, granted Realtek's request for a preliminary injunction under Federal Rule of Civil Procedure Rule 65. *Id.* at 1005, 1008-10.

Here, the very relief Qualcomm has sought from the ITC—to bar selectively its only prospective competitor in the modem chip market—will magnify Qualcomm's anticompetitive conduct.  *See BNS Inc.*, 858 F.2d at 463-64.  Furthermore, if Apple can no longer purchase premium LTE modem chips from Intel, that may lead Intel to leave the market altogether. ███████████████

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION

[REDACTED] Ex. 12 [REDACTED]

[REDACTED] *see also* Ex. 39 (Intel ITC Publ. Int. St.) at 4 ("[A]n exclusion order would fence Intel, Qualcomm's only remaining competitor, out of the premium LTE market for reasons unrelated to the merits of its products."); Ex. 42 [REDACTED]

[REDACTED]

[REDACTED]  In Intel's place, Qualcomm asserts that its own modem chips can then "easily meet the public demand for such devices," thereby reestablishing as a practical matter its exclusive relationship with Apple.  Ex. 2 (Qualcomm ITC Publ. Int. St.) at 2.

To ensure this Court retains the flexibility to remedy Qualcomm's anti-competitive practices and remove unlawful barriers to competition to the premium LTE modem chip market, an injunction is necessary to prevent enforcement of the relief sought by Qualcomm: an exclusion or cease and desist order against only Apple's ***Intel***-based iPhones.  Ex. 39 (Intel ITC Publ. Int. St.) at 4.  Given the high barriers to  entry and expansion—including the time it takes to redesign a product to use a different modem chip—it could take years for Intel to reenter the market (or a new competitor to enter in the first instance), even if the Court otherwise acts to enjoin Qualcomm's illegal anti-competitive conduct.  FCAC ¶¶ 120, 198.   These barriers to entry include qualification with carriers, high sunk costs, substantial risks for entrants and customers, and the need for experience and technical expertise.[14]

[REDACTED]

[REDACTED]

---

[14] [REDACTED]

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION



Ex. 45

Ex. 42    15

Ex. 46

Ex. 16

Other modem chip suppliers are unlikely to enter the market in Intel's place if Qualcomm can selectively target devices using a non-Qualcomm modem chip for exclusion.  Both the potential modem chip vendor and its customers make significant (joint) investments when deciding to work together on a modem chip project, and thus both face substantial risks.  For example, "Intel has invested billions of dollars to develop next generation advanced modems and technologies to improve the performance and

---

[15] Given the delicate and high-stakes business decisions in play, the Court should not feel obligated to wait and see if the ITC actually issues the order Qualcomm has requested.  The market is already very difficult to penetrate due to Qualcomm's anti-competitive practices, and the mere uncertainty faced by Intel and Apple because of Qualcomm's ITC action itself compromises the possibility of free and open competition.

1 functionality of modern smartphones and cellular communications."  (Ex. 39 (Intel ITC Publ. Int. St.)

2 at 1; Ex. 47 ███████████████████████████████████████████████

3     Thus, if Qualcomm can obtain and then enforce an ITC exclusion order barring all Apple

4 "mobile electronic devices that do not incorporate a Qualcomm brand baseband processor modem,"

5 Apple will return to purchasing premium LTE modem chips exclusively from Qualcomm again.  That is

6 the same exclusive relationship that Qualcomm has maintained through the anti-competitive conduct

7 challenged in this case.   FCAC ¶¶ 8(c), 97-117 ("Qualcomm's exclusive agreements with Apple

8 prevented Qualcomm's competitors from attaining these benefits and foreclosed a substantial share of

9 the market for premium LTE chips."  FCAC ¶ 109).



Ex.   48

Ex.   49

16     With no other actual or potential competitors capable of challenging Qualcomm's CDMA and

17 premium LTE modem chip monopoly in the foreseeable future, its monopoly power will remain

18 entrenched.  Ex. 50 (CCIA ITC Publ. Int. St.) at 5 ("An exclusion order would further enable Qualcomm

19 to raise rivals' costs, resulting in a higher likelihood of exit and reduced competition in the baseband

20 processor market.  This would allow Qualcomm to continue to impose monopoly pricing on the market,

21 resulting in increased consumer costs for the foreseeable future").

22 **IV.    CONCLUSION**

23     For the reasons set forth herein, Class Plaintiffs respectfully request that this Court grant their

24 motion for a preliminary injunction and enter an order barring Qualcomm (and its subsidiaries) from

25 enforcing, or seeking to enforce, an ITC exclusion order, cease and desist order, or other injunctive relief

26 against the importation of Apple products that do not include a Qualcomm modem chip.

Dated: June 28, 2018

By:   /s/  Kalpana Srinivasan
Kalpana Srinivasan
Marc M. Seltzer
Steven G. Sklaver
Amanda K. Bonn
Oleg Elkhunovich
Krysta Kauble Pachman
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: ksrinivasan@susmangodfrey.com
Email: mseltzer@susmangodfrey.com
Email: ssklaver@susmangodfrey.com
Email: abonn@susmangodfrey.com
Email: oelkhunovich@susmangodfrey.com
Email: kpachman@susmangodfrey.com

Joseph Grinstein
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: jgrinstein@susmangodfrey.com

Joseph W. Cotchett
Adam J. Zapala
Brian Danitz
Mark F. Ram
Michael A. Montaño
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
Email: jcotchett@cpmlegal.com
Email: azapala@cpmlegal.com
Email: bdanitz@cpmlegal.com
Email: mram@cpmlegal.com
Email: mmontano@cpmlegal.com

*Plaintiffs' Co-Lead Counsel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

***Plaintiffs' Steering Committee***

MOTION FOR PRELIMINARY INJUNCTION BARRING QUALCOMM FROM PURSUING
SELECTIVE EXCLUSION OF COMPETING CHIPSETS IN THE INTERNATIONAL TRADE COMMISSION