1  KEKER, VAN NEST & PETERS LLP          MORGAN, LEWIS & BOCKIUS LLP
   Robert A. Van Nest - # 84065          Richard S. Taffet (pro hac vice)
2  rvannest@keker.com                    richard.taffet@morganlewis.com
   Eugene M. Paige - # 202849            101 Park Avenue
3  epaige@keker.com                      New York, NY 10178-0060
   Cody S. Harris - #255302              Telephone: (212) 309-6000
4  charris@keker.com                     Facsimile:  (212) 309-6001
   Justina Sessions - # 270914
5  jsessions@keker.com                   MORGAN, LEWIS & BOCKIUS LLP
   Jesselyn Friley - # 319198            Willard K. Tom (pro hac vice)
6  jfriley@keker.com                     willard.tom@morganlewis.com
   633 Battery Street                    1111 Pennsylvania Avenue NW
7  San Francisco, CA 94111-1809          Washington, DC 20004-2541
   Telephone:    415 391 5400            Telephone: (202) 739-3000
8  Facsimile:    415 397 7188            Facsimile:  (202) 739-3001

9  CRAVATH, SWAINE & MOORE LLP           MORGAN, LEWIS & BOCKIUS LLP
   Gary A. Bornstein (pro hac vice)      Geoffrey T. Holtz (SBN 191370)
10 gbornstein@cravath.com                gholtz@morganlewis.com
   Yonatan Even (pro hac vice)           One Market, Spear Street Tower
11 yeven@cravath.com                     San Francisco, CA 94105-1596
   825 Eighth Avenue                     Telephone: (415) 442-1000
12 New York, New York 10019-7475         Facsimile:  (415) 442-1001
   Telephone: (212) 474-1000
13 Facsimile:  (212) 474-3700

14 Attorneys for Defendant
   QUALCOMM INCORPORATED
15

16                    UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                          SAN JOSE DIVISION

19 IN RE: QUALCOMM ANTITRUST            Case No. 5:17-md-02773-LHK-NMC
   LITIGATION
20                                       **DEFENDANT QUALCOMM
                                         INCORPORATED'S OPPOSITION TO
21                                       PLAINTIFFS' MOTION FOR
                                         PRELIMINARY INJUNCTION**
22 This Document Relates To:
                                         Date:      August 30, 2018
23 ALL ACTIONS.                          Time:      1:30 p.m.
                                         Dept.:     Courtroom 8, 4th Floor
24                                       Judge:     Hon. Lucy H. Koh

25                                       Trial Date: June 24, 2019

26          **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

27

28

─────────────────────────────────────────────────────────────

1288231

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................2

    A. Plaintiffs waited a year before filing this motion.......................................2

    B. Plaintiffs mischaracterize the factual record regarding competition in the "premium LTE market." ............................................................................3

III. LEGAL STANDARDS ......................................................................................4

IV. ARGUMENT .....................................................................................................6

    A. Plaintiffs lack Article III standing to enjoin Qualcomm's ITC complaint. .............6

        1. Plaintiffs fail to demonstrate that the ITC investigation has caused or will cause them to suffer an injury-in-fact sufficient to confer standing. ....................................................................................6

        2. Plaintiffs cannot point to hypothetical harm to Intel or Apple to satisfy Article III's standing requirements.................................7

    B. Plaintiffs fail to address or satisfy any of the factors required for preliminary injunctive relief. ......................................................................8

    C. The All Writs Act provides no basis for the Court to enjoin proceedings in the ITC. ..................................................................................................10

    D. The *Noerr-Pennington* doctrine protects Qualcomm's right to petition the ITC for redress, despite allegations of anti-competitive effect............15

    E. Qualcomm's ITC complaint is in no way anti-competitive and has little bearing on this action. ..............................................................................16

V. CONCLUSION.................................................................................................17

1288231

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Federal Cases**</u>

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*
    486 U.S. 492 (1988) ................................................................................ 15

*Alton Box Bd. Co. v. Esprit de Corp.*
    682 F.2d 1267 (9th Cir. 1982) ................................................................ 13

*Ashlow Ltd. v. Morgan Construction Co.*
    672 F.2d. 371 (4th Cir. 1982) ................................................................ 11

*Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*
    398 U.S. 281 (1970) ................................................................................ 15

*Balsley v. San Jose Dev. Corp.*
    1995 WL 108207 (N.D. Cal. Mar. 3, 1995) ............................................ 6

*Bennett v. Medtronic, Inc.*
    285 F.3d 801 (9th Cir. 2002) .................................................................. 11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
    429 U.S. 477 (1977) ................................................................................ 16

*Cal. Motor Transp. Co. v. Trucking Unlimited*
    404 U.S. 508 (1972) ................................................................................ 15

*Cal. v. Am. Stores. Co.*
    495 U.S. 271 (1990) .................................................................................. 5

*Cheminor Drugs, Ltd. v. Ethyl Corp.*
    168 F.3d 119 (3d Cir. 1999) .................................................................... 15

*City of L.A. v. Lyons*
    461 U.S. 95 (1983) .................................................................................... 5

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) .............................................................................. 7, 8

*ConocoPhilips Co. v. Gonzalez*
    2012 WL 538266 (N.D. Cal. Feb. 17, 2012) .......................................... 10

*Ctr. for Food Safety v. Vilsack*
    636 F.3d 1166 (9th Cir. 2011) .................................................................. 9

*DaimlerChrysler Corp. v. Cuno*
    547 U.S. 332 (2006) .................................................................................. 5

*Exeltis USA Inc. v. First Databank, Inc.*
    2017 WL 6539909 (N.D. Cal. Dec. 21, 2017) ...................................... 9, 1

*Fla. Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*
    601 F.2d 199 (5th Cir. 1979) .................................................................. 11

ii

1288231

*Flanagan v. Arnaiz*
    143 F.3d 540 (9th Cir. 1998) ................................................................... 13

*Gerlinger v. Amazon.com Inc.*
    526 F.3d 1253 (9th Cir. 2008) ................................................................... 5

*Grider v. Keystone Health Plan Cent., Inc.*
    500 F.3d 322 (3d Cir. 2007)...................................................................... 13

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 12

*Huu Nguyen v. Nissan N. Am., Inc.*
    2017 WL 1330602 (N.D. Cal. Apr. 11, 2017) ........................................ 10

*In re Baldwin-United Corp.*
    770 F.2d 328 (2d Cir. 1985)..................................................................... 12

*In re Certain Mobile Electronic Devices and Radio Frequency and Processing
    Components Thereof*
    Inv. No. 337-TA-1065, 82 Fed. Reg. 37899 (Aug. 14, 2017) ................... 3

*In re Convertible Rowing Exerciser Patent Litigation*
    616 F. Supp. 1134 (D. Del. 1985) ............................................................ 11

*In re Jimmy John's Overtime Litig.*
    877 F.3d 756 (7th Cir. 2017) ............................................................... 6, 13

*In re Managed Care Litigation*
    236 F. Supp. 2d 1336 (S.D. Fla. 2002) ................................................... 13

*In re Uranium Antitrust Litig.*
    617 F.2d 1248 (7th Cir. 1980) ................................................................. 14

*Kaisha v. Bombardier, Inc.*
    2001 WL 1388911 (C.D. Cal. Mar. 9, 2001) .......................................... 11

*Kowalski v. Tesmer*
    543 U.S. 125 (2004) ................................................................................... 8

*Leiva–Perez v. Holder*
    640 F.3d 962 (9th Cir. 2011) .................................................................... 5

*Lewis v. Casey*
    518 U.S. 343 (1996) ................................................................................... 5

*Loan Payment Admin. LLC v. Hubanks*
    2015 WL 1245895 (N.D. Cal. Mar. 17, 2015) .......................................... 9

*Loft v. Stationary Eng'rs, Local 39*
    2014 WL 709980 (N.D. Cal. Feb. 24, 2014) ......................................... 5, 9

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992)................................................................................... 5

1288231

*Massachusetts v. EPA*
 549 U.S. 497 (2007) ........................................................................................ 5, 6, 7

*Matter of Fed. Shopping Way, Inc.*
 717 F.2d 1264 (9th Cir. 1983) ................................................................................ 13

*Negrete v. Allianz Life Ins. Co. of N. Am.*
 523 F.3d 1091 (9th Cir. 2008) ........................................................................... 12, 13

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*
 762 F.2d 1374 (9th Cir. 1985) ................................................................................ 10

*Penn. Bureau of Corr. v. U.S. Marshals Serv.*
 474 U.S. 34 (1985) .................................................................................................. 12

*Realtek Semiconductor Corp. v. LSI Corp.*
 2014 WL 2738226 (N.D. Cal. June 16, 2014) ........................................................ 14

*Realtek Semiconductor Corp. v. LSI Corp.*
 565 F. App'x 601 (9th Cir. 2014) ........................................................................... 14

*Realtek Semiconductor Corp. v. LSI Corp.*
 946 F. Supp. 2d 998 (N.D. Cal. 2013) ................................................................... 14

*Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*
 428 F.3d 831 (9th Cir. 2005) .................................................................................. 13

*Schiavo ex rel. Schindler v. Schiavo*
 403 F.3d 1223 (11th Cir. 2005) ................................................................................ 6

*Sealed Air Corp. v. U.S. Int'l Trade Comn'n*
 645 F.2d 976 (C.C.P.A. 1981) ................................................................................ 13

*Sosa v. DIRECTV, Inc.*
 437 F.3d 923 (9th Cir. 2006) .................................................................................... 1

*Theme Promotions, Inc. v. News Am. Mktg. FSI*
 546 F.3d 991 (9th Cir. 2008) .................................................................................. 15

*Trade Assocs. v. Makita*
 1990 WL 10848940 (W.D. Wash. Mar. 2, 1990) ................................................... 14

*United States v. BNS Inc.*
 858 F.2d 456 (9th Cir. 1988) .................................................................................. 14

*Warth v. Seldin*
 422 U.S. 490 (1975) .................................................................................................. 7

*Winter v. Nat. Res. Def. Council, Inc.*
 555 U.S. 7 (2008) ........................................................................................ 1, 5, 9, 14

**Federal Statutes**

15 U.S.C. § 26 ............................................................................................................... 5

19 U.S.C. § 1337 .................................................................................................... 12, 16

iv

1288231

28 U.S.C. § 1651 ............................................................................................ 10, 11

28 U.S.C. § 2283 ................................................................................................. 12

**Federal Regulations**

19 C.F.R. § 210.50 ....................................................................................... 12, 16

QUALCOMM'S OPP. TO PLS.' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:17-md-02773-LHK

1288231

## I.      INTRODUCTION

Plaintiffs' request for an order enjoining Qualcomm from pursuing and vindicating its patent rights in the International Trade Commission ("ITC") is both improper and meritless. Presuming to step into the shoes of Apple and Intel, Plaintiffs seek to extinguish Qualcomm's constitutionally protected right to petition for enforcement of its patents in an unrelated, active ITC investigation that has been pending for a year.  Plaintiffs' motion suffers from several defects, both jurisdictional and substantive, any one of which suffices to defeat it.

*First*, Plaintiffs lack standing to seek the relief they now request.  They have made no effort to explain, much less provide evidence proving, that in the absence of injunctive relief they would suffer an injury-in-fact sufficient to confer standing under Article III of the Constitution.

*Second*, Plaintiffs have failed to address, let alone satisfy, any of the factors necessary for obtaining preliminary injunctive relief.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  For instance, they fail to show that they will suffer any harm, much less immediate and irreparable harm, and their own dilatory conduct belies any suggestion that the Court should take the extraordinary step of enjoining a litigant from pursuing its legal rights in a separate forum.

*Third*, the All Writs Act—the sole source of authority Plaintiffs cite to support their request—provides no basis for a federal district court to enjoin Qualcomm from pursuing remedies in the ITC, as every court to consider the question has held.

*Fourth*, the *Noerr-Pennington* doctrine, which Plaintiffs nowhere discuss, forbids them from preventing Qualcomm from petitioning the ITC for an exclusion order to enforce its patent rights.  Derived from the First Amendment's Petition Clause, that well-established doctrine provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  Thus, contrary to Plaintiffs' assertion, Qualcomm's legitimate efforts to exclude from the U.S. market products that infringe its non-standard essential patents cannot—as a matter of law—support antitrust liability.  ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████  That is exactly what Qualcomm has done in the ITC.

1    Plaintiffs are in no position to dictate otherwise.

2         ***Fifth***, Plaintiffs' argument fails on its own terms.  In the ITC, Qualcomm seeks to exclude

3    certain Apple mobile devices (not chips) that infringe its *non-standard essential patents*

4    ("NSEPs") from entering the United States.  That effort has little bearing on this case, in which

5    Plaintiffs allege that Qualcomm's licensing practices concerning its *standard-essential patents*

6    ("SEPs") are anticompetitive.  *See, e.g.*, ECF 513-2 ("Mot.") at 2.  Plaintiffs have never

7    contended that Qualcomm has any duty to license its non-standard essential patents ("NSEPs"),

8    which by definition afford Qualcomm a right to exclude.[1]

9         Plaintiffs' untimely request asks this Court to extend its jurisdiction over this action well

10   past the breaking point for no beneficial purpose.  Because Plaintiffs have failed to carry the

11   heavy burden required for obtaining the extraordinary relief they now seek, the Court should deny

12   the motion.

13   **II.    BACKGROUND**

14        Plaintiffs are individual consumers who allege they have purchased smartphones.  They

15   claim that Qualcomm's licensing practices concerning its SEPs somehow caused them to pay

16   more for their smartphones than they otherwise would have.  ECF 490 (First Amend. Consol.

17   Class Action Compl.) ¶ 1.  Because Plaintiffs' lengthy recitation of their own allegations and

18   liability theories has little bearing on their motion, Qualcomm will not address those assertions in

19   any detail.  *See* Mot. at 4–12.  Instead, Qualcomm will present the relevant procedural

20   background, which demonstrates Plaintiffs' lack of diligence in bringing this motion and belies

21   any suggestion that they face imminent harm.  Qualcomm will also correct the more egregious

22   misstatements in Plaintiffs' background section when those errors bear on the issue presented.

23        **A.    Plaintiffs waited a year before filing this motion.**

24        Plaintiffs filed their complaints between January and April of 2017.  This Court

25   consolidated the actions in April 2017, and appointed the Plaintiffs' steering committee on May

26   

---

27   [1] Plaintiffs' motion also refers to their allegations concerning purported "exclusive dealing
     contracts" between Qualcomm and Apple.  *See* Mot. at 2.  But the contractual terms Plaintiffs
28   refer to have not been in effect since 2016 and thus have no plausible connection to Plaintiffs'
     current request for an injunction.

15, 2017.  ECF 31.  Two months later and roughly one year ago, Qualcomm initiated proceedings against Apple in the ITC, filing its complaint on July 7, 2017.  *See* Decl. of Cody S. Harris in Support of Qualcomm's Opp. to Pls.' Mot. for Preliminary Injunction ("Harris Decl.") ¶ 2, Ex. A (ITC Complaint).  Qualcomm's ITC Complaint seeks an order excluding certain Apple mobile devices (not modem chips) from importation to the United States, on the grounds that those devices infringe Qualcomm's NSEPs.  *Id.*  The ITC proceedings are heading towards completion.  Trial is over, and the ITC's staff has recommended that the ITC find that Apple is importing iPhones that infringe a Qualcomm patent.  The Administrative Law Judge's initial determination is due in September, and determination by the ITC is expected in January 2019.  *See* Harris Decl. ¶3, Ex. B (ITC Procedural Schedule).

Plaintiffs' motion makes no effort to explain the yearlong delay between Qualcomm's ITC complaint and their present request for preliminary injunctive relief.  A lack of notice cannot explain the delay; Plaintiffs were well aware of the ITC proceeding.  In fact, on July 20, 2017, Plaintiffs in this action submitted to the ITC a "Statement Relating to the Public Interest by Non-Party Plaintiffs in *In re Qualcomm Antitrust Litigation*."  *Id.* Ex. C.  In that submission, Plaintiffs raised precisely the same arguments they now assert in this Court.  After reviewing Plaintiffs' submission—along with separate public interest statements filed by Apple and Intel—the ITC initiated its investigation on August 8, 2017.  *In re Certain Mobile Electronic Devices and Radio Frequency and Processing Components Thereof*, Inv. No. 337-TA-1065, 82 Fed. Reg. 37899 (Aug. 14, 2017).

Knowing full well that Qualcomm was seeking an order excluding certain infringing Apple mobile devices from the U.S. market, Plaintiffs sat on their hands for eleven months.  They then filed their motion for a preliminary injunction just before their class certification motion and supporting expert reports were due, forcing Qualcomm to devote resources to litigating this baseless motion during a critical juncture in the case.

**B.    Plaintiffs mischaracterize the factual record regarding competition in the "premium LTE market."**

Plaintiffs repeatedly assert that Intel is "Qualcomm's only premium LTE chipset

competitor."  Notice at 1; *see also* Mot. at 2 (referring to Intel as Qualcomm's "only fledgling competitor to Qualcomm's modem chips"), 6 ("Although suppliers other than Qualcomm and Intel offer modem chips that support LTE functionality, they do not offer premium LTE modem chips.").[2]  That is wrong. ███████████████████████████████████

████████████████████████████████████████████████

████████████████████  Plaintiffs' own class certification expert, Kenneth Flamm, states that, in 2017, Samsung, Spreadtrum, and MediaTek all had "Premium LTE Market Share."  ECF 524-1, Ex. 4 ¶ 56 (Expert Report of Kenneth Flamm).  ████████████████

█████████████████████████████████████████████████

███████████████████████████████

Moreover, Plaintiffs are incorrect that Intel is Qualcomm's "only prospective competitor in the modem chip market."  Mot. at 16.  Taken at face value, that statement is absurd: Qualcomm has numerous competitors in the "modem chip market" at large, and Plaintiffs have never claimed otherwise.  But even if Plaintiffs meant to cabin their assertion to the so-called "premium LTE" market—or to iPhone chips—Plaintiffs are still mistaken.  Just by way of example, ██████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████  In short, Plaintiffs' assertion that the ITC action is designed to or would have the effect of snuffing out Qualcomm's only competition in the "premium LTE market" is both hyperbolic and unsupported by the evidence.

## III.    LEGAL STANDARDS

Plaintiffs' motion neglects to mention any of the legal hurdles they must overcome to obtain the relief they seek.  Two such hurdles are dispositive here: the requirement that Plaintiffs

---

[2] Qualcomm objects to the notion that the ill-defined "premium LTE chip market," as used by Plaintiffs or the FTC, constitutes a relevant market for antitrust law purposes.

prove they have Article III standing, and the showing Plaintiffs must make to obtain preliminary injunctive relief.

"[S]tanding is an essential and unchanging part" of Article III's "case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The Supreme Court has long held that "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). That includes requests for specific preliminary injunctive relief, even in a case where the plaintiff may have standing to pursue other remedies. *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."). To demonstrate standing, Plaintiffs must show they have "suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citing *Lujan*, 504 U.S. at 560–61). Because Article III standing "is a jurisdictional prerequisite to the consideration of any federal claim," this principle holds true for a plaintiff alleging antitrust injury, just as it does for any plaintiff seeking to invoke this Court's jurisdiction. *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008).[3]

A plaintiff seeking preliminary injunctive relief must do more than demonstrate standing to pursue the claim. Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Before issuing an injunction, the court must find that "a certain threshold showing is made on each factor." *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). "The party seeking the injunction bears the burden of proving these elements." *Loft v. Stationary Eng'rs, Local 39*, 2014

---

[3] Although Plaintiffs do not invoke the Clayton Act as a basis for their requested injunction, Section 16 of that Act confirms that Plaintiffs must prove that they face "threatened loss or damage" to their "own interests" to obtain an injunction under the antitrust laws. *Cal. v. Am. Stores. Co.*, 495 U.S. 271, 296 (1990) (applying 15 U.S.C. § 26).

5

WL 709980, at *3 (N.D. Cal. Feb. 24, 2014) (Koh, J.).

The Court *must* consider these factors and conclude that a plaintiff has satisfied them before issuing an injunction; a plaintiff may not resort to the All Writs Act to evade their application.  *See, e.g.*, *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 769–70 (7th Cir. 2017) (holding that the traditional injunction factors apply to requests brought pursuant to the All Writs Act); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005) ("[T]he All Writs Act cannot be used to evade the requirements for preliminary injunctions."); *Balsley v. San Jose Dev. Corp.*, 1995 WL 108207, at *3 (N.D. Cal. Mar. 3, 1995) (applying traditional injunction factors when exercising jurisdiction under the All Writs Act).  Yet Plaintiffs offer no discussion of, much less a showing on, these factors.

## IV.   ARGUMENT

### A.   Plaintiffs lack Article III standing to enjoin Qualcomm's ITC complaint.

Plaintiffs make no effort to explain, much less demonstrate, why they have standing to seek the injunction they request.  They do not.  The ITC investigation in no way threatens them with an actual or imminent injury, nor would an ITC order granting Qualcomm the relief it seeks.  Plaintiffs' assertions of hypothetical harm to third parties such as Intel or Apple in no way grant them standing to pursue injunctive relief.

#### 1.   Plaintiffs fail to demonstrate that the ITC investigation has caused or will cause them to suffer an injury-in-fact sufficient to confer standing.

Plaintiffs founder on the first standing factor; they neither allege nor demonstrate that the ITC's pending investigation is causing them to suffer "a concrete and particularized injury that is either actual or imminent."  *Massachusetts*, 549 U.S. at 517.  They also fail to credibly explain how they will be harmed if the ITC grants Qualcomm the relief Qualcomm seeks.  Indeed, Plaintiffs' motion reads as if they are acting as Apple's proxy, Intel's proxy, or some combination of the two.  *See* Mot. at 16 (speculating that an ITC order "may lead Intel to leave the market"), 18 n.15 (asserting that relief is appropriate to address "the mere uncertainty faced by Intel and Apple").  What is missing is any asserted injury to the named plaintiffs themselves.  This failure concedes their lack of standing to pursue their requested relief.

Even if Plaintiffs could allege an injury to them arising out of the ITC proceeding (or if

6

1  they improperly were to assert such an injury for the first time in their reply brief), it would fail to

2  satisfy Article III's requirements for injury-in-fact.  To demonstrate standing, any "threatened

3  injury must be *certainly impending*" and "[a]llegations of *possible* future injury are not

4  sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks

5  omitted) (emphases in original).  Here, any possible injury to Plaintiffs depends upon an

6  attenuated chain of events transpiring.  The exclusion order must issue, the presidential review

7  period must pass, the investigation must result in actual exclusion of the accused iPhones, and the

8  exclusion order must leave Apple with no reasonable opportunity to "design around" the patents

9  at issue.  Such an attenuated "chain of inferences" cannot confer standing.  *Id.* at 414 n.5.

10  And even if this chain of events were to occur—and further assuming that any of the

11  named plaintiffs actually intends to purchase one of the accused Apple devices in the future

12  (which they have neither alleged nor proven)—the exclusion order would have to deprive

13  Plaintiffs of their ability to purchase iPhones in the United States or raise the price of an iPhone

14  or some other smartphone that one of the plaintiffs may someday intend purchase.  Plaintiffs have

15  made no effort to prove either scenario is likely, let alone "imminent."  *Massachusetts*, 549 U.S.

16  at 517.  And in fact, Qualcomm's ITC Complaint does not attempt to exclude all iPhones or

17  Apple devices, much less all comparable devices that could serve as substitutes.  Plaintiffs

18  therefore can provide no coherent reason why an exclusion order would directly injure them.

19  For these reasons, Plaintiffs cannot show, as they must, that they face an injury-in-fact

20  sufficient to confer standing to pursue the relief they seek.  Plaintiffs urge the Court to ignore all

21  that, arguing that "the delicate and high-stakes business decisions in play" and "mere uncertainty

22  faced by Intel and Apple" justify issuing an injunction now.  *See* Mot. at 18 n.15.  Article III

23  contemplates no such exceptions.

### 2. Plaintiffs cannot point to hypothetical harm to Intel or Apple to satisfy Article III's standing requirements.

26  Despite Plaintiffs' repeated prognostications regarding possible future harm to Intel or

27  Apple, they are in no position to assert third-party standing on either company's behalf.  *See*

28  *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal

1288231

rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). That disfavored and limited doctrine applies only when the third party "has a close relationship with the person who possesses the right," and when "there is a hindrance to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (internal quotation marks omitted). Neither of those factors is present here. As potential downstream smartphone purchasers, Plaintiffs can hardly claim a close relationship with Intel or any other modem chip supplier. And nothing has hindered Intel or Apple from pursuing its interests in district court or in the ITC; both companies have in fact aggressively done so in the ITC, in this case, in the FTC case pending before this Court, and in the cases between Qualcomm and Apple in the Southern District of California.

Even the alleged harms that Plaintiffs suggest Intel may suffer if Qualcomm prevails in the ITC are speculative at best. Plaintiffs muse that a victory for Qualcomm in the ITC "*may lead Intel to leave the market altogether.*" Mot. at 16 (emphasis added). ███████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████[4] Plaintiffs also ignore the fact that the limited exclusion order Qualcomm seeks would in no way prevent Apple from incorporating Intel's (or any other company's) modem chips into iPhones sold outside of the United States, and would not prevent Intel from selling modem chips to other customers, leaving Intel ample opportunity to compete.

In short, none of Plaintiffs' speculative assertions demonstrates a "certainly impending" injury-in-fact to Intel, much less to the named plaintiffs themselves. *Clapper*, 568 U.S. at 409. Plaintiffs lack standing to seek the relief they request. Their motion should be denied on that basis alone.

### B.   Plaintiffs fail to address or satisfy any of the factors required for preliminary injunctive relief.

The Court should also deny Plaintiffs' motion because they fail to address, much less

---

[4] Intel's public filings further contradict Plaintiffs' assertions of possible harm. In its most recent annual 10-K filing, Intel nowhere mentions Qualcomm's ITC proceeding as a risk factor, or as a legal proceeding that may result in a material adverse impact on Intel's business. *See* Harris Decl. ¶ 12, Ex. J (Intel Corp. Form 10-K, Feb. 16, 2018).

satisfy, the factors required for preliminary injunctive relief.  Any movant seeking a preliminary injunction must satisfy the four well-known *Winter* factors: (1) likelihood of success on the merits; (2) irreparable harm; (3) the balance of equities tips in his favor; and (4) the public interest supports the injunction.  *See Winter*, 555 U.S. at 20.  Plaintiffs' motion ignores these factors completely.  This failure alone dooms their request.

Where, as here, a plaintiff fails to carry its burden of showing that it will be irreparably harmed absent a preliminary injunction, the Court need not consider the other *Winter* factors. *Loft*, 2014 WL 709980, at *3.  Plaintiffs cannot show irreparable harm for the same reasons they cannot demonstrate standing.  *See supra*, Part IV.A.  They have made no attempt to demonstrate why an ITC exclusion order, if granted, will harm *them*.  It is not enough for Plaintiffs to speculate about Intel's future prospects in the premium LTE market or to ruminate on possible harm to competition in general.  *See* Mot. at 17–19.  Potential harm to third parties is equally insufficient to satisfy the irreparable harm factor.  *See Exeltis USA Inc. v. First Databank, Inc.*, 2017 WL 6539909, at *9 (N.D. Cal. Dec. 21, 2017) ("Rather than focus on its own injury, Plaintiff attempts to redirect the focus of the irreparable harm inquiry to third parties.  This is not permissible."); *Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that . . . *he* is likely to suffer irreparable harm in the absence of preliminary relief." (emphasis added)).

In addition, this Court has held that "where a party's claim of irreparable harm depends on the actions of third parties, that fact lessens the credibility of the claim."  *Loan Payment Admin. LLC v. Hubanks*, 2015 WL 1245895, at *15 (N.D. Cal. Mar. 17, 2015) (Koh, J.), *aff'd sub nom. Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017).  As this Court observed, that includes decisions made by administrative agencies.  *See id.* (citing *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011), which found no irreparable harm where such harm "hinged on future . . . decision[s]" of an administrative agency).  Here, Plaintiffs' theory of harm—if one exists—depends on the ITC's issuing an exclusion order, that order's being upheld, and responsive engagement by various other actors such as Apple, Intel, MediaTek, or others.

1    What's more, Plaintiffs' own dilatory conduct belies any assertion that they are suffering

2    irreparable harm.  They waited a year before seeking an injunction, despite having notice of the

3    ITC investigation, and even presenting their concerns to the ITC as long ago as July 2017.  *See*

4    Harris Decl. ¶ 4, Ex. C.  That delay alone counsels strongly against an irreparable harm finding.

5    *See, e.g.*, *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)

6    ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and

7    irreparable harm"); *ConocoPhilips Co. v. Gonzalez*, 2012 WL 538266, at *3 (N.D. Cal. Feb. 17,

8    2012) (Koh, J.) (finding no irreparable harm when plaintiff waited seven months to seek

9    injunctive relief).

10    The lack of irreparable harm to Plaintiffs suffices to deny the injunction.  Plaintiffs also,

11    however, cannot demonstrate a likelihood of success on the merits.  They are ill-equipped to pre-

12    judge Qualcomm's prospects before the ITC, which must, by statute, undertake the public interest

13    analysis they ask this Court to short-circuit.  Furthermore, neither the equities nor the public

14    interest tips in Plaintiffs' favor.  The public has a strong interest in allowing innovators to enforce

15    their intellectual property right, and in allowing the ITC to fulfill its statutory mandate.  It would

16    hardly serve the public interest to neuter an ITC proceeding that is so far along; doing so would

17    render useless the significant time and resources the ITC and the parties have devoted to

18    adjudicating Qualcomm's claims.  Finally, Plaintiffs cannot show that they lack a remedy at law.

19    If they were to prevail, they could be compensated with money damages—which is primarily

20    what they are seeking in this lawsuit.[5]  *See Huu Nguyen v. Nissan N. Am., Inc.*, 2017 WL

21    1330602, at *4 (N.D. Cal. Apr. 11, 2017) (Koh, J.) (denying injunctive relief where the "Plaintiff

22    has an 'adequate remedy at law' in the form of Plaintiff's claims for damages.").

23    **C.**    **The All Writs Act provides no basis for the Court to enjoin proceedings in the**
24    **ITC.**

25    Having failed to address any of the factors required to obtain preliminary injunctive relief,

26    Plaintiffs rely solely on the All Writs Act, 28 U.S.C. § 1651, as the font of this Court's authority

27

28    [5] Indeed, Plaintiffs' damages expert has placed "damages to consumers in the neighborhood of
$4.99 *billion*."  *See* ECF 524-1, Ex. 4 at ¶ 16 (Expert Decl. of Kenneth Flamm) (emphasis added).

to issue the requested injunction.[6]  The All Writs Act conveys no such authority.  Indeed, Plaintiffs cite *no case* in which a federal district court has ever invoked that statute to enjoin an ITC proceeding, either by enjoining the ITC directly or by forbidding a party from pursuing an exclusion order in that forum.  And, as the Ninth Circuit has held, there is no difference between enjoining a proceeding directly and enjoining a party from participating in it: "Ordering the parties not to proceed is tantamount to enjoining the proceedings."  *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002).

What's more, when movants have asked courts to rely on the All Writs Act to enjoin proceedings in the ITC, courts have declined the invitation.  In *Ashlow Ltd. v. Morgan Construction Co.*, 672 F.2d 371 (4th Cir. 1982), for example, the Fourth Circuit vacated an All Writs Act injunction that ordered the ITC to permit the importation of certain goods without bond, in light of the district court's own findings regarding patent validity.  Dissolving that injunction, the Fourth Circuit held that the All Writs Act granted the district court no authority to intrude upon the ITC's "exclusive jurisdiction over all matters relating to the importation of articles of commerce into the United States."  *Id.* at 374.  Yet that is what Plaintiffs ask this Court to do.  Similarly, in *In re Convertible Rowing Exerciser Patent Litigation*, the court found no authority in the All Writs Act to enjoin the defendant "from going forward or participating in the ITC investigation" while the district court litigation played out.  616 F. Supp. 1134, 1137 (D. Del. 1985).  And in *Kaisha v. Bombardier, Inc.*, the court declined to enjoin either the ITC or the ITC complainant, observing that "the intent of Congress was to allow ITC and district court actions to proceed simultaneously and further to allow ITC proceedings to take precedence."  2001 WL 1388911, at *2 (C.D. Cal. Mar. 9, 2001).  Plaintiffs ignore this consistent line of authority.

The All Writs Act itself confers no jurisdiction.  Rather, it "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is

---

[6] The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  To obtain an injunction under the All Writs Act, the moving party still must satisfy Rule 65's requirements, *see Fla. Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979), which, as discussed above, Plaintiffs fail even to address.

controlling." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  In this case, Congress has instituted a specific statutory scheme that grants the ITC exclusive jurisdiction to investigate the importation of allegedly infringing devices from overseas.  *See* 19 U.S.C. §§ 1337 *et seq.*  In the course of its investigation, the ITC will consider, as part of its statutorily-mandated public interest analysis, the effect of the requested exclusion order on the public interest, including (as argued by Intel and Apple), competitive conditions in the U.S. economy, the production of like or directly competitive articles in the United States, and impact on U.S. consumers.  *See* 19 U.S.C. § 1337(d)(1); 19 C.F.R. § 210.50(a)(2).  The All Writs Act grants a federal district court no power to upend that statutory scheme by enjoining proceedings whose outcome may, according to plaintiffs in an unrelated district court action, have some tangential relationship to or possible effect on issues presented in that separate action.

Ignoring all of this, Plaintiffs argue that the All Writs Act is a broad grant of discretionary authority.  *See* Mot. at 13.  The Act, however, "is a broad, but not unlimited, grant of authority." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1098 (9th Cir. 2008).  A district court may issue an injunction pursuant to the All Writs Act only when "necessary to preserve its jurisdiction and protect its judgments," *In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985), including by enjoining "state proceedings that interfere, derogate, or conflict with federal judgments, orders, or settlements," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  In this case, there is no judgment, order, or settlement for this Court to protect.

Plaintiffs have also cited the Anti-Injunction Act, 28 U.S.C. § 2283, which limits a federal court's authority to enjoin state court proceedings on federalism grounds and is often interpreted consistently with the All Writs Act.[7]  *See In re Baldwin-United Corp.*, 770 F.2d at 335.  The Anti-Injunction Act allows a federal court to "enjoin state court proceedings . . . when it is necessary to protect the court's jurisdiction." *Hanlon*, 150 F.3d at 1025.  The ITC, of course, is not a state court.  But even if the Anti-Injunction Act had some relevance to the present inquiry, its narrow exception applies "only where a parallel state action threatens to render the exercise of the federal

---

[7] The Anti-Injunction Act provides that federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

1    court's jurisdiction nugatory." *Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp.*, 428

2    F.3d 831, 843–44 (9th Cir. 2005) (internal quotation marks omitted).  The ITC's investigation in

3    no way threatens to negate this Court's jurisdiction.  Indeed, it has been pending for over a year

4    with no observable effect on this action.  Plaintiffs contend that an ITC exclusion order may

5    somehow, someday affect a hypothetical judgment this Court may wish to enter.  But, as the

6    Ninth Circuit observed in the Anti-Injunction Act context, "the mere fact that the actions of a

7    state court might have some effect on the federal proceedings does not justify interference."

8    *Negrete*, 523 F.3d at 1101.

9           Lacking any on-point authority for their argument, Plaintiffs point to cases and situations

10   bearing no similarity to this one.  Plaintiffs point out that a federal district court may occasionally

11   invoke the All Writs Act to halt proceedings in another federal district court.  *See* Mot. at 14.  But

12   the Ninth Circuit has cautioned that such injunctions are "not typical" and are generally limited to

13   cases in which "'activities in another court . . . threaten to undermine a pending settlement in the

14   enjoining court.'"  *Negrete*, 523 F.3d at 1099 (quoting *Grider v. Keystone Health Plan Cent., Inc.*,

15   500 F.3d 322, 330 (3d Cir. 2007)).[8]  No settlement exists here.  A federal district court may also

16   enjoin a sister court when the enjoined case involves "identical litigation *between the same*

17   *parties*."  *Jimmy John's*, 877 F.3d at 765 (listing examples) (emphasis in original).  Here,

18   Plaintiffs are not parties to the ITC investigation.  A federal district court may also enjoin state

19   court proceedings *in rem* pursuant to the All Writs Act, when "the federal court has jurisdiction

20   over the *res* and the state court proceedings might interfere with that."  *Negrete*, 523 F.3d at 1101.

21   This Court's jurisdiction is not *in rem*; the ITC case in no way "affect[s] rights in property that is

22   in the custody and possession of the federal court."  *Matter of Fed. Shopping Way, Inc.*, 717 F.2d

23   1264, 1274 (9th Cir. 1983) (vacating an injunction issued under the Anti-Injunction Act's "in aid

24   of jurisdiction" exception).  On the contrary, the ITC's jurisdiction is *in rem*, and as such, its

25   proceedings take priority.[9]  *See Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1272 (9th

26

27

28   ───────────────────
     [8] Both *In re Managed Care Litigation*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002), and *Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998), on which Plaintiffs rely, fall into that category.

1288231

1  Cir. 1982) ("[I]f an action is *in rem*, the court first obtaining jurisdiction over the *res* may proceed

2  without interference from actions in other courts involving the same *res*.").

3      The closest Plaintiffs come to citing a relevant case is *Realtek Semiconductor Corp. v. LSI*

4  *Corp.*, 946 F. Supp. 2d 998 (N.D. Cal. 2013), but that case misses the mark as well.  There, after

5  applying the *Winter* factors that Plaintiffs ignore here, the court granted a provisional (and

6  ultimately moot) injunction preventing a patent-holder from pursuing an exclusion order in the

7  ITC.  *Realtek* nowhere invoked the All Writs Act as a source of authority and is in any event

8  distinguishable.  In *Realtek*, the parties in both the district court action and the ITC were identical.

9  Not so here.  In addition, Realtek sought to enjoin LSI from pursuing an exclusion order from the

10  ITC regarding its *SEPs*, arguing that LSI had failed to honor its contractual obligations to offer

11  Realtek a reasonable and non-discriminatory ("RAND") license before seeking to have Realtek's

12  products excluded.  *Id.* at 1001.  Qualcomm's ITC case stands on entirely different footing:

13  Qualcomm is asserting only NSEPs in the ITC against Apple (not Plaintiffs).  *Realtek* is

14  inapplicable because there is no requirement to make a RAND (or FRAND) offer for NSEPs.[10]

15      Plaintiffs' remaining hodgepodge of cases offers no support for their argument.  One

16  concerns an order preventing defendants from expatriating funds needed to pay a default

17  judgment, while expressly noting that the All Writs Act has no role to play absent "a final decree

18  of the Court."  *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1260 (7th Cir. 1980).  Another

19  upheld an All Writs Act injunction for the limited purpose of affording a takeover target the

20  opportunity to participate in the notice and comment period required by the Antitrust Penalties

21  and Procedures Act before a consent decree became final.  *United States v. BNS Inc.*, 858 F.2d

22  456, 460–61 (9th Cir. 1988) (affirming "an interim order to maintain the status quo pending

23  ───────────────
[9] *See Trade Assocs. v. Makita*, 1990 WL 10848940, at *2 (W.D. Wash. Mar. 2, 1990) ("The ITC
24  has *in rem* jurisdiction, so its proceedings are not dependent upon personal jurisdiction over the
   manufacturers."); *Sealed Air Corp. v. U.S. Int'l Trade Comn'n*, 645 F.2d 976, 985 (C.C.P.A.
   1981) (holding that the ITC's jurisdiction is "against goods, not parties").

25  [10] The injunction issued in *Realtek* never went into effect.  It was held in abeyance pending the
26  resolution of the ITC investigation, and the Ninth Circuit later declared the entire issue moot.  *See
   Realtek*, 946 F. Supp. 2d at 1009 n.6; *Realtek Semiconductor Corp. v. LSI Corp.*, 565 F. App'x
27  601 (9th Cir. 2014).  When Realtek later renewed its request to enjoin LSI from seeking to
   enforce its SEPs in the ITC, the district court denied the request for injunctive relief, finding a
28  lack of irreparable harm.  *Realtek Semiconductor Corp. v. LSI Corp.*, 2014 WL 2738226, at *4
   (N.D. Cal. June 16, 2014).

completion of the public interest review mandated by the statute").  No such issues are implicated here.[11]

In sum, Plaintiffs' assertion that the All Writs Act grants the Court carte blanche to stymie a pending ITC investigation has no legal basis.  Plaintiffs have pointed to no federal court that has ever taken such a step and have provided no persuasive reason for this Court to become the first.

### D.   The *Noerr-Pennington* doctrine protects Qualcomm's right to petition the ITC for redress, despite allegations of anti-competitive effect.

The *Noerr-Pennington* doctrine stands as a fourth independent reason to deny Plaintiffs' motion.  Embodying core First Amendment principles, that doctrine provides that "those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct."  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006 (9th Cir. 2008).  The doctrine applies with full force to ITC proceedings.  *See, e.g.*, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government."); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 127 (3d Cir. 1999) (holding that the *Noerr-Pennington* doctrine immunizes ITC complaints).  Thus, even if Plaintiffs are correct that an ITC exclusion order would harm competition (and they are not, since enforcement of valid intellectual property rights is pro-competitive), when such "monopolization is the result of valid governmental action . . . those urging the governmental action enjoy absolute immunity from antitrust liability for the anticompetitive restraint."  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988).  In other words, Qualcomm has a constitutionally protected right to seek redress in the ITC to enforce its patent rights.  Plaintiffs now seek to extinguish that right, arguing that Qualcomm's ITC complaint creates or magnifies its alleged antitrust liability.  Mot. at 16.  The *Noerr-Pennington* doctrine forbids that request.

Not only would it violate *Noerr-Pennington* to enjoin Qualcomm from seeking an

---

[11] Plaintiffs also rely on dicta from *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970).  There, the Supreme Court *vacated* an injunction issued under the Anti-Injunction Act's "in aid of its jurisdiction" exception, holding that the two courts at issue "had concurrent jurisdiction," and that "neither court was free to prevent either party from simultaneously pursuing claims in both courts."  *Id.* at 295.  So too here.

exclusion order in the ITC, but such an injunction is also unnecessary.  The ITC can consider alleged effects of the requested exclusion order on competitive conditions and U.S. consumers as part of its statutory public interest analysis.  *See* 19 U.S.C. § 1337(d)(1); 19 C.F.R. § 210.50(a)(2).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  That is precisely what Qualcomm is doing in the ITC, and Plaintiffs are in no position to demand that Qualcomm stand down.  On the contrary, a judicial order commanding Qualcomm to stop petitioning a federal agency would infringe Qualcomm's First Amendment rights, and would flout the immunity the Supreme Court has fashioned to prevent such an abuse.

### E.   Qualcomm's ITC complaint is in no way anti-competitive and has little bearing on this action.

The Court should deny the motion for any of the reasons set forth above.  But Plaintiffs' argument fails on its own terms as well.  In this case, Plaintiffs allege that Qualcomm uses monopoly power in certain alleged modem chip markets to obtain better terms in licensing its SEPs; in the ITC, Qualcomm seeks to prevent certain Apple devices from infringing NSEPs that Qualcomm is not obligated to license, on FRAND terms or otherwise.  The two cases can and should proceed in their respective forums; one in no way impairs the other.

Moreover, Plaintiffs present no evidence whatsoever that Qualcomm's requested exclusion order will raise the price of any iPhone, much less all smartphones, that the order would prevent Plaintiffs from purchasing iPhones, or that it will stymie competition in any concrete way.  Instead, Plaintiffs' argument boils down to the concern that Apple will use Qualcomm chips in certain devices imported into the United States, potentially affecting one of Qualcomm's competitors, namely Intel.  But the antitrust laws exist to protect competition, not competitors. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).  And in any case, the accused Apple devices sold in the United States are but one piece of the overall global smartphone industry, and Intel is but one potential supplier to that single piece.

In short, Plaintiffs' speculative assertions about hypothetical future harm to Intel or other

16

1288231

suppliers comes nowhere close to showing that Qualcomm's ITC complaint harms competition, justifying the extraordinary step of stopping a valid ITC proceeding in its tracks.  Plaintiffs and their appointed counsel possess no plenary authority to aid certain modem chip suppliers at the expense of others or to dictate Qualcomm's litigation strategy while this suit is pending.  Because their motion fails to show that Qualcomm's ITC Complaint will cause Plaintiffs any cognizable antitrust injury, it must be denied.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated:  July 12, 2018                                   KEKER, VAN NEST & PETERS LLP


                                             By:     */s/ Robert A. Van Nest*
                                                     ROBERT A. VAN NEST
                                                     EUGENE M. PAIGE
                                                     CODY S. HARRIS
                                                     JUSTINA SESSIONS

                                                     Gary A. Bornstein *(pro hac vice)*
                                                     Yonatan Even *(pro hac vice)*
                                                     CRAVATH, SWAINE & MOORE LLP
                                                     Worldwide Plaza
                                                     825 Eighth Avenue
                                                     New York, NY 10019-7475
                                                     Tel.: (212) 474-1000
                                                     Fax: (212) 474-3700
                                                     gbornstein@cravath.com
                                                     yeven@cravath.com

                                                     Richard S. Taffet *(pro hac vice)*
                                                     MORGAN, LEWIS & BOCKIUS LLP
                                                     101 Park Avenue
                                                     New York, NY 10178-0060
                                                     Tel.: (212) 309-6000
                                                     Fax: (212) 309-6001
                                                     richard.taffet@morganlewis.com

                                                     Willard K. Tom *(pro hac vice)*
                                                     MORGAN, LEWIS & BOCKIUS LLP
                                                     1111 Pennsylvania Avenue NW
                                                     Washington, DC 20004-2541
                                                     Tel.: (202) 739-3000
                                                     Fax: (202) 739 3001
                                                     willard.tom@morganlewis.com

QUALCOMM'S OPP. TO PLS.' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:17-md-02773-LHK

1288231

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Geoffrey T. Holtz (SBN 191370)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
gholtz@morganlewis.com

Attorneys for Defendant
QUALCOMM INCORPORATED

QUALCOMM'S OPP. TO PLS.' MOTION FOR PRELIMINARY INJUNCTION
Case No. 5:17-md-02773-LHK

1288231