| | |
|---|---|
| KEKER, VAN NEST & PETERS LLP<br>Robert A. Van Nest - # 84065<br>rvannest@keker.com<br>Eugene M. Paige - # 202849<br>epaige@keker.com<br>Justina Sessions - # 270914<br>jsessions@keker.com<br>Jesselyn Friley - # 319198<br>jfriley@keker.com<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:    415 391 5400<br>Facsimile:    415 397 7188<br><br>CRAVATH, SWAINE & MOORE LLP<br>Gary A. Bornstein *(pro hac vice)*<br>gbornstein@cravath.com<br>Yonatan Even *(pro hac vice)*<br>yeven@cravath.com<br>825 Eighth Avenue<br>New York, New York 10019-7475<br>Telephone: (212) 474-1000<br>Facsimile:  (212) 474-3700 | MORGAN, LEWIS & BOCKIUS LLP<br>Richard S. Taffet *(pro hac vice)*<br>richard.taffet@morganlewis.com<br>101 Park Avenue<br>New York, NY 10178-0060<br>Telephone: (212) 309-6000<br>Facsimile:  (212) 309-6001<br><br>MORGAN, LEWIS & BOCKIUS LLP<br>Willard K. Tom *(pro hac vice)*<br>willard.tom@morganlewis.com<br>1111 Pennsylvania Avenue NW<br>Washington, DC 20004-2541<br>Telephone: (202) 739-3000<br>Facsimile:  (202) 739-3001<br><br>MORGAN, LEWIS & BOCKIUS LLP<br>Geoffrey T. Holtz (SBN 191370)<br>gholtz@morganlewis.com<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1596<br>Telephone: (415) 442-1000<br>Facsimile:  (415) 442-1001 |

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: QUALCOMM ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 5:17-md-02773-LHK-NMC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S MOTION TO STRIKE THE DECLARATION OF KENNETH FLAMM**<br><br>Date:        September 27, 2018<br>Time:       1:30 p.m.<br>Dept.:       Courtroom 8, 4th Floor<br>Judge:      Hon. Lucy H. Koh<br><br>Trial Date: June 24, 2019 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

---

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................................. 1

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. LEGAL STANDARD ....................................................................................................... 3

IV. ARGUMENT .................................................................................................................... 4

    A. Dr. Flamm's analysis of a miniscule fraction of the available data is not a reliable methodology. .................................................................................... 4

    B. Dr. Flamm's results are also unreliable because his model uses incorrect data. ............................................................................................................. 9

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Chapman v. Procter & Gamble Distrib., LLC*
   766 F.3d 1296 (11th Cir. 2014) ................................................................................................ 4

*Clausen v. M/V New Carissa*
   339 F.3d 1049 (9th Cir. 2003) .................................................................................................. 4

*Daubert v. Merrell Dow Pharms., Inc.*
   509 U.S. 579 (1993) ............................................................................................................. 1, 3

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011) .................................................................................................... 3

*General Elec. Co. v. Joiner*
   522 U.S. 136 (1997) .................................................................................................................. 4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ......................................... 4

*In re Taco Bell Wage and Hour Actions*
   2011 WL 4479730 (E.D. Cal. Sept. 26, 2011) ......................................................................... 4

*Metabolife Int'l, Inc. v. Wornick*
   264 F.3d 832 (9th Cir. 2001) .................................................................................................... 4

*Slaughter v. Southern Talc Co.*
   919 F.2d 304 (5th Cir. 1990) .................................................................................................... 4

*United States v. City of Miami, Fla.*
   115 F.3d 870 (11th Cir. 1997) .................................................................................................. 4

**Federal Rules**

Fed. R. Evid. § 702 .......................................................................................................... 1, 2, 3, 4

**Other Authorities**

Marc H. Bornstein, Justin Jager, and Diane L. Putnick, *Sampling in Developmental
   Science: Situations, Shortcomings, Solutions, and Standards*, Developmental Rev.,
   Vol. 33, No. 4, 361 (2013) ........................................................................................................ 6

Mark L. Berenson & David M. Levine, *Basic Business Statistics: Concepts and
   Applications* (2d ed. 1983) ....................................................................................................... 6

Mark N.K. Saunders, Adrian Thornhill & Philip Lewis, *Research Methods for Business
   Students* (5th ed. 2009) ............................................................................................................. 6

DEFENDANT QUALCOMM INCORPORATED'S MOTION TO STRIKE THE DECLARATION OF
KENNETH FLAMM
Case No. 5:17-md-02773-LHK

1292815

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on September 27, 2018, at 1:30 p.m., in the courtroom of the Honorable Lucy H. Koh, of the above-entitled Court (Courtroom 8), Defendant Qualcomm Incorporated ("Qualcomm"), shall and does hereby move for an order excluding the opinions and testimony of Dr. Kenneth Flamm ("Dr. Flamm"), designated by MDL Plaintiffs ("Plaintiffs") as an expert witness in this matter, for his failure to provide reliable, relevant, and admissible testimony under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Qualcomm's motion is based on the authorities and evidence set forth herein, the accompanying declaration and exhibits, the Declaration of Dr. John Johnson in Support of Qualcomm's Opposition to Class Certification, Plaintiffs' motion to certify, the Declaration of Dr. Kenneth Flamm in Support of Plaintiffs' Motion for Class Certification, other pleadings on file in this matter, oral argument to be presented to the Court, and such other matters as the Court may consider.

## I.   INTRODUCTION

Dr. Flamm's testimony fails to meet the standards required by *Daubert* and Rule 702.[1] Plaintiffs offer Dr. Flamm's declaration in an attempt to show that all or nearly all putative class members suffered economic injury as a result of Qualcomm's alleged conduct. The centerpiece of Dr. Flamm's empirical pass-through analysis is what he describes as a "hedonic regression," in which he attempts to explain the price of a device using its costs and certain quality characteristics. Dr. Flamm claims that this model allows him to "hold quality constant" and thereby estimate how a change in costs would manifest as a change in "quality-adjusted price" of a device.

Dr. Flamm runs his regression model on data sets for some OEMs, one contract manufacturer, a few carriers and retailers, and one distributor. He uses the coefficients from these regressions to estimate what he characterizes as "channel-specific" pass-through rates. For the reasons explained in Qualcomm's Opposition to Plaintiffs' Motion for Class Certification, this

---

[1] As discussed in Qualcomm's Opposition to Class Certification, even if Dr. Flamm's opinions were to be admitted, they would not support certification for many reasons.

model fails to address the relevant question, which is whether OEMs and intermediaries passed on the alleged royalty overcharge to the putative class members. His model does not and cannot provide an answer.

In addition to being inapposite, Dr. Flamm's regression results are built on completely unreliable data. A regression seeks to estimate the relationships present in data. Where the underlying data are unreliable, or in this case woefully incomplete and non-representative, the reliability of the entire regression is undermined. Here, Dr. Flamm's sample data are both too small and too biased to provide reliable results. He bases his predictions on as little as 0.1% of Relevant Cellular Phone sales for some distribution channels. Convenience, not sound statistical practices, dictated his selection of this sample, and this bias means that his results cannot reliably model anything other than the small sample of data he actually used. In other words, his results cannot reliably be generalized to the class and should not be admitted for that purpose.

Dr. Flamm's analysis is also full of errors that undermine the reliability of his conclusions. His sixteen-device contract-manufacturer regression includes data from Blackberry and Apple but erroneously codes all Blackberry devices as Apple devices. His Apple regression matches prices and costs from wildly disparate dates—sometimes years apart—which means that he cannot actually or reliably estimate the effects of a phone's manufacturing cost on its consumer price at a given point in time.

Dr. Flamm's model is unreliable, unrepresentative, and error-filled. His opinions will not assist the trier of fact, and therefore should be excluded under Rule 702. Because Dr. Flamm's inadmissible model is the only method Plaintiffs propose to use in order to show that all or nearly all of the putative class members suffered an injury, the Motion for Class Certification should also be denied.

## II.   BACKGROUND

As relevant here, Plaintiffs retained Dr. Flamm to "provide an analysis of whether common evidence would be available to show how [an assumed] overcharge levied by Qualcomm would have affected the price and performance characteristics of mobile devices." Declaration of Kenneth Flamm in Support of Plaintiffs' Motion for Class Certification (Flamm

2

Decl.) ¶ 13. In doing so, Dr. Flamm examined a variety of distribution channels for cell phones, tracking prices and costs from original equipment manufacturers (OEMs) such as Apple and Samsung, and to different combinations of cellular service carriers, phone distributors and retailers, and ultimately, to the consumers who comprise the purported class. *Id.* He applies the same regression model to data for each distribution channel:

$$Price_{it} = a_0 + a_1 * Cost_{it} + a_2 * Z_i + a_3 * Trend + v_{it}$$

*Price$_{it}$* is the price of product i in period t. Flamm Decl. ¶ 254. *Cost$_{it}$* purports to be the product's unit cost, calculated as "total material costs" for Apple phones and "cost of goods sold," "variable cost," or average total cost for other OEMs' phones. *Id.* ¶¶ 254–55. When purporting to estimate carrier, retailer, or distributor pass-through, Dr. Flamm uses the "cost of goods sold" or the "device acquisition cost." *Id.* ¶ 255. $Z_i$ represents 10 different phone characteristics (*e.g.*, operating system, OEM, data speed, battery storage capacity), that Dr. Flamm claims "affect [product *i*'s] pricing." *Id.* ¶ 254. He also adds a time trend variable to capture "the effect of aggregate industry factors on prices" and $v_{it}$, a "random disturbance affecting price for product *i* at time *t*." *Id.* According to Dr. Flamm, "pass-through is measured by the coefficient on the cost variable, represented by $a_1$." *Id.* Effectively, his model purports to measure the effect on price of a change in total material costs/cost of goods sold, while holding ten phone characteristics constant.

A regression line is a mathematical representation of the best linear relationship between all of the data points used to build the model.

### III.   LEGAL STANDARD

A court evaluating challenged expert testimony in support of class certification applies the standard set forth in *Daubert*, 509 U.S. at 579. *See also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). In doing so, the court must act as a gatekeeper and exclude evidence that does not meet the standards of Federal Rule of Evidence 702. *Id.* Expert testimony is admissible only when it is based on sufficient facts or data; it is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts

3

of the case. Fed. R. Evid. 702. Expert testimony must be both relevant and reliable. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001). Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). When an expert's testimony relates to damages calculations in a proposed class action, the court must undertake a "rigorous analysis" to determine "whether the opinions are consistent with the liability case and whether they demonstrate that case's proposed damages are measurable on a classwide basis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159, at *3 (N.D. Cal. Sept. 24, 2013).

Key to the question of admissibility is whether the methodology is reliable both as proposed and as applied. An expert's purported use of a generally accepted methodology will not render his or her opinion admissible if he or she fails to follow it. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1309 (11th Cir. 2014). A court may exclude an expert's analysis if "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert opinions "derived from erroneous data are appropriately excluded." *United States v. City of Miami, Fla.*, 115 F.3d 870, 873 (11th Cir. 1997); *Slaughter v. Southern Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990); *In re Taco Bell Wage and Hour Actions*, 2011 WL 4479730, at *6 (E.D. Cal. Sept. 26, 2011).

## IV.     ARGUMENT

### A.     Dr. Flamm's analysis of a miniscule fraction of the available data is not a reliable methodology.

Dr. Flamm's results do not reliably describe the devices bought by the entire putative class because he used only a tiny, non-random sample of the available data. Dr. Flamm claims to have data representing "approximately 90% of total cell phone sales" in the United States during the class period. Flamm Decl. ¶ 261. But he drops the vast majority of these data, ultimately using

4

DEFENDANT QUALCOMM INCORPORATED'S MOTION TO STRIKE THE DECLARATION OF
KENNETH FLAMM
Case No. 5:17-md-02773-LHK

1292815

only data representing 7.3% of all Relevant Cellular Device sales by OEMs. Declaration of John Johnson in Support of Qualcomm's Opposition to Class Certification (Johnson Decl.) ¶ 102 & Ex. 20. There are several reasons for this, none of which Dr. Flamm adequately justifies, and all of which severely undermine his model's reliability.

**EXHIBIT 20**
**SHARE OF CELLULAR PHONES REPRESENTED IN DR. FLAMM'S OEM REGRESSION DATA**
**FEBRUARY 2011 – DECEMBER 2017**

Cellular Phones Represented in Dr. Flamm's Regression Data: 7.3%

Cellular Phones Not Represented in Dr. Flamm's Regression Data: 92.7%

Notes: Total units calculated using Dr. Flamm's Exhibit 7 and Table 23.

Sources: Flamm Declaration and turnover,

Dr. Flamm selected data sources via "convenience sampling" or "haphazard sampling," a method that "is prone to bias and influences." Johnson Decl. ¶ 104 & n.179. A convenience sample is made up of data that are easily obtained, as opposed to a random sample, which is more likely to represent the full set of observations. *Id.* ¶ 104. "[R]esults that derive from convenience

5
DEFENDANT QUALCOMM INCORPORATED'S MOTION TO STRIKE THE DECLARATION OF
KENNETH FLAMM
Case No. 5:17-md-02773-LHK

1292815

1   sampling have known generalizability only to the sample studied."[2]  Convenience sampling "is

2   prone to bias and influences that are beyond your control […] meaning that subsequent

3   generalizations are likely to be at best flawed."[3]  It is "incorrect to use such samples to make

4   inferences to the entire population."[4]  In sum, Dr. Flamm cherry-picks his data rather than using a

5   statistically valid method of sampling.

6         The data selected by Dr. Flamm are a product of convenience sampling—a method whose

7   inherent deficiencies are well known.  Dr. Flamm decided to use ten product features in his

8   regression model, so he excludes all phones for which he doesn't have data on all ten features.

9   Johnson Decl. at ¶ 104 & n.186.  This leads him to exclude millions of observations, including,

10  for instance, two entire models of Samsung phones totaling over six million purchases.  *Id.*

11        Additionally, Dr. Flamm eliminated available data from all but one of the contract

12  manufacturers (CMs) who were part of the distribution chain for 421 million of the phones in the

13  class.  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ███████████████████████████████████████  The

16  result is that his CM pass-through regression represents only 0.3% of the 421 million phones

17  manufactured by CMs.  Johnson Decl. at ¶ 103 & Ex. 21.

---

[2] *See* Marc H. Bornstein, Justin Jager, and Diane L. Putnick, *Sampling in Developmental Science: Situations, Shortcomings, Solutions, and Standards*, Developmental Rev., Vol. 33, No. 4, 361 (2013).

[3] *See* Mark N.K. Saunders, Adrian Thornhill & Philip Lewis, *Research Methods for Business Students*, 241 (5th ed. 2009).

[4] Mark L. Berenson & David M. Levine, *Basic Business Statistics: Concepts and Applications*, 15, 18 (2d ed. 1983) ("[A]ll too often is its assumed, however erroneously, that the data are quite representative of the overall population. But that is a big assumption!").

**EXHIBIT 11**
**SHARE OF CELLULAR PHONES MADE BY CONTRACT MANUFACTURERS**
**REPRESENTED IN DR. FLAMM'S REGRESSION DATA**
**FEBRUARY 2011 – DECEMBER 2017**



Notes: Total units calculated using Dr. Flamm's Exhibit 7 and Table 23.

Sources: Flamm Declaration and turnover.

Although he claims that the data he does use, which comes from the contract manufacturer Wistron, ▮▮▮▮▮▮▮▮▮▮[5] these totals include non-relevant products such as notebook PCs and barcode scanners. Johnson Decl. at ¶ 103 & n.183. In fact, Dr. Flamm's price-regression analysis for Wistron includes ▮▮▮▮▮▮▮▮▮▮[6] *Id.* at ¶ 103 & n.184. Neither Dr. Flamm's declaration nor Plaintiffs' Motion to Certify explain how these data—or Dr. Flamm's results—could be representative of all devices made by all contract manufacturers.

Dr. Flamm's selective use of distributor data is even more egregious. Dr. Flamm uses

---

[5] Flamm Declaration, Data Appendix, ¶11.

[6] ▮▮▮▮▮▮▮▮▮▮

data from just a single distributor—Brightstar—and thus performs no modeling whatsoever of 99.1% of phones sold by distributors. *Id.* at Ex. 31. Again, Dr. Flamm does not explain how using data from only one distributor impacts his results or avoids introducing statistical bias.



**EXHIBIT 21**
**SHARE OF RELEVANT CELLULAR PHONES SOLD BY DISTRIBUTORS REPRESENTED IN DR. FLAMM'S REGRESSION DATA**
**FEBRUARY 2011 – DECEMBER 2017**

Notes: Total units calculated using Dr. Flamm's Exhibit 7 and Table 23.

Sources: Flamm Declaration and turnover.

While statistical sampling can be a reliable indicator of a broader data set, it must be done in a careful, valid manner. An empirical model that incorporates only a tiny, non-random subset of available data is not a reliable method of common proof because it cannot be reliably generalized to the entire population. Dr. Flamm has not even attempted to explain how his pass-through analysis on this tiny sliver of data is representative of pass-through for all of the transactions that he dropped or never considered in the first instance. A model that neither

8

analyzes nor represents more than 92% of the transactions at issue cannot provide common proof of impact.

### B. Dr. Flamm's results are also unreliable because his model uses incorrect data.

The data that Dr. Flamm ran through his regressions are also riddled with errors. The result is the proverbial "garbage-in, garbage-out."

*First,* although he designed his model to use the price and cost of a device at the time it is launched (and excluded data on millions of later-in-time transactions for this reason, which alone introduces bias), he does not actually follow his stated practice. In many instances, Dr. Flamm does not use the price or cost of a device at the time of launch. In fact, he does not always even use price and cost data for a given device from the same point in time. This grab-bag of mismatched price and cost data points renders meaningless the relationship between price and cost that his price regression is supposed to estimate. Modeling the relationship between costs at one point in time and prices two years down the road cannot demonstrate how a company passes costs through to consumers on a particular device.

Exhibit 22 from Dr. Johnson's declaration shows all 30 data points that Dr. Flamm uses to calculate Apple's purported price pass-through. Johnson Decl. ¶ 106.



As discussed above, this is a paltry amount of data on which to base an assertion of class-wide pass-through for hundreds of millions of Apple devices. *See* Johnson Decl. at Ex.1. But even these scant 30 observations are full of errors. As Dr. Johnson notes,

- Prices for iPhones 3GS 8GB, 5S 16GB, and 6 32GB are from two and a half years (or 10 quarters) after launch. Johnson Decl. ¶ 106. Five other price points (4 8GB, 6 16GB, 6

10

64GB, 6+ 16GB, and 6+ 64GB) are from a year and a half after launch. *Id.* Using data from so far after launch conflicts with Dr. Flamm's stated goal of "captur[ing] the prices set with carriers as they negotiate the phone configurations to be offered in retail locations," or for carriers and retailers, "the pass-through of their initial procurement costs into initial sales prices." Flamm Decl. ¶ 257.

- Prices and costs are inexplicably taken from different points in time for the same device, including data points from two and a half years apart for the 5S 16GB (i.e., price from 2016 Q1 and cost from 2013 Q3). Johnson Decl. ¶ 106. For five other data points (3GS 8GB, 6 16GB, 6 64GB, 6+ 16GB, and 6+ 64GB), prices and costs come from periods that are seven quarters apart. *Id.* Dr. Flamm actually had cost and price data from the same periods, yet he does not explain why he used such disparate data for some devices.

This exhibit shows that Dr. Flamm's calculated relationship between price and cost is based on a seemingly incoherent assortment of cost-price time pairs and, therefore, not probative of pass-through. Such inconsistent data points do not yield reliable results.

*Second*, much of Dr. Flamm's dataset contains obvious coding errors. The most glaring example is his analysis of Wistron data, which includes ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████ Johnson Decl. n.192. All of Dr. Flamm's regressions control for OEM, so this miscoding could have produced biased results. And if Dr. Flamm purports to measure a relationship of price to cost, he should be examining the price and cost of the same category of device. Assessing pass-through on the 421 million CM devices purchased by class members using data for only sixteen individual device models was already a stretch, especially because Dr. Flamm has made no effort to explain why those devices are representative of all phones made by contract manufacturers. *Id.* at ¶ 103. Adding the element of miscoding to this already limited, non-randomized dataset renders any results wholly unreliable.

In sum, Dr. Flamm's sample datasets are too small and improperly selected, rendering his results unreliable. His analysis should be excluded on these grounds alone. Moreover, he uses inconsistent time, cost, and price data, introducing further errors. And he has made fundamental

11

1292815

1  coding mistakes which add further critical errors to his already unreliable methodology and data
2  selection.  Under the authorities discussed above, Dr. Flamm's analysis cannot reliably indicate
3  whether OEMs and intermediaries passed on the alleged overcharge to the putative class
4  members, and it must be stricken.

## V.     CONCLUSION

For the foregoing reasons, the Court should strike the Declaration of Dr. Kenneth Flamm. Because Dr. Flamm's model is the only method Plaintiffs propose to calculate antitrust impact, their Motion for Class Certification should also be denied.

//

//

//

| | | |
|---|---|---|
| Dated: August 9, 2018 | | KEKER, VAN NEST & PETERS LLP |
| | By: | */s/ Robert A. Van Nest* |
| | | ROBERT A. VAN NEST |
| | | EUGENE M. PAIGE |
| | | JUSTINA SESSIONS |
| | | JESSELYN FRILEY |

Gary A. Bornstein *(pro hac vice)*
Yonatan Even *(pro hac vice)*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Tel.: (212) 474-1000
Fax: (212) 474-3700
gbornstein@cravath.com
yeven@cravath.com

Richard S. Taffet *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Willard K. Tom *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004-2541
Tel.: (202) 739-3000
Fax: (202) 739 3001
willard.tom@morganlewis.com

Geoffrey T. Holtz (SBN 191370)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
donn.pickett@morganlewis.com
gholtz@morganlewis.com

Attorneys for Defendant
QUALCOMM INCORPORATED