*Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: QUALCOMM ANTITRUST LITIGATION | Case No. 3:17-md-02773-JSC |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To: | Date:      April 21, 2022 |
| ALL ACTIONS | Time:      1:30 p.m. |
| | Dept.:     Courtroom 8, 19th Floor |
| | Judge:    Hon. Jacqueline Scott Corley |
| | Trial Date: |

Pursuant to the Court's April 4, 2022 Order Setting Case Management Conference, the MDL Plaintiffs ("Plaintiffs") and Defendant Qualcomm Incorporated ("Qualcomm") (collectively, the "Parties") hereby submit this Joint Case Management Statement to address next steps in light of the Ninth Circuit's opinion.

## I.   PLAINTIFFS' POSITION

### A.   Plaintiffs will file a motion to certify a class of repealer-state residents and, in the alternative, a class or subclass of California residents.

On September 29, 2021, the Ninth Circuit panel vacated and remanded this case "with instructions for the district court to reconsider certification of the entire class given *FTC v. Qualcomm*." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1075 (9th Cir. 2021). Although the panel disagreed that the California Cartwright Act could apply to a nationwide class that included residents of "non-repealer states,"[1] the panel did not decide whether the Cartwright Act could apply to a class comprised only of residents of "repealer states." *Id*. at 1074. The Ninth Circuit panel instructed the district court to reach "in the first instance" whether plaintiffs could certify a class of only residents of repealer states. *Id.*

Many district courts have certified Rule 23(b)(3) indirect purchaser classes comprised of residents of repealer states. *See, e.g.*, *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052, at *22 (N.D. Cal. Jan. 19, 2017); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143-RS, 2016 WL 467444, at *14 (N.D. Cal. Feb. 8, 2016). And just last week, the Ninth Circuit, sitting en banc, affirmed the certification of a Rule 23(b)(3) repealer-state indirect purchaser class. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*, --- F.4th ----, 2022 WL 1053459, at *21 (9th Cir. Apr. 8, 2022), *aff'g In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308 (S.D. Cal. 2019). Moreover, the California Attorney General recently confirmed the State's belief that California law can be applied extraterritorially to protect consumers in other states harmed by anticompetitive conduct. Br. for

---

[1] In *Illinois Brick v. Illinois*, 431 U.S. 720, 735 (1977), the U.S. Supreme Court held that only direct purchasers could recover damages for price-fixing under Section 4 of the Clayton Act. In response to *Illinois Brick*, many states passed "*Illinois Brick* repealer statutes" that provided indirect purchasers the right to sue when analogous state laws were violated. A "non-repealer state" is a state that did not pass an repealer statute.

the Cal. Attorney General as Amicus Curiae, pp. 4, 23-24, *Epic Games, Inc. v. Apple Inc.*, No. 21-16506 (Mar. 31, 2022) (arguing that California law "does not allow a California company to avail itself of the privileges of California law while simultaneously violating California law in its interactions with individuals or entities located in other States").

Given the Ninth Circuit's mandate and relevant precedent, plaintiffs will file a motion to certify a class of repealer-state residents and, in the alternative, a class or subclass of California residents under the Cartwright Act and California's UCL.

### B.     *FTC v. Qualcomm* does not preclude plaintiffs' anticipated motion for class certification.

The panel also instructed that "on remand, the district court should address in the first instance the effect of *FTC v. Qualcomm* on class certification, particularly on the classes' ability to meet the threshold requirements of Rule 23(a) as well as the viability of plaintiffs' claims to move forward." *Id.* at 1067. Reading this instruction in light of last week's en banc decision in *Olean Wholesale Grocery*, plaintiffs' position is that *FTC v. Qualcomm* does not have any effect on the Court's ability to certify plaintiffs' proposed class or alternative classes. *See* 2022 WL 1053459, at *8. As *Olean Wholesale Grocery* instructed, "a district court cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.*

Even if the Court concluded that plaintiffs' could not pursue their federal Sherman Act claims after *FTC v. Qualcomm*, plaintiffs' claims in this case arise under the California's Cartwright Act and UCL, both of which make illegal conduct that does not violate the Sherman Act. Accordingly, the Ninth Circuit's decision in *FTC v. Qualcomm* is not determinative as to Qualcomm's liability in this case. Nor does *FTC v. Qualcomm* have a preclusive effect here. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 334–35 (1979).

Qualcomm waives any argument that it might make against one-way intervention by seeking to have its motion to dismiss heard before the Court decides class certification. *See Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995); *Wright v. Schock*, 742 F.2d 541, 544 (9th

1   Cir. 1984) (opining that "defendant assumes the risk" that a merits motion will have only stare

2   decisis effect by proceeding with the merits before class certification). Even if Qualcomm

3   prevails in its motion to dismiss, absent class members would not be bound by the judgement if

4   the Court proceeded with the motion before class certification. *Schwarzschild*, 69 F.3d at 295;

5   *Wright*, 742 F.2d at 544 ("The judgment will not be res judicata as to other individual plaintiffs or

6   other members of any class that may be certified.").

7

8   ### 1.   The Cartwright Act makes illegal conduct that does not violate the Sherman Act.

9   *FTC v. Qualcomm* involved federal, not state law. California's Cartwright Act makes

10  illegal conduct that does not violate the Sherman Act, as is demonstrated by the California

11  Supreme Court's decision in *In re Cipro Cases I and II*, 61 Cal. 4th 116, 160 (2015) ("States have

12  regulated against monopolies and unfair competition for longer than the federal government, and

13  federal law is intended 'only to supplant, not to displace, antitrust remedies.'"); *see also AT&T*

14  *Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1110 (9th Cir. 2013) (quoting *Cianci v.*

15  *Superior Ct.*, 40 Cal. 3d 903, 918 (1985)) (The Cartwright Act "reaches beyond the Sherman Act

16  to threats to competition in their incipiency").  Neither the Sherman Act nor the Commerce

17  Clause preempt state antitrust laws. *Knevelbaard Diaries v. Kraft Foods, Inc.*, 232 F.3d 979, 993

18  (9th Cir. 2000). As a result, "[i]nterpretations of federal antitrust laws are at most, instructive, not

19  conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not

20  on federal antitrust statutes but instead on statutes enacted by California's sister states around the

21  turn of the 20th Century." *Aryeh v. Canon Bus Sols., Inc.*, 55 Cal. 4th 1185, 1195 (2013); *see also*

22  *Darush v. Revision LP*, No. CV 12-10296 GAF AGRX, 2013 WL 1749539, at *6 (C.D. Cal. Apr.

23  10, 2013) ("[S]imply because the [U.S.] Supreme Court has changed course regarding the

24  Sherman Act does not mean the California Supreme Court will regarding the Cartwright Act.").

25      Notably, here, state court precedent interpreting the Cartwright Act conflicts with *FTC v.*

26  *Qualcomm* in many respects.  For example, *FTC v. Qualcomm* held that Qualcomm's breach of

27  its FRAND commitments is only actionable in "contract and patent law." 969 F.3d 974, 1005 (9th

28  Cir. 2020). This conflicts with the California Supreme Court's decision in the *In re Cipro Cases I*

*& II*. In those cases, the California Supreme Court held that "[t]he abuse of patent rights may *also* run afoul of antitrust law" and expressly rejected the argument that the Cartwright Act is limited by the "scope of the patent test," which "insulates from antitrust scrutiny virtually any agreement that restrains trade no more than the patent itself would have, if valid." 61 Cal. 4th at 145 (cleaned up). *FTC v. Qualcomm* also held that harm to consumers "are not 'anticompetitive' in the antitrust sense—at least not *directly*—because they do not involve restraints on trade or exclusionary conduct in the 'area of effective competition.'" 969 F.3d at 992. This conflicts with several cases interpreting California law, including *Feldman v. Sacramento Board of Realtors, Inc.*, 119 Cal. App. 3d 739 (1981), which held that "the purpose of antitrust laws is primarily to protect the consuming public by healthy competition, and only secondarily to protect the individual competitor." *Id.* at 748; *see also In re Cipro*, 61 Cal. 4th at 136 (opining that the "principal goal" of the Cartwright Act is "the preservation of consumer welfare").

Qualcomm relies exclusively on federal authority for the proposition that "California's antitrust law mirrors the analysis under federal law." Qualcomm is wrong and the federal authority it relies upon is "no longer the law in California." *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1205 n.4 (9th Cir. 2014) (opining that it is improper to dismiss a "Cartwright Act claim" on the grounds that "the interpretation of California's antitrust statute was coextensive with the Sherman Act," as "[t]his is no longer the law in California."). As the California Supreme Court reaffirmed in its 2015 decision in the *In re Cipro Cases I & II*, "[T]he Cartwright Act is broader in range and deeper in reach than the Sherman Act." 61 Cal. 4th at 160-161; *see also Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1195 (2013) ("Interpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes but instead on statutes enacted by California's sister states around the turn of the 20th Century."). The impact of *FTC v. Qualcomm* on plaintiffs' claims also requires close analysis of the factual record. The limited record on the 23(f) appeal did not include all the evidence that plaintiffs developed in the course of fact and expert discovery in the class case, including merits-based expert reports that (1) differed materially from the expert reports at issue in *FTC v. Qualcomm* and (2) post-dated the

district court's class certification order. Qualcomm itself has admitted that plaintiffs' claims differed from those at issue in the FTC's case including an explicit allegation regarding tying. *See* Qualcomm Opening Br., *FTC v. Qualcomm Inc.*, Case No. 19-16122, ECF No. 80, at 41 (9th Cir.) (acknowledging that the FTC "never made" a tying claim).In remanding this case to the district court to decide the effect of *FTC v. Qualcomm* in the first instance, the panel agreed with Plaintiffs that the merits of Plaintiffs' case were not at issue in the limited 23(f) appeal.

### 2.      The UCL is broader than the Cartwright Act.

Plaintiffs have also asserted a claim under California's UCL.  *See* Complaint, ECF No. 490, ¶¶ 207-08 ("Qualcomm's conduct was also deceptive because it induced SSOs to use its technology on the promise that Qualcomm would comply with FRAND. But after SSOs selected Qualcomm's technology for their standards, Qualcomm refused to comply with its FRAND commitments.").  The UCL prohibits "any unlawful, unfair, or fraudulent business act or unfair, deceptive, untrue or misleading adverting . . . ." Cal. Bus. & Prof. Code § 17200.

The UCL's reach is even broader than the Cartwright Act, "enabl[ing] judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's intervention would contrive.'" *See Metro-Goldwyn-Mayer Studios v. Grokster Ltd.*, 269 F. Supp. 2d 1213, 1227 (C.D. Cal. 2003) (quoting *Am. Philatelic Soc'y v. Claibourne*, 3 Cal. 2d 689, 698 (1935)); *see also Aryeh*, 55 Cal. 4th at 1195 ("though the Cartwright Act and the UCL each address aspects of unfair business competition, they have markedly different origins and scopes"); *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996) (observing that the "unfair" prong of the UCL has been interpreted to be "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud").  Thus, even if the court ultimately concludes that plaintiffs cannot prove a violation of the Sherman Act or even the Cartwright Act, plaintiffs' UCL claim survives.  *See Korea Kumho Petrochemical v. Flexsys Am. L.P.*, No. C07-01057 MJJ, 2008 WL 686834, at *9 (N.D. Cal. Mar. 11, 2008) ("An act need not violate the antitrust laws to be actionable by a competitor as unfair . . ." (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999))); *Metro-Goldwyn-Mayer Studios Inc.*, 269 F. Supp. 2d at 1227 (opining that the UCL "arguably brings within its radius conduct that might otherwise fall outside

the strict confines of antitrust law").

As the California Attorney General argued in a recent brief filed in the Ninth Circuit, "California Supreme Court precedent recognizes that conduct may violate the UCL without violating antitrust law" and "[n]othing in California Supreme Court precedent requires applying specific methods from antitrust analysis to UCL claims and courts are free to consider a variety of factors." Br. for the Cal. Attorney General as Amicus Curiae, pp. 12, 19, *Epic Games, Inc. v. Apple Inc.*, No. 21-16506 (Mar. 31, 2022); *see also id.* at p. 14-15 (describing cases where California courts have permitted unfairness claim to proceed without an unlawful claim under the UCL).

Qualcomm argues that Plaintiffs' UCL claims overlap with *FTC v. Qualcomm* because the FTC purportedly pursued its claims under the broader enforcement powers of the Federal Trade Commission Act. This is plainly wrong. The FTC could have brought a case based on the broader reach of the FTC Act, but it didn't do so. Instead, it relied on Sections 1 and 2 of the Sherman Act and argued that the Sherman Act violation was also actionable under Section 5 of the FTC Act. *See* Fed. Trade Comm'n Answering Br., *FTC v. Qualcomm*, Case No. 19-16122, ECF No. 144, at 17 ("The FTC alleged that Qualcomm's conduct violated Sections 1 and 2 of the Sherman Act, and thus Section 5 of the FTC Act." (citation omitted)). The Ninth Circuit panel acknowledged that the FTC did not pursue and the district court did not decide whether there was a "standalone violation of the FTC Act." *FTC v. Qualcomm*, 969 F.3d at 986 n.11 ("Because the district court concluded that Qualcomm violated the Sherman Act and thereby violated the FTC Act—which prohibits '[u]nfair methods of competition,' including Sherman Act violations—it did not address whether Qualcomm's conduct constituted a standalone violation of the FTC Act."). Qualcomm's statement that the FTC's claims "extended beyond the Sherman Act" is meritless and undercuts Qualcomm's argument that *FTC v. Qualcomm* "directly speaks to the violations of Plaintiffs' California law claims as well." Qualcomm offers no other argument as to why the UCL's unfairness prong would not make illegal conduct that the Sherman Act does not reach. Additionally, *FTC v. Qualcomm* did not analyze any of the factual predicates that plaintiffs would need to show in order to prove their UCL claim.  The decision did not consider whether

Qualcomm breached its contractual commitments to license-standard setting organizations. *See* 969 F.3d at 987 ("Because our reversal does not depend on the district court's grant of partial summary judgment with respect to Qualcomm's contractual commitments to license its SEPs to rival chip suppliers, we vacate that order as moot without reaching its merits."); *see also id.* at 995 ("Even if the district court is correct that Qualcomm is contractually obligated via its SSO commitments to license rival chip suppliers—a conclusion we need not and do not reach—the FTC still does not satisfactorily explain how Qualcomm's alleged breach of its contractual commitment *itself* impairs the opportunity for rivals."). It also did not address whether Qualcomm's royalty rates were unreasonable or whether Qualcomm was in breach of its FRAND commitments. *Id.* at 999 n.20 ("Because our holding does not depend on the 'reasonableness' of a licensor's royalties, a determination that sounds in patent law and not antitrust law, we need not decide whether the method the district court used to assess reasonableness in this case was erroneous.").

### 3.   *FTC v. Qualcomm* does not have preclusive effect

The Ninth Circuit's opinion in *FTC v. Qualcomm* is dependent upon the evidentiary record developed in that case at the district court. After the FTC trial, Judge Koh made several factual findings and conclusions of law derived from those factual findings. *See FTC v. Qualcomm Inc.*, 411 F. Supp. 3d 658 (N.D. Cal. 2019), No. 17-cv-00220-LHK, ECF Nos. 1490, 1491. The Ninth Circuit reviewed those factual findings and found the evidence lacking in certain respects. 969 F.3d at 996, 999. Based on that evidence, the Ninth Circuit concluded that the FTC had not shown harm to competition or any impairment to Qualcomm's rivals. *Id.*   Plaintiffs in this case are not bound by those factual findings, *Parklane Hosiery,* 439 U.S. at 334–35, and plaintiffs have developed sufficient evidence to address those issues found wanting by the Ninth Circuit at trial in this action. Thus, to the extent the FTC's decision has any bearing on class certification, it is only insofar as the decision demonstrates the classwide nature of these issues.

## II.   QUALCOMM'S POSITION

### A.   BACKGROUND

This case stems from a complaint that the Federal Trade Commission ("FTC") filed

against Qualcomm in January of 2017. As the Ninth Circuit has recognized, "Qualcomm is a global leader in cellular technology." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1063 (9th Cir. 2021). Since its founding in San Diego in 1985, "Qualcomm has contributed notable technological innovations to modern cellular communication standards and holds thousands of cellular patents." *Id.* Qualcomm holds certain Standard Essential Patents ("SEPs") that international standard-setting organizations have "incorporated into cellular communication standards, such as 3G, CDMA, or 4G LTE." *Id.*

Qualcomm also designs and sells modem chips worldwide. *Id.* These include modem chips that, together with other components of mobile devices, facilitate smartphones' ability to communicate across cellular networks, including networks that are compatible with the CDMA and LTE standards that are the focus of this lawsuit. Qualcomm sells its modem chips and licenses its SEPs to Original Equipment Manufacturers ("OEMs")—companies such as Apple, Samsung, and others—who manufacture cellphones or other mobile devices with cellular capability.

### *FTC v. Qualcomm*

On January 17, 2017, the Federal Trade Commission ("FTC") filed a complaint against Qualcomm in a case styled *FTC v. Qualcomm*, Case No. 5:17-cv-00220 (N.D. Cal.). The FTC alleged that certain of Qualcomm's licensing practices violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 and Section 5 of the FTC Act, 15 U.S.C. § 45(a). Specifically, the FTC alleged that Qualcomm unlawfully (1) declined to license its cellular SEPs to competing modem chip manufacturers, (2) sold modem chips only to OEMs who had licensed Qualcomm's SEPs (which the FTC pejoratively referred to as a "no license, no chips" policy), and (3) entered into "exclusive dealing arrangements with Apple," which the FTC alleged were anticompetitive. *FTC v. Qualcomm*, Dkt. 1 at 2–3. The FTC alleged that these practices produced "elevated royalties" that amounted to a "tax" on OEMs' purchase of competitors' modem chips. *Id.* at 3. Qualcomm denied that any of its practices were anticompetitive or violated the antitrust laws. The case was assigned to and tried before then-District Court Judge Lucy Koh.

On May 21, 2019, the Court issued its Findings of Fact and Conclusions of Law in *FTC v.*

1   *Qualcomm*. *FTC v. Qualcomm*, Dkt. 1491. The Court ruled that the practices that the FTC had

2   alleged were unlawful had violated the Sherman Act, and the Court issued a broad injunction

3   requiring Qualcomm to alter its business practices. *Id.* at 227–33. Qualcomm appealed the ruling.

4   After issuing a stay of the District Court's injunction on August 23, 2019, the Ninth

5   Circuit issued its opinion in *FTC v. Qualcomm* on August 11, 2020. *See FTC v. Qualcomm*, 969

6   F.3d 974 (9th Cir. 2020). The Ninth Circuit reversed the District Court's order in its entirety,

7   concluding, among other things, that Qualcomm had no "antitrust duty to license rival chip

8   manufacturers," that the "district court's 'anticompetitive surcharge' theory fails to state a cogent

9   theory of anticompetitive harm," and that the "no license, no chips" policy in no way offended the

10  Sherman Act. *Id.* at 995, 998, 1002 (9th Cir. 2020).

11  The FTC unsuccessfully sought rehearing *en banc* of the Ninth Circuit's opinion. The

12  mandate issued on November 6, 2020, and the time for any further review passed more than a

13  year ago.

14  ### ***In re Qualcomm Antitrust Litigation***

15  The day after the FTC had filed its complaint, civil plaintiffs began filing copycat civil

16  antitrust complaints. On April 6, 2017, the United States Judicial Panel on Multidistrict Litigation

17  centralized the actions in this Court and assigned them to Judge Koh, to "facilitate coordination of

18  discovery and other pretrial activities between the FTC action and the private actions." Dkt. 1 at

19  3. The MDL action was styled *In re: Qualcomm Antitrust Litigation*, No. 17-MD-2773-LHK

20  (N.D. Cal.).

21  MDL Plaintiffs filed a Consolidated Class Action Complaint on July 11, 2017. Dkt. 94.

22  Mirroring the FTC complaint, the MDL Plaintiffs alleged that Qualcomm had unlawfully

23  declined to license its SEPs to competing chip manufacturers, maintained what Plaintiffs called a

24  "no-license-no-chips" policy, and had entered into "exclusive dealing contracts" with Apple. Dkt.

25  94 at 3–4. Like the FTC, the MDL Plaintiffs alleged that these practices resulted in a "surcharge"

26  to OEMs. *Id.* at 21. The MDL Plaintiffs brought claims under the Sherman Act, California's

27  Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq.*, and California's Unfair Competition

28  Law Cal. Bus. & Prof. Code §§ 17200 *et seq.*

1    The MDL and the FTC actions were litigated in parallel. The Court issued a Discovery

2    Coordination Order that coordinated written discovery and depositions between and among the

3    two actions. Dkt. 131. Plaintiffs in the MDL action filed a First Amended Class Action Complaint

4    on June 13, 2018. Dkt. 490.

5    **Class Certification in *In re Qualcomm***

6    On July 5, 2018, Plaintiffs moved to certify a nationwide class pursuant to Federal Rule of

7    Civil Procedure 23(b)(2) and (b)(3). Plaintiffs' proposed class (the "Class") consisted of:

8    
> All natural persons and entities in the United States who purchased, paid for,
> and/or provided reimbursement for some or all of the purchase price for all UMTS,
> CDMA (including CDMAone and cdma2000) and/or LTE cellular phones
> ("Relevant Cellular Phones") for their own use and not for resale from February
> 11, 2011, through the present (the "Class Period") in the United States. This class
> excludes (a) Defendant, its officers, directors, management, employees,
> subsidiaries, and affiliates; (b) all federal and state governmental entities; (c) all
> persons or entities who purchased Relevant Cellular Phones for purposes of resale;
> and (d) any judges or justices involved in this action and any members of their
> immediate families or their staff.

14   Dkt. 524 at 1. Qualcomm opposed the motion. Dkt. 641.

15   The District Court granted Plaintiffs' motion for class certification on September 27,

16   2018. Dkt. 760. In doing so, the District Court concluded that California's Cartwright Act—

17   which, unlike the federal Sherman Act, allows indirect purchasers like Plaintiffs to sue for

18   damages—could be applied nationwide notwithstanding other states' laws that precluded such

19   damages claims. *Id.* at 52–57. The District Court certified a nationwide class of all individuals

20   and entities who had purchased an allegedly affected cellular phone from February 11, 2011 to

21   the present. The class was estimated to number between 232.8 and 250 million members.

22   Pursuant to Federal Rule of Civil Procedure 23(f), Qualcomm filed a petition seeking

23   interlocutory review of the class certification order on October 11, 2018. *See In re Qualcomm*

24   *Antitrust Litigation*, No. 18-80135, Dkt. 1-3 (9th Cir.). The Ninth Circuit granted that petition on

25   January 23, 2019, and this case was stayed the following day.

26   While the interlocutory appeal of the class certification order was pending, the Ninth

27   Circuit issued its opinion in *FTC v. Qualcomm*. The Ninth Circuit panel presiding over the

28   interlocutory appeal of the class certification order then directed the parties to submit

supplemental letter briefs regarding the effect of *FTC v. Qualcomm* on this case. *See Stromberg*, No. 19-1519, Dkt. 202 (9th Cir. Aug. 17, 2020). The parties submitted their letter briefs as ordered. Qualcomm urged the Ninth Circuit to remand with instructions to dismiss the case in light of *FTC v. Qualcomm*.  Plaintiffs argued that such a step would exceed the Ninth Circuit's jurisdiction under Rule 23(f).

On September 29, 2021, the Ninth Circuit issued its Opinion regarding Qualcomm's interlocutory appeal of the class certification order. *See Stromberg v. Qualcomm, Inc.*, 14 F.4th 1059 (9th Cir. 2021). The Ninth Circuit vacated the District Court's order certifying a nationwide indirect purchaser class "[b]ecause the district court erred in its choice of law analysis and in light of *FTC v. Qualcomm Inc.*" *Id.* at 1063. Specifically, the Ninth Circuit held that "the 23(b)(3) class was erroneously certified under a faulty choice of law analysis because differences in relevant state laws swamp predominance." *Id.* at 1067. The Court also "vacate[d] the 23(b)(2) class certification order in light of *FTC v. Qualcomm*." *Id.* The Ninth Circuit instructed this Court on remand to "reconsider the viability of Plaintiffs' claims given *FTC v. Qualcomm*." *Id.* at 1063.

**B.      Qualcomm intends to file a motion to dismiss this action in light of *FTC v. Qualcomm*.**

This Court should promptly follow the Ninth Circuit's instruction to "reconsider the viability of Plaintiffs' claims given *FTC v. Qualcomm*." *Stromberg*, 14 F.4th at 1063. In *FTC v. Qualcomm*, the Ninth Circuit held that "Qualcomm's licensing practices did not violate the Sherman Act, and the exclusive dealing agreements with Apple did not substantially foreclose competition." *Stromberg*, 14 F.4th at 1071. Plaintiffs' claims and theories in this action mirror the FTC's. The Ninth Circuit's ruling rejecting those theories as a matter of law is binding precedent.

In this case, although the Ninth Circuit declined to remand with express instructions to dismiss, the Court of Appeals repeatedly made clear that this Court should "address in the first instance . . . the viability of plaintiffs' claims to move forward." *Id.* at 1067. While noting that its jurisdiction under Rule 23(f) was limited to class certification issues, the Ninth Circuit recognized that "[t]his case and *FTC v. Qualcomm* have overlapping facts and claims, and many of our conclusions in *FTC v. Qualcomm* were conclusions of law," meaning that "*FTC v. Qualcomm*

---

11

likely has preclusive effect on many issues raised by plaintiffs in this case." *Id.* at 1074. Providing further guidance, the Ninth Circuit continued: "We concluded in *FTC v. Qualcomm* that Qualcomm's SEP licensing practices, the same practices complained of here, are lawful and not anticompetitive. Because Plaintiffs' arguments in this case overlap with those brought in *FTC v. Qualcomm*, there would have to be some extraordinary difference for Plaintiffs' claims here to not fail as a matter of law . . . ." *Id.* at 1075.

No such extraordinary difference exists. The ruling in *FTC v. Qualcomm* disposes of Plaintiffs' claims as a matter of law. Qualcomm therefore intends to bring a motion under Federal Rule of Civil Procedure 12(c), or whatever procedural vehicle the Court believes to be appropriate, to seek dismissal of Plaintiffs' claims with prejudice in light of *FTC v. Qualcomm*.

Qualcomm believes that is the most efficient and sensible way to proceed given the Ninth Circuit's decision in this case. Plaintiffs themselves told the Ninth Circuit that this Court was "best suited" to determine the "impact of the FTC decision" on this case. *Stromberg*, Dkt. 209 at 3. There is no reason to conduct any other proceedings if the entire case is doomed due to the Ninth Circuit's conclusion in *FTC v. Qualcomm* that Qualcomm's conduct, which is the subject of Plaintiffs' claims in this case, was "*hyper*competitive"—i.e., it advanced competition rather than harmed it—and therefore lawful. *FTC v. Qualcomm*, 696 F.3d at 982. The Court should decide that threshold dispositive issue first before deciding whether and how to proceed further in this case.

Nothing in Plaintiffs' position as set forth in this CMC Statement alters that conclusion. To the contrary, Plaintiffs' arguments make clear that this Court should first assess the *FTC v. Qualcomm* opinion's effect on Plaintiffs' claims before proceeding further and provide the parties a full opportunity to brief the issues. Plaintiffs offer their position in this CMC Statement, but a CMC Statement is not the proper vehicle to litigate what may be dispositive issues for this case. Because Qualcomm's forthcoming motion will allow the parties a full opportunity to present their respective arguments, Qualcomm responds only briefly here to Plaintiffs' position regarding *FTC v. Qualcomm*'s effect on this action.

In their statement above, Plaintiffs recycle the same arguments they presented to the Ninth

Circuit regarding *FTC v. Qualcomm*'s effect on this litigation—specifically, that they can

continue to pursue putative antitrust claims under the Cartwright Act and UCL, the legal basis for

which the Ninth Circuit has squarely rejected as a matter of law. *See Stromberg*, No. 19-15159,

Dkt. 209 at 17–39. Qualcomm rebutted Plaintiffs' arguments in supplemental briefing before the

Ninth Circuit and will not repeat those arguments in detail here. *Id.* at Dkt. 212 at 5–13. Suffice it

to say that Plaintiffs ignore that, throughout this litigation, they have always equated their claims

under California state law and federal law. Plaintiffs have never characterized their UCL claim as

anything other than derivative of their now-defunct federal antitrust claim. And they point to no

case suggesting that California statutes adopt core antitrust principles that differ in any material

respect from those the *FTC v. Qualcomm* panel applied to dispose of the FTC's case as a matter

of law. The Ninth Circuit apparently found Plaintiffs' arguments unpersuasive; although it

indicated that the scope of its review under Rule 23(f) did not permit it to decide the matter in the

first instance, it observed that *FTC v. Qualcomm* "likely" precludes Plaintiffs' claims and dooms

them "as a matter of law." *Stromberg*, 14 F.4th at 1074–75.

The Ninth Circuit was correct. *FTC v. Qualcomm*'s preclusive effect flows from the Ninth

Circuit's *legal* conclusion that the antitrust theory underlying the FTC's (and Plaintiffs') claims

holds no water. Private plaintiffs cannot evade the *stare decisis* effect of a government case by

asserting that they were nonparties to the prior case, thus confusing the issue with res judicata or

collateral estoppel. *See In re American Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp.

3d 324, 340 (E.D.N.Y. 2019). Where, as here, "the economic activity and the basic facts are the

same between the Government Action and the" private antitrust class action, an appellate court's

explication of the law in the government action governs the class case. *Id.* at 338 (internal

quotation marks omitted).

As for Plaintiffs' state law claims, the Ninth Circuit has repeatedly held that "[t]he

analysis under California's antitrust law mirrors the analysis under federal law." *Cty. of Tuolumne

v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *see also, e.g.*, *Name.Space, Inc. v.

Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 n.5 (9th Cir. 2015) (same);

*Eastman v. Quest Diagnostics Inc.*, 2016 WL 1640465, at *4, 13 (N.D. Cal. Apr. 26, 2016), *aff'd*,

724 F. App'x 556 (9th Cir. 2018) (dismissing Cartwright Act and UCL claims where Plaintiffs had alleged "monopolization claims under section 2 of the Sherman Act and the Cartwright Act, as well as derivative claims under the UCL" and a "tying" claim). This is not an issue where California law differs from federal law, such as permitting damages for indirect purchasers instead of following *Illinois Brick*; it is a question of core antitrust law.

Plaintiffs' position also ignores the fact that the FTC pursued its claims under the Federal Trade Commission Act, which declares "unfair methods of competition" to be "unlawful." 15 U.S.C. § 45. The Sherman Act violations alleged by the FTC constituted a method by which it sought to prove "unfairness," but its claims extended beyond the Sherman Act.  Similarly to the FTC Act, California's UCL prohibits, in relevant part, "unlawful" or "unfair" business acts or practices. Cal. Bus. & Prof. Code § 17200. In cases based on alleged "unfair competition among direct competitors," California courts determining UCL claims "turn for guidance to the jurisprudence arising under the parallel section 5 of the Federal Trade Commission Act." *Cel-Tech Comms.*, 20 Cal. 4th 163, 186 (1999) (cleaned up). The Ninth Circuit's conclusion that Qualcomm's business practices were neither unlawful nor unfair under the FTC Act thus directly speaks to the viability of Plaintiffs' California law claims as well.

The Ninth Circuit's recent opinion in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*, 2022 WL 1053459 (9th Cir. Apr. 8, 2022) (en banc), is in no way to the contrary. That case affirmed class certification of an antitrust class seeking damages for a straightforward price-fixing conspiracy. There was no question in *Olean* whether the underlying price-fixing claim stated a cognizable antitrust claim. The Court even distinguished a First Circuit opinion on the grounds that the plaintiffs in the First Circuit case had "raised a 'novel and complex' theory of how consumers were injured," while the "price-fixing theory" in *Olean* was neither "novel" nor "complex." *Id.* at *16–17. Here, by contrast, Plaintiffs are pursuing a novel and complex antitrust theory that the Ninth Circuit rejected as legally unsupported. *Olean* also undercuts Plaintiffs' argument that their state law claims can survive *FTC v. Qualcomm*. The *Olean* Court held: "Because the analysis of a claim under the Cartwright Act mirrors the analysis under federal [antitrust] law, we do not consider the Cartwright Act claims separately from the

federal antitrust claims." 2022 WL 1053459, at *6 (cleaned up).

Plaintiffs also overstate *Olean*'s observation that a district court "cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.* at *8. Citing Supreme Court precedent, the Ninth Circuit noted that the district court's analysis at the class certification stage may "'entail some overlap with the merits of the plaintiff's underlying claim'" and must consider whether the evidence presented "could reasonably sustain a jury verdict in favor of the plaintiffs." *Id.* at *7–8 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). In this case, there is no question of what evidence a jury may accept; no reasonable jury could conclude that Qualcomm's challenged practices are anticompetitive when the Ninth Circuit has already held as a matter of law that they are not and are indeed lawful. *See Chavez v. Whirlpool Corp.* 93 Cal. App. 4th 363 (2001) (conduct "deemed reasonable and condoned under the antitrust laws" could not satisfy the "unfair" prong of the UCL).

In sum, the Court should direct Qualcomm to file an appropriate motion to seek dismissal of Plaintiffs' claims with prejudice in light of *FTC v. Qualcomm*. After deciding that motion, the Court can determine whether and how to proceed further.

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:17-md-02773-JSC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEKER, VAN NEST & PETERS LLP

Dated: April 14, 2022          By:     */s/ Robert A. Van Nest*
                                        Robert A. Van Nest - # 84065
                                        rvannest@keker.com
                                        Eugene M. Paige - # 202849
                                        epaige@keker.com
                                        Cody S. Harris - # 255302
                                        charris@keker.com
                                        Matan Shacham - # 262348
                                        mshacham@keker.com
                                        633 Battery Street
                                        San Francisco, CA 94111-1809
                                        Telephone:    415 391 5400
                                        Facsimile:    415 397 7188

                                        Gary A. Bornstein *(pro hac vice)*
                                        Yonatan Even *(pro hac vice)*
                                        CRAVATH, SWAINE & MOORE LLP
                                        Worldwide Plaza
                                        825 Eighth Avenue
                                        New York, NY 10019-7475
                                        Tel.: (212) 474-1000
                                        Fax: (212) 474-3700
                                        gbornstein@cravath.com
                                        yeven@cravath.com

                                        Richard S. Taffet *(pro hac vice)*
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        101 Park Avenue
                                        New York, NY 10178-0060
                                        Tel.: (212) 309-6000
                                        Fax: (212) 309-6001
                                        richard.taffet@morganlewis.com

                                        Geoffrey T. Holtz (SBN 191370)
                                        MORGAN, LEWIS & BOCKIUS LLP
                                        One Market, Spear Street Tower
                                        San Francisco, CA 94105-1596
                                        Tel.: (415) 442-1000
                                        Fax: (415) 442-1001
                                        gholtz@morganlewis.com

                                        Attorneys for Defendant
                                        QUALCOMM INCORPORATED

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:17-md-02773-JSC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SUSMAN GODFREY LLP

Dated:  April 14, 2022                    By:     */s/ Kalpana Srinivasan*
Kalpana Srinivasan
Marc M. Seltzer
Steven G. Sklaver
Amanda Bonn
Oleg Elkhunovich
Krysta K. Pachman
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

Joseph S. Grinstein
SUSMAN GODFREY L.L.P.
1000 Louisiana Street # 5100
Houston, TX 77002

Joseph W. Cotchett
Adam J. Zapala
Mark F. Ram
Brian Danitz
Michael A. Montano
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010

**Plaintiffs' Co-Lead Class Counsel**

**Plaintiffs' Steering Committee:**
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO
1301 2nd Avenue, Suite 2000
Seattle, WA 98101

Jeff D. Friedman
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:17-md-02773-JSC

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 14, 2022 to all counsel of record who are deemed to have consented to electronic service via the Courts CM/ECF system per Civ LR 5.4(d).  Any other counsel of record will be served by U.S. mail.

/s/ *Robert A. Van Nest*
Robert A. Van Nest

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:17-md-02773-JSC