KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest - # 84065
rvannest@keker.com
Eugene M. Paige - # 202849
epaige@keker.com
Cody S. Harris - # 255302
charris@keker.com
Matan Shacham - # 262348
mshacham@keker.com
Kristin E. Hucek - # 321853
khucek@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

MORGAN, LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
gholtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet *(pro hac vice)*
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: QUALCOMM ANTITRUST LITIGATION<br><br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:17-md-02773-JSC<br><br>**DEFENDANT QUALCOMM INCORPORATED'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:        November 15, 2022<br>Time:       9:00 a.m.<br>Dept.:      Courtroom 8, 19th Floor<br>Judge:     Hon. Jacqueline Scott Corley<br><br>Trial Date: Not yet set |

PLEASE TAKE NOTICE that on November 15, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8, United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Qualcomm Incorporated ("Qualcomm"), will and hereby does move for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the Second Amended Consolidated Class Action Complaint with prejudice. Qualcomm's motion is based on the authorities and argument set forth herein, other pleadings filed in this matter, oral argument to be presented to the Court, and such other matters as the Court may consider.

### ISSUES TO BE DECIDED (LOCAL RULE 7-4)

This Motion raises the following issue:

1.    Whether Plaintiffs have failed to satisfy the Ninth Circuit's directive in this case that they show an "extraordinary difference" between their claims and the claims the Ninth Circuit rejected in *FTC v. Qualcomm, Inc.*, 969 F.3d 974 (9th Cir. 2020), in order for their claims "to not fail as a matter of law." *Stromberg v. Qualcomm, Inc.*, 14 F.4th 1059, 1075 (9th Cir. 2021).

Dated:  August 1, 2022

KEKER, VAN NEST & PETERS LLP

By:    *s/Robert A. Van Nest*

ROBERT A. VAN NEST
EUGENE M. PAIGE
CODY S. HARRIS
MATAN SHACHAM
KRISTIN E. HUCEK

Richard S. Taffet *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Geoffrey T. Holtz (SBN 191370)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
gholtz@morganlewis.com

1

## <u>TABLE OF CONTENTS</u>

2
                                                                                                      <u>Page</u>

3

4    ISSUES TO BE DECIDED (LOCAL RULE 7-4) ............................................................... i

5    MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

6    I.      INTRODUCTION ........................................................................................1

7    II.     RELEVANT PROCEDURAL BACKGROUND ............................................4

8            A.      *FTC v. Qualcomm* .............................................................................4

9            B.      *In re Qualcomm Antitrust Litigation* ...............................................5

10   III.    LEGAL STANDARD....................................................................................6

11   IV.     ARGUMENT ...............................................................................................7

12           A.      There is no "extraordinary difference" between Plaintiffs' claims and the
                     claims the Ninth Circuit rejected in *FTC v. Qualcomm* ...........................7

13           B.      There are no material differences between the Cartwright Act and the
14                   Sherman Act that could lead this Court to part ways with the Ninth Circuit. ......9

15           C.      Plaintiffs fail to allege a viable tying claim. .......................................11

16                   1.      The alleged tying practice is merely Qualcomm's "no-license, no-
                             chips" policy, which the Ninth Circuit found lawful. ...............................12

17                   2.      Plaintiffs cannot allege foreclosure in competition for licenses to
18                           Qualcomm's SEPs because no competition exists for those licenses........12

19           D.      Alleged FRAND violations do not support a Cartwright Act claim.....................15

20                   1.      In *FTC*, the Ninth Circuit rejected the theory that alleged FRAND
                             violations by Qualcomm could amount to anticompetitive conduct. ........16

21                   2.      Plaintiffs have failed to allege facts to support the *Broadcom*
22                           exception's application in this case..........................................................17

23           E.      Plaintiffs' UCL claim fails....................................................................18

24                   1.      Qualcomm's conduct is lawful and cannot support a UCL claim. ............18

25                   2.      Plaintiffs fail to plead a UCL claim under the "unfair" prong.................19

26                   3.      Plaintiffs fail to plead a UCL claim under the "fraudulent" prong...........21

27   V.      CONCLUSION...........................................................................................23

28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) ......................................................................14

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
    361 F. Supp. 3d 324 (E.D.N.Y. 2019) ..........................................................7

*Apple Inc. v. Samsung Elecs. Co.*,
    2011 WL 4948567 (N.D. Cal. 2011) ....................................................10, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................7

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) .......................................................13, 14, 15

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007) ...................................................................16, 17

*In re Cal. Gasoline Spot Market Antitrust Litig.*,
    2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ............................................10

*Caltex Plastics, Inc. v. Lockheed Marin Corp.*,
    824 F.3d 1156 (9th Cir. 2000) ....................................................................21

*ChriMar Sys. v. Cisco Sys.*,
    72 F. Supp. 3d 1012 (N.D. Cal. 2014) ........................................................19

*City of San Jose v. Office of the Comm'r of Baseball*,
    776 F.3d 686 (9th Cir. 2015) .................................................................18, 19

*Community Builders, Inc. v. City of Phoenix*,
    652 F.2d 823 (9th Cir. 1981) ......................................................................13

*Cty. of Tuolumne v. Sonora Cmty. Hosp.*,
    236 F.3d 1148 (9th Cir. 2001) ....................................................................10

*Distance Learning Co. v. Maynard*,
    2020 WL 2995529 (N.D. Cal. June 4, 2020) ..............................................19

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ......................................................19

*dotStrategy Co. v. Facebook Inc.*,
    482 F. Supp. 3d 994 (N.D. Cal. 2020) ..................................................22, 23

*Driskill v. Dallas Cowboys Football Club, Inc.*,
  498 F.2d 321 (5th Cir. 1974) ............................................................................14

*Eastman v. Quest Diagnostics Inc.*,
  2016 WL 1640465 (N.D. Cal. Apr. 26, 2016) ....................................................10

*FTC v. Qualcomm, Inc.*,
  969 F.3d 974 (9th Cir. 2020) .................................................................... *passim*

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
  250 F. Supp. 3d 438 (N.D. Cal. 2017) ..................................................19, 21, 22

*Intel Corp. v. Fortress Inv. Grp. LLC*,
  511 F. Supp. 3d 1006 (N.D. Cal. 2021) ..............................................................19

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ..........................................................................................13, 14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..............................................................................7

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d. 1181 (S.D. Cal. 2005) .............................................................22

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*,
  729 F. App'x 528 (9th Cir. 2018) .......................................................................18

*LiveUniverse, Inc. v. MySpace, Inc.*,
  304 F. App'x. 554 (9th Cir. 2008) ......................................................................18

*Lloyd's Material Supply Co., v. Regal Beloit Corp.*,
  2017 WL 5172206 (C.D. Cal June 27, 2017) .....................................................19

*Lorenzo v. Qualcomm, Inc.*,
  2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ...............................................22, 23

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*,
  2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ...................................................19

*Lozano v. AT&T Wireless Svcs, Inc.*,
  504 F.3d 718 (9th Cir. 2007) ..............................................................................20

*Michel v. United States*,
  2017 WL 4922831 (S.D. Cal. Oct. 31, 2017) .....................................................23

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  795 F.3d 1124 (9th Cir. 2015) .......................................................................10, 11

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .................................................................23

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   939 F. Supp. 2d 1002 (N.D. Cal. 2013) ................................................................15, 18

*PLS.Com, LLC v. Nat'l Assoc. of Realtors*,
   32 F.4th 824 (9th Cir. 2022) ...........................................................................10, 17

*In re Qualcomm Antitrust Litig.*,
   328 F.R.D. 280 (N.D. Cal. 2018) ................................................................................9

*Rambus Inc. v. FTC*,
   522 F.3d 456 (D.C. Cir. 2008) ...................................................................................18

*Reilly v. Apple, Inc.*,
   _ F. Supp. 3d_, 2022 WL 74162 (N.D. Cal. 2022) ..................................................19

*Soriano v. Countrywide Home Loans*,
   2011 WL 2600759 (N.D. Cal. Jun. 30, 2011) ..........................................................21

*Stromberg v. Qualcomm, Inc.*,
   14 F.4th 1059 (9th Cir. 2021) .......................................................................... *passim*

*TCL Comm'ns Tech. Holdings v. Telefonaktienbolaget LM Ericsson*,
   2016 WL 7049263 (C.D. Cal Aug. 9, 2016) ............................................................22

*Universal Grading Serv., LLC v. eBay, Inc.*,
   2012 WL 70644 (N.D. Cal. Jan. 9, 2012) ................................................................19

*Universal Grading Serv., LLC v. eBay, Inc.*,
   563 F. App'x 571 (9th Cir. 2014) .............................................................................10

*In re Webkinz Antitrust Litig.*,
   695 F. Supp. 2d 987 (N.D. Cal. 2010) ........................................................................6

*Wi-LAN Inc. v. LG Elecs., Inc.*,
   382 F. Supp. 3d 1012 (S.D. Cal. 2019) ....................................................................17

**State Cases**

*Aryeh v. Canon Bus. Solutions, Inc.*,
   55 Cal. 4th 1185 (2013) ...............................................................................................9

*Belton v. Comcast Cable Holdings, LLC*,
   151 Cal. App. 4th 1224 (2007) ...................................................................3, 12, 13, 15

*Berryman v. Merit Prop. Mgmt., Inc.*,
   152 Cal. App. 4th 1544 (2007) .................................................................................21

*Cel-tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ..............................................................................................20

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ......................................................................................19

*In re Cipro Cases I & II*,
    61 Cal. 4th 116 (2015) ...............................................................................................3

*Cortez v. Purolation Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) .............................................................................................22

*Exxon Corp. v. Super. Ct.*,
    51 Cal. App. 4th 1672 ..............................................................................................10

*Freeman v. San Diego Ass'n of Realtors*,
    77 Cal. App. 4th 171 (1999) ..............................................................................11, 15

*Goonewardene v. ADP, LLC*,
    6 Cal. 5th 817 (2019) ...............................................................................................21

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*,
    200 Cal. App. 4th 480 (2011) ..................................................................................10

*Morrison v. Viacom, Inc.*,
    66 Cal. App. 4th 534 (1998) ..............................................................................13, 15

*SC Manufactured Homes, Inc. v. Liebert*,
    162 Cal. App. 4th 68 (2008) ....................................................................................11

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) .............................................................................................23

**Federal Statutes**

15 U.S.C. § 45 ...................................................................................................................4

35 U.S.C. § 154 ...............................................................................................................13

**Federal Rules**

Fed. R. Civ. P. 9 .................................................................................................4, 7, 17, 21

Fed. R. Civ. P. 12 ........................................................................................................1, 6

Fed. R. Civ. P. 23 ...............................................................................................................6

**State Statutes**

Cal. Bus. & Prof. Code § 16700 .......................................................................................5

Cal. Bus. & Prof. Code § 16727 .....................................................................................11

Cal. Bus. & Prof. Code § 17200 ..........................................................................5, 18, 19

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION[1]

This antitrust class action mirrors a civil antitrust lawsuit that the Federal Trade Commission ("FTC") filed against Qualcomm in January 2017. The connection between the two actions was facially evident: the previous complaints filed in this action drew expressly and repeatedly from the FTC's complaint, focused on the same business practices, and discovery was coordinated between the two actions. Two Ninth Circuit rulings since then require dismissal of this case: (1) the Ninth Circuit issued *FTC v. Qualcomm Inc.*, 969 F.3d 974, 1005 (9th Cir. 2020) ("*FTC*"), which rejected all of the FTC's antitrust claims as a matter of law; and (2) in vacating the class certification order in this case, the Ninth Circuit held that, because "Qualcomm's SEP licensing practices, *the same practices complained of here*, are lawful and not anticompetitive," Plaintiffs would need to show "some *extraordinary difference*" between the FTC's claims and Plaintiffs' claims for the latter also "to not fail as a matter of law." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1075 (9th Cir. 2021) ("*Stromberg*"). The Ninth Circuit directed this Court on remand to "reconsider the viability of Plaintiffs' claims given *FTC v. Qualcomm*." *Id.* at 1063.

Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") was their chance to show how their claims can plausibly survive the Ninth Circuit's ruling. But the SAC—filed nearly nine months after the Ninth Circuit's decision in this case, and almost two years after *FTC* was issued—demonstrates no meaningful difference between their claims and the FTC's claims, much less an extraordinary one. Indeed, Plaintiffs proceed as though the Ninth Circuit's *FTC* opinion never happened, neglecting even to mention that decision in the SAC. The SAC's and the FTC's allegations remain substantively identical and are based on the same business practices. All Plaintiffs have done is remove from the SAC nearly every reference to the FTC's complaint, despite having relied on it extensively in their previous complaint.[2]

Lack of citation notwithstanding, Plaintiffs continue to advance the same claims, theories,

---

[1] In all quotations included in this brief, all internal quotation marks and citations have been omitted, and all emphases added, unless otherwise noted.

[2] *See, e.g.*, Dkt. 490 ("FAC") ¶¶ 13, 15, 58, 70, 74, 75, 79, 85, 106, 108, 109, 128, 133, 134, 137.

and alleged conduct that the FTC relied on, and which the Ninth Circuit found legally deficient in *FTC*. Just like the FTC did, Plaintiffs challenge Qualcomm's alleged maintenance of monopoly power in two putative product markets: CDMA and so-called premium LTE chips. *Compare FTC v. Qualcomm, Inc.*, No. 5:17-cv-00220-LHK, Dkt. 1 ("FTC Compl.") ¶ 31 *with* SAC ¶ 64. Plaintiffs also challenge the same three practices that the FTC did: that Qualcomm (1) sells chips only to companies that agree to compensate Qualcomm for using its standard essential patents ("SEPs") (a practice both the FTC and Plaintiffs call "no-license-no-chips" or "NLNC"); (2) chooses to license its patents at the end-device level rather than at the chip level; and (3) entered into certain agreements with Apple, since terminated, relating to incentives for purchasing Qualcomm's chips. *Compare* SAC ¶ 17 *with* ¶¶ 3, 58. The Ninth Circuit found as a matter of law that none of these practices were anticompetitive. *See FTC*, 969 F.3d at 987. The Ninth Circuit also rejected the FTC's theory, which Plaintiffs restate in their SAC, that Qualcomm harmed competition by breaching its commitments to standard-setting organizations ("SSOs") to license its SEPs on FRAND terms. *Id.* at 995–97. On the contrary, the Ninth Circuit held that Qualcomm's licensing practices—the same practices challenged here—are not only not anticompetitive but are in fact "*hyper*competitive." *Id.* at 982 (emphasis in original).

Put simply, Plaintiffs' claims cannot survive the Ninth Circuit's rulings in *FTC* and *Stromberg*, for at least the following five reasons.

**First**, Plaintiffs fail to show any "extraordinary difference" between the FTC's claims and their own. *Stromberg*, 14 F.4th at 1075. Comparing the FTC's rejected claims to Plaintiffs' allegations reveals that they are substantively identical. As the Ninth Circuit observed in its remand order here, because the two cases "have overlapping facts and claims" and many of the court's "conclusions in *FTC v. Qualcomm* were conclusions of law," that case "likely has preclusive effect on many issues raised by Plaintiffs in this case." *Id.* at 1074. Accordingly, the Ninth Circuit made clear that "*FTC v. Qualcomm* may well warrant dismissal of Plaintiffs' claims." *Id.* at 1075. It does.

**Second**, Plaintiffs cannot escape the Ninth Circuit's *FTC* opinion by jettisoning their Sherman Act antitrust claims and proceeding solely under California's Cartwright Act. Plaintiffs'

2

general assertion that the Cartwright Act is "broader and deeper" than the Sherman Act gets them nowhere. SAC ¶ 5. To be sure, unlike the Sherman Act, the Cartwright Act allows indirect purchasers to recover damages. But with respect to Plaintiffs' substantive antitrust claims—and on the requirement that conduct be anticompetitive to permit an award of damages—California and federal antitrust laws are identical. Indeed, the very case that Plaintiffs point to in their SAC acknowledges that "[s]tate antitrust law ordinarily is fully compatible with federal law." *In re Cipro Cases I & II*, 61 Cal. 4th 116, 160 (2015). Plaintiffs have provided no reason—and there is none—to believe that the Cartwright Act would condemn the very same conduct that the Ninth Circuit has held unequivocally to be lawful under the Sherman Act.

*Third*, the SAC's reference to "tying" in no way sets Plaintiffs' claims apart from the FTC's. Plaintiffs' "tying" allegations mirror precisely the so-called "no-license, no-chips" practice that the FTC challenged and that the Ninth Circuit concluded violated neither "the Sherman Act nor any other law." *FTC*, 969 F.3d at 1002. Plaintiffs have done nothing more than relabel as "tying" the same conduct that the Ninth Circuit found as a matter of law caused no anticompetitive harm. *Id.* at 1002–03. And in any event, Plaintiffs' tying allegations fail to state a claim under California antitrust law. Unlawful tying concerns the use of monopoly power in a *tying* market to damage competition in a *tied* market. Plaintiffs allege that the "tying product is Qualcomm's chipsets, and the tied product is its supra-FRAND licenses for Qualcomm's SEPs." SAC ¶ 64. They later allege that the "market for the tied product is the market for cellular SEPs" (not *licenses* to SEPs). *Id.* at ¶ 172. Either way, the SAC fails to state a claim for unlawful tying. By definition, there can be no harm to competition in the allegedly tied market (for Qualcomm's SEPs or licenses to them) because there *is no other competitor in the market* for Qualcomm's SEPs: only Qualcomm can sell or license its own patents. "Under both the Cartwright Act and the Sherman Act, in the absence of evidence of some tied market foreclosure or anticompetitive impact in the tied product market, the plaintiff cannot establish an unlawful tying claim." *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1234 (2007).

*Fourth*, Plaintiffs fail in their attempt to transform alleged FRAND violations into an antitrust or unfair competition claim. In *FTC*, the Ninth Circuit rejected the same FRAND-

3

violation arguments that Plaintiffs recycle here, confirming "the general rule that breaches of SSO commitments do not give rise to antitrust liability," and declining to apply any exception to that rule. *FTC*, 969 F.3d at 997. Moreover, Plaintiffs have failed to satisfy Federal Rule of Civil Procedure 9(b)'s requirement for pleading a cause of action based on alleged fraud. Plaintiffs fail to allege with the requisite particularity that Qualcomm made any intentional misrepresentation to any SSO during the standard-setting process.

*Fifth*, Plaintiffs' claim under California's Unfair Competition Law ("UCL") fails to satisfy any of that statute's three prongs. The alleged conduct is not "unlawful"; the Ninth Circuit has concluded just the opposite and Plaintiffs' reliance on the Cartwright Act in no way alters the result. Even California cases according the UCL its broadest interpretation have declined to find conduct deemed lawful to be unlawful, fraudulent, or unfair. Plaintiffs also make no effort to allege any fraudulent conduct with the requisite degree of specificity, nor do they allege reliance on Qualcomm's FRAND commitments to SSOs, which they must do in order to have standing to assert a UCL claim.

In vacating the class certification order and remanding this case, the Ninth Circuit voiced considerable skepticism about the merits of Plaintiffs' case, and this Court made clear that Plaintiffs had one last chance to articulate a viable claim. Because they have failed to do so, the Court should dismiss the SAC with prejudice.

## II.   RELEVANT PROCEDURAL BACKGROUND

### A.   *FTC v. Qualcomm*

On January 17, 2017, the FTC filed a complaint against Qualcomm in a case styled *FTC v. Qualcomm*, Case No. 5:17-cv-00220 (N.D. Cal.). The FTC alleged that certain of Qualcomm's licensing practices violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 5 of the FTC Act, 15 U.S.C. § 45(a). Specifically, the FTC alleged that Qualcomm unlawfully (1) declined to license its cellular SEPs to competing modem chip manufacturers, (2) sold modem chips only to OEMs who had agreed to license Qualcomm's SEPs ("no license, no chips"), and (3) entered into "exclusive dealing arrangements with Apple." FTC Compl. ¶3. The FTC alleged that these practices were anticompetitive because they produced "elevated royalties" that

4

amounted to a "tax" on OEMs' purchase of competitors' modem chips. *Id.* at ¶7. Qualcomm denied that any of its practices were anticompetitive or violated the antitrust laws.

On May 21, 2019, the district court ruled that the practices that the FTC had challenged violated the Sherman Act. The Court issued a broad injunction requiring Qualcomm to alter its business practices. *FTC v. Qualcomm*, Dkt. 1491, at 227–33. Qualcomm appealed.

The Ninth Circuit issued its opinion in *FTC* on August 11, 2020. The Ninth Circuit reversed the district court's judgment and vacated its injunction, concluding, among other things, that (1) Qualcomm had no "antitrust duty to license rival chip manufacturers"; (2) the "district court's 'anticompetitive surcharge' theory fails to state a cogent theory of anticompetitive harm"; and (3) the so-called "no-license, no-chips" practice in no way offended the Sherman Act "or any other law." *FTC*, 969 F.3d at 995, 998, 1002. The opinion dismantled in exhaustive detail the notion that Qualcomm's licensing practices are anticompetitive. For instance, the court held that Qualcomm's "policy toward rival chipmakers could be characterized as 'no license, no problem,'" and that Qualcomm's device-level licensing policy appears to be "reasonable and consistent with current industry practice." *Id.* at 995–96. The opinion likewise rejected the FTC's theory that Qualcomm's 2011 and 2013 agreements with Apple had "the actual or practical effect of substantially foreclosing competition in the CDMA modem chip market." *Id.* at 1004.

### B.    *In re Qualcomm Antitrust Litigation*

The day after the FTC had filed its complaint, civil plaintiffs began filing copycat civil antitrust complaints, which were soon centralized as a multi-district litigation matter. Plaintiffs filed a Consolidated Class Action Complaint on July 11, 2017 and a First Amended Class Action Complaint on June 13, 2018. Dkts. 94, 490. Mirroring the FTC complaint, Plaintiffs alleged that Qualcomm had unlawfully declined to license its SEPs to competing chip manufacturers, maintained what Plaintiffs called a "no-license-no-chips" policy, and had entered into "exclusive dealing contracts" with Apple. Dkt. 490 at ¶ 8–9. Like the FTC, Plaintiffs alleged that these practices resulted in a "surcharge" to OEMs. *Id.* at ¶¶ 76–82. Plaintiffs brought claims under the Sherman Act, California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq.*, and California's UCL, *id.* §§ 17200 *et seq*.

5

On July 5, 2018, Plaintiffs moved to certify a nationwide class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). Plaintiffs' proposed class consisted of all persons and entities who had purchased CDMA and/or LTE-enabled cellphones from February 2011 to the present. Dkt. 524 at 1. The District Court granted Plaintiffs' motion for class certification on September 27, 2018. Dkt. 760. In doing so, the district court concluded that California's Cartwright Act—which, unlike the federal Sherman Act, allows indirect purchasers like Plaintiffs to sue for damages—could be applied nationwide notwithstanding other states' laws that precluded such relief. *Id.* at 52–57.

Qualcomm petitioned for and received interlocutory review of the class certification order. On September 29, 2021, the Ninth Circuit vacated the District Court's order certifying a nationwide indirect purchaser class "[b]ecause the district court erred in its choice of law analysis **and in light of *FTC v. Qualcomm Inc*.**" *Stromberg*, 14 F.4th at 1063. Qualcomm proposed that the Ninth Circuit should remand with instructions to dismiss, but the court concluded that its "jurisdiction in this interlocutory appeal [was] limited to class certification." *Id.* at 1074–75. Even so, the Ninth Circuit strongly suggested that *FTC* delivered a fatal blow to this case. The Ninth Circuit explained that because both cases had "overlapping facts and claims," the *FTC* ruling "likely has preclusive effect on many issues raised by Plaintiffs in this case." *Id*. at 1075. Plaintiffs would therefore need to show "some *extraordinary difference*" between the FTC's claims and Plaintiffs' claims for the latter also "not to fail as a matter of law." *Id.* at 1075. Consequently, the court instructed this Court on remand to "reconsider the viability of Plaintiffs' claims given *FTC v. Qualcomm*." *Id.* at 1063.

### III.   LEGAL STANDARD

The Court should dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) "where the pleadings fail to state a claim upon which relief can be granted." *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 992–93 (N.D. Cal. 2010). The Court need not "accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged." *Id.* at 993. Plaintiffs must allege "plausible" claims, meaning that the complaint must allege sufficient "fact[s] to raise a reasonable expectation that discovery will

6

1   reveal evidence of illegal" conduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

2       A state-law claim under the UCL that is grounded in fraud is "subject to Rule 9(b) of the

3   Federal Rules of Civil Procedure . . . which requires that allegations of fraud be pleaded with

4   particularity." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009).

5   **IV.    ARGUMENT**

6       **A.    There is no "extraordinary difference" between Plaintiffs' claims and the
        claims the Ninth Circuit rejected in *FTC v. Qualcomm*.**

7

8       As the Ninth Circuit recognized in *Stromberg*, the issues the *FTC* opinion decided were

9   legal in nature. *Stromberg*, 14 F.4th at 1075. Private plaintiffs cannot evade the *stare decisis*

10  effect of a government case by asserting that they were nonparties to the prior case, thus

11  confusing the issue with res judicata or collateral estoppel. *See In re Am. Express Anti-Steering*

12  *Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 340 (E.D.N.Y. 2019). Where, as here, "the economic

13  activity and the basic facts are the same between the Government Action and the" private antitrust

14  class action, an appellate court's explication of the law in the government action governs the class

15  case. *Id.* at 338. That being so the Ninth Circuit warned Plaintiffs that their claims cannot proceed

16  unless they can demonstrate "extraordinary" differences between their claims and those rejected

17  in *FTC*. *Stromberg*, 14 F.4th at 1075. Yet the SAC identifies no such differences. Rather than

18  obeying the Ninth Circuit's directive, Plaintiffs have simply excised from their complaint any

19  substantive reference to the FTC's lawsuit, perhaps hoping to avoid the need to explain how their

20  claims differ. But in truth, Plaintiffs' antitrust claims continue to mirror those that the Ninth

21  Circuit rejected as a matter of law in its *FTC* decision.

22      ***First***, Plaintiffs claim that Qualcomm has monopoly power in two alleged markets:

23  CDMA and so-called "premium LTE" chips. SAC ¶ 55. Those are the same two alleged markets

24  that the FTC posited. *See FTC*, 969 F.3d at 992.

25      ***Second***, and as the Ninth Circuit pointedly noted in its remand order, the conduct that the

26  FTC sought to enjoin was "the same conduct complained of by Plaintiffs here." *Stromberg*, 14

27  F.4th at 1071. Nothing has changed in that regard. The SAC challenges the same three practices

28  that were the subject of the FTC's complaint and Plaintiffs' prior complaint. The Ninth Circuit

concluded each of those practices was lawful:

- Plaintiffs challenge Qualcomm's so-called "no-license, no-chips policy," alleging that Qualcomm used it to "extract[] supra-FRAND royalties from OEMs" that amounted to "an added surcharge" OEMs were forced to pay, and which "injure[d] consumers." *Compare* SAC ¶¶ 62, 79, 199 *with* FAC ¶¶ 13, 96 *and* FTC Compl. ¶¶ 4, 61–63. But the Ninth Circuit concluded that this "anticompetitive surcharge theory fails to state a cogent theory of anticompetitive harm." *FTC*, 969 F.3d at 998. The Ninth Circuit further held that, "[r]egardless of the 'reasonableness' of Qualcomm's royalty rates," there was no basis to conclude that Qualcomm's "royalties constitute an 'artificial surcharge' on rivals' chip sales." *Id.* at 1000. Rejecting the notion that the so-called "no-license, no chips" policy could have caused anticompetitive harm (as the SAC alleges here), the Ninth Circuit concluded that "neither the Sherman Act nor any other law prohibits companies like Qualcomm from (1) licensing their SEPs independently from their chip sales and collecting royalties, and/or (2) limiting their chip customer base to licensed OEMs." *Id.* at 1002.

- Plaintiffs plead that Qualcomm is "required to license its cellular SEPs on FRAND terms to potential licensees, such as . . . competing chip suppliers." *Compare* SAC ¶ 52 *with* FAC ¶¶ 8, 65 *and* FTC Compl. ¶¶ 3, 112. But the Ninth Circuit rejected that argument outright, holding that Qualcomm has no "antitrust duty to license rival chip manufacturers." *FTC*, 969 F.3d at 995. Indeed, the argument was so bereft of legal support that the FTC conceded the point on appeal. *Id.*

- Plaintiffs recycle the FTC's complaints that certain now-expired agreements that Qualcomm entered into with Apple in 2011 and 2013 foreclosed competition. *Compare* SAC ¶ 141 *with* FAC ¶¶ 8, 106 *and* FTC Compl. ¶ 125. The Ninth Circuit rejected the theory that these agreements had "the actual or practical effect of substantially foreclosing competition in the CDMA modem chip market." *FTC*, 969 F.3d at 1004.

***Third***, Plaintiffs allege the same kind of supposed competitive harms that the FTC

8

advanced, namely, that Qualcomm's no-license, no-chips "policy allowed Qualcomm to anticompetitively increase its modem chip royalties, increase its cellular SEP royalties, and restrain competition from its chipset rivals." SAC ¶ 70. The Ninth Circuit held that that theory, too, was legally meritless. It concluded that because "the essence of Qualcomm's policy" was that it applied "regardless of whether the OEM chooses Qualcomm or a competitor, . . . then the condition by definition does not distort the 'area of effective competition' or impact competitors." *FTC*, 969 F.3d at 1002. Plaintiffs insist, as did the FTC, that "[t]here is no procompetitive justification for Qualcomm's licensing practices." SAC ¶ 125. Once again, the Ninth Circuit has disagreed as a matter of law, concluding that "Qualcomm's procompetitive justifications for its OEM-level licensing policy . . . appear to be reasonable and consistent with current industry practice." *FTC*, 969 F.3d at 996.

In short, plaintiffs have failed to show the extraordinary differences that the Ninth Circuit demanded for this case to proceed. For that reason alone, the Court should dismiss the SAC.

**B.     There are no material differences between the Cartwright Act and the Sherman Act that could lead this Court to part ways with the Ninth Circuit.**

Plaintiffs acknowledge that their federal antitrust claims are untenable by abandoning them in the SAC and instead relying solely on California's Cartwright Act. But their state-law antitrust claim fails because it targets precisely the same lawful conduct as did their now defunct Sherman Act claim. Apart from a generic allegation that the Cartwright Act is "broader and deeper" than the Sherman Act, *see* SAC ¶ 5, Plaintiffs have done nothing to explain how or why California law would treat their claims differently than federal law.  Nor can they; state and federal law are in harmony in all material respects with respect to Plaintiffs' antitrust claim. Indeed, throughout this litigation, Plaintiffs and the district court have treated the federal and state claims as substantively identical. *See In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 296 (N.D. Cal. 2018) ("Neither party identifies any material difference between the federal and state claims warranting separate treatment"), *vacated and remanded sub nom. Stromberg*.

Although federal law is instructive rather than controlling over Cartwright Act claims, *see Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1195 (2013), where, as here, "the analysis

under the Cartwright Act . . . is identical to that under the Sherman Act," a dismissal under the Sherman Act requires "dismissal of the Cartwright Act claim." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 n.5 (9th Cir. 2015); *see also Universal Grading Serv., LLC v. eBay, Inc.*, 563 F. App'x 571, 573 (9th Cir. 2014) ("The dismissal of the Sherman Act claims requires dismissal of the state statutory and tort-based derivative claims."). Thus, the Ninth Circuit has repeatedly held that "[t]he analysis under California's antitrust law mirrors the analysis under federal law." *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *see also, e.g.*, *PLS.Com, LLC v. Nat'l Assoc. of Realtors*, 32 F.4th 824, 831–32 (9th Cir. 2022) ("The Cartwright Act analysis mirrors the Sherman Act analysis, so we analyze both claims together."); *In re Cal. Gasoline Spot Market Antitrust Litig.*, 2021 WL 1176645 at *2 (N.D. Cal. Mar. 29, 2021) (Corley, J.); *Eastman v. Quest Diagnostics Inc.*, 2016 WL 1640465, at *4, 13 (N.D. Cal. Apr. 26, 2016), *aff'd*, 724 F. App'x 556 (9th Cir. 2018) (dismissing Cartwright Act and UCL claims where plaintiffs had alleged "monopolization claims under section 2 of the Sherman Act and the Cartwright Act, as well as derivative claims under the UCL" and a "tying" claim); *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 4948567, at *7 n.7 (N.D. Cal. 2011) (plaintiff's "Cartwright Act claims require the same showings as its § 1 Sherman Act claims").

In this case, the legal analyses under state law and federal law are identical with respect to each of the three alleged bases for Plaintiffs' Cartwright Act claim. Just as the Ninth Circuit concluded in *FTC*, none of them states an actionable antitrust violation.

**First**, with respect to Qualcomm's practice of selling chips only to OEMs who agree to compensate Qualcomm for using its SEPs, California antitrust law, like federal law, requires plaintiffs challenging an alleged vertical restraint to demonstrate a substantially adverse effect on competition in the relevant market, *i.e.*, competitive harm in the chip markets. *See, e.g.*, *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 495 (2011); *Exxon Corp. v. Super. Ct.*, 51 Cal. App. 4th 1672, 1680, *as modified on denial of reh'g* (Feb. 13, 1997). The Ninth Circuit held in *FTC* that there *was no such harm to competition.* 969 F.3d at 1001. With respect to Plaintiffs' allegations that Qualcomm levied supra-FRAND royalties, state and federal law are in

10

accord that a monopolist's allegedly excessive pricing cannot give rise to antitrust liability. *See Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App. 4th 171, 202 (1999) (relying on federal authority to so conclude); *FTC*, 969 F.3d at 1003 ("[P]rofit seeking behavior alone is insufficient to establish antitrust liability.").

**Second**, with respect to Plaintiffs' claim that Qualcomm must provide licenses to rival chipmakers, California antitrust law—like its federal counterpart—imposes no duty to deal with competitors. Courts applying the Cartwright Act to such claims follow the same federal law that the Ninth Circuit relied on in *FTC. See, e.g.*, *FTC*, 969 F.3d at 993–95; *SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 83 (2008), *as modified on denial of reh'g* (May 19, 2008) (citing *Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407–408 (2004)).

**Third**, with respect to Plaintiffs' exclusive-dealing claim, California antitrust law incorporates the same harm standard as federal law and that the *FTC* panel applied: foreclosure of competition in a substantial share of the relevant market(s). Cal. Bus. & Prof. Code § 16727. Again, *FTC v. Qualcomm* held that Qualcomm's agreements with Apple did ***not*** substantially foreclose competition in a relevant market. 969 F.3d at 1004.

In short, the Second Amended Complaint provides no reason for this Court to depart from the Ninth Circuit's holding that dismissal is appropriate for a Cartwright Act claim that is premised on a failed Sherman Act claim. *Name.Space, Inc.*, 795 F.3d at 1131 n.5.

## C.   Plaintiffs fail to allege a viable tying claim.

Plaintiffs may argue that their Cartwright Act claim differs from the FTC's Sherman Act claim because they allege an unlawful "tying" arrangement. *See* SAC ¶¶ 64, 172. But Plaintiffs' tying theory fails as a matter of law for two reasons. First, Plaintiffs' tying theory merely repackages the "no-license, no-chips" theory that the Ninth Circuit rejected as a matter of law. Second, Plaintiffs fail to plead the requisite element of harm to competition in the alleged tied product market. No such allegation can be made in this case: because Qualcomm, as a patent holder, has the sole right to license its SEPs, there is no competition to be foreclosed.

1.     **The alleged tying practice is merely Qualcomm's "no-license, no-chips" policy, which the Ninth Circuit found lawful.**

Plaintiffs' tying theory fails because the Ninth Circuit rejected it. The SAC makes clear that their tying theory is nothing more than a relabeling of the "no-license, no-chips" theory at issue in the FTC case. SAC ¶¶ 58–89; *see also* FTC Compl. ¶¶ 61–106. Indeed, Plaintiffs characterize the "no-license, no chips" practice as a "tying arrangement," and refer repeatedly to "the NLNC tying arrangement." *See, e.g.*, SAC ¶¶ 62, 87. Substantively, there is no distinction, let alone an extraordinary one.

Again, the Ninth Circuit held that the challenged "no-license, no chips" practice violated neither "the Sherman Act nor any other law."[3] *FTC*, 969 F.3d at 1002. In so concluding, the court determined that the practice was not anticompetitive and that no evidence showed "how the policy directly impacted Qualcomm's competitors or distorted the area of effective competition." *Id.* at 1001. The Ninth Circuit held that Qualcomm's practice did no more than "insist[] that, whatever chip source an OEM chooses, the OEM pay Qualcomm for the right to practice the patented technologies embodied in the chip, as well as in the other parts of the phone or other cellular device." *Id.* at 1003. Far from finding that Qualcomm's practice caused anticompetitive effects, the Ninth Circuit likened it to a "business practice" that "in fact was disruptive in a manner that was beneficial to consumers in the long run." *Id.* The Ninth Circuit's ruling thus forecloses Plaintiffs' tying theory.

2.     **Plaintiffs cannot allege foreclosure in competition for licenses to Qualcomm's SEPs because no competition exists for those licenses.**

Plaintiffs' tying theory fails for a second reason: the SAC fails to plead the requisite element of competitive harm in the tied market. "'A tying arrangement,' under the Cartwright Act and the Sherman Act, "exists when a party agrees to sell one product (the tying product), on the condition that the buyer also purchases a different product (the tied product) . . . .'" *Belton v.*

---

[3] As the Ninth Circuit pointed out, even the district court opinion it reversed "stopped short of holding that the 'no-license, no-chips' policy itself violates antitrust law," and "for good reason." *FTC*, 969 F.3d at 1002. Plaintiffs are now attempting to resurrect a theory that both this Court and the Ninth Circuit have rejected.

*Comcast Cable Holdings, LLC,* 151 Cal. App. 4th 1224, 1234 (2007); *accord Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012). The "underlying rationale" for the rule against tying is to prevent the seller from "foreclos[ing] competition on the merits in a [tied] product market distinct from the market for the tying item." *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 (1984), *dictum abrogated by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006)). Thus, "[u]nder both the Cartwright Act and the Sherman Act, in the absence of evidence of some tied market foreclosure or anticompetitive impact in the tied product market, the plaintiff cannot establish an unlawful tying claim." *Belton*, 151 Cal. App. 4th at 1234.

It necessarily follows from these principles that "[a] transaction cannot restrain trade when no competitor exists from whom to purchase the tied product." *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 543 (1998); *see also Brantley*, 675 F.3d at 1199 ("Where there is no competition in the *tied market*, there can be no antitrust violation" under the Sherman Act."). That is the case here. Plaintiffs allege that the tied product is "licenses for Qualcomm's cellular SEPs," SAC ¶ 64, and that the tied product market is the "market for cellular SEPs." *Id.* at ¶ 172. But Plaintiffs do not allege, and cannot plausibly allege, that the alleged tie foreclosed any competition in that market—because no one else sells or can sell the alleged tied product (Qualcomm's SEP licenses). As the SEPs' owner, Qualcomm has the "exclusive right" to license them. *See* U.S. Const. art. I, § 8, cl. 8; *see also* 35 U.S.C. § 154(a)(1) (patent confers "the right to exclude others"). Because no competition for licenses to Qualcomm's SEPs exists, the alleged tie "cannot restrain trade." *Morrison*, 66 Cal. App. 4th at 543.

*Community Builders, Inc. v. City of Phoenix*, 652 F.2d 823 (9th Cir. 1981), is particularly analogous to this case. There, the City of Scottsdale charged a water-hookup fee to a real estate developer as a condition for granting a permit to build an apartment complex. The developer called that an unlawful tie. The district court disagreed and dismissed the case. The Ninth Circuit affirmed, holding that because there was "no competitive market for water services in Arizona, . . . [t]here simply was no market for Scottsdale to restrain." *Id.* at 830. The same is true here with respect to the market for Qualcomm's SEPs. Indeed, in both cases, the tied product was alleged to be vital to the business allegedly affected by the tie: Without the water hookup in *Community*

13

*Builders*, the developer's apartment complex would have been uninhabitable and unmarketable, while here, without an SEP license, OEMs would unlawfully infringe Qualcomm's patent rights by making and selling standard-compliant cellphones. The need for a product, however, in no way affects the law on tying: no competition in the tied market, no unlawful tie.

*Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321 (5th Cir. 1974), which the Ninth Circuit relied on in *Brantley v. NBC Universal, Inc.*, makes the same point. There, the plaintiff alleged that the Dallas Cowboys had unlawfully tied the sale of undesirable pre-season tickets to the sale of desirable season-ticket packages. *Brantley*, 675 F.3d at 1199 (citing *Driskill*, 498 F.2d at 322). That claim failed because "the Dallas Cowboys had a *lawful monopoly* in the market for the tied product, preseason tickets." *Id.* (citing *Driskill*, 498 F.2d at 323). Consequently, the alleged "tying arrangement could not adversely affect competition in the tied product market" because "*there was no competition to affect*." *Id.* To repeat, the same is true here. Given Qualcomm's "lawful monopoly" over its SEPs, there is "no competition" in the allegedly tied market to affect. *Id.*

These cases foreclose Plaintiffs' Cartwright Act claim to the extent it rests on a tying theory. In addition, this case presents *none* of the market harms associated with anticompetitive tying, which the Supreme Court catalogued in *Jefferson Parish*. *See* 466 U.S. at 12–13.[4]

In the absence of the ability to show foreclosed competition for licenses to Qualcomm's SEPs, Plaintiffs' tying claim boils down to an allegation that Qualcomm's prices for the tied product are too high. *See, e.g.*, SAC ¶ 79 ("Qualcomm extracted supra-FRAND royalties from OEMs because of its unlawful tying arrangement."). But "leveraging" a monopoly position in one product into another product is not an antitrust violation without some harm to competition in the leveraged market. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547–49 (9th Cir. 1991). As discussed above, there can be no harm to competition in the alleged leveraged

---

[4] For example, the alleged tie in no way forces any customer to buy a license to Qualcomm's SEPs from Qualcomm as opposed to some other seller, since no other seller exists; in no way insulates an "inferior" product from competitive pressures, since no alternative to Qualcomm's SEPs exists; and in no way forecloses other sellers from the market, since by operation of the patent laws, no other sellers exist. *Jefferson Parish*, 466 U.S. at 12–13.

14

market as a matter of law, because there is no competition in that market. Moreover, in the context of a tying claim, higher prices alone do not injure competition or the competitive process and cannot give rise to antitrust liability. *See Morrison,* 66 Cal. App. 4th at 548 (1998) ("[S]imply paying too high a price" for a tied product insufficient to plead antitrust injury under Cartwright Act); *see also Brantley*, 675 F.3d at 1202; *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1011 (N.D. Cal. 2013). To hold otherwise would improperly place courts in the role of price control boards. *Freeman*, 77 Cal. App. 4th at 202, 203 n.35.

Plaintiffs' complaint about the price of Qualcomm's SEP royalties also repeats the same error the district court made in *FTC*. As the Ninth Circuit explained, the district court "erroneously assume[d] that royalties are anticompetitive—in the antitrust sense—unless they precisely reflect a patent's current, intrinsic value and are in line with the rates other companies charge for their own patent portfolios." *FTC*, 969 F.3d at 999. Such a complaint, the Ninth Circuit held, "sounds in patent law, not antitrust law." *Id.*

To the extent that Plaintiffs allege that OEMs would not have licensed Qualcomm's patents at all absent the "tie," *see* SAC ¶ 155, that claim also fails. No "tying" liability exists under the Cartwright Act in such a case because if "plaintiffs would not otherwise have purchased the tied product . . . the alleged business practice could not have foreclosed or injured competition in the tied product market." *Belton*, 151 Cal. App. 4th at 1235.

In short, Plaintiffs' tying allegations repackage theories the Ninth Circuit has rejected as a matter of law. And even if Plaintiffs' allegations could be said to differ in some material respect from those rejected claims, they would still fail to state a viable tying claim.

### D.    Alleged FRAND violations do not support a Cartwright Act claim.

To prop up their untenable Cartwright Act claim, Plaintiffs point to alleged FRAND violations. Specifically, they allege that Qualcomm "violated its promise to license its cellular SEPs on FRAND terms, including by refusing to license to competing chip manufacturers at all, and by using its resulting market power in CDMA and Premium LTE chips to compel OEMs to accept non-FRAND licensing terms." SAC ¶ 53; *see also id.* at ¶¶ 42–52, 90–132. But those allegations cannot support a Cartwright Act claim because (1) the Ninth Circuit considered and

15

rejected the theory in *FTC*; and (2) Plaintiffs failed to plead any false promise with the requisite degree of particularity.

### 1.    In *FTC*, the Ninth Circuit rejected the theory that alleged FRAND violations by Qualcomm could amount to anticompetitive conduct.

In *FTC v. Qualcomm*, the FTC alleged, as Plaintiffs do here, that Qualcomm contractually committed to deal with its rivals as part of the SSO process and subsequently breached its commitment. *See FTC*, 969 F.3d at 995. Based on those allegations, the FTC argued (again, as Plaintiffs do here) that Qualcomm's alleged breach of its SSO commitments constitutes unlawful anticompetitive conduct. *See id.* The FTC relied on "one case," the Third Circuit's decision in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007), which found that Qualcomm's allegedly "intentionally false promise to license [its SEPs] on FRAND terms . . . coupled with an S[S]O's reliance on that promise" and Qualcomm's subsequent purportedly discriminatory pricing sufficiently alleged "actionable anticompetitive conduct." *See FTC*, 969 F.3d at 996 (quoting 501 F.3d at 314) (first alteration in original). Plaintiffs here likewise rely on *Broadcom* as the legal support for their FRAND violation claims. *See SAC ¶ 48.*

In its decision reversing the district court's judgment, the Ninth Circuit considered the FTC's FRAND-violation arguments and rejected them as a matter of both fact and law. The Ninth Circuit first distinguished *Broadcom*'s allegations from those in the FTC's complaint (which Plaintiffs now recycle), explaining: "Here, the district court found neither intentional deception of SSOs on the part of Qualcomm nor that Qualcomm charged discriminatorily higher royalty rates to competitors and OEM customers using non-Qualcomm chips." *FTC*, 969 F.3d at 996–97. As a result of these factual differences, the Ninth Circuit concluded that "the Third Circuit's 'intentional deception' exception"—*i.e.*, the "exception to the general rule that breaches of SSO commitments do not give rise to antitrust liability"—did not apply. *Id.* at 997.

But the Ninth Circuit didn't stop there; it disagreed with *Broadcom* more fundamentally, warning against "using the antitrust laws to remedy what are essentially contractual disputes between private parties engaged in the pursuit of technological innovation." *Id.* Accordingly, the Court concluded: "To the extent Qualcomm has breached any of its FRAND commitments . . . the

16

1     remedy for such a breach lies in contract and patent law." *Id.* at 1005.

2         That holding controls here. Plaintiffs plead the same alleged FRAND violations that the

3 Ninth Circuit considered, and they seek application of the same *Broadcom* exception that the

4 Ninth Circuit rejected. Plaintiffs may argue that the Ninth Circuit's holding in *FTC v. Qualcomm*

5 is limited to Sherman Act claims and should not apply to Plaintiff's Cartwright Act claim. But

6 nothing in the substantive law of the Cartwright Act suggests that the Ninth Circuit's reasoning

7 wouldn't apply fully to bar the claims here. To the contrary, the court stated that the remedy for

8 breaching a FRAND commitment lies in "contract and patent law"—a statement that necessarily

9 excludes state antitrust or unfair competition law. *FTC*, 969 F.3d at 1005. Furthermore, as

10 explained above, there is no difference between the Cartwright Act and the Sherman Act that

11 could provide a basis for this Court to part ways with the Ninth Circuit on the applicability of the

12 general rule that alleged breaches of SSO commitments do not give rise to antitrust liability. *See*

13 *PLS.Com, LLC*, 32 F.4th at 831–32; *Apple v. Samsung*, 2011 WL 4948567, at *7 n.7.

14           **2.**     **Plaintiffs have failed to allege facts to support the *Broadcom***
15                 **exception's application in this case.**

16         Even if Plaintiffs could seek to apply the *Broadcom* exception despite the Ninth Circuit's

17 ruling in *FTC*, they have failed to plead facts sufficient to satisfy it. That exception's applicability

18 depends upon "a patent holder's *intentional false promise* to license essential proprietary

19 technology on FRAND terms," as well as the SSO's reliance on that promise when including the

20 technology in the standard. *Broadcom*, 501 F.3d at 314. Courts in the Ninth Circuit have required

21 plaintiffs invoking that exception to meet the heightened fraud-pleading requirement of Rule 9(b).

22 *See, e.g.*, *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1022 (S.D. Cal. 2019)

23 ("[B]ecause allegations of anticompetitive conduct based on a failure to disclose intellectual

24 property rights theory sound in fraud, a plaintiff must satisfy the heightened pleading

25 requirements of Federal Rule of Civil Procedure 9(b)."); *Apple*, 2011 WL 4948567, at *4 (same).

26         The SAC comes nowhere close to pleading any "intentionally false promise" by

27 Qualcomm to any SSO with the particularity required to satisfy Rule 9(b). Plaintiffs fail to allege:

28 who made these statements; when the statements were made; to whom the statements were

directed; and what facts show that the statements were intentionally false when made. None of these most basic allegations appear in the SAC, and this was Plaintiffs' last chance to include them. Instead, the SAC contains only conclusory allegations that Qualcomm lied to SSOs. Moreover, the SAC alleges no facts showing that any SSO actually relied on Qualcomm's purportedly false promises or incorporated technology into any relevant standard that it otherwise would not have—and such allegations are required to state a claim. *See Rambus Inc. v. FTC*, 522 F.3d 456 (D.C. Cir. 2008).

### E.   Plaintiffs' UCL claim fails.

Plaintiffs' UCL claim fares no better. The Ninth Circuit found Qualcomm's licensing practices to be lawful and procompetitive. Plaintiffs cannot transform the same conduct into a UCL violation under any of that statute's three prongs—they fail to allege any "unlawful, unfair, or fraudulent business practice." Cal. Bus. & Prof. Code § 17200.

### 1.   Qualcomm's conduct is lawful and cannot support a UCL claim.

"[A]cts permissible under the antitrust laws 'cannot be deemed unfair under the unfair competition law,' at least not where a plaintiff alleges that the acts are unfair for the same reason it argues that they violate the antitrust laws." *Orchard Supply Hardware*, 939 F. Supp. 2d at 1011 (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)). And when "the alleged conduct is not an unreasonable restraint of trade under the Sherman Act[, it] necessarily implies that the conduct is not unlawful under the Cartwright Act or the 'unlawful' prong of the UCL." *Lenhoff Enters., Inc. v. United Talent Agency, Inc.*, 729 F. App'x 528, 531 (9th Cir. 2018). As explained above—and as the Ninth Circuit has acknowledged—Plaintiffs are challenging the very same conduct that the Ninth Circuit has already upheld as lawful.

Ninth Circuit precedent is consistent on this point. An independent UCL claim is "barred so long as [defendant's] activities are lawful under the antitrust laws." *City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 692 (9th Cir. 2015); *see also LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x. 554, 556–57 (9th Cir. 2008) ("[A] finding that the conduct is not an antitrust violation precludes a finding of unfair competition."). That is because "[t]he purpose of federal and state antitrust laws is to protect and promote competition for the benefit of

18

consumers," and if a plaintiff alleges "the same conduct . . . to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." *Chavez*, 93 Cal. App. 4th at 375. A litany of cases confirms that basic principle: if the antitrust claim falls, the UCL claim falls with it.[5]

At least one court has already dismissed a nearly identical UCL claim under *City of San Jose* in light of the Ninth Circuit's holding in *FTC*. In *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1030 (N.D. Cal. 2021), the court rejected the plaintiffs' allegations, holding that "a breach of an SSO commitment does not rise to the level of an antitrust violation." *Id.* The court then dismissed the plaintiffs' UCL claim, holding that "the Ninth Circuit's decision in *Qualcomm* clearly undercuts Apple's §17200 claim to the extent it is based on an unfair business practice." *Id.* The same reasoning applies here.

## 2.    Plaintiffs fail to plead a UCL claim under the "unfair" prong.

Even if the Court were to consider Plaintiffs' UCL claim on its merits despite the caselaw barring such claims in the absence of a viable antitrust claim, the UCL claim still would fail. In determining what conduct is "unfair," courts generally apply two tests: (1) a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged

---

[5] *See, e.g.*, *Reilly v. Apple, Inc.*, _ F. Supp. 3d _, 2022 WL 74162 at *9 (N.D. Cal. 2022) ("To the extent the [UCL] claim is derivative of Plaintiff's allegations of antitrust violations, the UCL claim falls with those claims."); *Distance Learning Co. v. Maynard*, 2020 WL 2995529, at *10 (N.D. Cal. June 4, 2020) (collecting cases); *Lloyd's Material Supply Co., v. Regal Beloit Corp.*, 2017 WL 5172206 at *6, 9 (C.D. Cal June 27, 2017); *GreenCycle Paint*, 2016 WL 1402845, at *9 (N.D. Cal. Apr. 8, 2016) ("[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims"); *ChriMar Sys. v. Cisco Sys.*, 72 F. Supp. 3d 1012, 1020 (N.D. Cal. 2014) ("Courts have held that where the alleged conduct does not violate the antitrust laws, a claim based on unfair conduct under the UCL cannot survive."); *Los Gatos Mercantile, Inc. v. E.I. Dupont de Nemours & Co.*, 2014 WL 4774611, at *10 (N.D. Cal. Sept. 22, 2014) ("Because Plaintiffs have failed to state a claim for an antitrust violation, they have failed to state a claim under the UCL based upon the alleged anticompetitive conduct."); *Universal Grading Serv., LLC v. eBay, Inc.*, 2012 WL 70644, at *10 (N.D. Cal. Jan. 9, 2012) ("Because plaintiffs have failed to state a claim under the Sherman Act, [the UCL claim] is dismissed."); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1147 (N.D. Cal. 2010) ("DocMagic has not alleged facts showing that Ellie Mae's conduct violated the Sherman Act . . . . As a result, any claims DocMagic might be asserting under the UCL's unfair prong necessarily fail as well.").

victim"; and (2) the tethering test, which requires the violation to "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184–87 (1999). Courts often combine these test as they "are not mutually exclusive." *Lozano v. AT&T Wireless Svcs, Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

Plaintiffs' allegations fail to satisfy the balancing test. To begin with, there is no harm to any alleged victim: The Ninth Circuit refused to find that *any* of the Qualcomm conduct alleged in the SAC was anticompetitive. Plaintiffs assert that Qualcomm raised its competitors' and OEMs' costs, and that those costs were passed through to consumers. SAC ¶ 1. But binding precedent says otherwise—the Ninth Circuit held that what it called Qualcomm's "no license no problem" policy in no way "impose[d] an anticompetitive surcharge on rivals' modem chip sales." *FTC*, 969 F.3d at 1005. It rejected the theory—on both the facts and the law—that an alleged breach of Qualcomm's FRAND commitments caused any "anticompetitive harm." *Id.* at 996. And it rejected the notion that Qualcomm's now-expired agreements with Apple foreclosed competition in a relevant market. *Id.* at 1004. So much for "the gravity of the harm to the alleged victim." *Cel-tech*, 20 Cal. 4th at 184.

Even if Plaintiffs had alleged grave harms to consumers (they haven't and can't), the "utility of [Qualcomm's] conduct" would outweigh them. *Id.* The Ninth Circuit held that Qualcomm's conduct has valid procompetitive justifications that are "reasonable and consistent with current industry practice." *FTC*, 969 F.3d at 996. As others in the industry have explained, Qualcomm's licensing practices reduce "transaction costs and complexities associated with negotiating and executing licenses at multiple points in the supply chain" and, in fact, increase transparency as to the products that are actually licensed. *Id.* at 995 n.17 (citing Br. of Amicus Curiae Nokia Technologies Oy at 18–19). In light of these determinations—which the Ninth Circuit made on the basis of a factual record developed with Plaintiffs' active participation—it is clear that the utility of Qualcomm's alleged licensing practices outweighs any conceivable harm to these remotely situated Plaintiffs.

////

20

1    Plaintiffs' allegations likewise fail under the tethering test. Plaintiffs allege that

2    Qualcomm violated the UCL by unfairly breaching its contractual FRAND obligations to SSOs.

3    SAC ¶ 251. But the Ninth Circuit has rejected the notion that such alleged breaches are tethered

4    to antitrust policies, warning against "using the antitrust laws to remedy what are ***essentially***

5    ***contractual disputes between private parties*** engaged in the pursuit of technological innovation."

6    *FTC*, 969 F.3d at 997. The Ninth Circuit therefore determined that Qualcomm's conduct was

7    beyond the reach of antitrust law and policy and instead sounded in contract law. And "asserting

8    that a party breached a contract is not enough to make the breach 'unfair' under the UCL."

9    *Soriano v. Countrywide Home Loans*, 2011 WL 2600759, at *12 (N.D. Cal. Jun. 30, 2011) (citing

10   *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)).

11   In addition, to the extent Plaintiffs' UCL claim rests on alleged contractual commitments

12   between Qualcomm and SSOs, Plaintiffs lack standing to assert it. Plaintiffs are not parties to any

13   such contract, and they have failed to plead facts establishing that they are third-party

14   beneficiaries of Qualcomm's FRAND agreements with SSOs. *See Goonewardene v. ADP, LLC*, 6

15   Cal. 5th 817, 829–30 (2019) (listing elements required to allege third-party beneficiary status).

16   Plaintiffs may not sidestep these requirements by asserting a claim under the UCL. On the

17   contrary, Plaintiffs "cannot use the contracts to bootstrap liability under other theories, such as the

18   UCL," because "[p]ermitting such recovery would completely destroy the principle that a third

19   party cannot sue on a contract to which he or she is merely an incidental beneficiary." *Berryman*

20   *v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1553 (2007); *accord Caltex Plastics, Inc. v.*

21   *Lockheed Marin Corp.*, 824 F.3d 1156, 1161 (9th Cir. 2000). Accordingly, Plaintiffs' UCL claim

22   based on the "unfair" prong fails.

23   **3.    Plaintiffs fail to plead a UCL claim under the "fraudulent" prong.**

24   The SAC also fails to state a UCL claim under the "fraudulent" prong, for two reasons.

25   ***First***, Plaintiffs make no attempt to satisfy their Rule 9(b) obligations to allege fraudulent

26   conduct with sufficient particularity to state a fraud-based UCL claim. The SAC contains "no

27   allegations about what representations Defendants made and when or how such representations

28   were likely to mislead the public." *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 250 F. Supp. 3d

21

438, 452 (N.D. Cal. 2017). Instead, Plaintiffs generally allege that Qualcomm made false public commitments to SSOs. SAC ¶¶ 51–53. Plaintiffs never allege any specific fraudulent statements. Plaintiffs briefly recite the requirements of one SSO, the European Telecommunications Standard Institute (ETSI), but provide almost no detail on how Qualcomm breached these specific commitments or what public commitments led the SSOs to adopt Qualcomm's patents. *Id.* Plaintiffs then allege that these unspecified statements were fraudulent because Qualcomm later refused to deal with its rivals and entered into alleged "supra-FRAND" contracts with OEMs. *Id.* at ¶¶ 132–35. These allegations in no way state a claim that Qualcomm defrauded the SSOs. Rather, as the *FTC* Court held, these disputes sound in contract law. But the UCL "is not an all-purpose substitute for a . . . contract action." *Cortez v. Purolation Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000).

Plaintiffs' failure to allege what specific promises Qualcomm made or how they were false when made means they have failed to show even an "innuendo of . . . making intentionally false promises" to the SSOs. *See TCL Comm'ns Tech. Holdings v. Telefonaktienbolaget LM Ericsson*, 2016 WL 7049263 at *5–6 (C.D. Cal Aug. 9, 2016). And Plaintiffs' pleading failure is all the more striking given the Ninth Circuit's recognition that "the district court" in this case "found neither intentional deception of SSOs on the part of Qualcomm nor that Qualcomm charged discriminatorily higher royalty rates to competitors and OEM customers using non-Qualcomm chips." *FTC*, 969 F.3d at 996–97.

***Second***, Plaintiffs have failed to plead how they "justifiably relied on [Qualcomm's] purported misrepresentation." *Lorenzo v. Qualcomm, Inc.*, 2009 WL 2448375, at *6 (S.D. Cal. Aug. 10, 2009) (finding no standing for UCL claim based on Qualcomm's alleged misrepresentations to SSOs due to lack of plaintiff's reliance); *see also Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d. 1181, 1194 (S.D. Cal. 2005) (dismissing fraud claims under the UCL because plaintiffs fail to "include *any* allegations in their FAC that they relied on Defendants' advertisements in entering into the transactions"). That failure is fatal to Plaintiffs' UCL claim: "When a plaintiff's [UCL] claim is based on a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation and suffered economic injury as a result of that

reliance, in order to have standing to sue under the statute." *dotStrategy Co. v. Facebook Inc.*, 482 F. Supp. 3d 994, 1000 (N.D. Cal. 2020).[6] In other words, "UCL fraud plaintiffs must allege *their own reliance*—not the reliance of third parties—to have standing under the UCL." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014); *see also Michel v. United States*, 2017 WL 4922831, at *19 (S.D. Cal. Oct. 31, 2017) (same).

Plaintiffs' SAC fails to satisfy that requirement. Plaintiffs allege only that third-party "SSOs and their members and stakeholders" relied on Qualcomm's statements. SAC ¶ 254. Plaintiffs nowhere allege that any of the named plaintiffs relied on any of Qualcomm's statements when purchasing their devices. And they do not allege that Qualcomm's supposed "misrepresentation [was] an 'immediate cause' of the plaintiff's conduct" or that "in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct"—*i.e.*, buying an allegedly affected cellphone at the allegedly inflated price. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Lorenzo*, 2009 WL 2448375, at *6.

For the foregoing reasons, Plaintiffs' UCL claim fails under all three prongs of that statute. Qualcomm's conduct has been adjudged lawful, and Plaintiffs plead no unfair or fraudulent conduct. The UCL claim should be dismissed.

## V.     CONCLUSION

The Ninth Circuit has clearly signaled that this lawsuit ought not proceed. This Court should follow that signal and grant Qualcomm's motion to dismiss. And because the Court previously informed Plaintiffs that this was their last chance to state a claim, that dismissal should be with prejudice.

////

////

////

////

---

[6] This requirement extends beyond the UCL's fraudulent prong to "the 'unfair' and 'unlawful' prongs as well, so long as the pleadings assert a cause of action grounded in misrepresentation or deception." *dotStrategy*, 482 F. Supp. 3d at 1000.

23

1   Dated:  August 1, 2022                            KEKER, VAN NEST & PETERS LLP

2

3                                         By:   *s/Robert A. Van Nest*
                                                Robert A. Van Nest
4                                               Eugene M. Paige
                                                Cody S. Harris
5                                               Matan Shacham
                                                Kristin E. Hucek

6                                               MORGAN, LEWIS & BOCKIUS LLP
7                                               Richard S. Taffet *(pro hac vice)*
                                                richard.taffet@morganlewis.com
8                                               101 Park Avenue
                                                New York, NY 10178-0060
9                                               Telephone: (212) 309-6000
                                                Facsimile:  (212) 309-6001

10                                              MORGAN, LEWIS & BOCKIUS LLP
11                                              Geoffrey T. Holtz (SBN 191370)
                                                gholtz@morganlewis.com
12                                              One Market, Spear Street Tower
                                                San Francisco, CA 94105-1596
13                                              Telephone: (415) 442-1000
                                                Facsimile:  (415) 442-1001

14                                              Attorneys for Defendant
15                                              QUALCOMM INCORPORATED

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT QUALCOMM INCORPORATED'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT
Case No. 3:17-md-02773-JSC