KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
EUGENE M. PAIGE - # 202849
epaige@keker.com
STEVEN A. HIRSCH - # 171825
shirsch@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
KRISTIN HUCEK - # 321853
khucek@keker.com
DANIEL B. TWOMEY - # 341488
dtwomey@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (pro hac vice)
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile:  (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
gholtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile:  (415) 442-1001

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: QUALCOMM ANTITRUST LITIGATION, <br><br> This Document Relates To: <br><br> ALL ACTIONS | Case No. 3:17-md-02773-JSC <br><br> **DEFENDANT QUALCOMM INCORPORATED'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Date:        November 15, 2022 <br> Time:        9:00 a.m. <br> Dept.:       Courtroom 8, 19th Floor <br> Judge:      Hon. Jacqueline Scott Corley <br><br> Trial Date:  Not yet set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ......................................................................................................2

    A.    *FTC v. Qualcomm* governs Plaintiffs' allegations. ...................................2

    B.    The *Cipro* case reveals no "extraordinary" difference between the
        Cartwright and Sherman Acts that could salvage their claims given *FTC*. ............3

        1.    *Cipro* has no relevance to this case. ...........................................4

        2.    *Cipro* aligned California antitrust law with federal antitrust law. ...............5

    C.    Neither the Sherman Act nor the Cartwright Act allows courts to invent
        novel antitrust violations by combining lawful acts. .................................6

    D.    Plaintiffs' tying claim is identical to the theory *FTC* rejected, and both
        California and federal law foreclose it. ...................................................9

    E.    Plaintiffs' UCL claim fails. ..................................................................11

        1.    No UCL claim lies for conduct deemed lawful under the antitrust
            laws. ......................................................................................11

        2.    Plaintiffs' unfairness claim fails the relevant legal tests. ...........................12

        3.    Plaintiffs ignore the UCL fraud prong's basic pleading
            requirements. ..........................................................................14

III.  CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*1305 Ridgwood, LLC v. Athas Capital Grp.*,
   2022 WL 4139514 (N.D. Cal. Sep. 12, 2022) .........................................................................13

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
   824 F.3d 1156 (9th Cir. 2016) ...............................................................................................13

*Catena v. Capitol Records, LLC*,
   2012 WL 12942740 (C.D. Cal. July 11, 2012) .......................................................................13

*City of San Jose v. Office of the Com'r of Baseball*,
   776 F.3d 686 (9th Cir. 2015) .................................................................................................11

*Epic Games, Inc. v. Apple, Inc.*,
   559 F. Supp. 3d 898 (N.D. Cal. 2021) ..............................................................................11, 12

*F.T.C. v. Actavis, Inc.*,
   570 U.S. 136 (2013) ..............................................................................................................5, 6

*Filco v. Amana Refrigeration, Inc.*,
   709 F.2d 1257 (9th Cir. 1983) .................................................................................................8

*FTC v. Qualcomm, Inc.*,
   969 F.3d 974 (9th Cir. 2020) ......................................................................................... *passim*

*Gonzalez v. Drew Indus. Inc.*,
   2009 WL 10671688 (C.D. Cal. 2009) ....................................................................................14

*Lona's Lil Eats, LLC v. Doordash*,
   2021 WL 151978 (N.D. Cal. Jan. 18, 2021) ..........................................................................15

*Lorenzo v. Qualcomm*,
   2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ........................................................................15

*Lozano v. AT&T Wireless Services, Inc.*,
   504 F. 3d 718 (9th Cir. 2007) ................................................................................................13

*MacDonald v. Ford Mo. Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...................................................................................13

*In re Osborne*,
   76 F.3d 306 (9th Cir. 1996) .....................................................................................................2

*Pacific Bell Telephone Co. v. linkLine Communications, Inc.*,
   555 U.S. 438 (2009).................................................................................................................8

ii

*In re Qualcomm Antitrust Litig.*,
    328 F.R.D. 280 (N.D. Cal. 2018) ...................................................................................... 3

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979) ......................................................................................................... 6

*Roffman v. Perfect Bar, LLC*,
    2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ................................................................. 14

*Royal Primo Corp. v. Whitewater W. Indus., Ltd.*,
    2016 WL 4080177 (N.D. Cal. July 29, 2016) ................................................................ 14

*Scilex Pharma. v. Sanofi-Aventis U.S. LLC*,
    552 F. Supp. 3d 901 (N.D. Cal. 2021) ........................................................................... 15

*Snow v. Align Tech., Inc.*,
    586 F. Supp. 3d 972 (N.D. Cal. 2022) ....................................................................... 4, 11

*Stromberg v. Qualcomm Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ................................................................................. 1, 2, 3

*Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*,
    329 U.S. 637 (1947) ......................................................................................................... 6

**State Cases**

*Adhav v. Midway Rent A Car, Inc.*,
    37 Cal. App. 5th 954 (2019) .......................................................................................... 15

*Arce v. Kaiser Foundation Health Plan, Inc.*,
    181 Cal. App. 4th 471 (2010) ........................................................................................ 12

*In re Automobile Antitrust Cases I & II*,
    1 Cal. App. 5th 127 (2016) ....................................................................................... 8, 11

*Belton v. Comcast Cable Holdings, LLC*,
    151 Cal. App. 4th 1224 (2007) ...................................................................................... 10

*Berryman v. Merit Property Mgmt, Inc.*,
    152 Cal. App. 4th 1544 (2007) ...................................................................................... 13

*Camacho v. Auto. Club of S. Cal.*,
    142 Cal. App. 4th 1394 (2006) ...................................................................................... 13

*Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ............................................................................................. 12, 13

*In re Cipro Cases I & II*,
    61 Cal. 4th 116 (2015) ............................................................................................ *passim*

1934548

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ...............................................................................13

*Fisherman's Wharf Bay Cruise Corp. v. Superior Court*,
    114 Cal. App. 4th 309 (2004) .............................................................................8, 9

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
    55 Cal. App. 5th 381 (2020) ....................................................................................5

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ......................................................................................14, 15

*McAdams v. Monier, Inc.*,
    182 Cal. App. 4th 174 (2010) ................................................................................13

*Michelle Bev. v. Apple Inc.*,
    No. 20CV370535 (Cal. Sup. Ct. Feb. 4, 2022)....................................................12

*Morrison v. Viacom, Inc.*,
    66 Cal. App. 4th 534 (1998) ..................................................................................10

*In re Tobacco II Cases*,
    41 Cal. App. 4th 1257 (2007) ................................................................................14

**Federal Statutes**

FTC Act .........................................................................................................................13

Hatch-Waxman Act ........................................................................................................4

Sherman Act................................................................................................... *passim*

**Federal Rules**

Fed. R. Civ. P. 9 ............................................................................................................14

**State Statutes**

California Cartwright Act ................................................................................. *passim*

California Unfair Competition Law................................................................. *passim*

1934548

## I.    INTRODUCTION[1]

The Ninth Circuit directed this Court to "reconsider the viability of Plaintiffs' claims given *FTC v. Qualcomm*," noting that *FTC* "likely has preclusive effect" on this case, and that "there would have to be some extraordinary difference for Plaintiffs' claims here to not fail as a matter of law." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1063, 1074–75 (9th Cir. 2021). Plaintiffs' Opposition to Qualcomm's Motion proves that the Ninth Circuit was right to predict a lack of viability. Plaintiffs in no way distinguish their claims from those that *FTC* rejected. On the contrary, this case challenges precisely the same business practices that the Ninth Circuit declared both lawful and hypercompetitive. For example, Plaintiffs' Opposition makes clear that their tying allegation mirrors the "no-license, no-chips" theory that the Ninth Circuit rejected as a matter of law in *FTC*. Plaintiffs' Opposition also offers no reason to part ways with the Ninth Circuit's holding that the FRAND violations alleged here cannot support a viable antitrust claim. And, crucially, Plaintiffs fail to explain how the SAC alleges any competitive harm arising from the Qualcomm business practices that the Ninth Circuit found caused no such antitrust harm as a matter of law. Although Plaintiffs vaguely reference a different evidentiary record than that in *FTC*, they nowhere explain how that evidence could establish a claim in light of *FTC*.

In an effort to create daylight where none exists, Plaintiffs rely heavily on a single California Supreme Court case, *In re Cipro Cases I & II*, 61 Cal. 4th 116 (2015). *Cipro*, however, offers no sanctuary because it has no relation to the claims and issues presented here, and fails to establish that state antitrust law deviates from federal antitrust law. *Cipro* discusses a discrete set of antitrust issues related to "reverse payment patent settlements,"—issues not remotely implicated in this case. And to the extent *Cipro* discussed an analytical approach applicable under the Cartwright Act to determine if patent-related conduct harms competition, it ***fully aligned*** state antitrust law with federal law—under which an antitrust claim was found unviable.

Plaintiffs' efforts to salvage their UCL claim also fail. They point to no case in which a

---

[1] "Complaint" and "SAC" refer to Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") and "Opp." refers to Plaintiffs' Opposition to Qualcomm's Motion to Dismiss. ECF 901. Unless otherwise indicated, emphases were added to quotations; and internal quotation marks, ellipses, brackets, footnotes, and citations were omitted from them.

court has allowed a UCL claim based on the very same conduct alleged to violate the antitrust laws to proceed after that conduct had been held lawful in a binding judicial opinion. Plaintiffs also misstate the relevant law, arguing that they need not allege fraud with particularity or plead actual reliance when in fact they must do both.

In short, Plaintiffs ask this Court to allow state antitrust and unfair competition claims to proceed after the Ninth Circuit has rejected the very same allegations against the same defendant, having concluded that Qualcomm's practices caused no competitive harm. They ask this Court to take that plunge by adopting a novel reading of both the Cartwright Act and the UCL unsupported by any case law demonstrating a divergence between state and federal law on the key issues in this case. The Court should decline that invitation and dismiss the SAC with prejudice.

## II.   ARGUMENT

### A.   *FTC v. Qualcomm* governs Plaintiffs' allegations.

Plaintiffs' attempt to avoid *FTC*'s "preclusive effect" fails. *Stromberg*, 14 F.4th at 1074. Plaintiffs' Opposition reveals no material differences between their claims and the claims rejected in *FTC*. What Plaintiffs call the "NLNC Tying" claim is the same "no-license, no chips" claim at issue in *FTC*. Opp. at 2; *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 984 (9th Cir. 2020). Their "Exclusive Dealing" claim echoes the "exclusive dealing" that *FTC* concluded foreclosed no competition in the relevant market. Opp. at 2; *FTC*, 969 F.3d at 1004. And *FTC* likewise addressed the claim that Qualcomm breached its FRAND obligations to SSOs. Opp. at 5; *FTC*, 969 F.3d at 984. The claims and facts are identical.

Faced with that problem, Plaintiffs correctly define *stare decisis* and then fail to apply it. As Plaintiffs say, *stare decisis* applies to cases "involving identical or similar material facts and arising in . . . a lower court in the judicial hierarchy." *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996). That is undoubtedly the case here. This Court is bound by the Ninth Circuit, which ruled on a case involving identical material facts and challenged conduct, in a parallel action brought by a federal antitrust enforcer, against the very same defendant named here. What's more, the Ninth Circuit expressly *instructed* this Court to examine Plaintiffs' claims in light of *FTC*, suggesting that doing so "may well warrant dismissal." *Stromberg*, 14 F.4th at 1075.

Plaintiffs' efforts to escape *FTC*'s *stare decisis* effect fail for two reasons. ***First***, although Plaintiffs assert that the SAC presents factual allegations materially different from the FTC's, they never identify those differences, much less explain their legal significance. Pointing only to 2018 expert reports for support, Plaintiffs contend that their analysis of the amount by which Qualcomm's royalties are allegedly supra-competitive differs from *FTC*. *See* Opp. 6 n.3. But those opinions offer no *facts* different from those in *FTC*, which were found insufficient as a matter of law. Instead, the SAC pleads only that Qualcomm's conduct hypothetically enabled supra-competitive royalties. SAC ¶ 74. This retread of the FTC's theory falls far short of showing any factual differences between the two cases, and indeed, Plaintiffs participated in coordinated discovery with the FTC and had the full benefit of that now-closed discovery when crafting their SAC. ***Second***, as explained below, Plaintiffs fail to establish any relevant difference between the legal analysis applicable here as compared to *FTC*. *See* Part II.B, *infra*.

Put simply, the doctrine of *stare decisis* applies here. To evade it, Plaintiffs must identify an "extraordinary difference" between their claims and those rejected in *FTC*. Because they cannot meet that standard, Plaintiffs attempt to read the word "extraordinary" out of the opinion, suggesting that *any* deviation between state and federal law would satisfy the Ninth Circuit's directive. Opp. at 7. Not so. *Stromberg* listed the sorts of differences that might theoretically qualify as "extraordinary." 14 F.4th at 1075. Here, Plaintiffs have identified no relevant difference, much less an extraordinary one, in how a court would analyze the claims at issue under the Cartwright Act in contrast to the Sherman Act—i.e., an alleged duty to deal with chipmakers, an exclusive dealing claim, or a tying claim rooted in the no-license, no chips practice—either alone or in combination. Nor do Plaintiffs explain why, throughout this litigation, they contended that the two analyses mirrored each other. *See In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 296 (N.D. Cal. 2018). That being so, Plaintiffs' SAC fails.

**B.      The *Cipro* case reveals no "extraordinary" difference between the Cartwright and Sherman Acts that could salvage their claims given *FTC*.**

As Qualcomm's Motion demonstrates, federal and state law are in accord on the core antitrust principles relevant to the claims asserted here. *See* Mot. at 9–11. *Cipro* is in no way to

the contrary. If anything, it undermines Plaintiffs' extraordinary-differences argument.

### 1.      *Cipro* has no relevance to this case.

Plaintiffs' reliance on *Cipro* is misplaced because it has no factual or legal relevance to this case. There, the California Supreme Court addressed highly situation-specific antitrust claims involving "reverse-payment settlements" of patent disputes between brand-name and generic drug makers. *Cipro*, 61 Cal. 4th at 130. In such cases, brand-name and generic drug makers are alleged to collude to prolong the receipt of, and to divide between them, monopoly profits arising from a pharmaceutical patent. Generally, the claim is that a patentee would agree to share its patent-monopoly profits with a generic drug maker on the condition that the generic (1) settles its challenge to the patent's validity and (2) delays its entry into the market until at or near the patent's expiry. *Id.* at 130–35. This collusive scheme may harm competition because of the unique nature of generic/brand-name competition. As *Cipro* made clear, the "question" presented concerned "the ability of a patent holder to make agreements restricting competition during the life of its patents," specifically by "pay[ing] the would-be competitor to withdraw its [invalidity] challenge and refrain from competing" until the patent had nearly expired. *Id.* at 130.

This is not a reverse-payment settlement case, nor is it in any way akin to one. As *Cipro* explains, reverse-payment settlements are a specific type of *antitrust conspiracy between competitors*—"[a]n agreement to exchange consideration for elimination of any portion of the period of competition that would have been expected had a patent been litigated." *Id.* at 150. The result is to delay the generic competitor's entry into the market and thus "permit monopoly premiums still to be charged and simply divided up between the patent holder and patent challenger," to consumers' detriment. *Id.* at 141. Such settlements occur in a "unique context" and are "somewhat suspicious" because "a party with no claim for damages walks away with money simply so it will stay away from the patentee's market." *Snow v. Align Tech., Inc.*, 586 F. Supp. 3d 972, 982 (N.D. Cal. 2022). Such facts are far afield from Plaintiffs' claims.

Moreover, *Cipro*'s analysis appears to be limited to the specific context of reverse-payment settlements *between brand-name and generic drug makers*. *Cipro*'s analysis turns in part on the particular incentives created by the Hatch-Waxman Act, a federal statute designed to speed

generics to market in part by allowing their makers to "piggyback" on existing safety and efficacy data during the FDA-approval process. *Cipro* explains in detail how Hatch-Waxman had the "unintended consequence[]" of giving the brand-name patentee and the first generic that files an FDA application "an incentive to effectively establish a cartel through a reverse payment settlement," regardless of "the degree of likely validity of a patent[.]" 61 Cal. 4th at 135. No similar statutory incentive for cartelization exists here.

Given *Cipro's* utter dissimilarity to the claims, policies, and legal analysis at issue here, Plaintiffs' attempt to rely on *Cipro's* dicta fails. They cite it as a basis for ignoring the cases that Qualcomm cited in its opening brief that reject "tying" theories where no competition exists in the allegedly tied market and there is consequently no competition for the alleged tying to foreclose. *See* Mot. at 12–14. But those cases apply directly here, because Qualcomm lawfully exercises its patent rights in what Plaintiffs allege is either the market for Qualcomm's SEPs or the market for SEPs in general. Although Plaintiffs point out that the patentee in *Cipro* likewise had "a monopoly in its own patents," Opp. 14, *Cipro **isn't a tying case***, it's an antitrust-conspiracy case where the patentee pays off a competitor not to compete. Plaintiffs make no such conspiracy allegations, plead no payments to competitors, and never explain how the case relates to claims based on allegations of monopolization and tying. *Cipro* therefore reveals no "extraordinary difference" between state and federal antitrust law.

### 2. *Cipro* aligned California antitrust law with federal antitrust law.

Even if *Cipro* were at all relevant to Plaintiffs' claims, it would undermine Plaintiffs' extraordinary-differences argument by illustrating just how closely Cartwright Act jurisprudence tracks Sherman Act jurisprudence. *See Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 55 Cal. App. 5th 381, 400 (2020) ("[F]ederal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act."). *Cipro* subjected reverse-payment settlements to a "structured rule of reason test" that considers the possibility that the patent in question might be found invalid if challenged. 61 Cal. 4th at 161. In so holding, *Cipro* hewed closely to *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013), a U.S. Supreme Court opinion that adopted a rule-of-reason analysis for Sherman Act reverse-payment-settlement cases. *Cipro* devoted an

entire section to *Actavis* and applied its reasoning pervasively, citing it dozens of times. *See* 61 Cal. 4th at 140–42. Far from announcing a legal rule that diverged from federal law, *Cipro* aligned California law with federal law on the substantive antitrust questions before it. Its decision to do so followed the general principle that *Cipro* embraced and that applies here: "[s]tate antitrust law ordinarily is fully compatible with federal law." *Id.* at 160. What *Cipro* did ***not*** do is identify a general rule that state antitrust law is broader than federal antitrust law on fact patterns involving patents, which is the unsupported conclusion Plaintiffs ask the Court to reach.

Because *Cipro* demonstrates no relevant, much less extraordinary, difference between state and federal antitrust law, Plaintiffs resort to quoting *Cipro* dicta that offer this Court no guidance—*e.g.*, "the abuse of patent rights may also run afoul of antitrust law," Opp. at 12 (emphasis omitted), and "[the Cartwright Act's] principal goal is the preservation of consumer welfare." *Id.* at 17 n.14. This dicta gets Plaintiffs nowhere because both observations have long applied with equal measure to federal antitrust jurisprudence. *See Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 647 (1947) ("A patent may be so used as to violate the anti-trust laws."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343 (1979) ("Congress designed the Sherman Act as a consumer welfare prescription.").[2] Plaintiffs also quote *Cipro*'s statement—which confirms Qualcomm's position—that the Cartwright Act's method of analyzing anticompetitive harm from patent-related restraints is "***not materially different*** from that applied in any other garden-variety antitrust case." Opp. at 10. That concession dooms Plaintiffs' argument: *FTC* performed a robust rule-of-reason analysis regarding the conduct at issue. *See* 969 F.3d at 996. There is no reason to conclude that California law requires a contrary result.

### C.   Neither the Sherman Act nor the Cartwright Act allows courts to invent novel antitrust violations by combining lawful acts.

In their quest for extraordinary differences that could justify disregarding *FTC*, Plaintiffs argue that federal law (as applied in *FTC*) considers challenged practices "in isolation" while

---

[2] There is therefore no basis for Plaintiffs' assertion that *Cipro* "signal[s] it would not agree with" *FTC*'s holding that the remedy for breaching alleged FRAND commitments sounds in contract or patent, rather than antitrust. Opp. at 10. Under both federal and California law, abuse of patent rights may implicate antitrust law, but that does not explain how *Cipro* bears on how the Cartwright Act will treat SEP licensing conduct generally, or Qualcomm's conduct specifically.

Cartwright Act cases view the conduct as a whole. Opp. at 10–11. This argument fails because federal and state law employ the same mode of analysis for assessing whether challenged conduct harms competition. For relevant purposes, both federal and California antitrust law analyze conduct under the same rule-of-reason approach to determine whether in the first instance, under some liability theory (*e.g.*, exclusive dealing, tying, duty to deal, etc.), the conduct harms competition. Neither allows courts to find antitrust liability based on an amalgamation of conduct that existing antitrust doctrines deem lawful. Plaintiffs' contrary arguments are unsound.

To begin with, Plaintiffs mischaracterize *FTC* as holding that "each aspect of Qualcomm's alleged conduct, *viewed in isolation*, failed to establish harm to competition." Opp. at 16. Not so. The entire appeal was predicated on a collective theory of liability. *See FTC*, 969 F.3d at 987. The Ninth Circuit not only separately evaluated the legal merits of each of Qualcomm's claims of error, but it also examined the interaction of Qualcomm's challenged business practices. As framed by the Ninth Circuit, its focus was "on the impact, if any, of Qualcomm's practices in the area of effective competition." *FTC*, 969 F.3d at 993. In undertaking its analysis, the Ninth Circuit holistically evaluated Qualcomm's practices of (1) licensing its SEPs only at the OEM level, (2) offering rival chip makers agreements that "function as patent-infringement indemnifications," and (3) selling chips only to OEMs who compensated Qualcomm for their use of its SEPs in their end-user products (the "no license, no chips" or "NLNC" practice). The court concluded that those practices, "***taken together***, are '*chip supplier neutral*'—that is, OEMs are required to pay a per-unit licensing royalty to Qualcomm for its patent portfolios regardless of which company they choose to source their chips from." *Id.* at 984–85. That finding of chip-supplier neutrality in turn played a key role in the court's analysis, including its holding that Qualcomm had no duty to deal with competitors, *id*. at 995, and its rejection of the FTC's theory that Qualcomm's alleged breach of FRAND commitments and its NLNC policy "impose[d] an anticompetitive surcharge on rivals' modem chip sales," *id*. at 1005; *see also id*. at 995–96, 1002–03. In sum, the Ninth Circuit reviewed the totality of Qualcomm's conduct to determine whether the FTC proved that such conduct "unfairly tends to destroy competition itself," and concluded that it did not. *Id.* at 1005.

1     While *FTC* examined all of Qualcomm's challenged conduct in its antitrust analysis, it did

2     ***not*** do what Plaintiffs propose: take multiple lawful practices and transform them into unlawful

3     anticompetitive conduct. Indeed, the Supreme Court forbade that approach in *Pacific Bell*

4     *Telephone Co. v. linkLine Communications, Inc.*, holding that a plaintiff may not join two

5     "claim[s] that cannot succeed," and "alchemize them into a new form of antitrust liability." 555

6     U.S. 438, 457 (2009). As the Court put it, "[t]wo wrong claims do not make one that is right." *Id.*

7     Plaintiffs' California cases in no way establish that state antitrust law takes a different

8     approach than federal law does (or than *FTC* did) when evaluating the lawfulness of challenged

9     conduct; nor do those cases show that California courts may alchemize multiple non-violations

10    into a violation. *In re Automobile Antitrust Cases I & II*, 1 Cal. App. 5th 127 (2016), for example,

11    did caution against "compartmentalizing the various factual components" of an alleged antitrust

12    conspiracy, *id*. at 152; but the court was addressing the various forms of *evidence* sufficient to

13    prove the existence of such a conspiracy—*e.g.*, evidence about meetings and agreements between

14    competitors, about actions taken to further the alleged conspiracy, and about economic motives to

15    conspire. *See id*. at 163–72. None of that is relevant here because Plaintiffs aren't trying to prove

16    any antitrust conspiracy. Nor is the inquiry any different under the Sherman Act; federal courts

17    conduct the same analysis under federal law. *See Filco v. Amana Refrigeration, Inc.*, 709 F.2d

18    1257, 1264 (9th Cir. 1983) ("[P]laintiffs should be given the full benefit of their proof without

19    tightly compartmentalizing the various factual components and wiping the slate clean after the

20    scrutiny of each."). More importantly, nothing in *Automobile Antitrust* authorizes courts to

21    combine a group of practices *already found to be lawful* to generate a novel antitrust violation.

22    Plaintiffs' other case, *Fisherman's Wharf Bay Cruise Corp. v. Superior Court*, 114 Cal.

23    App. 4th 309 (2004), likewise refutes their assertion that state law adopts an extraordinarily

24    different approach to finding antitrust violations. Rather than combining lawful practices and

25    "alchemizing" them into a novel antitrust theory, *Fisherman's Wharf* methodically analyzed the

26    plaintiff's claims one by one under conventional antitrust doctrines as applied in federal cases,

27    affirming summary judgment as to the plaintiff's tying claim but reversing summary judgment as

28    to claims alleging predatory pricing, secret rebates and privileges, and exclusive dealing. *See id*.

at 314–15; *see also Cipro*, 61 Cal. 4th at 145–48 (explaining Cartwright Act analytical framework pursuant to standards established in federal cases). *Fisherman's Wharf* in no way holds that the same conduct a federal court found lawful could be amalgamated into a Cartwright Act violation.

### D. Plaintiffs' tying claim is identical to the theory *FTC* rejected, and both California and federal law foreclose it.

Plaintiffs' Opposition confirms that their tying claim is nothing more than the FTC's "no-license, no-chips" theory that the Ninth Circuit rejected. Plaintiffs' theory of harm is that Qualcomm's "NLNC" practice imposed supra-FRAND licenses on OEMs regardless of whose chipsets they use, which raised OEM's all-in costs above prices that would have prevailed in the but-for world. *See* SAC ¶¶ 70–71. That is the exact theory of harm that the Ninth Circuit rejected almost word for word. *FTC*, 969 F.3d at 998. Tellingly, Plaintiffs nowhere argue that the California Supreme Court would evaluate this theory any differently than *FTC* did.

Searching for a difference where none exists, Plaintiffs link their "NLNC Tying" allegation to supposed "exclusive deals" with OEMs other than Apple. *See* Opp. 13–14 (citing SAC ¶¶ 72–73). But this is nothing new. Indeed, Plaintiffs themselves argued to the Ninth Circuit in an amicus brief that the *FTC* district court had made "extensive factual findings confirming that Qualcomm offered 'rebates,' 'incentive funds,' or discounts in exchange for chipset exclusivity with every major OEM," and included the same chart they pasted into the SAC. *See FTC*, Dkt. 264 at 7, 17. These recycled allegations are no more persuasive the second time around.[3] Plaintiffs also argue that their characterization of Qualcomm's incentives as "penalties" marks a major divergence from the conduct adjudged lawful in *FTC*. *See* Opp. at 17. But *FTC* acknowledged that the "substantial discounts" provided to Apple were designed to "prevent Apple" from buying non-Qualcomm chips and contained "a strong deterrent to termination." 969 F.3d at 1004 n.24. None of that made the agreement injurious to competition. *Id.* at 1004.

---

[3] Plaintiffs' assertion that Qualcomm had exclusive deals with "nearly every other major OEM" is also belied by their own SAC. Opp. at 13. Plaintiffs nowhere allege actual exclusivity deals with the OEMs they identify; they alleged merely that "practical effect" of rebates and incentives—some of which predate the class period by nearly a decade—was that OEMs bought a lot of Qualcomm chips (and in some cases not exclusively). *See* SAC ¶ 72 (listing OEMs buying less than 100% of their chips from Qualcomm at various points in time).

Plaintiffs also fail to show how the SAC pleads the elements of a tying claim. The Opposition never mentions, much less distinguishes, the controlling decisions Qualcomm cited holding that there is no Cartwright Act liability under a tying theory where there is no alternative supplier for the allegedly "tied product" (here, licenses to Qualcomm's SEPs). *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1234–35 (2007); *Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534, 543 (1998). The closest Plaintiffs come to addressing these precedents is to argue that the Court should ignore them because they don't involve patents. *See* Opp. at 14. Plaintiffs make no effort to explain why that distinction matters, and it doesn't. Regardless of the nature of the tied product—football tickets, water hook-ups, cable television—the legal principle remains constant: "[a] transaction cannot restrain trade when no competitor exists from whom to purchase the tied product." *Morrison*, 66 Cal. App. at 534. That is indisputably the case here, and *Cipro* neither purports to nor can be read to cast doubt on that well-established rule.

Plaintiffs' remaining tying arguments are thinly veiled attacks on the merits of the Ninth Circuit's rulings in *FTC*—attacks that this Court cannot entertain and that miss the mark in any event. For example, Plaintiffs argue that that their "NLNC Tying" allegation is based on a "raising rivals' costs" theory of anticompetitive harm that the California Supreme Court would apply to the Cartwright Act, but which the Ninth Circuit "did not address" in *FTC*. Opp. at 15–16. Plaintiffs are wrong. The Ninth Circuit expressly considered as a central component of the district court's anticompetitive surcharge theory whether Qualcomm's allegedly supra-competitive royalties "raise[d] costs to OEMs, who pass[ed] the extra costs along to consumers and [were] forced to invest less in other handset features." *FTC*, 969 F.3d at 998. The Ninth Circuit answered that question definitively in the negative, holding that Qualcomm's practices did not "impose an anticompetitive surcharge on rivals' modem chip sales," *FTC*, 969 F.3d at 1005.[4] Moreover, Plaintiffs identify no California decision adopting the "raising rivals' cost theory." Instead, they maintain that the theory is "widely recognized" in *federal* caselaw, including in the Ninth Circuit,

---

[4] The FTC's Answering Brief in the Ninth Circuit also referenced the "raising rivals' costs" theory extensively and cited the same cases and articles on which Plaintiffs rely for their supposedly different theory. *Compare* FTC Ans. Br. at 36, 40 (citing Thomas G. Krattenmaker & Steven C. Salop, *Anticompetitive Exclusion: Raising Rivals' Costs to Achieve Power Over Price*, 96 Yale L.J. 209 (1986)), *with* Opp. at 16 (same).

and that "the California Supreme Court *would* apply it to the Cartwright Act." Opp. at 16.

Plaintiffs' argument that an extraordinary difference exists between federal and California law on

this point is nonsensical. It requires this Court to (a) conclude that the Ninth Circuit erred in *FTC*

by failing to apply a widely recognized theory that had been squarely presented—something that

this Court cannot do, and (b) assume that the California Supreme Court will adopt a theory that

would do nothing more than *align* California law with extant federal antitrust jurisprudence.

In sum: Plaintiffs cannot demonstrate that their Cartwright Act claim is extraordinarily

different—or different in *any* relevant way—from the antitrust claims that the Ninth Circuit found

legally insufficient in *FTC*. Accordingly, the Court should grant Qualcomm's Motion to Dismiss

Plaintiffs' First Claim for Relief for alleged violations of the Cartwright Act.

### E.   Plaintiffs' UCL claim fails.

Plaintiffs' Opposition confirms that their UCL claims must be dismissed because they

target the very same conduct *FTC* held lawful under the antitrust laws, flunk the relevant

"tethering" and "balancing" legal tests, and ignore the UCL fraud prong's pleading requirements.

### 1.   No UCL claim lies for conduct deemed lawful under the antitrust laws.

Where, as here, "'the same conduct is alleged to be both an antitrust violation and an

'unfair' business act or practice for the same reason—because it unreasonably restrains

competition and harms consumers—the determination that the conduct is not an unreasonable

restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.'" *City of

San Jose v. Office of the Com'r of Baseball*, 776 F.3d 686, 691 (9th Cir. 2015) (quoting *Chavez v.

Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001)). Plaintiffs' cited authorities confirm that where the

UCL claim is "derivative of the complaint's antitrust allegations," those "two causes of actions

stand or fall together." *In re Automobile Cases I & II*, 1 Cal. App. 5th at 132 n.1.

In response to this settled authority, Plaintiffs cite *Epic Games, Inc. v. Apple, Inc.*, a recent

district court case that allowed a UCL unfairness claim to proceed after concluding that the

plaintiff had failed to establish that the challenged conduct amounted to a Sherman Act or

Cartwright Act violation. 559 F. Supp. 3d 898, 1054 (N.D. Cal. 2021). But the Ninth Circuit

stayed that dubious ruling pending appeal, concluding that the appeal "raises serious questions on

the merits of the district court's determination that" the plaintiff failed to show "conduct violat[ing] any antitrust laws but did show that the same conduct violated" the UCL. *See Epic*, 2021 WL 6755197, at *1 (9th Cir. Dec. 8, 2021).[5] In any event, *Epic* is inapplicable. Unlike the conduct challenged in *Epic*, Qualcomm's practices have been "deemed reasonable" and "condoned under the antitrust laws" by the Ninth Circuit, and cannot plausibly be deemed incipient violations of antitrust law. 559 F. Supp. 3d at 1054 n.631.

## 2. Plaintiffs' unfairness claim fails the relevant legal tests.

To state a claim under the "tethering" test, Plaintiffs must show that Qualcomm's "conduct . . . threatens an incipient violation of an antitrust law or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Plaintiffs allege that Qualcomm "systematically" breached its SSO commitments, violating the spirit of the antitrust laws and policies. Opp. at 22. But *FTC* rejected any notion that alleged breaches of these agreements were tethered to antitrust policies and instead held that such claims "lie[] in contract and patent law." 969 F.3d at 1005. The Ninth Circuit further concluded that far from significantly threatening or harming competition, Qualcomm's practices were "*hyper*competitive" and were "disruptive in a manner that was beneficial to consumers in the long run." *Id.* at 982, 1003. Such conduct cannot be deemed unfair.

None of Plaintiffs' cited cases is to the contrary. For example, in *Arce v. Kaiser Foundation Health Plan, Inc.*, the court expressly limited its holding to "systematic breach[es] of **certain types of contracts** (*e.g.*, breaches of **standard consumer or producer contracts**.)." 181 Cal. App. 4th 471, 490 (2010). The FRAND breaches alleged here are nothing like the contracts at issue in *Arce*. Instead, they are individualized "contractual disputes between" some of "the world's most sophisticated companies." *FTC*, 969 F.3d at 997. Such contract disputes cannot independently give rise to a UCL claim, because these contracts are "not a boilerplate consumer

---

[5] To the extent that Plaintiffs argue that *Epic* aligns with California courts, they are mistaken. One state court has already disagreed with *Epic* on this issue. *See Michelle Bev. v. Apple Inc.*, No. 20CV370535 (Cal. Sup. Ct. Feb. 4, 2022) (noting that *Epic*'s "discussion of *Chavez* was cursory, and it did not address *Chavez's* application of the other California authorities") (unpublished)

1934548

contract of the type that unwary consumers typically enter into with large corporate entities." *See Catena v. Capitol Records, LLC*, 2012 WL 12942740 (C.D. Cal. July 11, 2012) (dismissing UCL claim based on breach of contract between a record company and its recording artists).

Moreover, even if breaching FRAND agreements *could* give rise to a UCL claim, Plaintiffs would lack standing to assert it. To be sure, a UCL claim can be brought "independent of any contractual relationship." *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 188 (2010). But where, as here, the *basis* of Plaintiffs' UCL claim is an alleged contractual breach, "plaintiffs cannot use the contracts to bootstrap liability under other theories, such as the UCL." *Berryman v. Merit Property Mgmt, Inc.*, 152 Cal. App. 4th 1544, 1553 (2007). Moreover, Plaintiffs nowhere allege they are third-party beneficiaries of any agreement between Qualcomm and unnamed SSOs, and the UCL does not grant them license to seek to enforce any such agreement. *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1161 (9th Cir. 2016) (holding that a stranger to a contract, who is not an intended beneficiary of the contract, has no UCL claim).

Plaintiffs' arguments under the balancing test fare no better. That test weighs the alleged conduct's "utility" against the "gravity of the harm to the alleged victim." *Cel-Tech*, 20 Cal. 4th at 184. Even if that test were to apply,[6] Plaintiffs ignore *FTC*'s holdings that the challenged conduct imposed no "anticompetitive surcharge," did "not undermine competition," and was backed by "reasonable, procompetitive justification[s]." 969 F.3d at 995 n.17, 996, 1005. By arguing that Qualcomm's conduct has "no legitimate utility" or "benefit to those markets, consumers, or society," Plaintiffs contradict *FTC*'s holdings to the contrary. Opp. at 22.

Plaintiffs proffer a "third balancing test," drawn from Section 5 of the FTC Act, as adopted by *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006). *See* Opp. at 24. But the Ninth Circuit rejected that test in *Lozano v. AT&T Wireless Services, Inc.*, 504 F. 3d 718, 736 (9th Cir. 2007) ("[W]e decline to apply the FTC standard in the absence of a clear holding from the California Supreme Court"); *MacDonald v. Ford Mo. Co.*, 37 F. Supp. 3d 1087, 1099 (N.D. Cal. 2014) ("[T]he Ninth Circuit expressly disavowed the *Camacho* approach"); *1305*

---

[6] Many California courts decline to apply the balancing test to consumer cases, finding it "too amorphous." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010) (collecting cases).

13

*Ridgwood, LLC v. Athas Capital Grp.*, 2022 WL 4139514, at *5 n.6 (N.D. Cal. Sep. 12, 2022) (same). And in any case, the SAC fails to meet that test's requirements for the same reasons set forth above.

Attempting to evade *FTC*'s preclusive effect, Plaintiffs contend that *FTC*'s "factual findings" were "based on a different evidentiary record." Opp. at 23. That argument makes little sense given that discovery was coordinated between the two cases and discovery in this case has closed. *See* ECF 814. Plaintiffs rely on the same evidence and challenge the same conduct discussed in *FTC*, which held that Qualcomm's conduct is reasonable, has legitimate procompetitive justifications, and is consistent with industry practice. 969 F.3d at 995 n.17, 996.

### 3.    Plaintiffs ignore the UCL fraud prong's basic pleading requirements.

Plaintiffs argue that, to state a fraud-based UCL claim, they need neither identify any fraudulent statement with particularity nor plead actual reliance. Both arguments are incorrect.

***First***, Plaintiffs argue that Rule 9(b) is less stringently applied where the alleged fraud occurred over a long period of time. Opp. at 24–25. But the case Plaintiffs cite for that proposition makes clear that dismissal is warranted where the plaintiffs "fail[] to allege any specific fraudulent act, but instead merely allege[] the general nature of the supposed fraudulent activity along with a vague time period." *Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, 2016 WL 4080177, at *9 (N.D. Cal. July 29, 2016). That is all Plaintiffs have done here. They point generally to Qualcomm's SSO commitments, and then "reasonably . . . infer[]" that Qualcomm made false promises. Opp. at 25. This comes nowhere close to meeting Rule 9(b)'s requirements.

***Second***, Plaintiffs concede that the SAC fails to allege reliance but contend that "reliance is not required" under the fraud prong of the UCL. Opp. at 25. Yet, "to permit a fraud-based UCL claim to go forward without even awareness of the misrepresentation would defeat the intention and stated purpose of *In re Tobacco II Cases*," which requires that the misrepresentation be the immediate cause of the injury-producing conduct. *Gonzalez v. Drew Indus. Inc.*, 2009 WL 10671688, * at 3 (C.D. Cal. 2009); *Roffman v. Perfect Bar, LLC*, 2022 WL 4021714, at *6 (N.D. Cal. Sept. 2, 2022) ("Plaintiffs must allege actual reliance"). The California Supreme Court's decision in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), on which Plaintiffs rely, was

clear—***"reliance is the causal mechanism of fraud."*** *Id.* at 326. To demonstrate reliance, Plaintiffs must therefore show that they were "motivated to act or refrain from action based on the truth or falsity of a defendant's statement." *Id.* at 327 n.10.

Arguing the contrary, Plaintiffs rely on the "minority view" of federal district court cases eschewing a "direct reliance requirement on ***competitor claims***" under the UCL's fraud prong. *Lona's Lil Eats, LLC v. Doordash*, 2021 WL 151978, at *12 (N.D. Cal. Jan. 18, 2021); *see also Scilex Pharma. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 915 (N.D. Cal. 2021) (holding that a "non-consumer plaintiff can allege false advertising claims …without alleging its own reliance"); Opp. at 25. Even if this minority view were correct, it would not govern here because Plaintiffs are consumers. Opp. at 25 (alleging that Qualcomm harmed "Plaintiffs and other consumers"). Consumers must plead their own reliance when alleging a fraud-based UCL claim. *Adhav v. Midway Rent A Car, Inc.*, 37 Cal. App. 5th 954, 970 (2019) ("[A] UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement."). Indeed, in *Lorenzo v. Qualcomm*, 2009 WL 2448375 (S.D. Cal. Aug. 10, 2009), the court considered and rejected the very claim that Plaintiffs recycle here. There, as here, the plaintiff alleged that SSOs relied on Qualcomm's (supposedly false) FRAND commitments, and that, consequently, "Plaintiff and other end users and consumers paid supracompetitive prices." *Id.* at *6. Finding no viable UCL claim, the court concluded, among other things, that "the FAC does not allege that Plaintiff justifiably relied on any misrepresentations made by Qualcomm." *Id.* So too here.

## III.   CONCLUSION

Despite having a complete evidentiary record to pull from and nearly two years since *FTC* was issued to draft the SAC, Plaintiffs suggest that this Court should consider granting them leave to file a third amended complaint. *See* Opp. at 5 n.1. The Court should decline that invitation. If Plaintiffs had anything new to allege, this was their final chance—as this Court previously warned them. The Court should grant Qualcomm's Motion with prejudice.

////

////

1934548

Dated:  October 17, 2022                                KEKER, VAN NEST & PETERS LLP


                                                    By:    s/*Robert A. Van Nest*
                                                           ROBERT A. VAN NEST
                                                           EUGENE M. PAIGE
                                                           STEVEN A. HIRSCH
                                                           CODY S. HARRIS
                                                           MATAN SHACHAM
                                                           KRISTIN HUCEK
                                                           DANIEL B. TWOMEY

                                                           Richard S. Taffet *(pro hac vice)*
                                                           MORGAN, LEWIS & BOCKIUS LLP
                                                           101 Park Avenue
                                                           New York, NY 10178-0060
                                                           Tel.:    (212) 309-6000
                                                           Fax:    (212) 309-6001
                                                           richard.taffet@morganlewis.com

                                                           Geoffrey T. Holtz (SBN 191370)
                                                           MORGAN, LEWIS & BOCKIUS LLP
                                                           One Market Plaza, Spear Street Tower
                                                           San Francisco, CA 94105-1596
                                                           Tel.:    (415) 442-1000
                                                           Fax:    (415) 442-1001
                                                           donn.pickett@morganlewis.com
                                                           gholtz@morganlewis.com

                                                           Attorneys for Defendant
                                                           QUALCOMM INCORPORATED

DEF. QUALCOMM INCORPORATED'S REPLY IN SUPPORT OF MOT. TO DISMISS SAC
Case No. 3:17-md-02773-JSC

1934548