KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest - # 84065
rvannest@keker.com
Eugene M. Paige - # 202849
epaige@keker.com
Cody S. Harris - #255302
charris@keker.com
Matan Shacham - # 262348
mshacham@keker.com
Kristin E. Hucek - # 321853
khucek@keker.com
Daniel B. Twomey - # 341488
dtwomey@keker.com
Jasmine K. Virk - # 347475
jvirk@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391 5400
Facsimile: (415) 397 7188

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet *(pro hac vice)*
richard.taffet@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

MORGAN, LEWIS & BOCKIUS LLP
Geoffrey T. Holtz (SBN 191370)
gholtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: QUALCOMM ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:17-md-02773-JSC<br><br>**QUALCOMM INCORPORATED'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [REDACTED]**<br><br>Date: July 20, 2023<br>Time: 10:00 a.m.<br>Dept.: Courtroom 8, 19th Floor<br>Judge: Hon. Jacqueline Scott Corley<br><br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ....................1
II. ARGUMENT ....................2
A. Dr. Flamm's untimely expert report is inadmissible. ....................2
1. Rules 26 and 37 forbid Plaintiffs from submitting a new expert report. ....................2
2. The untimely Flamm report contradicts Dr. Flamm's prior opinions. ....................3
3. The untimely Flamm report is neither substantially justified nor harmless. ....................5
B. Plaintiffs offer no evidence showing antitrust injury. ....................8
1. No evidence supports Plaintiffs' arguments regarding Samsung. ....................8
2. No evidence supports Plaintiffs' arguments regarding Apple. ....................9
C. No evidence shows substantial foreclosure of competition in a relevant market. ....................10
D. Plaintiffs provide no method for the jury to reasonably estimate damages. ....................12
E. Plaintiffs' UCL claim fails. ....................13
1. *Sonner* bars Plaintiffs' UCL claim. ....................13
2. Plaintiffs' request for an injunction continues to be unwarranted. ....................15
3. Plaintiffs' failure to establish anticompetitive injury bars their UCL claim. ....................15
III. CONCLUSION ....................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Cascade Health Sols. v. PeaceHealth*,
515 F.3d 883 (9th Cir. 2008) ....................10

*Chowning v. Kohl's Dep't Stores, Inc.*,
733 F. App'x 404 (9th Cir. 2018) ....................14

*City of Vernon v. Southern California Edison Co.*,
955 F.2d 1361 (9th Cir. 1992) ....................7, 8, 12

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
597 F.3d 1374 (Fed. Cir. 2010)....................3

*Donalds v. Ethicon, Inc.*,
2023 WL 2446703 (4th Cir. Mar. 10, 2023)....................6

*Dukes v. Wal-Mart Stores Inc.*,
2012 WL 4329009 (N.D. Cal. Sept. 21, 2012) ....................7

*Eastman v. Quest Diagnostics Inc.*,
2016 WL 1640465 (N.D. Cal. Apr. 26, 2016), *aff'd*, 724 F. App'x 556 (9th Cir. 2018) ....................11

*Epic Games Inc. v. Apple Inc.*,
559 F. Supp. 3d 898 (N.D. Cal. 2021) ....................9, 15

*Epic Games, Inc. v. Apple Inc.*,
67 F.4th 946 (9th Cir. 2023) ....................15

*Est. of Elkins v. Pelayo*,
2022 WL 1123117 (E.D. Cal. Apr. 14, 2022)....................4

*Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*,
786 F.2d 1342 (9th Cir. 1985) ....................12

*Fed. Deposit Ins. Corp. v. Van Dellen*,
2012 WL 12886825 (C.D. Cal. Nov. 6, 2012)....................3

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
2018 WL 5793479 (N.D. Cal. Nov. 2, 2018) ....................4

*Franklin v. Gwinnett Cty. Pub. Sch.*,
503 U.S. 60 (1992)....................13

*FTC v. Qualcomm, Inc.*,
969 F.3d 974 (9th Cir. 2020) ....................15

*Gallagher v. S. Source Packaging, LLC*,
568 F. Supp. 2d 624 (E.D.N.C. 2008)....................3

*In re Gasoline Spot Mkt. Antitrust Litig.*,
2021 WL 1176645 (N.D. Cal. Mar. 29, 2021)....................13, 14

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
378 F. Supp. 3d 823 (N.D. Cal. 2019) ....................11

*Glaberson v. Comcast Corp.*,
295 F.R.D. 95 (E.D. Pa. 2013)....................7

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ....................14, 15

*Luis Rosario, Inc. v. Amana Refrigeration, Inc.*,
733 F.2d 172 (1st Cir. 1984)....................15

*Luke v. Fam. Care & Urgent Med. Clinics*,
323 F. App'x 496 (9th Cir. 2009) ....................3

*Margolis v. Ryan*,
140 F.3d 850 (9th Cir. 1998) ....................7

*Mariscal v. Graco, Inc.*,
52 F. Supp. 3d 973 (N.D. Cal. 2014) ....................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................9, 10

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ....................12

*O'Shea v. Littleton*,
414 U.S. 488 (1974)....................13

*Omega Env't, Inc. v. Gilbarco, Inc.*,
127 F.3d 1157 (9th Cir. 1997) ....................11

*In re PersonalWeb Techs., LLC Pat. Litig.*,
2020 WL 6821074 (N.D. Cal. Feb. 3, 2020) ....................3

*Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*,
2013 WL 3242245 (N.D. Cal. June 25, 2013)....................11, 12

*Rovid v. Graco Children's Prod. Inc.*,
2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) ....................3

*Shahbaz v. Johnson & Johnson*,
2020 WL 5894590 (C.D. Cal. July 31, 2020) ....... 6

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
2015 WL 1119406 (S.D. Cal. Mar. 11, 2015) ....... 2, 3

*Snow v. Align Tech., Inc.*,
2022 WL 468703 (N.D. Cal. Feb. 16, 2022) ....... 14, 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....... 1, 13, 14, 15

*Tampa Elec. Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961) ....... 8

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016) ....... 14

*Toscano v. PGA Tour, Inc.*,
201 F. Supp. 2d 1106 (E.D. Cal. 2002) ....... 12

*United States v. 14.3 Acres of Land*,
2011 WL 2414348 (S.D. Cal. June 10, 2011) ....... 3

*Wong Lai v. Nw. Mut.*,
2014 WL 4827885 (N.D. Cal. Sept. 26, 2014) ....... 3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ....... 2

*Zapata Fonseca v. Goya Foods Inc.*,
2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ....... 13

**California Cases**

*Bank of the West v. Super. Ct.*,
2 Cal. 4th 1254 (1992) ....... 14

*Corbett v. Super. Ct.*,
101 Cal. App. 4th 649 (2002) ....... 14

*Feitelberg v. Credit Suisse First Bos., LLC*,
134 Cal. App. 4th 997 (2005) ....... 8, 14

*Fisherman's Wharf Bay Cruise Corp. v. Super. Ct. of S.F.*,
114 Cal. App. 4th 309 (2003) ....... 11

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....... 14

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) ....................14

**Federal Rules**

Fed. R. Civ. P. 23 ....................7

Fed. R. Civ. P. 26 ....................2, 3, 8

Fed. R. Civ. P. 37 ....................2, 3, 5

Fed. R. Civ. P. 56 ....................7

Fed. R. Evid. 802 ....................12

# I. INTRODUCTION[1]

Qualcomm's motion for summary judgment explained that Plaintiffs lack admissible evidence to support a standalone exclusive dealing claim. Plaintiffs' opposition confirms that point. Conceding that none of their existing expert reports provides sufficient evidence that Qualcomm's alleged conduct supports an exclusive dealing claim, Plaintiffs proffer and rely almost exclusively on the so-called "Supplemental Expert Report of Dr. Kenneth Flamm," which opines—for the first time—that Qualcomm's alleged exclusive dealing arrangements with Apple caused elevated chip prices that were passed through to consumers. But Plaintiffs have identified no authority that allows them to offer a brand-new expert report years after the close of expert discovery, much less a report containing opinions on subjects about which that expert previously testified he had no opinions at all. Not only do the Federal Rules of Civil Procedure forbid just this sort of sandbagging, but this Court has also already denied Plaintiffs' request to reopen expert discovery. In short, Dr. Flamm's untimely opinions are inadmissible and excludable, and the Court should disregard them for purposes of deciding Qualcomm's motion.

Plaintiffs' reliance on an inadmissible expert report is perhaps their opposition's most glaring deficiency, but it is far from the only one. None of the other evidence they identify creates a genuine issue of material fact regarding whether Qualcomm's alleged conduct caused Plaintiffs to suffer antitrust injury or foreclosed a substantial share of a relevant market. Nor do Plaintiffs offer any competent evidence from which a jury could reasonably estimate damages. And their UCL claim fails because, among other reasons, Plaintiffs have an "adequate remedy at law" that forecloses equitable relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Plaintiffs have had six years and ample opportunity to assemble an antitrust claim against Qualcomm. The Ninth Circuit, and subsequently this Court, held that their theory lacked merit. Plaintiffs' new legal theory, which rests on inadmissible evidence that was never part of the evidentiary record in this case, does too. The Court should grant Qualcomm's motion for summary judgment.

[1] In all quotations, all internal quotation marks and citations have been omitted, and all emphases added, unless otherwise noted. "Rule" refers to the Federal Rules of Civil Procedure. "Opp." refers to Plaintiffs' Opposition to Qualcomm's Motion for Summary Judgment. ECF 950.

## II. ARGUMENT

### A. Dr. Flamm's untimely expert report is inadmissible.

Expert discovery in this action closed on December 28, 2018. ECF 814. An expert cannot serve a "supplemental" report in opposition to summary judgment more than four years after discovery closed, much less one that discloses new opinions that contradict his previously disclosed opinions. The law forbids it, and this Court has already denied Plaintiffs' request to do so. The untimely Flamm report is inadmissible and cannot forestall summary judgment.

#### 1. Rules 26 and 37 forbid Plaintiffs from submitting a new expert report.

Rule 26 mandates that a party's retained expert witness must "disclose, in a written report, 'a complete statement of all opinions the witness will express' at trial, and the basis and reasons for them." *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 981 (N.D. Cal. 2014) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). Defendants are "entitled to rely" on the expert reports that were served during expert discovery as constituting that complete statement. *Id.* at 982. Rule 37(c)(1), in turn, mandates that when a party fails to timely provide its expert's opinions, that party may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." The sanction is "self-executing," "automatic," and applies even where it would "prevent [the] plaintiff from making out a case." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Accordingly, where, as here, a plaintiff opposing summary judgment offers a new expert report that "include[s] new previously undisclosed opinions," it must be excluded "as an untimely and improper expert disclosure." *Mariscal*, 52 F. Supp. 3d at 980–81.

The rule makes good sense. Nothing in Rule 26 gives a party "license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 1119406, at *7 (S.D. Cal. Mar. 11, 2015). To hold otherwise "would wreak havoc in docket control and amount to unlimited expert opinion preparation." *Id.*

Although Plaintiffs style Dr. Flamm's new report as "supplemental," it in no way falls within Rule 26(e)'s narrow scope permitting supplementation, *see* Fed. R. Civ. P. 26(e)(1)(A),

and Plaintiffs nowhere contend that it does. "[S]upplementation under the Rules means correcting inaccuracies, of filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 499–500 (9th Cir. 2009). Courts have never construed Rule 26(e) "as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report." *United States v. 14.3 Acres of Land*, 2011 WL 2414348, at *4 (S.D. Cal. June 10, 2011). Thus, where, as here, a supplemental expert report provides "additional opinions or seeks to strengthen or deepen opinions expressed in the original expert report" it is "subject to exclusion under Rule 37(c)." *Fed. Deposit Ins. Corp. v. Van Dellen*, 2012 WL 12886825, at *1 (C.D. Cal. Nov. 6, 2012).

This rule applies with full force when a party offers untimely new opinions when opposing summary judgment. In *Luke*, for example, the Ninth Circuit affirmed the exclusion of two supplemental expert declarations, which the plaintiffs had submitted alongside their summary judgment opposition two months after expert discovery closed, and which "presented a new theory as to a key element" of their claim. 323 F. App'x at 499. Indeed, courts have "repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) (collecting cases).[2] Plaintiffs offer no reason to depart from that rule here.

**2. The untimely Flamm report contradicts Dr. Flamm's prior opinions.**

Dr. Flamm's new report not only offers untimely new opinions, but also offers opinions that contradict his previous theories and embraces matters on which he disclaimed under oath having any opinions at all. Courts reject untimely expert reports that alter the expert's theories. *Sherwin-Williams Co.*, 2015 WL 1119406, at *7; *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1382 (Fed. Cir. 2010) ("It is well settled that a court may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that

[2] *See also, e.g.*, *In re PersonalWeb Techs., LLC Pat. Litig.*, 2020 WL 6821074, at *6 (N.D. Cal. Feb. 3, 2020) (striking untimely expert report because an expert may not "supplement his expert report to revise his disclosures" in light of challenges raised on summary judgment); *Rovid v. Graco Children's Prod. Inc.*, 2018 WL 5906075, at *11 (N.D. Cal. Nov. 9, 2018) ("That type of report is the exact type of supplemental report that the Ninth Circuit and courts across this Circuit have held should be excluded or struck under Rule 37(c)."); *Wong Lai v. Nw. Mut.*, 2014 WL 4827885, at *13 (N.D. Cal. Sept. 26, 2014) (same).

affidavit is directly contradicted by deposition testimony."). And it is axiomatic that an expert cannot offer opinions that he has expressly disclaimed. *See, e.g.*, *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 2018 WL 5793479, at *2 (N.D. Cal. Nov. 2, 2018) (striking portions of expert report because the expert "disclaimed those opinions in his deposition"); *Est. of Elkins v. Pelayo*, 2022 WL 1123117, at *18 (E.D. Cal. Apr. 14, 2022) ("[T]he Court detects no reason why Romero should not be held to his deposition testimony that he has no opinions on certain subjects.").

Dr. Flamm's earlier reports focused on Qualcomm's alleged supra-FRAND royalties, not on chip prices. ECF 936, Mot. Summ. J. ("Mot.") at 7–8. As Qualcomm pointed out in its motion (and Plaintiffs nowhere dispute), in his December 2018 deposition, Dr. Flamm confirmed under oath that he had no opinion regarding the proper level of Qualcomm's chip prices. *Id.* at 7; *see also* Decl. of Daniel B. Twomey ("Twomey Decl.") ¶2, Ex. 9 at 60:1–6 . Specifically, when asked whether he had opinions on whether Qualcomm's chip prices were too high, he responded, "No. The only question I was asked to look at relevant to Qualcomm's chip pricing was whether there was evidence of monopoly power." *Id.* at 59:16–25. Likewise, he confirmed that he had no "opinion today as to whether [chip] prices are too high, too low, or just right." *Id.* at 60:1–6. Dr. Flamm also expressly denied having created a regression that could assess "what Qualcomm's margins would have been in the but-for world" or what the "but-for level of competitiveness in the modem chip industry" would be absent the challenged conduct. *Id.* at 140:22–141:5. And when asked about the alleged conduct that underlies what is left of Plaintiffs' case, Dr. Flamm testified, "So I believe there are allegations of exclusive dealing arrangements. There are a variety of allegations that I don't explore." *Id.* at 116:2–4.[3]

Dr. Flamm now seeks to sponsor brand new opinions on each of these topics. He now states that he has been asked "to evaluate the competitive impact of Qualcomm's exclusivity arrangements with Apple and other mobile device hardware OEMs, including the impact on

[3] This testimony echoes Dr. Flamm's August 2018 deposition, taken in connection with class certification, in which he similarly denied having opinions on Qualcomm's chip prices, Twomey Decl. ¶3, Ex.11 at 55:10–56:16, any pass-through of inflated chip prices to consumers, *id.* at 57:2–10, or the alleged exclusive dealing arrangements now at issue, *id.* at 122:19–123:11. He further disclaimed having an opinion as to whether any competing chipset manufacturer could have met Apple's technical requirements between 2012 and 2016 such that an alleged exclusive dealing arrangement with Apple could have foreclosed entry into that space. *Id.* at 194:18–195:11.

baseband processor prices." ECF 950-2, Ex. 3 ("Suppl. Flamm Rpt.") ¶ 5. He continues: "I have been asked to assess, by itself, whether Qualcomm's exclusivity agreements are anticompetitive and, if so, what the economic impacts are—if any—arising from the allegedly anticompetitive exclusive dealing." *Id.* According to Plaintiffs, Dr. Flamm has concluded "that Qualcomm's chipset prices to Apple were higher during periods of exclusivity than without" and "were higher to Apple than to other OEMs that did not have exclusivity arrangements." Opp. at 5. And he now opines that the alleged exclusive dealing arrangements harmed competition by precluding Qualcomm's competitors from working with Apple. *Id.* These are subjects on which Dr. Flamm disclaimed having opinions, despite acknowledging that the allegations *were in the case*. Nothing prevented Plaintiffs from having Dr. Flamm or some other expert render timely opinions on these subjects. Their failure to do so was a "strategic choice." ECF 936-1, Ex. 7 ("CMC Tr.") at 7:11.

Worse still, Dr. Flamm's new opinions contradict his prior conclusions. In his opening expert report, Dr. Flamm stated that OEMs pass through to consumers *decreases* in input costs just as they pass along *increases* to input costs. *See* ECF 950-2, Ex. 1 ("Flamm Rpt.") ¶ 112 ("[A] decrease in the cost of producing some given combination of product . . . will lead to a decrease . . . in the price of a cellular phone."). That opinion worked for Plaintiffs when their theory rested on a supposed royalty surcharge being passed through to consumers. But with rebates now at issue, Dr. Flamm reverses course, arguing that Qualcomm's "lump sum payments to Apple are not passed on to end users" and are instead retained by Apple, thereby potentially "leaving Apple better off on net." Suppl. Flamm Rpt. ¶ 156. Not only does this new opinion directly contradict his prior conclusions, but it is also bereft of factual support. Dr. Flamm offers no explanation for why an OEM must pass all increases in royalty charges to consumers while remaining free to retain any rebates on chips.

**3. The untimely Flamm report is neither substantially justified nor harmless.**

Plaintiffs make no effort to explain why their failure to offer these opinions while discovery was open was in any way "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Any such effort would fail. This Court already ruled that no justification exists to reopen expert discovery, noting that Plaintiffs "could have pursued a separate exclusive dealing theory that was

not dependent on the FRAND," but made "a strategic choice" not to. CMC Tr. at 7:8–11. And when Plaintiffs protested that it would not "be fair" to make them rely on their current "damages model," the Court responded, "Why? Why? You could have developed alternative expert theories. You could have. You didn't have to put all your eggs into one basket; right?" *Id.* at 7:22–8:5. But they did. And now that the basket's bottom has fallen out, they are in no way entitled to a do-over. Again, to quote this Court: "[T]here was a discovery cutoff and the case comes to an end[,] and there has to be some finality. You were prepared to go to trial on that record that you had based on what it is." *Id.* at 12:1–6. That record did not include Dr. Flamm's new contradictory opinions, and those opinions cannot prevent summary judgment now.

Considering Dr. Flamm's new report would also significantly prejudice Qualcomm and would be anything but harmless. *See, e.g.*, *Donalds v. Ethicon, Inc.*, 2023 WL 2446703, at *5 (4th Cir. Mar. 10, 2023) (declining to find harmless a supplemental expert report submitted "three years after the close of discovery, to address the deficiencies that [the defendant] had pointed out in its motion for summary judgment"); *Shahbaz v. Johnson & Johnson*, 2020 WL 5894590, at *6 (C.D. Cal. July 31, 2020) ("Defendants would be prejudiced if Plaintiffs were permitted to submit [an expert's] untimely report, which includes additional, previously undisclosed opinions and information and was filed, for the first time, in their [summary judgment opposition]"). Following this Court's instructions, Qualcomm moved for summary judgment based on the record that existed at the close of discovery. It would prejudice Qualcomm to allow Plaintiffs to proffer new expert opinions for the first time along with their opposition brief. In fact, Qualcomm expressly warned Plaintiffs that any new expert report would be improper at this stage. *See* Twomey Decl. ¶ 3, Ex. 10 (Email from Twomey to Zapala, Mar. 16, 2023).

Lacking any authority supporting their untimely effort to smuggle a new expert report into this case, Plaintiffs instead cite and misconstrue inapposite case law. Plaintiffs argue that class plaintiffs often "tailor" their analyses after a class certification remand. Opp. at 12. But Plaintiffs are not tailoring their claim—they are reformulating their theory of harm out of whole cloth after this Court denied them leave to reopen discovery.

What's more, none of Plaintiffs' cited cases suggests that they can offer a new, untimely

expert report when opposing summary judgment. In *Dukes v. Wal-Mart Stores Inc.*, 2012 WL 4329009 (N.D. Cal. Sept. 21, 2012), Judge Breyer considered a motion to dismiss or strike class allegations from a fourth amended complaint, following the Supreme Court's ruling regarding commonality requirements under Rule 23. *Id.* at *2. Denying the motion, the court ruled that plaintiffs could not "be faulted for failing to anticipate a significant development in the Supreme Court's class-action jurisprudence," and granted them the opportunity to "marshal and present evidence in support of their class allegations" through a renewed class certification motion. *Id.* at *3. Nothing of the sort happened here.[4] There has been no new development in class-action jurisprudence affecting Plaintiffs' claims, and Dr. Flamm's new theories go to the merits, not to Rule 23's requirements. Unlike the plaintiffs in *Dukes*, who faced a landmark Supreme Court case that changed the law on Rule 23, Plaintiffs here asserted from the beginning that the Apple agreements were "*de facto* exclusive deals," ECF 94 at ¶ 105, yet argued consistently that those alleged deals merely reinforced the effect of other supposedly anticompetitive conduct while providing no empirical or analytical support for harm resulting from those deals standing alone.

This case also differs from *Dukes* procedurally. Here, this Court has already denied Plaintiffs' request to reopen discovery.[5] By contrast, in *Dukes*, merits discovery remained open—the parties had conducted class discovery and then stayed the case pending the Supreme Court's review. *See Dukes*, No. 3:01-cv-02252 CRB, ECF 749 (N.D. Cal. July 15, 2011). After the stay lifted, the plaintiffs conducted "additional discovery for more than one year" before filing their (ultimately unsuccessful) class certification motion. *Dukes*, 964 F. Supp. 2d 1115, 1118 (N.D. Cal. 2013). Here, by contrast, expert discovery had closed, dispositive motions were due, and the case was set for trial a few months later. ECF 814. *Dukes* has no bearing on this case.

Plaintiffs' reliance on *City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361 (9th Cir. 1992), is even more misplaced. As an initial matter, that case holds that without

[4] The same goes for *Glaberson v. Comcast Corp.*, 295 F.R.D. 95 (E.D. Pa. 2013), in which the court allowed plaintiffs to file a renewed motion for class certification after a seminal Supreme Court decision interpreting Rule 23's predominance requirement. *Id.* at 97.

[5] The Court should reject Plaintiffs' renewed request to reopen discovery pursuant to Rule 56(d). Plaintiffs never explain why the Court's prior decision was incorrect, or how the information they seek "would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).

admissible evidence of damages—something for which Plaintiffs rely on the untimely Flamm report—summary judgment must be granted. *See infra*, Part II.D. The case also offers no help to Plaintiffs for four additional reasons. ***First***, it nowhere suggests, much less holds, that a plaintiff can defeat summary judgment by submitting a new expert report in violation of Rules 26 and 37. ***Second***, whereas in *Vernon*, the court noted in dicta that the plaintiff had neither offered nor attempted to "make corrections" to its expert report, *id.* at 1372, here the Court denied Plaintiffs' request to reopen expert discovery. ***Third***, as discussed above, Dr. Flamm offers no "corrections" to his initial report; he seeks to present brand new and contradictory opinions on matters on which he previously disclaimed having opinions. ***Fourth***, contrary to Plaintiffs' argument, this is not a case where "the data already existed even though it had not yet been placed in the proposed damage report." *Id.* at 1372–73. None of Plaintiffs' experts disclosed any analysis purporting to show how the alleged exclusive dealing arrangements caused higher chip prices. This was all manufactured from whole cloth.

In sum, Plaintiffs' opposition to Qualcomm's motion seeks to raise a genuine issue of fact based on an untimely and inadmissible expert report. The Court should disregard it.

**B. Plaintiffs offer no evidence showing antitrust injury.**

Plaintiffs' opposition limits their claim to alleged exclusive dealing arrangements with Samsung and Apple. But they point to no competent evidence sufficient to raise a triable issue of fact supporting an antitrust claim involving either OEM.

**1. No evidence supports Plaintiffs' arguments regarding Samsung.**

Plaintiffs' arguments about Samsung fail for three reasons. ***First***, Plaintiffs provide no factual support for the threshold requirement that Qualcomm entered into agreements expressly requiring or having the practical effect of requiring Samsung to be exclusive with Qualcomm. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 326–27 (1961). Plaintiffs assert that "[b]y 2018, Qualcomm required Samsung to purchase [redacted] of Samsung's premium modem chipsets" from Qualcomm. Opp. at 7. But the evidence cited in support of that statement is neither an exclusive purchasing contract, nor correspondence evidencing such an arrangement. Rather, it is a [redacted]

[redacted] ECF 950-2, Ex. 18. Similarly, far from providing evidence to support their claim that Samsung exclusively used Qualcomm's chips in 2014 and 2015, Plaintiffs claim only that Samsung agreed to use Qualcomm's chips for two phones at [redacted] Opp. at 6. Plaintiffs' failure to show that Qualcomm forced Samsung to buy Qualcomm modem chips exclusively is unsurprising given that ***Samsung makes its own modem chips***. *Id.* at 2. Plaintiffs are thus left with the fact that Samsung received discounts to buy Qualcomm chips that were not conditioned on exclusivity. That behavior is "the very essence of competition." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986).

***Second***, as Qualcomm's motion pointed out, Plaintiffs' expert, Einer Elhauge, stated that "Qualcomm did ***not*** make the same sort of exclusivity payments" to Samsung as it allegedly made to Apple. ECF 936-1, Ex. 1 at ¶ 131. Plaintiffs simply ignore his opinion on that point.

***Third***, Plaintiffs' opposition nowhere argues that any purchasing arrangement with Samsung caused antitrust injury. Their argument centers exclusively on Apple. *See* Opp. at 14–18. Indeed, in identifying the alleged "harm arising solely from Qualcomm's exclusive dealing arrangements," Plaintiffs assert only that Qualcomm precluded rivals "from working with *Apple*" and "rais[ed] prices to *Apple's* end users." *Id.* at 9. And they offer Dr. Flamm's inadmissible report to show only how chip prices would have been lower absent "Qualcomm's exclusive dealing with *Apple*," and how "*Apple* iPhone customers" would have supposedly benefitted absent Qualcomm's arrangement with Apple. *Id.* Samsung nowhere figures into the argument.

In sum, Plaintiffs point to no facts showing that Qualcomm had an exclusive dealing arrangement with Samsung or that any such agreement, even if it existed, unlawfully foreclosed competition or caused antitrust injury.

**2. No evidence supports Plaintiffs' arguments regarding Apple.**

Plaintiffs similarly fail to present competent evidence sufficient to raise a triable issue of fact as to whether the rebates Qualcomm paid Apple for modem chip purchases (however characterized) caused consumers to pay more for their phones. Plaintiffs rely almost completely on Dr. Flamm's untimely and contradictory report to satisfy their burden on this point, but as explained above, that report is inadmissible and cannot be used to defeat summary judgment. *See*

*supra* Part II.A. Elhauge's report doesn't fill the gap; as Qualcomm explained in its motion, Elhauge concluded that the alleged exclusive dealing arrangements merely "exacerbat[ed]" the effects of the now-dismissed tying claim, and that the economic effects of Qualcomm's conduct had to be considered "holistically." ECF 936-1, Ex. 1 at ¶ 138; *Id.*, Ex. 2 at ¶¶ 148, 258, 301, 326, 344. Plaintiffs nowhere rebut this argument.

Plaintiffs' claim fails for another reason: their arguments make no economic sense. They claim that "Qualcomm's exclusive dealing allowed it to keep chipset prices artificially high," leading to elevated prices for California cellphone purchasers. Opp. at 1. But Plaintiffs concede that the alleged arrangements took the form of a *discount* structure, Opp. at 4–5, and Dr. Flamm opined that marginal cost savings would be passed along to consumers, precluding any showing of antitrust injury. *See* Flamm Rpt. ¶ 112.

Plaintiffs' theory also makes no sense because typically when a plaintiff alleges exclusionary conduct based on lower prices, it's a form of predatory pricing where, "[f]or a period of time, the defendant must sell below its cost, with the intent to eliminate its competitors so that, when its competition is eliminated, the defendant can charge supracompetitive prices, recouping its losses and potentially more." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 910 n.21 (9th Cir. 2008). Plaintiffs have it backwards. They posit that Qualcomm's rebates to Apple allowed it to charge *higher* chip prices, which it then *lowered* once competitors entered the market. Opp. at 16–17. That is not a cognizable claim of exclusionary conduct.

Because Plaintiffs' "claim is one that simply makes no economic sense," they "must come forward with more persuasive evidence . . . than would otherwise be necessary." *Matsushita*, 475 U.S. at 587. They fail to do so. And crediting Plaintiffs' theory would be "especially costly" because "cutting prices in order to increase business often is the very essence of competition," and "mistaken inferences in cases such as this . . . chill the very conduct the antitrust laws are designed to protect." *Id.* at 594.

**C. No evidence shows substantial foreclosure of competition in a relevant market.**

Summary judgment is also appropriate because Plaintiffs nowhere attempt to quantify the amount of the market that Qualcomm allegedly foreclosed, let alone show that the degree of

foreclosure suffices under the Cartwright Act. *See Fisherman's Wharf Bay Cruise Corp. v. Super. Ct. of S.F.*, 114 Cal. App. 4th 309, 336 (2003) (citing authority "setting 20 percent as [the] floor for significant foreclosure"). Quantifying the degree of foreclosure "is necessary because, for the monopolist's conduct to adversely affect competition, the opportunities for other traders to enter into or remain in that market must be significantly limited." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 841 (N.D. Cal. 2019). Without that substantial foreclosure, exclusive deals pose no threat to competition as there would be little ability to maintain or extract anticompetitive pricing. *Cf. Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997). That is why courts within this district routinely dismiss exclusive dealing claims that "fail to quantify the actual market effect of this alleged activity. . . even in gross terms." *Rheumatology Diagnostics Lab'y, Inc. v. Aetna, Inc.*, 2013 WL 3242245, at *13 (N.D. Cal. June 25, 2013); *Eastman v. Quest Diagnostics Inc.*, 2016 WL 1640465, at *8 (N.D. Cal. Apr. 26, 2016), *aff'd*, 724 F. App'x 556 (9th Cir. 2018) (same). Here, Plaintiffs assert "worldwide" markets, ECF 928 at ¶ 170, but offer no evidence showing the amount, if any, of foreclosure of those markets.

Apart from failing to quantify foreclosure of any market, Plaintiffs give no hint which of the alleged relevant markets in this case—the CDMA and "premium LTE" chipset markets—supposedly experienced foreclosure due to Qualcomm's alleged exclusive dealing arrangements. Instead, Plaintiffs discuss only a single, undifferentiated "market" that supposedly suffered some undefined degree of foreclosure. Opp. at 18 ("Qualcomm's exclusive deals . . . foreclosed competition in a substantial share of the market.").

Plaintiffs' foreclosure argument suffers from other fatal deficiencies. Plaintiffs focus entirely on Intel's supposed foreclosure from "the market." *Id.* But as Qualcomm's motion explained, Plaintiffs fail to show how Intel's alleged foreclosure from Apple would have prevented Intel from selling CDMA or "premium LTE" chips to any OEMs other than Apple. The record reveals that Intel *chose* not to compete for other OEMs' business, because selling the system-on-a-chip products that other OEMs wanted would have violated [redacted] Mot. at 16. And by Plaintiffs' own admission, other chipset suppliers—including Samsung—developed their own chipset supply businesses during the class period. Opp. at 2.

Having "fail[ed] to quantify the actual market effect" of the alleged exclusive dealing arrangements "even in gross terms," *Rheumatology*, 2013 WL 3242245 at *13, Plaintiffs resort to misconstruing *qualitative* evidence that, even if true (and admissible), would be insufficient to establish substantial foreclosure. For instance, Plaintiffs assert that it is "undisputed" that Samsung and Apple were the most important customers in the market, "per Qualcomm's own admission," Opp. at 18, but in doing so they misquote deposition testimony stating that "Samsung, Apple, ***LG, Huawei, [and] Xiaomi***" were Qualcomm's "most important customers." ECF 950-2, Ex. 31. [redacted] Fed. R. Evid. 802.

**D. Plaintiffs provide no method for the jury to reasonably estimate damages.**

Plaintiffs make no effort to rebut Qualcomm's argument that, to defeat summary judgment, they must present competent evidence establishing that their alleged "injuries were caused by reason of defendants' *unlawful* competition." *Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1348 (9th Cir. 1985). Nor do they dispute that, as was true in *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988), "[s]ome sort of study estimating the amount of damages [is] essential to [their] case." *Id.* at 808. As Qualcomm's motion explained—and Plaintiffs nowhere rebut—Plaintiffs' experts calculated damages based solely on alleged royalty surcharges flowing from Qualcomm's *lawful* licensing practices. Mot. at 17–19. Accordingly, the evidentiary record lacks any study that could allow a jury to reasonably estimate the damage caused by Qualcomm's alleged exclusive dealing. *Farley*, 786 F.2d at 1350.

Plaintiffs' opposition proves that Qualcomm was correct. Attempting to fill the hole in their case, Plaintiffs rely on an untimely expert report they submitted after this Court told them to proceed on the record as it existed at close of discovery. CMC Tr. at 12:1–6. Given that report's inadmissibility, they are "in the position of having no proper proof of damages at all." *Vernon*, 955 F.2d at 1373. They have shirked their "responsibility to present ***competent*** and probative evidence from which a jury can reasonably infer damages." *Toscano v. PGA Tour, Inc.*, 201 F.

Supp. 2d 1106, 1124 (E.D. Cal. 2002). Summary judgment is therefore appropriate.[6]

**E. Plaintiffs' UCL claim fails.**

**1. *Sonner* bars Plaintiffs' UCL claim.**

Plaintiffs fail to explain why *Sonner* doesn't bar their UCL claim. They argue that their UCL claim survives simply because "the amount of the equitable award available to Plaintiffs under the UCL is not equal to the amount of damages available to Plaintiffs under the Cartwright Act." Opp. at 22. But *Sonner* nowhere holds that a UCL claim may proceed merely because the remedies are different; it requires a plaintiff to "establish that she ***lacks an adequate remedy*** at law before securing equitable restitution for past harm under the UCL." 971 F.3d at 844. Holding otherwise would ignore the "axiom[] that a court should determine the adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992). Accordingly, where, as here, a plaintiff's "equitable relief claim relies upon the same factual predicates as a plaintiff's legal cause of action," the plaintiff must establish that money damages would fail to provide a remedy or would provide "incomplete" relief. *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016). Plaintiffs have not done so.

Plaintiffs have never argued that the Cartwright Act provides them an inadequate legal remedy. *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (plaintiffs must "plead the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law"). Nor have they distinguished their damages claim from the equitable remedies they seek. Rather, they state that their UCL claim seeks as restitution an alleged overcharge based on "the difference consumers would have paid had they purchased phones in a market free from Qualcomm's exclusive deals." Opp. at 24. That amount is identical to the relief they seek under the Cartwright Act, and the "same amount of money for the exact same harm" is adequate. *Sonner*, 971 F.3d at 845; *In re Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021).

Plaintiffs' request for disgorgement of "all profits that Qualcomm obtained from its [allegedly] unfair exclusive dealing arrangements," Opp. at 22, also fails for at least three reasons.

---

[6] Plaintiffs in no way distinguish the many cases Qualcomm cited showing that courts routinely grant summary judgment where plaintiffs fail to present competent evidence of damages tied to the allegedly unlawful conduct. *See* Opp. at 14 n.8.

***First*****,** the law does not entitle Plaintiffs to that form of relief. There are two forms of disgorgement in California law: "restitutionary disgorgement, which *focuses on the plaintiff's loss*, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015) (emphasis in original). "[N]onrestitutionary disgorgement," which is what Plaintiffs now seek, "is impermissible under the UCL." *Feitelberg v. Credit Suisse First Bos., LLC*, 134 Cal. App. 4th 997, 1016 (2005). Ignoring this precedent, Plaintiffs misconstrue two California cases that they suggest hold that a UCL plaintiff can recover disgorgement of profits allegedly flowing from an unfair business practice. *See Corbett v. Super. Ct.*, 101 Cal. App. 4th 649 (2002); *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992). But the California Supreme Court has made clear that it "has ***never*** approved of nonrestitutionary disgorgement as a remedy under the UCL." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003) (rejecting the argument that "disgorgement of profits allegedly obtained by means of an unfair business practice" is an available remedy under the UCL). ***Second***, even if disgorgement of Qualcomm's profits was an available remedy under the UCL (it is not), Plaintiffs nowhere explain how treble damages under the Cartwright Act would fail to adequately compensate them for their alleged injury. ***Third***, Plaintiffs offer "no competent evidence" showing how they would calculate any form of disgorgement. *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404, 406 (9th Cir. 2018).

Plaintiffs next argue that courts "permit plaintiffs to simultaneously pursue statutory claims for damages and equitable remedies under the UCL." Opp. at 24. But Plaintiffs improperly rely on California state cases, even though the Ninth Circuit has held that only federal law applies to *Sonner*'s "federal inadequate-remedy-at-law principle." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022). And their federal cases provide no support. *Teutscher v. Woodson*, 835 F.3d 936 (9th Cir. 2016), pre-dates *Sonner*, and several courts—including this Court—have held that pre-*Sonner* cases regarding a plaintiff's ability "to plead alternative claims for relief [are] unavailing." *In re Gasoline*, 2021 WL 1176645, at *8.[7] In *Snow v. Align Tech.,*

[7] This language from *In re Gasoline* belies Plaintiffs' incorrect assertion that the plaintiffs in that case "never argued that they were pursuing legal and equitable remedies in the alternative" and that the Court "did not consider the argument." Opp. at 24.

*Inc.*, 2022 WL 468703 (N.D. Cal. Feb. 16, 2022), the court allowed the plaintiffs to pursue their UCL claim because they lacked standing to seek damages under the antitrust laws. *Id.* at *2. Here, Plaintiffs are pursuing a damages claim under the Cartwright Act. That claim's failure on the merits in no way renders Plaintiffs' damages remedy inadequate under *Sonner*. *See Guzman*, 49 F.4th at 1312. Nor does *Epic Games Inc. v. Apple Inc.*, 559 F. Supp. 3d 898 (N.D. Cal. 2021), aid Plaintiffs. There, the district court found *Sonner* inapplicable because Epic's harm could not be "easily remedied with money damages." *Id.* at 1057. Plaintiffs have made no such argument here.

**2. Plaintiffs' request for an injunction continues to be unwarranted.**

Plaintiffs' request for injunctive relief is divorced from the factual record and ignores the Ninth Circuit's holding in *FTC v. Qualcomm, Inc.*, 969 F.3d 974 (9th Cir. 2020). To obtain an injunction, Plaintiffs must show that the harm is "ongoing or likely to recur." *Id.* at 1005. But the Ninth Circuit reversed an injunction against Qualcomm because the same agreements Plaintiffs challenge here had terminated and posed no "current or future threat of anticompetitive harm." *Id.*

Plaintiffs' request for an injunction is also vague and unworkable. They never state what conduct would be enjoined, how long the injunction would last, or how any court could enforce it. Courts are already hesitant to require parties to "rewrite" contracts. *See Luis Rosario, Inc. v. Amana Refrigeration, Inc.*, 733 F.2d 172, 174 (1st Cir. 1984). Here, Plaintiffs ask this Court to thwart Qualcomm's ability to negotiate and contract with its customers. Plaintiffs point to no case granting a forward-looking injunction like the one they seek.

**3. Plaintiffs' failure to establish anticompetitive injury bars their UCL claim.**

Plaintiffs' reliance on the Ninth Circuit's recent opinion in *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946 (9th Cir. 2023), is also misplaced and cannot salvage their UCL claim. *Epic* holds that not all shortcomings under the Sherman Act or Cartwright Act automatically bar a UCL claim. *Id.* at 1001. But the Ninth Circuit left undisturbed the *Epic* district court's ruling that unless a plaintiff has "demonstrated real anticompetitive effects," no UCL claim can lie. 559 F. Supp. 3d at 1054. As explained above, Plaintiffs have failed to make any such showing.

## III. CONCLUSION

For these reasons, the Court should grant Qualcomm's motion for summary judgment.

Dated: June 22, 2023

KEKER, VAN NEST & PETERS LLP

By: *s/Robert A. Van Nest*

Robert A. Van Nest
Eugene M. Paige
Cody S. Harris
Matan Shacham
Kristin E. Hucek
Daniel B. Twomey
Jasmine K. Virk

Richard S. Taffet *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001
richard.taffet@morganlewis.com

Geoffrey T. Holtz (SBN 191370)
MORGAN, LEWIS & BOCKIUS LLP
One Market Plaza, Spear Street Tower
San Francisco, CA 94105-1596
Tel.: (415) 442-1000
Fax: (415) 442-1001
gholtz@morganlewis.com

Attorneys for Defendant
QUALCOMM INCORPORATED